## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **RIVERDAWG, LLC, NO FREE, LLC, AND HOLT KNOB HOLDINGS, LLC,** | |
| **Plaintiff,** | **Civil Action File No.** |
| **v.** | _____ |
| **S. GREGORY HAYS, IN HIS CAPACITY AS RECEIVER FOR FIRST LIBERTY CAPITAL PARTNERS, LLC,** | |
| **Defendant.** | |

## <u>VERIFIED COMPLAINT</u>

COME NOW Plaintiffs Riverdawg, LLC ("**Riverdawg**"), No Free, LLC ("**No Free**"), and Holt Knob Holdings, LLC ("**Holt Knob**" and collectively with Riverdawg and No Free, the "**Plaintiffs**") and file this Complaint against S. Gregory Hays, in his capacity as Receiver for First Liberty Capital Partners, LLC (the "**Defendant**" or "**Receiver**"), pleading and averring as follows:

NATURE OF THE ACTION

1.    Plaintiffs bring this action against Defendant, solely in his capacity as the Court-appointed Receiver for First Liberty Capital Partners, LLC ("**First**

**Liberty**"), for declaratory judgment, fraud by First Liberty, fraud in the inducement by First Liberty, injunctive relief, and by First Liberty's willful breach of contract.

## IDENTIFICATION OF THE PARTIES

2.     Plaintiff Riverdawg is a limited liability company incorporated in Georgia and maintains its principal place of business at 1004 Memorial Lane, Suite 200, Savannah, Georgia.

3.     Plaintiff No Free is a limited liability company incorporated in Georgia and maintains its principal place of business at 1004 Memorial Lane, Suite 200, Savannah, Georgia.

4.     Plaintiff Holt Knob is a limited liability company incorporated in North Carolina and maintains its principal place of business at 1004 Memorial Lane, Suite 200, Savannah, Georgia, and registered office address at 460 Dillard Road, Highlands, NC 28741.

5.     Defendant is an adult resident of the State of Georgia and may be served at 2964 Peachtree Road, Suite 555, Atlanta, Georgia 30305.

## STATEMENT OF JURISDICTION AND VENUE

6.     This Court has ancillary jurisdiction over this action because the claims set forth herein relate to the receivership property of First Liberty and claims held by the Receiver in such capacity. "Federal jurisdiction is based on the ancillary

jurisdiction of the federal courts… part of their statutory 'supplemental jurisdiction.'" *Scholes v. Lehmann*, 56 F.3d 750 (7th Cir. 1995) *citing Pope V. Louisville, New Albany & Chicago Ry.*, 173 U.S. 573, 577 (1899). 28 U.S.C. § 959(a) permits suits against "trustees, receivers or managers of any property… without leave of the court appointing them, with respect to any of their acts or transactions in carrying on the business connected with such property." 28 U.S.C. § 959(a). The Eleventh Circuit noted that this exception "is intended to permit actions redressing torts committed in furtherance of the debtor's business." *Carter v. Rodgers*, 220 F.3d 1249 (11th Cir. 2000).

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391.

8.     This Court previously stayed any and all litigation against First Liberty and/or the Receiver except for in this Court pursuant to the Receivership Order (as defined below). The Court entered in *Order Establishing Procedures to Enter Action to Resolve Claims Arising from Loan Obligations Due to the Receivership* (the "**Procedures Order**") on January 27, 2026. This Complaint is filed pursuant to the authority in such Procedures Order.

STATEMENT OF FACTS

I.    The Receivership Action

9.    On July 10, 2025, the Securities and Exchange Commission ("**SEC**")
filed a Complaint against First Liberty and other parties, thereby initiating the action
styled as follows: *Securities and Exchange Commission v. Edwin Bryant Frost, IV,
First Liberty Building & Loan, LLC, First Liberty Capital Partners LLC, First
National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group
Inc., and The Liberty Group LLC*, U.S. District Court for the Northern District of
Georgia, Atlanta Division, Civil Action No. 1:25-cv-03826-MLB (the
"**Receivership Action**").

10.    On July 11, 2025, this Court entered the *Order Appointing Receiver*
(Doc. No. 6) (the "**Receivership Order**") *inter alia*: (i) appointing S. Gregory Hays
as the Receiver for the estate of First Liberty Building & Loan, LLC, First Liberty
Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC,
The Legacy Advisory Group Inc., and The Liberty Group LLC (the "**Receivership
Entities**"), and (ii) staying "all civil legal proceedings of any nature… involving: (a)
the Receiver, in his capacity as Receiver; (b) any Receivership Property, wherever
located; (c) the Receivership Entities…; or, (d) the Receivership Entities' past or

present officers, directors, managers, agents, or general or limited partners…." Receivership Order at 16. The Procedures Order modified the stay.

11.    The Receivership Order granted the Receiver "all powers, authorities, rights and privileges heretofore possessed by the officers, directors, managers and general and limited partners of the Receivership Entities… in addition to all powers and authority of a receiver at equity, and all powers conferred upon a receiver by the provisions of 28 U.S.C. §§ 754, 959 and 1692, and Federal Rule of Civil Procedure 66." Receivership Order at 3.

12.    The Receiver has the sole authority and ability to pursue and preserve the claims of the estate of the Receivership Entities. Pursuant to the Receivership Order, "[t]he Receiver shall assume and control the operation of the Receivership Entities and shall pursue and preserve all of their claims. No person holding or claiming any position of any sort with any of the Receivership Defendant[s] shall possess any authority to act by or on behalf of any of the Receivership Defendant[s]." Receivership Order at 4.

13.    The Receiver has the power and duty "to pursue, resist and defend all suits, actions, claims and demands which may now be pending or which may be brought by or asserted against the Receivership Estate." Receivership Order at 5.

14.    Upon current information and belief at this time, between 2014 and June 2025, Edwin Brant Frost IV ("**Frost**") and First Liberty Building & Loan, LLC ("**First Liberty B&L**") raised at least $140 million from approximately 300 investors through the sale of loan participation agreements and promissory notes which offered annual returns of 8% to 18%.[1]

15.    Upon current information and belief at this time, Frost and First Liberty B&L represented to investors that their funds would be used to make short-term small business loans at relatively high interest rates ("**Bridge Loans**"). Frost and First Liberty B&L represented to investors that these Bridge Loans and interest thereon would be repaid by borrowers via Small Business Administration ("**SBA**") or other commercial loans, which Frost and First Liberty B&L claimed they would help broker.

16.    Upon current information and belief at this time, Frost and First Liberty B&L initially solicited and sold these investments to "friends and family" in the form of either loan participation agreements or promissory notes. These agreements and

---

[1] Information relating to First Liberty's and Frost's activities are based on allegations contained in the SEC's Receivership Action. As set forth herein, none of this information was known to Plaintiffs at the time Plaintiffs obtained purported loans from First Liberty.

notes offered investors the opportunity to make an investment that would be pooled with other investor funds and then lent to specific borrowers.

17.    Upon current information and belief at this time, beginning in 2024, Frost and First Liberty B&L started a more widespread public solicitation of potential investors, advertising the opportunity to invest in promissory notes via radio advertising, internet podcasts, and the First Liberty B&L website. All the investments, whether offered as a loan participation agreement or a promissory note, were purportedly to fund Bridge Loans.

18.    Upon current information and belief at this time, Frost and First Liberty B&L, however, did not use investor funds as represented. While some investor funds were used to make Bridge Loans, those loans did not perform as represented.

19.    Upon current information and belief at this time, Frost and First Liberty B&L, continued to make interest payments to investors on the non-performing loans. According to the allegations in the SEC's Receivership Action, since at least 2021, Frost and First Liberty B&L used funds raised from new investors to make these interest payments.

20.    Upon current information and belief at this time, much of the funds raised through the publicly advertised offering were either misappropriated or used to make Ponzi-style payments to existing investors.

21.     Upon current information and belief at this time, Frost used investor funds to make payments to himself and his family members in excess of $5 million. Upon current information and belief at this time, Frost further used investor funds to pay for the operations of affiliated companies that he controlled, First Liberty, First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC.

22.     Upon current information and belief at this time, in addition to failing to use investor funds as represented, i.e., to make Bridge Loans, Frost and First Liberty B&L made other misrepresentations when soliciting new investments. Specifically, upon information and belief, Frost knowingly misrepresented the success of the Bridge Loan program to investors. Frost told some potential investors that First Liberty had only ever had one Bridge Loan default. Frost told other potential investors that very few loans had defaulted. In reality, a significant portion of the Bridge Loans issued by First Liberty were in default when Frost made these statements.

23.     Through Plaintiffs' own due diligence, Plaintiffs first learned of First Liberty's receivership following receipt of the public notice (the "**Public Notice**") issued by First Liberty on or about June 27, 2025, stating as follows:

> We regret to inform you that as of Friday, June 27, 2025, First Liberty has ceased all business operations. First Liberty will no longer be

accepting promissory note investments or bridge loan participations, and it will not be making any new bridge loans. Interest payments on existing promissory notes, bridge loan participation interests, and other investment programs are indefinitely suspended. First Liberty is cooperating with federal authorities as part of an effort to accomplish an orderly wind-up of the business. First Liberty employees are not authorized to make any further communications at this time regarding the ongoing situation, and no one at the company will be available to answer phone calls or respond to email inquiries. First Liberty hopes to provide additional information and updates in the near future regarding the status of the company's efforts to effectuate an orderly wind-up of the business.

A true and correct copy of such Public Notice is attached hereto and incorporated herein as **Exhibit "A"**. As described below in more detail, it was only through Plaintiffs' own due diligence that Plaintiffs were able to learn of the existence of the Receivership Action.

24.     Based on Plaintiffs' review of such Public Notice, Plaintiffs were put on notice of First Liberty's default of its obligations under the Purported Loans (as defined below) to Plaintiffs. The notice stated that First Liberty payments are suspended. Therefore, Plaintiffs were unable to make payment to First Liberty.

25.     As a result of the Receivership Order, the Receiver stands in the shoes of First Liberty and the other Receivership Entities which operated a Ponzi-scheme.

26.     The existence of such Ponzi scheme is one of the reasons why the Receiver was appointed.

II.    First Liberty's Purported Loans to Plaintiffs

*A.    The First Purported Loan (First Liberty to No Free)*

27.    On or about December 28, 2023, Plaintiff No Free executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $250,000.00 (as amended or modified, the "**First Note**"), and (ii) a Deed to Secure Debt, Assignment of Rents and Security Agreement recorded at Deed Book 67478, Page 128 in the records of the Clerk of Superior Court of Fulton County, Georgia (as amended or modified, the "**First Security Deed**"), evidencing No Free's intent to borrow funds from First Liberty as lender (the "**First Purported Loan**"). Pursuant to such instruments, No Free granted First Liberty a security interest in certain real property located in Fulton County, Georgia, having map parcel no. 14007800030922 (the "**Fulton Property**") to secure the First Purported Loan.

28.    On or about June 11, 2024, No Free executed and delivered to First Liberty (i) a Modification to Promissory Note, and (ii) a Modification to Deed to Secure Debt, Assignment of Rents and Security Agreement (collectively, the "**First Loan Modification**") whereby No Free and First Liberty intended to modify the First Purported Loan and First Security Deed to increase the principal amount to $500,000.00. True and correct copies of the loan documents relating to the First

Purported Loan, including the First Loan Modification, are attached hereto and incorporated herein as **Exhibit "B"**.

29.     Upon information and belief, the Modification to the First Security Deed was not recorded following execution and delivery to First Liberty.

B.     *The Second Purported Loan (First Liberty to Riverdawg)*

30.     On or about September 17, 2024, Plaintiff Riverdawg executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $700,000.00 (as amended or modified, the "**Second Note**"), and (ii) a Deed to Secure Debt, Assignment of Rents and Security Agreement recorded at Deed Book 734, Page 460 in the records of the Clerk of Superior Court of Towns County, Georgia (as amended or modified, the "**Second Security Deed**"), evidencing Riverdawg's intent to borrow funds from First Liberty as lender (the "**Second Purported Loan**"). Pursuant to such instruments, Riverdawg granted First Liberty a security interest in certain real property located in Towns County, Georgia, having map parcel nos. 0064 010, 0064 011, and 0064 012 (collectively, the "**Towns Properties**") to secure the Second Purported Loan. True and correct copies of the loan documents relating to the Second Purported Loan are attached hereto and incorporated herein as **Exhibit "C"**.

31.    The Second Note states that the maturity date of the Second Purported Loan is September 18, 2025. The Second Security Deed executed and delivered in conjunction with the Second Note states that the maturity date is September 28, 2025. Therefore, a conflict exists between the two documents and such conflict is resolved against First Liberty as the drafter of the documents. Therefore, the maturity date of the Second Purported Loan was actually September 28, 2025, to the extent that an actual loan existed.

32.    Pursuant to the terms of the Second Note, Riverdawg had the right to extend the maturity date of the purported Second Purported Loan for an additional six (6) months upon notice to First Liberty.

33.    Riverdawg issued such notice to First Liberty regarding Riverdawg's exercise of its right to extend the maturity date by letter dated September 17, 2025. A true and correct copy of such September 17, 2025 letter is attached hereto and incorporated herein as **Exhibit "D"**.

C.    *The Third Purported Loan (First Liberty to Riverdawg)*

34.    On or about December 9, 2024, Plaintiff Riverdawg executed and delivered to First Liberty a Promissory Note in the original principal amount of $355,000.00 (as amended or modified, the "**Third Note**") evidencing Riverdawg's intent to borrow funds from First Liberty as lender (the "**Third Purported Loan**").

True and correct copies of the loan documents relating to the Third Purported Loan are attached hereto and incorporated herein as **Exhibit "E"**.

35.    Frost, by and on behalf of the Receivership Entities, represented that this Third Purported Loan would be "rolled up" with and included in the Fourth Purported Loan described below.

   D.   *The Fourth Purported Loan (First Liberty to No Free)*

36.    On or about December 19, 2024, Plaintiff No Free executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $3,500,000.00 (as amended or modified, the "**Fourth Note**") evidencing No Free's intent to borrow funds from First Liberty as lender (the "**Fourth Purported Loan**"). (The First Note, Second Note, Third Note, and Fourth Note are collectively referred to herein as the "**Purported Notes**"). (The First Purported Loan, Second Purported Loan, Third Purported Loan, and Fourth Purported Loan are collectively referred to herein as the "**Purported Loans**"). True and correct copies of the loan documents relating to the Fourth Purported Loan, which include the Bryan Security Deed, Deed of Trust, and Recorded Deed of Trust (all as defined below), are attached hereto and incorporated herein as **Exhibit "F"**.

37.    Plaintiffs attest that the loan documents attached to this Complaint constitute a "complete set" of the documents in the possession of the Plaintiffs

relating to such Purported Loans. However, Plaintiffs show that First Liberty "substituted", "swapped", or modified documents after execution by Plaintiffs. So a forensic analysis may be required in order to determine such. Plaintiffs also show that all funds received by Plaintiffs from First Liberty were used as stated on closing statements, or if disbursed to a Plaintiff, such funds were used as operating capital and for general business purposes as was agreed and understood by First Liberty.

i.    The Bryan County, Georgia Security Deed

38.    On or about December 19, 2024, Plaintiff No Free executed and delivered to First Liberty Building and Loan, as lender, that certain Commercial Deed to Secure Debt and Security Agreement recorded on January 15, 2025, at Deed Book 1703, Page 811 in the records of the Clerk of Superior Court of Bryan County, Georgia (as amended or modified, the "**Bryan Security Deed**"). Pursuant to such instrument, No Free granted First Liberty Building and Loan a security interest in certain real property located in Bryan County, Georgia, having map parcel no. 067 001 (the "**Bryan Property**") to secure the Fourth Purported Loan.

39.    The Bryan Security Deed purports to secure No Free's indebtedness to First Liberty Building and Loan in the sum of $3,500,000.00 pursuant to a note of even date therewith. However, upon information and belief, no such promissory note exists from No Free to First Liberty Building and Loan. The Bryan Security Deed

14

appears to reference the Fourth Note and the $3,500,000.00 indebtedness from No Free to First Liberty, but First Liberty Building and Loan was not a party to such note. Therefore, pursuant to the terms of the Bryan Security Deed itself, the Bryan Security Deed is "null and void" because no debt is secured thereby.

ii.    The North Carolina Deed of Trust

40.    On or about the time of the Fourth Purported Loan, on or about December 19, 2024, Plaintiff Holt Knob executed and delivered to First Liberty a document titled "North Carolina Deed of Trust" (the "**Deed of Trust**") regarding certain originally unidentified property in Macon County, North Carolina. Such Deed of Trust purports to grant certain rights to First Liberty as beneficiary via and through The Neumann Law Office, PLLC Attorneys at Law (the "**Trustee**") as Trustee. A true and correct copy of the Deed of Trust which Holt Knob executed at closing is attached hereto and incorporated herein as **Exhibit "G"**.

41.    After the execution and delivery of the Deed of Trust by Holt Knob to First Liberty, the Deed of Trust was recorded on January 29, 2025, at Book CRP N-43, Page 2363 in the records of the Register of Deeds of Macon County, North Carolina (the "**Recorded Deed of Trust**"). A true and correct copy of the Recorded Deed of Trust is attached hereto and incorporated herein as **Exhibit "H"**.

42.     A legal description is attached to the Recorded Deed of Trust as Exhibit "A". However, such legal description was not referenced or mentioned in, attached to, incorporated by, or otherwise included at all in the Deed of Trust which was signed by Holt Knob.

43.     Both the actual Deed of Trust and Recorded Deed of Trust state that Holt Knob, as Grantor, is indebted to First Liberty in the principal sum of $3,500,000 pursuant to a promissory note of even date therewith. However, no such promissory note by which Holt Knob is indebted to First Liberty exists. Therefore, the Recorded Deed of Trust is unenforceable with respect to any indebtedness purportedly owed to First Liberty. Pursuant to the terms of the Recorded Deed of Trust itself, the Recorded Deed of Trust is "null and void" because no debt is secured thereby.

44.     The Recorded Deed of Trust is also void or otherwise unenforceable because the document, as signed, did not grant First Liberty a lien on any real property. In fact, the Recorded Deed of Trust states that Holt Knob, as grantor, grants the Trustee rights in land "more particularly described as follows: _____." Accordingly, the instrument is clear on its face that there is conveyance of no real property to the Trustee pursuant to the Recorded Deed of Trust.

45.     Upon information and belief, at or around the time of recording, some person (yet to be identified) added an Exhibit A to the back of the Deed of Trust

signed by Holt Knob. This exhibit is referred to nowhere in the text of the Deed of Trust or the Recorded Deed of Trust. Therefore, the exhibit cannot become grafted into the instrument. In other words, the instrument does not state that a legal description is attached hereto. The instrument does not state that a legal description is "incorporated herein". The legal description on the exhibit is therefore not part of the Recorded Deed of Trust under any circumstances.

46.    Further, and as stated above, the legal description page was not present at the time the Deed of Trust was signed. Simply adding an exhibit to the Deed of Trust at the last minute before recordation does not cure the ambiguity created by virtue of the fact that the Deed of Trust lacked a legal description of the real property to be conveyed at the time that it was executed. Therefore, such an exhibit cannot be added later.

47.    The Recorded Deed of Trust is null and void, invalid, and unenforceable.

III.    <u>Plaintiffs' Payments to the Receivership Entities</u>

48.    Pursuant to the terms of the First Note, as modified by the First Loan Modification, No Free was required to pay First Liberty payments as follows: $2,750.00 due at closing for the short month of June 2024, and thereafter monthly payments of interest only on the outstanding principal balance in the amount of

$7,500.00 commencing on July 1, 2024, and continuing thereafter on the 1st day of each successive month until June 10, 2025, at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges shall be due and payable for all purposes in full in a single balloon payment.

49.    No Free timely made all payments due per the terms of the First Note and First Loan Modification until No Free's knowledge and review of the Public Notice.

50.    Pursuant to the terms of the Second Note, Riverdawg was required to pay First Liberty payments as follows: $4,044.43 due at closing, and thereafter monthly payments of interest only on the outstanding principal balance in the amount of $9,333.33 commencing on November 1, 2024, and continuing thereafter on the 1st day of each successive month until September 18, 2025, at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges shall be due and payable for all purposes in full in a single balloon payment.

51.    Riverdawg timely made all payments due per the terms of the Second Note until Riverdawg's knowledge and review of the Public Notice.

52.    Pursuant to the terms of the Third Note, Riverdawg was required to pay First Liberty payments as follows: $3,471.16 due at closing, and thereafter monthly payments of interest only on the outstanding principal balance in the amount of

$4,733.33 commencing on January 1, 2025, and continuing thereafter on the 1st day of each successive month until December 9, 2025, at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges shall be due and payable for all purposes in full in a single balloon payment.

53.    Riverdawg timely made all payments due per the terms of the Third Note until Riverdawg's knowledge and review of the Public Notice.

54.    Pursuant to the terms of the Fourth Note, No Free was required to pay First Liberty payments as follows: $18,666.00 due at closing, and thereafter monthly payments of interest only on the outstanding principal balance in the amount of $46,666.67 commencing on February 1, 2025, and continuing thereafter on the 1st day of each successive month until December 19, 2025, at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges shall be due and payable for all purposes in full in a single balloon payment.

55.    No Free timely made all payments due per the terms of the Fourth Note until No Free's knowledge and review of the Public Notice.

56.    As stated, Plaintiffs fulfilled any and all payment obligations due by them under the terms of the Purported Notes through the time of the Public Notice.

57.    As indicated, Plaintiffs actually made a payment after the date of the Public Notice because Plaintiffs did not have knowledge of the Public Notice. As

stated, the Public Notice was posted on June 27, 2025. This was a Friday. The next business day was Monday, June 30, 2025. On this day, Plaintiffs made a wire transfer. This was intended to pay the amount due on July 1, 2025, and this amount was paid.

58.    Plaintiffs provide a statement of all funds received from any of the Receivership Entities as provided by paragraph 5(b)(ii) of the Procedures Order. Plaintiffs also provide a statement of all payments by Plaintiffs to the Receivership Entities pursuant to paragraph 5(b)(iii) of the Procedures Order. Such statement is attached hereto as **Exhibit "I"**.

59.    The Public Notice stated that loan servicing was not occurring. As a result, Plaintiffs were unable to make payment on the Purported Loans after knowledge of the Public Notice.

IV.    <u>Plaintiffs' Due Diligence Post-Receivership Action</u>

60.    After learning of the Public Notice, Plaintiffs made much effort to determine the status of First Liberty. Plaintiffs contacted numerous agencies and officials. As a result, Plaintiffs eventually learned, through Plaintiffs' own due diligence, of the existence of the Receivership.

61.    Upon learning of the existence of the Receivership, Plaintiffs first attempted to obtain a working relationship with the Receiver. For example, Plaintiffs requested loan statements from the Receiver and Receiver's counsel.

62.    In July 2025, following the entry of the Receivership Order, Plaintiffs requested the Receiver to provide payoff information for each of the Purported Loans. The Receiver responded to Plaintiffs' request and continuously promised to provide such payoff information over a subsequent period of approximately six weeks.

63.    Without limitation of the foregoing paragraph, Plaintiffs specifically requested a payoff amount needed in order to obtain a release of the Deed of Trust (the "**Lot Release**") executed by Holt Knob and recorded in North Carolina.  The Receiver promised and agreed to provide a Lot Release. Plaintiffs, together with an attorney for Plaintiffs, conveyed to the Receiver the urgency of the need for the Lot Release. This urgency is based on the fact that construction had been ongoing in North Carolina. Holt Knob had been in need of financing to obtain funds to continue construction of a residential unit on the North Carolina parcel.

64.    Plaintiffs advised Defendant that the Lot Release was required in order to obtain a construction loan. Despite this knowledge, and despite Defendant's

assurances that it would do so, Defendant has failed and refused to provide a Lot Release for the Deed of Trust.

65.     Plaintiffs received correspondence from the Receiver on or about September 10, 2025, via letter from Receiver's counsel (the "**Receiver Draft Notice of Intent**"). The Receiver provided a "loan payoff" as of September 10, 2025. However, the Receiver Draft Notice of Intent stated that all of the Purported Loans are in default. The Receiver Draft Notice of Intent also stated that all of the Purported Loans were subject to "cross-collateralization" and "cross default provisions." In other words, the Defendant attempted to hold up on the Lot Release of the Deed of Trust based on all the other Purported Loans.

66.     Plaintiffs operated in good faith with respect to all their dealings with Frost and the Receivership Entities. To the extent that the Purported Loans were not actually bona-fide business loans, Plaintiffs were acting in good faith and had no knowledge of the nefarious activities of Frost and the Receivership Entities.

67.     To the extent that the Purported Loans were actually bona-fide business loans, Plaintiffs constitute innocent bona-fide good faither borrowers. Plaintiffs did not know that Frost and the Receivership Entities were operating a Ponzi scheme. At the times that the Plaintiffs conducted the Purported Loans transactions with First

Liberty, the Plaintiffs had no reason to believe that First Liberty was anything other than a legitimate lender.

## COUNT ONE
## REQUEST FOR DECLARATORY JUDGMENT AS TO AMOUNTS DUE BY PLAINTIFFS TO THE RECEIVERSHIP ESTATE

68.     Plaintiffs incorporate all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

69.     Pursuant to 28 U.S.C. § 2201, subject to exceptions not applicable here, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." This Court has the power to declare the rights and obligations of parties under the Purported Loans because an actual controversy exists between Plaintiffs and the Defendant.

70.     Plaintiffs seek a judicial determination and declaration as to the nature of the Purported Loans and the parties' rights and duties thereunder.

71.     There is an actual controversy between Plaintiffs and Receiver, as representative of First Liberty, concerning whether the Purported Loans are actual loans made by First Liberty as a lender because of First Liberty's operation of a Ponzi-scheme.

72. The Purported Loans between Plaintiffs and First Liberty are not true loans from a lender to a borrower because First Liberty did not actually act as a lender. Rather, First Liberty was a Ponzi scheme.

73. In July 2025, following the entry of the Receivership Order, Plaintiffs requested the Receiver to provide payoff information for each of the Purported Loans. The Receiver responded to Plaintiffs' request and continuously promised to provide such payoff information over a subsequent period of approximately six weeks.

74. After Plaintiffs repeatedly requested payoff information, Plaintiffs received a demand letter from Receiver's counsel on. The demand letter stated that all of the Purported Loans are in default.

75. The Receiver takes the position that the Purported Loans are cross-collateralized and therefore subject to cross-default.

76. Plaintiffs seek a judicial determination and declaration that the Receiver is not entitled to collect interest, late fees, origination fees or any other charges under the Purported Loans because the Purported Loans are part of First Liberty's fraudulent scheme. Specifically, for example and without limitation, Plaintiffs seek a judicial determination and declaration that the Receiver is not

entitled to collect interest on non-existent interest reserve(s) under the Purported Loans (which interest reserves were never funded by First Liberty).

77.    Plaintiffs seek a judicial determination and declaration that the Purported Loans are not really actual loans because Frost and the Receivership Entities made and procured these documents as part and in furtherance of their Ponzi scheme. Without limitation, Plaintiffs seek a judicial determination that the Purported Loans are not in default, without limitation, because the Plaintiffs were never advised as to how, when, or where to make payment to the Receiver other than through a demand letter which wrongfully states that the Purported Loans are cross-collateralized.

78.    To the extent that the Court finds that a Plaintiff is indebted to First Liberty, Plaintiffs seek a judicial determination and declaration that each Plaintiff is only obligated to pay First Liberty the amount of funds that such Plaintiff actually received from First Liberty *less* any payments made by such Plaintiff to First Liberty.

79.    Plaintiffs seek a judicial determination and declaration that the Purported Loans are not actually enforceable loans and that each Plaintiff is not obligated for the indebtedness under the documents of the Purported Loans.

80.    Plaintiffs seek a judicial determination and declaration that each Plaintiff is not obligated for the indebtedness of the other Plaintiffs under the terms

of the Purported Loans and that any cross-collateralization between the Purported Loans is invalid, void, and unenforceable.

81.    To the extent that the Court finds that Plaintiffs are indebted to First Liberty under the Purported Loans, Plaintiffs seek declaratory judgment that each Plaintiff is only obligated to pay First Liberty the amount of funds actually received from First Liberty *less* any payments made by such Plaintiff to First Liberty.

## COUNT TWO
### FRAUD

82.    Plaintiffs incorporate all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

83.    As a result of the Receivership Order, the Receiver stands in the shoes of First Liberty and the other Receivership Entities as the operator of a Ponzi-scheme.

84.    The Receiver seeks to enforce rights or other obligations due to First Liberty. Plaintiffs hold claims against First Liberty for fraud.

85.    The Purported Loans were part of the Ponzi-scheme operated by First Liberty with the intent to defraud Plaintiffs.

86.    Ponzi-schemes are a specific type of fraudulent scheme under the law. "[A] Ponzi scheme where part of the scheme itself is to pay 'interest' to early victims from the money 'invested' by later victims in order to create the illusion of a

successful investment program." *United States v. Orton*, 73 F.3d 331 (11th Cir. 1996). "A Ponzi scheme operates by using new investors' funds to pay old investors to create the impression that the scheme is generating profits." *Wiand v. Lee*, 753 F.3d 1194 (11th Cir. 2014). "As proof that the investments were generating returns, the Ponzi schemers would send 'distributions' to the investors through the Receivership Entities. In reality, the 'distributions' consisted merely of money invested by other duped investors instead of actual gains on legitimate investments." *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296 (11th Cir. 2020).

87.    First Liberty engaged in an actual fraudulent scheme or artifice to defraud investors and unjustly enrich Frost and the Receivership Entities.

88.    First Liberty engaged in an actual fraudulent scheme or artifice to defraud Plaintiffs and unjustly enrich Frost and the Receivership Entities.

89.    Frost and the Receivership Entities made representations to Plaintiffs regarding the status and ability of First Liberty to make loans to Plaintiffs and underlying purported transactions. Such representations were knowingly and materially false when made. Without limitation, Frost and the Receivership Entities falsely represented to Plaintiffs that First Liberty was a lender with the ability to fund business loans to Plaintiffs while knowing full well that such was false.

90.     Frost and the Receivership Entities made misrepresentations regarding the source of the funds by omitting to disclose that the funds were illegally obtained as part and parcel of a Ponzi scheme.

91.     The false representations, lies, and omissions by Frost and the Receivership Entities to Plaintiffs induced Plaintiffs: (a) to enter into the transactions as purported borrowers and/or grantors, and (b) to obtain funds from the Receivership Entities.

92.     Frost and the Receivership Entities knowingly made these misrepresentations to Plaintiffs in an effort to induce Plaintiffs to become indebted to First Liberty and perpetuate the fraudulent scheme.

93.     Frost and the Receivership Entities knew or should have known that Plaintiffs would rely on their continuing false representations.

94.     Plaintiffs justifiably relied on the misrepresentations of Frost and the Receivership Entities to Plaintiffs' detriment.

95.     Plaintiffs have been materially damaged by the lies, omissions, and scheme of Frost and the Receivership Entities. Such actions have required Plaintiffs to expend time and resources, including attorney's fees, to uncover the nature of the scheme.

96.     Such improper acts by Frost and the Receivership Entities were done with malice or with a reckless disregard of Plaintiffs' rights.

97.     The foregoing acts were done with the intent to deceive and injure Plaintiffs along with other investors of First Liberty.

98.     Through the foregoing acts, the Receivership Entities have defrauded Plaintiffs.

99.     Plaintiffs are entitled to recover damages as allowed by law as a result of such breach of duties and fraud.

100.    The Receivership Entities showed willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

101.    Plaintiffs are entitled to an award of punitive damages in an amount to be determined at trial, not as compensation to Plaintiffs, but solely to punish, penalize or deter the Receivership Entities from such wrongful conduct in the future.

102.    Defendant and the Receivership Entities have acted in bad faith, have been stubbornly litigious and have caused Plaintiffs unnecessary trouble and expense. Defendant and First Liberty are liable to Plaintiffs for Plaintiffs' expenses of litigation, including reasonable attorneys' fees.

103.    Plaintiffs are entitled to judgment and damages for actual fraud in an amount of: (a) all interest, fees, and charges claimed by the Receivership Entities, or, alternatively, (b) as to be determined by the trier of fact at trial. As stated, Plaintiffs are also entitled to recover punitive damages in the amount of $250,000.00 or an amount to be determined at trial.

104.    Plaintiffs are entitled to a judgment against Defendant, as the Receiver of the estate of the Receivership Entities, for consequential damages equal to all fees, interest, and charges claimed by the Receivership Entities; general damages; and punitive damages as determined by the trier of fact at trial in this matter.

## COUNT THREE
## FRAUD IN THE INDUCEMENT

105.    Plaintiffs incorporate all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

106.    As a result of the Receivership Order, the Receiver stands in the shoes of First Liberty and the other Receivership Entities as the operator of a Ponzi-scheme.

107.    The prima facia element for Fraudulent Inducement include: (1) defendant made a false statement regarding a material fact; (2) defendant knew or should have known the representation was false; (3) defendant intended that the representation induce plaintiff to act on it; and (4) plaintiff suffered damages in

justifiable reliance on the representation. *PVC Windoors, Inc. v. Babbitbay Beach Const., N.V.*, 598 F.3d 802, 808-09 (11th Cir. 2010).

108.   First Liberty and the other Receivership Entities directly and through their agents, employees, and representatives made numerous false statements of material facts; including but not limited to, the profitability of its business, the ability of First Liberty to loan funds as a legitimate lender, that its business was still functioning as a going concern, and First Liberty could perform the obligations of First Liberty and terms under the Purported Loan documents which First Liberty knew that it would not be able to fulfill or had no intention of fulfilling.

109.   First Liberty knew that the statements made, and its representatives made on its behalf, were factually false and untrue at the time these statements were made to Plaintiffs. Without limitation, First Liberty (in conjunction with the other Receivership Entities) represented that it was a legitimate lender with the ability to fund the Purported Loans.

110.   The Plaintiffs relied on such false statements and also the representations made in the documents and instruments evidencing the Purported Loans, and as a result was induced to sign the Purported Loan Documents which state that the Plaintiffs became indebted to First Liberty in the total original principal amount of $5,055,000.00.

31

111.   That Plaintiffs incurred direct injury and damages as a result of the Receivership Entities' acts, lies, omissions, and fraudulent scheme.

112.   Such improper acts by Frost and the Receivership Entities were done with malice or with a reckless disregard of Plaintiffs' rights.

113.   The foregoing acts were done with the intent to deceive and injure Plaintiffs along with other investors of First Liberty.

114.   Through the foregoing acts, the Receivership Entities have defrauded Plaintiffs.

115.   Plaintiffs are entitled to recover damages as allowed by law as a result of such breach of duties and fraud in the amount of all interest, fees, and charges claimed by the Receivership Entities.

116.   The Receivership Entities showed willful misconduct, malice, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

117.   Plaintiffs are entitled to an award of punitive damages in the amount of $250,000.00 or such other amount as determined at trial, not as compensation to Plaintiffs, but solely to punish, penalize or deter the Receivership Entities from such wrongful conduct in the future.

118.   Plaintiffs are entitled to a judgment against Defendant, as the Receiver of the estate of the Receivership Entities, for consequential damages, general damages, and punitive damages of $250,000.00 or such other amount as determined by the trier of fact at trial in this matter.

## COUNT FOUR
## WILLFUL BREACH OF CONTRACT

119.   Plaintiffs incorporate all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

120.   To the extent the Court determines that Plaintiff No Free and First Liberty entered into an enforceable contract regarding the Fourth Purported Loan, then Plaintiff No Free holds claims against First Liberty under such contract.

121.   No Free performed all of its obligations under such agreement with First Liberty prior to First Liberty's shutdown and breach of its obligations.

122.   First Liberty breached the Fourth Purported Loan by failing to perform all of its obligations to No Free under the Fourth Note.

123.   First Liberty's material breaches include but are not limited to: (i) fraudulently misrepresenting the financial conditions and profitability of the business; (ii) fraudulent representations regarding its ability to fund the Fourth Purported Loan; (iii) failure to fund the Fourth Purported Loan as required by the Fourth Note and other associated loan documents.

124.   First Liberty's material breaches were both intentional and willful since it knew such representations were false at the time such statements were made and such representations were intended to induce Plaintiffs to become indebted to First Liberty without intending to provide the benefit the parties contracted for.

125.   As a direct and proximate result of First Liberty's willful material breaches of contract, Plaintiff No Free sustained contract damages in the amount of all principal, interest, fees, and charges claimed by the Receivership Entities under the Fourth Purported Loan or such amount as determined by the trier of fact.

126.   Defendant and the Receivership Entities have acted in bad faith, have been stubbornly litigious and have caused Plaintiffs unnecessary trouble and expense. Defendant and First Liberty are liable to Plaintiffs for Plaintiffs' expenses of litigation, including reasonable attorneys' fees.

127.   No Free is therefore entitled to judgment against Defendant and First Liberty in the amounts set forth herein or as determined by the trier of fact due to First Liberty's breaches of contract.

## COUNT FIVE
## CLAIMS FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF BY NO FREE AND RIVERDAWG

128.   Plaintiffs No Free and Riverdawg incorporate all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

129.   Plaintiffs No Free and Riverdawg dispute the validity of the Purported Loans and the payoff amounts of the Purported Loans due to First Liberty as asserted by the Receiver.

130.   On the basis of the foregoing, Plaintiffs are entitled to temporary, interlocutory, and permanent injunctive relief, including the issuance of an order prohibiting the Receiver from commencing foreclosure proceedings on any security documents regarding the Purported Loans, including without limitation the First Security Deed, the Second Security Deed, and the Bryan Security Deed, until such time as this Court determines the amounts due from Plaintiffs No Free and Riverdawg to Receiver, if any. Plaintiffs propose that no cash bond shall be required for issuance of the injunction requested herein and that the collateral under the Purported Loans constitutes sufficient security.

131.   If the Receiver is not enjoined from enforcing the security documents including foreclosure proceedings with respect to the Purported Loans at this time, Plaintiffs No Free and Riverdawg shall be irreparably injured in that such conduct will without limitation (i) cause Plaintiffs No Free and Riverdawg to suffer undue financial burden by losing substantial assets to which they lawfully possess and are entitled because the validity of the security documents of the Purported Loans are disputed by Plaintiffs No Free and Riverdawg; and (ii) unduly prejudice Plaintiffs

No Free and Riverdawg by permitting the Receiver to collect on the fraudulent Purported Loans absent review and judicial determination by this Court of actual amounts due to First Liberty by Plaintiffs No Free and Riverdawg, if any, injuries for which there exists no adequate remedy at law. Plaintiffs No Free and Riverdawg are entitled to immediate and permanent injunctive relief to prevent further harm and to avoid such irreparable injury.

**COUNT SIX**
**CLAIMS FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF BY HOLT KNOB**

132.    Plaintiff Holt Knob incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

133.    The Deed of Trust purporting to encumber certain originally unidentified real property in North Carolina owned by Plaintiff Holt Knob is null and void, invalid, and unenforceable.

134.    There exists no such promissory note by which Holt Knob is indebted to First Liberty. Therefore, the Recorded Deed of Trust is null and void because no debt is secured thereby.

135.    Holt Knob has suffered damages as a result of First Liberty's recording of the Recorded Deed of Trust.

136.   The Recorded Deed of Trust purporting to encumber certain real property in North Carolina owned by Plaintiff Holt Knob is null and void, invalid, and unenforceable.

137.   On the basis of the foregoing, Plaintiff Holt Knob is entitled to temporary, interlocutory, and permanent injunctive relief, including the issuance of an order prohibiting the Receiver from enforcing the Recorded Deed of Trust and compelling the Receiver to record the cancellation of said purported deed.

138.   Plaintiff Holt Knob disputes the validity of the Purported Loans and the payoff amounts of the Purported Loans due to First Liberty as asserted by the Receiver.

139.   On the basis of the foregoing, Plaintiff Holt Knob is entitled to temporary and interlocutory injunctive relief, including the issuance of an order prohibiting the Receiver from commencing foreclosure proceedings on any security documents regarding the Purported Loans, including without limitation the Recorded Deed of Trust, until such time as this Court determines the amounts due by Holt Knob to Receiver, if any. Plaintiffs propose that no cash bond shall be required for issuance of the injunction requested herein and that the collateral under the Purported Loans constitutes sufficient security.

140.   If the Receiver is not enjoined from enforcing the security documents and/or filing suit or other foreclosure proceedings with respect to the Deed of Trust and other Purported Loans at this time, Plaintiff Holt Knob shall be irreparably injured in that such conduct will without limitation (i) cause Plaintiff Holt Knob to suffer undue financial burden by losing substantial assets to which it lawfully possesses and is entitled because the validity of the security documents of the Purported Loans are disputed by Plaintiff Holt Knob; and (ii) unduly prejudice Plaintiff Holt Knob by permitting the Receiver to collect on the fraudulent Purported Loans absent review and judicial determination by this Court of actual amounts due to First Liberty by Plaintiff Holt Knob, if any, injuries for which there exists no adequate remedy at law. Plaintiff Holt Knob is entitled to immediate injunctive relief to prevent further harm and to avoid such irreparable injury.

## COUNT SEVEN
## SETOFF AND RECOUPMENT

141.   Plaintiffs incorporate all forgoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

142.   To the extent that the Court finds that any Plaintiff is indebted to the Receivership Entities under the Purported Loans, such Plaintiff seeks to exercise the equitable right of setoff to deduct any debt such Plaintiff owes to First Liberty from the claims that such Plaintiff asserts herein.

38

143.   To the extent that the Court finds that any Plaintiff is indebted to the Receivership Entities under the Purported Loans, such Plaintiff seeks to exercise the equitable right of recoupment to deduct any debt such Plaintiff owes to First Liberty from the claims that such Plaintiff asserts herein. Such claims arise from the same transaction(s) as any debt owed by such Plaintiffs to First Liberty under the Purported Loans.

## COUNT EIGHT
## SLANDER OF TITLE

144.   Plaintiff Holt Knob incorporates all foregoing paragraphs of this Complaint as if the same were fully restated and set forth verbatim herein.

145.   The Deed of Trust purporting to encumber certain originally unidentified real property in North Carolina owned by Plaintiff Holt Knob is null and void, invalid, and unenforceable.

146.   There exists no such promissory note by which Holt Knob is indebted to First Liberty. Therefore, the Recorded Deed of Trust is null and void because no debt is secured thereby.

147.   The Recorded Deed of Trust purporting to encumber certain real property in North Carolina owned by Plaintiff Holt Knob is null and void, invalid, and unenforceable.

148.   Holt Knob has suffered damages as a result of First Liberty's recording of the Recorded Deed of Trust. Without limitation, Holt Knob had been in need of financing to obtain funds to continue construction of a residential unit on the North Carolina parcel but has been unable to obtain a construction loan as a result of the Recorded Deed of Trust and the Receiver's failure and refusal to provide a Lot Release as requested.

149.   The Receivership Entities have acted improperly and without privilege by purposely and maliciously taking the actions as set forth herein including but not limited to causing the filing of the Recorded Deed of Trust. Without limitation, the Receivership Entities have wrongfully and illegally recorded or caused to be recorded the Deed of Trust in derivation of Plaintiff Holt Knob's rights. Such actions falsely and maliciously impugn Holt Knob's rights in the North Carolina parcel. Such actions of the Receivership Entities constitute slander of title.

150.   Plaintiff Holt Knob is entitled to, and hereby requests, an award of compensatory damages of all principal, interest, fees, and charges claimed due of Holt Knob by the Receivership Entities, or alternatively in an amount to be proved at trial, based upon the Receivership Entities' slander of title.

151.    Plaintiff Holt Knob is entitled to an award of punitive damages against Defendant in the amount of $250,000.00 or other amount as determined at trial based upon the Receivership Entities' slander of title.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for and request the following relief:

A.    That this Court exercise its subject matter jurisdiction in this matter;

B.    That this Court exercise its jurisdiction over the parties herein;

C.    That Defendant be compelled, pursuant to Summons and judicial process, to appear and answer the allegations of this Complaint;

D.    That, pursuant to Count One herein, the Court enter a declaratory judgment in favor of Plaintiffs declaring that:

    i.    the Purported Loans between Plaintiffs and First Liberty are not true loans from a lender to a borrower because First Liberty and the other Receivership Entities constituted a Ponzi scheme and not a legitimate lender;

    ii.    to the extent that the Court finds that any Plaintiff is indebted to First Liberty under the Purported Loans, the Receiver is not entitled to collect interest and late fees under the Purported Loans,

iii.  to the extent that the Court finds that any Plaintiff is indebted to First Liberty under the Purported Loans, the Receiver is not entitled to collect on non-existent interest reserve(s) under the Purported Loans which were not funded by First Liberty,

iv.  to the extent that the Court finds that any Plaintiff is indebted to First Liberty under the Purported Loans, the Purported Loans are not in default without limitation because the Plaintiffs were not properly advised as to how, when, or where to make payment to the Receiver,

v.  to the extent that the Court finds that any Plaintiff is indebted to First Liberty under the Purported Loans, that such Plaintiff is only obligated to pay Receiver the amount of funds actually received from First Liberty less any payments made by such Plaintiff to First Liberty,

vi.  to the extent that the Court finds that any Plaintiff is indebted to First Liberty under the Purported Loans, each Plaintiff is not obligated for the indebtedness of the other Plaintiffs under the terms of the Purported Loans and any cross-collateralization between the Purported Loans is invalid, void, and unenforceable;

E.      That, pursuant to Count Two and Count Three herein, the Court enter judgment in favor of Plaintiffs and against Defendant for fraud in the amounts requested therein or such other amount as determined by the trier of fact at trial in this matter, including without limitation consequential and general damages, punitive damages, and attorney's fees;

F.      That, pursuant to Count Four herein, the Court enter judgment in favor of each Plaintiff and against Defendant for breach of contract damages and attorney's fees in the amount requested therein or such other amount as determined by the trier of fact at trial in this matter;

G.      That, pursuant to Count Five and Count Six herein, this Court enter a temporary, interlocutory, and permanent injunction against the Defendant: (i) prohibiting the Receiver from commencing foreclosure proceedings on any security documents regarding the Purported Loans until such time as this Court determines the amounts due from any Plaintiff to Receiver, if any; and (ii) entering declaratory judgment in favor of Holt Knob, prohibiting the Receiver from enforcing the Recorded Deed of Trust, and compelling the Receiver to record the cancellation of the same;

H.      That, pursuant to Count Seven herein, the Court enter judgment in favor of each Plaintiff, as appropriate, against Defendant for such Plaintiff's rights of setoff and recoupment;

I.      That, pursuant to Count Eight herein, the Court enter judgment in favor of Plaintiff Holt Knob and against Defendant in the amounts requested therein for compensatory damages and punitive damages; and

J.      That Plaintiffs have all other and further relief deemed appropriate by this Court.

                              **JONES & WALDEN LLC**

                              */s/ Leon S. Jones*
                              Leon S. Jones
                              Georgia Bar No. 003980
                              699 Piedmont Avenue NE
                              Atlanta, Georgia 30308
                              (404) 564-9300
                              LJones@joneswalden.com
                              *Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| **RIVERDAWG, LLC, NO FREE, LLC, AND HOLT KNOB HOLDINGS, LLC,** | **Civil Action File No.** |
| **Plaintiff,** | _____ |
| **v.** |  |
| **S. GREGORY HAYS, IN HIS CAPACITY AS RECEIVER FOR FIRST LIBERTY CAPITAL PARTNERS, LLC,** |  |
| **Defendant.** |  |

## <u>VERIFICATION OF COMPLAINT</u>

I, Dr. Jerry Williams, hereby affirm the following:

1.      My name is Dr. Jerry Williams. I am a member and an authorized representative of plaintiffs Riverdawg, LLC ("Riverdawg") which is a Georgia limited liability company, No Free, LLC ("No Free") which is a Georgia limited liability company, and Holt Knob Holdings, LLC ("Holt Knob") which is a North Carolina limited liability company. I am over 18 years of age. I am competent to give this verification and do so based upon my own personal, first-hand knowledge of the subject matter discussed herein.

2.      I submit this verification on behalf of Riverdawg, No Free, and Holt Knob.

3.    I have read the foregoing Verified Complaint. The information provided therein is true and correct to the best of my knowledge, except as to matters alleged on information and belief, and as to those matters, I believe them to be true.

I affirm as of this 11th day of March, 2026, under the penalties of perjury under the laws of Georgia, that the foregoing is true and correct to the best of my knowledge.

*/s/ Jerry Williams*
Dr. Jerry Williams, as Authorized
Representative of Riverdawg, LLC, No
Free, LLC, and Holt Knob Holdings, LLC