Exhibit "C"

# PROMISSORY NOTE

$700,000.00                                                            September 17, 2024

     **RIVERDAWG, LLC,** a Georgia limited liability company ("Borrower") whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and **FIRST LIBERTY CAPITAL PARTNERS, LLC,** a Georgia limited liability company (hereinafter, together with any subsequent holder hereof, sometimes called "**Lender**" or "**Holder**"), whose address is P. O. Box 2567, Newnan, GA 30264, agree as follows:

     A.    Borrower has requested that Lender make a loan in the original principal amount of **Seven Hundred Thousand Dollars ($700,000.00)** (the "**Loan**"), and Lender hereby agrees to make the Loan to Borrower upon the terms and conditions contained herein.

     B.    The principal amount of the Loan shall be allocated by Lender to an account established for Borrower, and Loan proceeds shall be disbursed from time to time on terms and conditions as established by Lender as to timing, amount and other conditions of disbursements.

     **THEREFORE, FOR VALUE RECEIVED,** Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of **Seven Hundred Thousand Dollars ($700,000.00)** together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. Said principal and interest shall accrue and be payable as follows:

     1.    <u>Interest</u>.    Interest shall accrue at the rate of sixteen percent (16%) per annum computed on the basis of a 360 day year. Interest shall be computed on the entire principal amount of the Loan from the date of the Loan, notwithstanding that a portion of the Loan proceeds may be held by Lender for future disbursement to or on behalf of Borrower.

     2.    <u>Payments</u>.

          a.    <u>Monthly Payments</u>.    Borrower shall make monthly payments of interest only on the outstanding principal balance with the first payment due at closing in the amount of $4,044.43. Thereafter, Borrower shall make monthly payments in the amount of $9,333.33 commencing on November 1, 2024, and continuing thereafter on the 1st day of each successive month until September 18, 2025 (the "**Maturity Date**"),   at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges and accruals due hereunder shall be due and payable for all purposes in full in a single **BALLOON PAYMENT.** All such payments shall be made at the office of Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.

          b.    <u>Minimum Interest</u>. Borrower may prepay this Loan at any time, provided however, that Borrower agrees to pay the full amount of all Interest that would have been due under this Loan, plus outstanding principal and any other unpaid charges and accruals hereunder, which shall be deposited as an Interest Reserve at closing and deducted from Loan proceeds. During and after the seventh month, prepayment shall require payment of outstanding principal plus accrued interest and any other unpaid charges and accruals due hereunder.

          c.    <u>Interest Reserve</u>. A six month evergreen interest reserve in the amount of $55,999.98 (the "**Evergreen Reserve**") and shall be held by Lender as additional security for Borrower's obligations under the Loan. Lender, in its sole discretion, may use the Evergreen Reserve to pay

1

<em>[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]</em>



Principal, Interest, fees, charges, or other accruals as provided for under this Loan, fund legal fees and costs, pay or satisfy any indemnity liability or obligating, or satisfy any other condition or even increasing the credit risk to the Borrower. If there is no Event of Default, any  unused portion of the Reserve Accounts established hereunder shall be applied to the amount due upon repayment of this Loan.

        d.     <u>Loan Extension</u>.  Borrower shall have the right to extend the Maturity Date of the Loan for an additional six (6) months upon notice to Lender prior to maturity and payment to Lender of an extension fee of 2.5% of the Loan principal amount, but only in the event the Loan has been paid as agreed to date.

        **3.**     **<u>Late Charge/Post Default Interest</u>**.     Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than three (3) days after the due date thereof, to cover the extra expense involved in handling delinquent payments.  These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to declare the entire unpaid principal and interest immediately due and payable.  Notwithstanding any provision to the contrary herein, from and after the maturity of this Loan (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of twenty-four percent (24.0%) (the "**Default Rate**").

        **4.**     **<u>Loan Documents and Collateral</u>**.

        (a)     <u>Grant of Security Interest</u>. Borrower hereby grants to Lender a continuing security interest in all of its right, title, and interest in, to, and under the collateral described below to secure the payment and performance of the obligations set forth in this Loan, and authorizes and approves the filing of security instruments, including – but not limited to -- UCC Financing Statements (the "**Security Interest**"). "*Collateral*" shall mean the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Lender is giving to Borrower a security interest for the payment of this Loan and performance of all other obligations under the Loan:

        All assets of Borrower, now owned or hereafter acquired, including, without limitations, all of Borrower's presently owned and hereafter acquired personal and fixture property wherever located, including, without limitation, all accounts, chattel paper, inventory, instruments, investment property, equipment, documents, deposit accounts, commercial tort claims, letters-of-credit rights, general intangibles including payment intangibles, patents, software, trademarks, tradenames, customer lists, supporting obligations, all proceeds and products of all the foregoing, including without limitation, insurance proceeds, lock box contents and proceeds.

        (b) <u>Security and Perfection</u>. The Parties acknowledge and agree that this will be secured and perfected by: (1) the Deed to Secure Debt granted in favor of Lender for the real property and improvements located at 7934 Hiawassee Wilderness Trials, Hiawassee, GA 30456, (2) the Unconditional Guarantees of Dr. Jerry Williams and Urgent Care 247 LLC, (3) the Evergreen Reserve, (4) the UCC-1 Financing Statement, and (5) all other transactional documents providing security to Lender for this Loan and all other obligations pursuant to the cross-collateral provisions set forth below (collectively, the "**Security Documents**" and together with this Loan and related transactional documents, the "**Loan Documents**").

        **5.**     **<u>Loan Oversight</u>**.  Borrower agrees that the principal purpose of the Loan is to purchase and expand an existing Urology Clinic.  Borrower shall provide Lender with monthly financials and

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



such information as Lender may request from time to time regarding application of loan proceeds and performance under the Loan documents.

6.    <u>Cross-Default and Cross-Collateralization.</u>

(a)    Lender or its affiliates has made or may make other loans to Borrower or its affiliates (as used herein the term *"affiliates"* shall include any and all entities related to Lender and Borrower by common ownership and/or control) evidenced by various notes, leases, and deeds to secure debt (a "deed" to secure debt as used herein to include mortgages, security agreements, fixture filings, pledges and other documents securing the Loan or other obligations). Any event of default or default as defined in this Loan, any, any note, any lease, any deed to secure debt or other obligation from Borrower or its affiliates to Lender or its affiliates shall be an event of default or default under this Loan and all of the notes, leases, or deeds to secure debt from Borrower or its affiliates to Lender or its affiliates.

(b)    Lender has made or may make other loans to Borrower evidenced by various notes, leases or deeds to secure debt. The real property and any other property described in said other deeds to secure debt is and shall be security for each and every other note, lease or other obligation executed by Borrower and its affiliates in favor of Lender and its affiliates, or any advance made thereunder, or any renewal or extension thereof. Further, the real property described herein is and shall be further security for each and every note, lease or other obligation executed by the Borrower and its affiliates in favor of the Lender and its affiliates. This paragraph shall apply notwithstanding the fact that the outstanding balance of any one or more of said loans exceeds the original face amount of the notes, leases or other obligations evidencing said debt.

(c)    Nothing contained within this section, shall in any way impair the rights of the Lender granted in any note, any lease, any deed to secure debt or other obligation. Further, each and every note, lease, deed to secure debt or other obligation executed between Lender and its affiliates to Borrower and its affiliates is and shall remain a separate obligation of Borrower, and each and every note, lease, deed to secure debt or other obligation is and shall be separately enforceable according to its terms until all outstanding indebtedness owing from Borrower and its affiliates to Lender and its affiliates has been paid in full. Further, Lender or its affiliates may, at its sole discretion, institute separate or collective proceedings with respect to each note, lease, deed to secure debt or other obligation simultaneously or in such order and at such times as Lender or its affiliates may elect. The pendency of any proceeding with respect to any  any note, any lease, any deeds to secure debt or other obligation shall not be grounds for abatement of or hindering, delaying or preventing any proceeding in respect to any other note, lease, deed to secure debt or other obligation. Event of default or default under each note, any lease, any deed to secure debt or other obligation shall constitute a separate cause of action.

7.    <u>Representations and Warranties.</u> Borrower makes the following representations and warranties, all of which shall survive the execution and delivery of this Loan. Unless otherwise specified, such representations and warranties shall be deemed made as of the date hereof.

(a)    <u>Valid Existence and Power.</u> Borrower is a legal entity, duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization and is duly qualified or licensed to transact business in all places where the failure to be so qualified would have a material adverse effect on the Borrower. Borrower has the power to make and perform its obligations under this Loan and Loan Documents, instruments or other documents executed by it in connection therewith or relating thereto including, but not limited to, the Security Documents, written resolution of the Borrower, and other documents contemplated thereby (such agreements, instruments and documents executed by Borrower and any other party in connection with this Loan or relating thereto, collectively, the "Transaction Documents" and each, a "Transaction Document") and all such Transaction Documents will constitute the legal, valid and binding obligations of the Borrower, enforceable in accordance with their

3

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



respective terms. Borrower has not changed the jurisdiction of its organization within the five (5) years preceding the date hereof.

(b)    Authority.  The execution, delivery and performance of this Loan, and any Transaction Documents, have been duly authorized by all necessary actions of the Borrower, and do not and will not violate any provision of law or regulation, or any writ, order or decree of any court or governmental or regulatory authority or agency or any provision of the governing instruments of Borrower, and do not and will not, with the passage of time or the giving of notice, result in a breach of, or constitute a default or require any consent under, or result in the creation of any lien or other encumbrance upon any property or assets of Borrower pursuant to, any law, regulation, instrument or agreement to which Borrower is a party, or by which Borrower or its properties may be subject, bound or affected.

(c)    Financial Condition.  The Borrower is Solvent, and after consummation of the transactions set forth in this Agreement and the other documents, Borrower will be Solvent. "Solvent" means that Borrower has cash flow and/or capital sufficient to carry on its business and transactions in which it is currently engaged and all business and transactions in which it is about to engage, is able to pay its debts as they mature, and has assets having a fair value greater than its liabilities, at fair valuation.

(d)    Authorizations.  All authorizations, consents, approvals and licenses required under applicable law or regulation for the ownership or operation of the property owned or operated by the Borrower, or for the conduct of any business in which it is engaged have been duly issued and are in full force and effect, and it is not in default, nor has any event occurred which with the passage of time or the giving of notice, or both, would constitute a default, under any of the terms or provisions of any part thereof, or under any order, decree, ruling, regulation, closing agreement or other decision or instrument of any governmental commission, bureau or other administrative agency or public regulatory body having jurisdiction over the Borrower, which default would have a material adverse effect on Borrower.  Except as noted herein, no approval, consent, or authorization of, or filing or registration with, any governmental commission, bureau or other regulatory authority or agency is required with respect to the execution, delivery or performance of any Transaction Document or this Loan.

(e)    Full Disclosure.  There is no material fact which is known, or which should be known by Borrower that Borrower not disclosed to Lender which could have a material adverse effect on Borrower.  No agreement, document, Transaction Document, certificate, or statement delivered by Borrower to Lender contains any untrue statement of a material fact or omits to state any material fact which is known, or which should be known by Borrower necessary to keep the other statements from being misleading.

(f)    Sophistication.  The Borrower is sophisticated in financial matters, the terms of this Loan were negotiated between sophisticated parties. Moreover, the Borrower represents and warrants that the funds received shall only be used for business and commercial purposes and not for personal, family, consumer or household purposes. Borrower acknowledges and agrees that this Loan does not constitute a consumer transaction, and as such, Borrower hereby releases, waives and forfeits any claim, cause of action or lawsuit on the basis that the transactions contemplated by this Loan constitute a consumer transaction under the law or statute of any jurisdiction, including – but not limited to – Georgia or the laws of the state in which the Borrower or any Collateral is located.

8.    **Affirmative Covenants.**

(a)    Prohibition on Additional Debts.  Borrower will not incur any additional debts without the prior written approval of the Lender.

(b)    Reporting and Access.  Before the tenth (10th) day of the following month, the Borrower agrees to provide to the Lender a monthly profit and loss, balance sheet and cash flow statements, accounts receivable aging report for the accounts, accounts payable aging reports, inventory

4

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



reports for finished goods, inventory reports for non-finished goods, bank statements and other financial information reasonably requested by Lender. Once completed, Borrower agrees to provide reviewed or audited annual and/or quarterly financial statements, if applicable, and income tax returns, payroll tax returns, and proof of payment of its tax liabilities to Internal Revenue Service or other state or local revenue agency, whether paid with the returns. Lender shall also provide unlimited online viewing access to Borrower's bank accounts and will not cutoff online access to Lender at any time.

(c)    Insurance. Borrower, at Borrower's sole expense, shall carry reasonable insurance in such coverages and amounts for the protection of credit exposure and its Collateral that the Borrower deems adequate. At a minimum, Lender shall carry a comprehensive commercial general liability insurance policy with minimum limits of at least $1,000,000.00 for bodily injury for each person and $2,000,000.00 per occurrence and property and casualty damage of $1,000,000.00 each occurrence. Any insurance policies shall name Lender as an additional insured, a loss payee, a certificate holder and/or a mortgagee, and a certification of insurance shall be provided to the Lender evidencing that Lender is an additional insured, a loss payee, a certificate holder and/or a mortgagee. The Borrower agrees that none of the insurance policies required under this Paragraph shall be cancelable without the insurance company giving notice to the Lender. If Borrower fails to acquire any insurance required by this Paragraph, Lender may, at its option, cause such insurance to be issued, and in such event, Borrower agrees to pay the premium for such insurance as a chargeable cost or through the any Evergreen Reserve.

(d)    Existence; Conduct of Business. Borrower will do or will cause to be done all things necessary to preserve, renew and maintain in full force and effect its legal existence and its respective rights, licenses, permits, privileges, franchises, patents, copyrights, trademarks, and trade names material to the conduct of its business and will continue to engage in the same business as presently conducted or such other businesses that are reasonably related thereto.

(e)    Compliance with Laws, Etc. Borrower will comply with all laws, rules, regulations and requirements of any governmental authority applicable to its business and properties, including without limitation, all laws, rules, regulations, codes, ordinances, orders, decrees, judgments, injunctions, notices or binding agreements issued, promulgated or entered into by or with any governmental authority, relating in any way to the environment, preservation or reclamation of natural resources, as well as the Employee Retirement Income Security Act of 1974 and the Occupational Safety and Health Act of 1970, both as amended from time to time and any respective successor statute thereof.

(f)    Taxes. Borrower will file all federal and state income and other tax returns which are required to be filed and will pay all taxes as shown on said returns and all taxes, including, without limitation, withholding, FICA and ad valorem taxes, shown on all assessments received by it to the extent that such taxes have become due. Except for as otherwise disclosed to Lender, Borrower is not subject to any federal, state or local tax Liens, nor has the Borrower received any notice of deficiency or other official notice to pay any taxes which have not been disclosed by the Borrower to Lender prior to entering into this Loan. Borrower shall pay all sales and excise taxes payable by it.

(g)    Further Assurances and Cooperation. Borrower shall take such further action and provide to Lender such further assurances as may be reasonably requested to ensure compliance with the intent of this Loan and any affiliated agreements. Borrower agrees to cooperate in executing any amendments to this Loan deemed necessary to confirm the intent of the Parties, including – but not limited to – correcting any clerical mistakes such as page numbers, typos, missing initials, etc., and Borrower agrees to execute and deliver such other and further instruments as may be necessary to implement fully the terms of this Loan. The Borrower further acknowledges and agrees that the presence of clerical mistakes in the Loan is not material and do not affect the enforceability of this Loan.

(h)    Additional Collateral. In the event that Lender believes, in its sole discretion, to be under-collateralized of insecure, Obligors, now existing or future acquired, shall immediately provide



and deliver to Lender additional collateral, and Obligors and/or the new debtors will execute all documentation necessary to obligate the new debtor and/or to perfect a security interest in the collateral.

9. <u>Negative Covenants</u>.

(a) <u>Indebtedness</u>. The Borrower will not create, incur, assume or suffer to exist any additional indebtedness (other than business credit card debt and trade payables, each in the ordinary course of business consistent with past practice), except the indebtedness created pursuant to this Loan.

(b) <u>Fundamental Changes</u>. The Borrower shall not merge, reorganize, consolidate, or amalgamate with any other person or entity without the prior written consent of the Lender.

(c) <u>Sale of Assets.</u> The Borrower will not convey, sell, lease, assign, transfer or otherwise dispose of any of its assets, business, or property, whether now owned or hereafter acquired, except (i) for the sale or other disposition for fair market value of obsolete or worn-out property or other property not necessary for operations disposed of in the ordinary course of business, and (ii) the sale of inventory in the ordinary course of business.

10. <u>Events of Default</u>. The principal sum evidenced by this Loan, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any Loan Document, each of which shall constitute an "Event of Default" hereunder, *provided however*, that Borrower shall have five (5) days following notice of a monetary default in which to cure, and thirty (30) days following notice of a non-monetary in which to cure. Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Loan:   (a) failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Loan hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Loan when due or failure of Borrower to perform or observe any promise or agreement contained in this Loan; (b) the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; (c) the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; (d) the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; (e) the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; (f) entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; (g) the inability of any Obligor to pay debts as they become due or admit in writing to such effect; (h) the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; (i) if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; (j) if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; (k) the suspension of the operation of any Obligor's present business; (l) the occurrence of any default or event authorizing acceleration as provided under any Loan Documents or any other agreement by and between the Lender, Obligors, any affiliated entities of the Obligors or any third party; (m) any statement, representation or warranty of any Obligor made orally or in writing in any document evidencing, securing or otherwise relating to the indebtedness evidenced by this Loan or in any

6

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; (n) revocation or termination of any guaranty executed in favor of Lender guaranteeing the indebtedness evidenced by this Loan; (o) the financial responsibility of any Obligor becomes impaired at any time in the sole opinion of Lender;(p) the determination by Lender that it otherwise deems itself to be insecure; (q) all or any portion of this Loan or Loan Documents shall at any time and for any reason be declared to be null and void, or a proceeding shall be commenced by Borrower, or by any governmental authority having jurisdiction over Borrower, seeking to establish the invalidity or unenforceability thereof (exclusive of questions of interpretation of any provision thereof), or the Borrower shall deny that it has any liability or obligations for the payment of any obligation purported to be created under this Loan or any of the Loan Documents; or (r) any representation or warranty made or deemed made by or on behalf of the Borrower in or in connection with this Loan, Loan Documents or any other document executed in connection therewith and any amendments or modifications hereof or waivers hereunder, or in any certificate, report, financial statement or other document submitted to the Lender by the Borrower, or any representative of the Borrower pursuant to or in connection with this Loan or any other Loan Documents executed in connection herewith shall prove to be incorrect in any material respect when made or deemed made or submitted.

11.    <u>Remedies.</u>

(a)    <u>Acceleration; Costs</u>. Upon the occurrence and during the continuation of any Event of Default, Lender may at its option without notice or demand of any kind declare this Loan immediately due and payable for the entire unpaid principal hereof plus accrued interest hereon. Borrower agrees to pay Lender all costs of collection of this Loan incurred by Lender, including but not limited to legal expenses and reasonable attorney's fees, paid or incurred by Lender on account of such collection, whether or not suit is filed with respect thereto and whether such cost or expense is paid or incurred, or to be paid or incurred, prior to or after entry of judgment.

(b)    <u>Cross-Collateralization Remedy</u>. Upon the occurrence of an Event of Default or default under this Loan or any affiliated agreements, such event of default shall be deemed an event of default under any and all agreements between the Parties, and Lender or its affiliates, in their sole discretion, shall be entitled to assert any and all rights and remedies against the Obligors, and collect against any collateral, property or guarantee as provided for under any agreement as set forth in <u>Paragraph 6</u>, above.

(c)    <u>Entry onto Real Property</u>. Lender is authorized to enter onto the real property or leased premises of the Borrower to take control of the Collateral or other property secured by the Loan Documents.

(d)    <u>ACH</u>. Borrower authorized Lender to initiate electronic debit or credit entries through the ACH system to any deposit account of Borrower, and the Borrower agrees to be bound by the ACH rules set forth by the National Automated Clearing House Association.

(e)    <u>Notice to Account Debtors</u>. Lender may affix Borrower's signature and send notices of assignment under Section 9-406 of the UCC to all the account debtors of Borrower, and the Borrower agrees and acknowledges that all such notices of assignment are authenticated and approved. Lender may take and endorse for deposit in the name of Borrower all payments received for any of Borrower's accounts and to deposit same for benefit of Lender.

(f)    <u>Receivership</u>. Lender may, in its sole discretion, seek place the Borrower into receivership, or other applicable state or federal law process, and request a court to appoint a receiver or trustee over the Borrower, and Borrower will not contest and consent to the appointment thereof.

(g)    <u>No Waiver</u>. No remedy conferred hereunder is intended to be exclusive of any other remedy and each and every such remedy shall be cumulative and shall be in addition to every other

7

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



remedy given hereunder or hereafter existing at law or in equity or by statute or otherwise. No course of dealing between Borrower and Lender or any delay or omission on the part of Lender in exercising its rights hereunder shall operate as a waiver of any rights of such holder, nor shall any waiver by Lender of any such right or rights on any one occasion be deemed a bar to, or waiver of, the same right or rights on any future occasion.

(h)     Borrower's Waivers. Borrower hereby (i) waives demand, presentment for payment, notice of nonpayment, protest, notice of protest and all other notice, filing of suit, and diligence in collection of this Loan; (ii) agrees to any substitution, addition or release of any party or person primarily or secondarily liable hereon; (iii) agrees that Lender shall not be required first to institute any suit, or to exhaust its remedies against Borrower or any other person or party to become liable hereunder, or against any collateral in order to enforce payment of this Loan; (iv) consents to any extension, rearrangement, renewal, or postponement of time of payment of this Loan and to any other indulgence with respect hereto without notice, consent, or consideration to any of them; (v) agrees that, notwithstanding the occurrence of any of the foregoing (except with the express written release by Payee or any such person), Borrower shall be and shall remain directly and primarily liable for all sums due under this Loan; and (vi) waives all statutory appraisal rights.

12.     ACH Provision. In order to recoup any unpaid Interest or any obligations owing under this Loan upon an Event of Default, Borrower authorizes Lender to initiate electronic debit or credit entries through the ACH system to any deposit account of Borrower, and Borrower agrees to execute any ACH forms required by any financial institution in order to effectuate an ACH. The Borrower agrees to be bound by the ACH rules set forth by the National Automated Clearing House Association (the "NACHA").

13.     Notices. Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Loan shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth in the beginning of this Loan or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

14.     Acceleration. Time is of the essence in the performance of all obligations under this Loan. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Loan to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

15.     Costs of Collection. Borrower agrees that if, and as often as, this Loan is given to an attorney for collection or to defend or enforce any of Lender's arising from or relating to this Loan, Borrower will pay to Lender attorney's fees in the amount of 15% of the principal balance due, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

16.     Maximum Legal Rate Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Loan shall, at any time,

*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*



be in excess of the maximum rate of interest permissible by law. In the event such payments of interest or other consideration provided for in this Loan shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment, without premium. This provision shall control every other obligation of the Borrower and Lender under this Loan.

17.  **Miscellaneous.**

(a)  With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Lender and Borrower shall be adverse parties. Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to attorney's fees.

(b)  The obligations and liabilities of Borrower under this Loan are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower: (1) any assignment or transfer this Loan or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Loan or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Loan or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Lender or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Loan or other agreement.

(c)  The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d)  Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Lender under the terms of this Loan and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments. Any provision of this Loan which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

(e)  The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

9



(f)    Borrower warrants and agrees that the proceeds of this Loan will be used for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

(g)    Borrower and Lender intend and believe that each provision in this Loan comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Loan is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Loan to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Loan shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Loan shall continue in full force and effect.

18.    <u>Governing Law</u>. This Loan, and any dispute related to or arising from this Loan, shall be governed by and construed in accordance with the laws of the State of Georgia. Borrower acknowledges that the negotiation of the provisions of this Loan and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give Borrower, nor shall any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Loan or said Loan Documents to become effective and valid and binding obligations of the Borrower. Borrower acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Borrower acknowledges further that the negotiation, execution, and delivery of this Loan and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Borrower hereby submits itself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with the Loan or any of the Loan Documents. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a waiver by Lender of any of the foregoing.

19.    <u>Waiver of Jury Trial</u>. TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING TO OR RELATING TO THIS LOAN OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS LOAN OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS LOAN OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING,

10

*[RiverDawg LLC & First Liberty Capital Partners LLC -- Promissory Note]*



VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

20.    **Venue.** Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Loan or any agreements or transactions contemplated hereby may be brought in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

21.    **Assignment.** Borrower may not assign any of its rights under this Loan without the prior written consent of the Lender, any such purported assignment without such consent being null and void. Lender shall be permitted to assign any of its rights under this Loan to a third party without providing notice to Borrower or Borrower's written consent.

22.    **Amendment.** This Loan contains the entire agreement of the Parties and supersedes, replaces and extinguishes any prior agreements between the Parties. This Loan may not be modified except by a written agreement executed by Lender and Borrower.

23.    **Severability.** If, in any action before any court or agency legally empowered to enforce any provision contained herein, any provision hereof is found to be unenforceable, then such provision shall be deemed modified to the extent necessary to make it enforceable by such court or agency. If any such provision is not enforceable as set forth in the preceding sentence, the unenforceability of such provision shall not affect the other provisions of this Loan, and this Loan shall be construed as if such unenforceable provision had never been contained herein.

24.    **Electronic Signatures.** The Parties agree that the use of any electronic signatures is the legally binding equivalent of a handwritten signature and has the same validity and binding effect of a handwritten signature. The Borrower further agrees that it will not, at any time, repudiate the validity of this Loan or argue that its electronic signature is not legally binding. Borrower will also not object to the admissibility of this Loan in the form of an electronic record, the admissibility of a paper copy of an electronic version of the Loan, or a paper copy of the Loan bearing an electronic signature on the grounds that it is an electronic record or has an electronic signature that is not an original or not in its original form.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]
[SIGNATURE PAGE TO FOLLOW]



**IN WITNESS WHEREOF,** Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

BORROWER

RIVERDAWG LLC,
a Georgia limited liability company

By: _____ (Seal)
Name: Dr. Jerry K. Williams
Title: Manager

STATE OF Georgia _____ )
                                  )   ACKNOWLEDGEMENT
COUNTY OF Towns _____ )

    I, as a notary public for the state of Georgia _____, do hereby certify that Dr. Jerry Williams, in his capacity as Manager of RiverDawg LLC, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

    Witness my hand and official seal this 17th day of September, 2024.

Notary Public for Towns Co. GA
My commission expires: 7·20·2026

12
*[RiverDawg LLC & First Liberty Capital Partners LLC – Promissory Note]*

Tax Parcel No. 0064- 011 ; 0064 -012 ; 0064 - 010

Upon recording, please return to:

Spencer Gandy, Esq.
Spencer Gandy LLC
3865 Wieuca Terrace NE
Atlanta, Georgia 30342

Towns County, Georgia
Clerk's Office Superior Court
File for Record ___9- 18___
20 _24_, at ___2:40___ _P_ M
Recorded ___9- 18___ 20 _24_
In Book No. _734_ Page _460_
Cecil Dye, Clerk      _469_

## DEED TO SECURE DEBT,
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

This Deed to Secure Debt is exempt from intangible tax upon filing as the loan secured hereby has a maturity of less than three years as provided in OCGA Sections 48-6-60 et. seq.

THIS DEED TO SECURE DEBT, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (hereinafter referred to as this "Deed") made this 17ᵗʰ day of September, 2024, by and between **RIVERDAWG, LLC** a Georgia limited liability company ("Grantor"), whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and First Liberty Capital Partners LLC ("Grantee"), whose address is P. O. Box 2567, Newnan, GA 30264.

### WITNESSETH:

THAT, WHEREAS, Grantor is justly indebted to Grantee in the sum of **Seven Hundred Thousand Dollars** ($700,000.00) in lawful money of the United States, and has agreed to pay the same, with interest thereon, according to the terms of a certain modification to promissory note (hereinafter referred to as the "Note") given by Grantor to Grantee, bearing even date herewith, with final payment being due on September 28, 2025;

NOW, THEREFORE, in consideration of the premises and of the sum hereinabove set forth and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee and the successors, successors-in-title and assigns of Grantee the following property (the "Property"), to-wit:

That real property described in Exhibit "A" attached hereto and by this reference incorporated herein;

TOGETHER WITH all and singular, the improvements, fixtures, easements, hereditaments, rights, members and appurtenances thereunto belonging or in anywise appertaining, including, without limitation: the buildings and improvements now or hereafter erected thereon, and the fixtures, attachments, appliances, equipment, machinery, furnishings and other articles affixed or attached to said buildings and improvements or used or intended to be used with or in connection with the use, operation or enjoyment of the Property, including, without limitation, all building materials, electrical, plumbing, heating and air conditioning systems (including window units), all built-in appliances, cabinets and lighting fixtures, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of, any of the foregoing (all of the foregoing is hereinafter collectively referred to as the "Improvements and Personal Property"); and all minerals, shrubs, trees or other emblements now or hereafter on said Property or under or above the same or any part or parcel thereof, and all leasehold estates, usufructuary interests, and rights of Grantor in the Property, and all rights of Grantor as lessor or landlord under any lease or sublease letting or demising all or any portion of the Property or the Improvements

-1-



and Personal Property, including, without limitation, the interest of Grantor in all rents and security deposits paid or to be paid thereunder; and all easements, and appurtenances thereunto belonging or in any ways appertaining, and the reversion or reversions, remainder and remainders, rents, issues, and profits thereof and also all the estate, right, title, interest, claim, and demand whatsoever of Grantor of, in, and to the same and of, in, and to every part and parcel thereof; and all right of claim of Grantor with respect to the proceeds of insurance which Grantor now has or may hereafter acquire in the Property and the Improvements and Personal Property and any and all awards made for the taking by eminent domain, by any proceeding or purchase in lieu thereof, of the whole or any part of the Property and the Improvements and Personal Property; and if this is a construction mortgage all right, title and interest of Grantor in and to all construction materials, equipment, supplies and contracts.

TO HAVE AND TO HOLD all of the Property, the Improvements and Personal Property, property rights, leases, contract rights, claims and other items set forth in the preceding paragraph (all of which are collectively referred to as the "Premises") to the use, benefit and behoof of Grantee, forever, in fee simple.

Grantor warrants that Grantor has good title to the Premises and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be herein expressly provided; and the Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

This instrument is a deed passing legal title to the Premises pursuant to the laws of the State of Georgia governing loan or security deeds and security agreements and is not a mortgage, as "mortgage" is defined for the purpose of the real property law of the State of Georgia, but does constitute a "construction mortgage" as defined in Section 11-9-313(1)(c) of the Official Code of Georgia if so indicated hereinabove, and is made and intended to secure (i) the payment of the indebtedness evidenced by the Note and any modifications, extensions, renewals or consolidations thereof and substitutions therefor, either in whole or in part; (ii) any and all additional advances made by Grantee to protect or preserve the Premises or the security interest created hereby on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Premises at the time of such advance); (iii) the performance of all obligations of Grantor under this Deed; (iv) the performance of all obligations of Grantor under any loan agreement (including, without limitation, any construction loan agreement), guaranty and other agreements, documents or instruments evidencing, securing or otherwise relating to the indebtedness evidenced or guarantied by the Note (the Note, this Deed, and any and all other such loan agreements, guarantees, agreements, documents and instruments are hereinafter collectively referred to as the "Loan Documents"); and (v) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due to become due, and all renewals, modifications, consolidations and extensions thereof and substitutions therefor, either in whole or in part. All of the foregoing secured hereby are collectively described herein as the "Secured Indebtedness."

AND GRANTOR FURTHER COVENANTS AND AGREES WITH GRANTEE as follows:

1.    Payment of Secured Indebtedness. Grantor shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note, the Loan Documents and this Deed provided.

2.    Grantor Warrants. Grantor warrants that Grantor is lawfully seized of the indefeasible estate in fee simple mortgaged by this Loan Documents and has the right to grant, bargain, convey, sell, and mortgage the Premises. Grantor also warrants that the Premises is unencumbered, except for encumbrances of record, and that Grantor will not encumber the Premises with any other mortgage, deed of trust, security agreement, or other lien document that creates a security interest in or encumbrance on the Premises. Grantor shall not sell, convey, transfer, mortgage, pledge, lien, charge, lease, or further encumber any interest in or any part of the Premises without the prior written consent of Grantee in its sole discretion. If any person should obtain any interest in all or any part of the Premises pursuant to the execution or enforcement of any lien, security interest, or other right, whether superior, equal, or subordinate to this Deed to Secure Debt or the lien hereof, such event shall be deemed to be a transfer by Grantor. Grantor shall not, without the prior written consent of Grantee in its sole discretion further assign the rents from the Premises, nor enter into any agreement to do any act to amend, modify, extend, terminate, or cancel, accept the surrender, subordinate, accelerate the payment of rent, or change the terms of any renewal option of any lease now or hereafter covering the Premises or any part thereof.

Grantor shall pay, when due and payable, all taxes, assessments, general or special, liens, encumbrances, lease payments, ground rents, utilities, and other charges levied on, or assess, placed, or made against the Premises, this instrument, or the Secured Indebtedness, or any interest of the Grantee in the Premises or the obligations secured hereby; Grantor shall promptly deliver to Grantee receipts showing payment in full of all of the above items. Grantor will defend title to the Premises against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Grantee, as requested by Grantee, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Premises.



-2-

In the event of the passage, after the date of this instrument, of any law or ordinance of the United States, this State, or any political subdivision thereof, wherein the Premises are situated, providing for any tax, assessment, or charge against the interest of the Grantee in the Premises or the obligations secured hereby, which is to be paid by Grantee, shall be the obligation of the Grantor and shall become immediately due and payable and, in the event payment thereof is not made forthwith by the Grantor, Grantee may take, or cause to be taken, such action as is provided for herein in the case of any other default in the payment of the indebtedness.

3.    Payment of Other Items.  Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special and other charges levied on, or assessed, placed or made against the Premises, this Deed or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 5 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for mortgage insurance, if this Deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor.  Grantor shall pay to Grantee, together with and in addition to the payments of principal and interest payable under the Loan Documents, on the installment-paying dates thereof, until the Secured Indebtedness is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds on hand to pay taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the date on which they become past due.  In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided.  Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unused credit therefor as and when they become severally due and payable.  An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges.  Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges.  The excess amount advanced shall be immediately due and payable to Grantee and bear interest at the rate of 12.50% per annum from date of advancement.  Grantee may apply credits held by it for the above charges, on account of any delinquent installments of principal or interest or any other payments maturing or due under this Deed, and the amount of credit existing at any time shall be reduced by the amount so paid or applied.  The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the provisions hereof, provided that nothing contained in this paragraph shall be deemed to authorize or to constitute Grantee's consent to the transfer of the Premises or any portion thereof or any interest therein, including a security interest.  Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

4.    Cross-Collateralization.  This Deed to Secure Debt shall secure all obligations, debts and liabilities, plus interest and other accruals thereon, of Grantor or its affiliated entities (the "Grantor's Affiliates") and Payee or its affiliated entities (the "Grantee's Affiliates").  Such agreements and obligations shall be referred to as "Affiliated Agreements." The cross collateralization provided for herein secures all claims by Grantee and Grantee's Affiliates against Grantor and Grantor's Affiliates, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor or Grantor's Affiliates may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligations to repay such amounts may be or hereafter may become otherwise unenforceable. This section is specifically intended by the Parties to be a cross-collateralization provision so the collection rights, collateral and other property set forth in one agreement secures the debts and obligations of all the other agreements, and vice-versa.

Grantee shall have the right, in its sole discretion, to determine the order in which Grantee's rights in or remedies against the Note and any other related obligation documents and the collateral securing the same are to be exercised, which types of the collateral or which portions of the collateral are to be proceeded against and the order of application for proceeds of the collateral and against particular Note(s), loans or other obligations of Grantor to Grantee.  Any collateral surplus due to liquidation hereunder can be applied to any and all loans and/or obligations of a Grantor in the order determined by Grantee in its sole discretion.  For purposes hereon, Grantor agrees and acknowledges that a default under any Note made by Grantee in favor of a Grantor shall constitute a default under any other Note made by the Grantee in favor of the Grantor.



-3-

5.     Insurance. (a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke, and such other hazards (so-called "All Risk Coverage"), including flood, as Grantee may from time to time require, all in amounts approved by Grantee not to be less than 100% of the full replacement cost. Grantor shall also maintain (1) comprehensive public liability insurance, to include workmen's compensation insurance, covering all liabilities incident to the construction, ownership, possession and operation of the Premises, and naming Grantee as an additional insured thereunder, in an amount acceptable to Grantee; (2) rent insurance against loss of income arising out of any hazard against which the Premises are required to be insured under subparagraph (a) above in an amount not less than one (1) year's gross rental income from the Premises; and (3) such other insurance on the Premises or any replacements or substitutions therefor and in such amounts as may from time to time be reasonably required by Grantee against other insurable casualties which at the time are commonly insured against in the case of properties of similar character and location, due regard being given to the height and type of the improvements, their construction, location, use and occupancy, or any replacements or substitutions therefor including, without limitation, boiler insurance and flood hazard insurance, if applicable. All such insurance shall be written in form and by companies approved by Grantee; and regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insurance against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. Grantor shall immediately notify Grantee of cancellation or termination of the insurance. Grantee shall have the right to hold the policies and renewals. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor.

(b)     Not less than 30 days prior to the expiration date of each policy of insurance required of Grantor hereunder, and of each policy of insurance held as additional collateral to secure the Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

(c)     In the event of a foreclosure of this Deed, the purchaser of the Premises shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to the Premises.

6.     Maintenance and Inspection. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Premises, now or hereafter encumbered by this Deed, which may be affected by a proceeding of the character referred to in Article 7 herein. No part of the Premises now or hereafter conveyed as security by or pursuant to this Deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in or consent to any change in the private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times.

7.     Leases and Assignment of Rents. Grantor shall faithfully perform the covenants of Grantor as lessor under any present and future leases, affecting all or any portion of the Premises, and neither do nor neglect to do, nor permit to be done, anything which may cause the termination of said leases, or any of them, or which may diminish or impair their value, or the rents provided for therein, or the interest of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee thereto, shall not (a) assign the rents, or any part thereof, from the Premises, (b) consent to the cancellation or surrender of any lease of the Premises, or any part thereof, now existing or hereafter to be made, (c) modify any such lease so as to shorten the unexpired term thereof, or so as to decrease the amount of the rent payable thereunder, or (d) collect rents from the Premises for more than one month in advance. Grantor shall procure and deliver to Grantee at the time of executing this Deed, or at any time within thirty (30) days after notice and demand, estoppel letters or certificates from each lessee, tenant or occupant in possession of the Premises, as required by, and in form and substance satisfactory to, Grantee and deliver to Grantee a recorded assignment of all of the lessor's interest in said leases, in form and substance satisfactory to Grantee (in addition to the conveyance hereunder), and proof of due service of copy of said assignment on each lessee, either personally or by prepaid registered mail, return receipt requested.

Grantor hereby absolutely assigns and transfers to Grantee all the rents, issues and profits of the Premises, and hereby gives to and confers upon Grantee the right, power and authority to collect such rents, issues and profits. Grantor irrevocably appoints Grantee its true and lawful attorney-in-fact, at the option of Grantee at any time and from time to time, to demand, receive and enforce payment, to give receipts,



releases and satisfactions, and to sue, in the name of Grantor or Grantee, for all such rents, issues and profits and apply the same to the Secured Indebtedness.

Notwithstanding anything contained herein to the contrary, this assignment is intended and shall be construed to create, an absolute, present assignment from Grantor to Grantee. Grantor agrees that this assignment is immediately effective between the parties to this Loan Documents and effective as to third parties on the recording of this Deed. The rents, issues and profits of the Premises are hereby assigned absolutely by Grantor to Grantee. It is the further intent of Grantee and Grantor that the rents, issues and profits absolutely assigned are no longer, during the term of this Deed, property of Grantor or property of the estate of Grantor as defined in 11 U.S.C. § 541 and shall not constitute collateral, cash or otherwise, of Grantor.

Although this assignment constitutes a present and current assignment of all rents, issues and profits of the Premises, so long as Grantor is not in default hereunder, Grantee shall not demand that such rents, issues and profits be paid directly to Grantee, and Grantor shall have a revocable license to collect, but no more than one (1) month prior to accrual, all such rents, issues and profits from the Premises; provided that such revocable license shall *ipso facto* terminate without further action by Grantee and without notice to Grantor upon the occurrence of a Default.

Upon acceleration under Section 2 hereof or abandonment of the Premises, Grantee in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Premises and to collect the rents of the Premises, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Premises and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed. The receiver shall be liable to account only for those rents actually received.

The foregoing rights may be exercised by the Grantee as a matter of right, without consideration of the value of the Premises conveyed as security for the amount due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

8.    Additional Documentation. Grantor shall execute and deliver and pay the costs of preparation and recording thereof to Grantee and to any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements, assignments, and renewal and subscription notes and guaranties, so as to reaffirm, to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this Deed and extensions or modifications thereof. Grantor, upon request, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this Deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within 6 days in case the request is made personally, or within 10 days after the mailing of such request in case the request is made by mail.

9.    Condemnation. In the event all or any part of the Premises is taken by eminent domain by any public or quasi-public authority or corporation, or in the event all or any portion of the Premises is purchased from Grantor under threat of such taking, then all of the award of payment arising from said taking or purchase shall be paid to Grantee. Grantor authorizes Grantee to intervene in Grantor's name in any of the above described actions or claims. Grantee shall have the right to retain said award or payment toward payment of the Secured Indebtedness, or to pay over said amount, in whole or in part, to Grantor, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this Deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this Deed shall have been sought or recovered or denied, and of attorneys' fees in the sum of 15% of the aggregate amount due hereunder, and all costs and disbursements incurred by Grantee in connection with the collection of such award of payment.

10.    Financial Statements. Grantor shall deliver to Grantee, at any time within 30 days after notice and demand by Grantee, (i) a statement in such reasonable detail as Grantee may request, certified by the Grantor or an executive officer of a corporate Grantor, of the leases relating to the Premises, and (ii) a statement in such reasonable detail as Grantee may request certified by a certified public accountant or, at the option of Grantee, by Grantor or an executive officer or treasurer of a corporate Grantor, of the income from and expenses of any one or more of the following: (a) the conduct of any business on the Premises, (b) the operation of the Premises, or (c) the leasing of the Premises or any part thereof, for the last 12 month period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases and convenient facilities for the audit and verification of any such statement. Grantor and any Guarantor of the Secured Indebtedness shall deliver to Grantee financial reports and statements in form and substance acceptable to Grantee within 90 days following fiscal year end and within 30 days of request(s) made by Grantee from time to time.

11.    Security Agreement. Grantor hereby grants to Grantee a security interest in the Improvements and Personal Property, including without limitation any and all property of similar type or kind hereafter located on or at the Property, for the purpose of securing the Secured



Indebtedness. Grantor warrants, represents and covenants that the Improvements and Personal Property are not used or bought for personal family or household purposes. Notwithstanding anything contained herein to the contrary, all covenants and obligations of Grantor contained herein relating to the Premises shall be deemed to apply to the Improvements and Personal Property. This Deed constitutes a Security Agreement as that term is used in the Uniform Commercial Code of Georgia.

12.    Default. Upon the occurrence of any one of the following events (herein called an "Event of Default" or "Default"):

(i)      should Grantor fail to pay the Secured Indebtedness, or any part thereof, when and as the same shall become due and payable;

(ii)     should any representation or warranty of Grantor (Grantor and each person primarily or secondarily liable to Grantee for the Secured Indebtedness hereinafter referred to as an "Obligor") herein contained, or contained in any instrument given by any Obligor to Grantee with respect to the Secured Indebtedness or the Premises, prove untrue, incomplete or misleading in any material aspect;

(iii)    should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises is reduced or diminished in any manner whatsoever;

(iv)    should any federal tax lien, execution, or claim of lien for labor or material be filed of record against any Obligor or the Premises and not be removed by payment or bond within 30 days from date of recording;

(v)     should any claim of priority superior to this Deed by title, lien or otherwise be asserted in any legal or equitable proceeding;

(vi)    should any Obligor become insolvent or should any Obligor make any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of any Obligor or of any of any Obligor's property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of any Obligor, pursuant to the Federal Bankruptcy Act or any similar statute, be filed, or should any proceeding be instituted against or on behalf of any Obligor alleging that any Obligor is insolvent or unable to pay such Obligor's debts as they become due, or should any Obligor be adjudicated a bankrupt or insolvent, or should any Obligor, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire;

(vii)   should any Obligor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this Deed, or in the Note, or in any other Loan Document;

(viii)  should any event occur under any instrument, deed or agreement, given or made by any Obligor to or with Grantee or any third party, which would authorize the acceleration of any debt owed by such Obligor to Grantee or to any such third party;

(ix)    should Grantor sell or transfer the Premises or any portion thereof or any interest therein, including a security interest, without Grantee's prior written consent;

(x)     if any Obligor is a corporation, partnership or other artificial entity, if there is any encumbrance, pledge, conveyance, transfer or assignment of any legal or beneficial interest whatsoever in such Obligor; or

(xi)    if the financial responsibility of any Obligor becomes impaired in the sole opinion of Grantee or if Grantee otherwise deems itself to be insecure;

then and thereupon:

(i)      Grantee may take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and give notice to any lessees or tenants under any existing leases affecting the Premises to make all future payments directly to Grantee or its order and to attorn to Grantee or its order as lessor or landlord, and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all reasonable charges and expenses, on account of the Secured Indebtedness.

(ii)     Grantee may pay any sums in any form or any manner deemed expedient by Grantee to protect the security of this instrument or to cure any Event of Default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in



the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of 12.5 % per annum, shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this Deed;

(iii)      Grantee may, at its option, declare the entire Secured Indebtedness immediately due, payable and collectible, without notice to Grantor, regardless of maturity, and thereupon, Grantee may sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, in order to pay the Secured Indebtedness, and all expenses of sale and of all proceedings in connection therewith, including 15% of the aggregate amount due as attorneys' fees, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which sheriff's advertisements are published in said county, all other notice being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the Default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns, agent or attorney-in-fact to make such recitals, sale and conveyance, and all of the acts of such attorney-in-fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns (and in the event of a deed in lieu of foreclosure, then as to such conveyance), shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors in interest, in and to said Premises; and in the event of such a foreclosure sale, the proceeds of such sale shall be applied, in whatever order Grantee in its sole discretion may decide, to the outstanding principal amount of the Note, and interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums and other charges, with interest at the rate of 12.5% per annum thereon from date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and 15% of the aggregate amount due, as attorneys' fees, and Grantee will pay over any surplus to Grantor (in the event of deficiency Grantor shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency); and Grantor agrees that possession of the Premises during the existence of the Secured Indebtedness by Grantor, or any person claiming under Grantor, shall be that of tenant under Grantee, or its assigns, and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily disposed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity; and

(iv)      Grantee may exercise any and all of the remedies available to a secured party under the Georgia Uniform Commercial Code.

Grantee, in any action to foreclose this Deed, or upon any Event of Default, may apply for the appointment of a receiver of the rents, profits and other income of the Premises without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under this Deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, the Premises or any part thereof, may be sold in one parcel and as entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless and until the entire Premises are sold or the Secured Indebtedness is paid in full.

13.      Waiver of Homestead; Time of the Essence.  Grantor, for himself and family, hereby waives and renounces all homestead and exemption rights provided for by the Constitution and Laws of the United States or the State of Georgia, in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof: and Grantor agrees that where, by the terms of this Deed, the Note, or any of the Loan Documents, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

14.      Grantee's Right to Sue.  Grantee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this Deed or any of the Loan Documents, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against Grantor, including an action of foreclosure, or any other action, for a Default or Defaults by Grantor existing at the time such earlier action was commenced.



-7-

15.     Rights Cumulative.  The rights of Grantee, granted and arising under the clauses and covenants contained in this Deed, the Note, and the other Loan Documents shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others, and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law.  No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note or any of the Loan Documents to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

16.     Notice.  Any and all notices, elections or demands permitted or required to be given under this Deed shall be in writing, signed by or on behalf of the party giving such notice, election or demand, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, or upon being deposited with an overnight commercial delivery service requiring proof of delivery, to the other party at the address of such other party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof.  Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt.  Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt.  Any such notice, election, demand, request or response, if given to Grantee, shall be addressed as follows:

        First Liberty Capital Partners LLC
        P. O. Box 2567
        Newnan, GA 30264

and if given to Grantor shall be addressed as follows:

        RIVERDAWG, LLC
        1004 Memorial Lane
        Suite 200
        Savannah, GA 31410

17.     No Waiver.  Any indulgence or departure at any time by the Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by the Grantor.

18.     Definitions.  The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes or guaranties and the grammatical construction of sentences shall conform thereto.  If more than one party shall execute this Deed, the term "Grantor" shall mean all parties signing, and each of them, all of whom shall be jointly and severally liable hereunder, and each agreement, obligation and Secured Indebtedness of Grantor shall be and mean the several as well as joint undertaking of each of them.

19.     Severability.  The parties agree that the provisions of this Deed are severable, and in the event any clause, phrase, sentence or paragraph shall be declared by a court of competent jurisdiction to be invalid or unenforceable, then the parties declare that the remaining clauses, phrases, sentences and paragraphs of this Deed shall remain in full force and effect.

20.     Waiver of Grantor's Rights.  BY EXECUTING THIS INSTRUMENT GRANTOR EXPRESSLY ACKNOWLEDGES THAT UPON GRANTOR'S DEFAULT HEREUNDER, GRANTEE IS GIVEN THE RIGHT TO ACCELERATE THE DEBT SECURED HEREBY AND TO SELL THE PROPERTY CONVEYED HEREBY AT PUBLIC AUCTION PURSUANT TO THE POWER OF SALE CONTAINED HEREIN, AND GRANTOR HEREBY EXPRESSLY WAIVES ANY RIGHTS TO NOTICE AND HEARING BEFORE SUCH SALE UNDER POWER BY GRANTEE, OTHER THAN THE REQUIRED ADVERTISEMENT ONCE A WEEK FOR FOUR WEEKS PLUS GRANTOR'S INHERENT LEGAL RIGHT TO SEEK A COURT INJUNCTION.  GRANTOR MAKES THIS WAIVER KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY, AFTER HAVING BEEN GIVEN FULL EXPLANATION OF GRANTEE'S RIGHTS HEREUNDER PLUS THE OPPORTUNITY TO CONSULT AN ATTORNEY OF GRANTOR'S OWN CHOOSING BEFORE EXECUTING THIS INSTRUMENT AND INITIALLING THIS PARAGRAPH.

21.     Prior Deeds.   "NOT APPLICABLE"

-8-



22.    Indemnity.  Grantor shall protect, indemnify and save harmless Grantee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including attorneys' fees and expenses) imposed upon or incurred by Grantee by reason of (a) any claim for brokerage fees or other such commissions relating to the Premises or the Secured Indebtedness, or (b) the condition of the Premises, or (c) any default by Grantor under this Deed, the Note, or any other Loan Documents, or (d) failure to pay recording, mortgage, intangibles or similar taxes, fees or charges relating to the indebtedness evidenced by the Note or any one or more of the Loan Documents, or (e) the Loan Documents or any claim or demand whatsoever which may be asserted by reason of any alleged action, obligation or undertaking to be performed or discharged by Grantee pursuant to this Deed or any other document evidencing, securing, or in any way relating to the Secured Indebtedness or pursuant to any matter contemplated in the Loan Documents.  In the event Grantee incurs any liability, loss or damage by reason of the foregoing, or in the defense of any claim or demand arising out of or in connection with the foregoing, the amounts of such liability, loss or damage shall be added to the Secured Indebtedness, shall bear interest at the interest rate specified in the Note from the date incurred until paid and shall be payable on demand.

23.    Future Advances.  Grantee, at its option, may make future advances to Grantor in accordance with the Note, provided, however, that nothing contained herein shall constitute an obligation to do so.  Such future advances, with interest at the rate payable from time to time on the outstanding principal under the Note, shall be secured by this Deed when evidenced by the Note or by any other instrument indicating that such advances are secured by this Deed or when advanced under the terms of this Deed.  Grantee may make such future advances (a) at the request of Grantor, whether or not there is any obligation to make future advances, or (b) to pay, with or without the consent or request of Grantor, any amounts which may be due under this Deed or under any other mortgage or lien affecting the Deeded Premises.

24.    Assignment. This Deed shall be assignable and/or able to be sold to a third party by Grantee, in its sole discretion, and without the consent of the Grantor.  Grantee shall be able to retain the economic benefit of such assignment or sale.  Grantor hereby consents to any such assignment and agree to execute any necessary documents or other instruments as may be necessary to effectuate the assignment and/or sale to any third party purchaser or assignee.

IN WITNESS WHEREOF, this Deed has been duly executed and sealed by Grantor the day and year first above written.

Signed, sealed and delivered, this
_17th_ day of September, 2024, in
the presence of:

GRANTOR:

RIVERDAWG, LLC. a Georgia limited liability company

_____
Unofficial Witness

By: _____ (SEAL)
Jerry K. Williams, Jr., M.D.
its Managing Member

_____
Notary Public

(NOTARY SEAL)

My Commission Expires: _7-20-2026_

-9-

# Exhibit A

The Land referred to herein below is situated in the County of Towns, State of Georgia, and is described as follows:

PARCEL ONE - TRACT ONE:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 50, 19TH DISTRICT, 1ST SECTION, TOWNS COUNTY, GEORGIA AS DESCRIBED IN A PLAT OF SURVEY FOR GARLAND THOMAS PREPARED BY B. KEITH ROCHESTER & ASSOCIATES, REGISTERED SURVEYORS, DATED OCTOBER 11, 1978 AND RECORDED IN PLAT BOOK 5, PAGE 308, CLERK'S OFFICE TOWNS COUNTY, GEORGIA RECORDS. BEGINNING AT AN IRON PIN (SAID IRON PIN BEING THE NORTHWEST CORNER OF SAID LOT); THENCE NORTH 54 30 23 EAST FOR A DISTANCE OF 473.02 FEET TO AN IRON PIN; THENCE NORTH 54 30 23 EAST FOR A DISTANCE OF 33.56 FEET TO A POINT IN THE CENTER OF THE HIAWASSEE RIVER; THENCE ALONG AND WITH THE CENTER OF SAID RIVER, SOUTH 12 00 29 EAST FOR A DISTANCE OF 111.99 FEET TO A POINT; THENCE LEAVING SAID RIVER SOUTH 60 02 30 WEST FOR A DISTANCE OF 28.18 FEET TO AN IRON PIN; THENCE SOUTH 60 02 30 WEST FOR A DISTANCE OF 274.98 FEET TO AN IRON PIN; THENCE SOUTH 60 02 30 WEST FOR A DISTANCE OF 150 FEET TO AN IRON PIN; THENCE NORTH 45 57 30 WEST FOR A DISTANCE OF 60 FEET TO THE POINT OF BEGINNING. SAID TRACT CONTAINS 0.898 ACRES AND IS SHOWN ON SAID PLAT OF SURVEY AS LOT B-6.

ALSO CONVEYED IS AN UNOBSTRUCTED RIGHT OF INGRESS AND EGRESS ALONG SUBDIVISION ROADS TO THE PROPERTY HEREIN CONVEYED. THIS CONVEYANCE SHALL BE CONSTRUED TO BE A COVENANT RUNNING WITH THE LAND AND SHALL NOT BE DEFEATED FOR LACK OF USE OR MAINTENANCE. THIS CONVEYANCE IS MADE SUBJECT TO ALL EXISTING EASEMENTS FOR RIGHTS OF WAY AND UTILITIES.

PARCEL ONE - TRACT TWO:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 50, 19TH DISTRICT, 1ST SECTION, TOWNS COUNTY, GEORGIA, CONTAINING 0.974 ACRES, MORE OR LESS AND BEING LOT "B"-5 OF HIAWASSEE WILDERNESS SUBDIVISION AS SHOWN ON A PLAT OF SURVEY BY NORTHSTAR LAND SURVEYING, INC., DATED MAY 17, 2004, RECORDED IN PLAT BOOK 32, PAGE 124, TOWNS COUNTY RECORDS WHICH DESCRIPTION ON SAID PLAT IS INCORPORATED HEREIN BY REFERENCE.

THE PROPERTY IS CONVEYED TOGETHER WITH AND SUBJECT TO A NON-EXCLUSIVE, PERPETUAL, EASEMENT FOR INGRESS, EGRESS AND UTILITIES, 40' IN WIDTH, ALONG THE SUBDIVISION ACCESS ROAD, BEING PARTIALLY SHOWN ON THE ABOVE REFERENCED PLAT OF SURVEY.

PARCEL TWO:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 50 OF THE 19TH DISTRICT, 1ST SECTION, TOWNS COUNTY, GEORGIA AND DESCRIBED IN A PLAT OF SURVEY BY B. KEITH ROCHESTER & ASSOCIATES, INC., SURVEYING CONSULTANTS AS PREPARED FOR DAVID C. & LYDIA GAYLE ADAMS DATED 8/8/78, AND RECORDED IN PLAT BOOK 6, PAGE 4, CLERK'S OFFICE, TOWNS COUNTY, GEORGIA. SAID PROPERTY IS MORE PARTICULARLY DESCRIBED AS FOLLOWS: BEGINNING AT A CONCRETE MONUMENT WHICH IS THE LAND LOT CORNER COMMON TO LAND LOTS 35, 36, 49 AND 50 OF THE 19TH DISTRICT, 1ST SECTION OF TOWNS COUNTY, GEORGIA; THENCE SOUTH 00° 15' 00 SECONDS EAST FOR A DISTANCE OF 460.24 FEET TO A POINT IN THE CENTER OF HIAWASSEE RIVER AND THE TRUE POINT OF BEGINNING; THENCE SOUTH 00° 15 MINUTES 00 SECONDS EAST FOR A DISTANCE OF 420.37 FEET TO AN IRON PIN; THENCE SOUTH 89° 46 MINUTES 17 SECONDS WEST FOR A DISTANCE OF 637.15 FEET TO AN IRON PIN; THENCE NORTH 56° 39 MINUTES 43 SECONDS WEST FOR A DISTANCE OF 161.77 FEET TO AN IRON PIN; THENCE NORTH 00° 36 MINUTES 42 SECONDS EAST FOR A DISTANCE OF 125.92 FEET TO AN IRON PIN; THENCE NORTH 17° 25 MINUTES 43 SECONDS WEST FOR A DISTANCE OF 175.49 FEET TO AN IRON PIN; THENCE NORTH 60° 02 MINUTES 30 SECONDS EAST FOR A DISTANCE OF 303.16 FEET TO A POINT IN THE CENTER OF HIAWASSEE RIVER (SAID POINT IS EVIDENCED BY IRON PIN SET BACK 28.18 FEET FROM THE CENTER OF SAID RIVER); THENCE ALONG AND WITH THE CENTER OF HIAWASSEE RIVER, THE FOLLOWING COURSES AND DISTANCES; SOUTH 12° 00 MINUTES 29 SECONDS EAST FOR A DISTANCE OF 148.12 FEET TO A POINT; THENCE SOUTH 17° 02 MINUTES 48 SECONDS EAST FOR A DISTANCE OF 216.63 FEET TO A POINT; THENCE SOUTH 49° 68 MINUTES 45 SECONDS EAST FOR A DISTANCE OF 51.76 FEET TO A POINT; THENCE NORTH 73° 00 MINUTES 22 SECONDS EAST FOR A DISTANCE OF 111.71 FEET TO A POINT; THENCE NORTH 56° 24 MINUTES 03 SECONDS EAST FOR A DISTANCE OF 224.90 FEET TO A POINT; THENCE NORTH 48° 02 MINUTES 30 SECONDS EAST FOR A DISTANCE OF 175.95 FEET AND THE POINT OF BEGINNING. SAID TRACT CONTAINS 5.693 ACRES, MORE OR LESS.

ALSO CONVEYED IS A NON-EXCLUSIVE RIGHT OF INGRESS AND EGRESS ALONG EXISTING SUBDIVISION ROADS LEADING TO SAID PROPERTY. THIS SHALL BE CONSTRUCTED AS AN EASMENT RUNNING WITH THE LAND AND SHALL NOT BE DEFEATED FOR LACK OF USE OR MAINTENANCE.

GRANTOR GRANTS TO GRANTEE A PERPETUAL WATER RIGHT TO THE SPRING AND RESERVIOR AT THE SPRING WHICH LIES APPROXIMATELY 800 FEET FROM THE SOUTH LINE OF THE PROPERTY.



## GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT** (hereinafter referred to for convenience as the "Guaranty") is entered as of the 17th day of September, 2024, by Urgent Care 247, LLC (hereinafter referred to for convenience as the "Guarantor"), in favor of **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (the "Lender").

### A. RECITALS

**WHEREAS, RIVERDAWG, LLC, a Georgia limited liability company** (the "Borrower"), has obtained a loan from Lender in the amount of **Seven Hundred Thousand and 00/100 Dollars ($700,000.00)**;

**WHEREAS**, in connection with the making and closing of the Loan, and in order to evidence and secure the Loan, the Borrower will execute a Promissory Note (hereinafter referred to for convenience as the "Loan"), a Deed to Secure Debt, a Corporate Guaranty, and various other documents evidencing, securing, or otherwise relating to the Loan (for convenience, the Loan and any other documents are referred to for convenience as the "Loan Documents"); and

**WHEREAS**, Lender is willing to make the Loan only if the Guarantor executes and delivers this Guaranty.

**NOW, THEREFORE**, in consideration of the premises and to induce Lender to extend the credit referred to above, the Guarantor hereby agrees as follows:

### B. REPRESENTATIONS AND WARRANTIES

The Guarantor hereby represents and warrants that:

1.    The execution, delivery and performance of this Guaranty, and the agreements, documents, and instruments to be given by the Guarantor as security for the Loan and any other documents or instruments executed and delivered by the Guarantor pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "Guarantor Documents"), are within the Guarantor's powers, have been duly authorized, do not violate any law, rule, or regulation, and will not conflict with, result in a breach of, or constitute a default under, any contractual obligations of the Guarantor;

2.    There is no judgment, decree, or order of any court or other governmental authority binding on the Guarantor which would be contravened by the execution, delivery, performance or enforcement of the Guarantor Documents; and

3.    Each of the Guarantor Documents is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its respective terms.

4.    That the Guarantor understands that Lender would not make the Loan to Borrower without Guarantor entering into this Guaranty, and there is substantial consideration flowing to



Guarantor if the Loan is made equivalent to the potential burden to Guarantor of the obligations assumed hereunder.

The Guarantor agrees that for so long as this Guaranty remains in effect, each of the above representations and warranties and each other representation or warranty of the Guarantor contained herein or in the other Guarantor Documents shall be deemed to be continuing.

## C.  GUARANTY

1.    The Guarantor hereby unconditionally, absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such indebtedness, liabilities, obligations and covenants being hereinafter called, collectively, the "Obligations"),  arising out of or relating to the Loan, Deed to Secure Debt or any of the other Loan Documents, including any and all renewals, re-financings, extensions, amendments, modifications, and consolidations thereof, and any and all costs, attorneys' fees and expenses which may be suffered by Lender by reason of Borrower's default under the Loan and Loan Documents. The word "Obligations" is used in its most comprehensive sense and includes all principal, interest, and other amounts payable under the Loan or any of the other Loan Documents and all obligations for fees, indemnities, costs, and expenses under the Loan, the Deed to Secure Debt, or any of the other Loan Documents.

3.    Guarantor acknowledges and agrees that the indebtedness as of the Effective Date which this Guaranty unconditionally guarantees is in the principal amount of SEVEN HUNDRED THOUSAND AND 00/100 DOLLARS ($700,000.00), which is subject to change in accordance with the terms and conditions of the Loan Documents.

2.    The Guarantor's obligations hereunder are those of a primary obligor, and not merely as a surety or guarantor of collection, and are independent of the Obligations. If there is more than one Guarantor herein, each Guarantor's obligations hereunder are joint and several. In addition, Guarantor agrees that the Guarantor's obligations hereunder are joint and several with the obligations of any and all other obligors (which for purposes of this Guaranty includes, without limitation, other guarantors pursuant to separate agreements or instruments) in respect of the Obligations.  A separate action or actions may be brought against the Guarantor (or any one Guarantor herein) whether an action is brought against Borrower, another Guarantor herein, or any other obligor in respect of the Obligations or whether Borrower, another Guarantor herein, or any other obligor in respect of the Obligations be joined in any such action or actions; and the Guarantor waives the benefit of any statute of limitations affecting his or her liability hereunder or the enforcement hereof.

3.    The obligations of the Guarantor under this Guaranty are continuing, absolute, and unconditional, and the Guarantor guarantees that the Obligations will be paid in full when due (whether at stated maturity, by acceleration or otherwise) in accordance with the terms of the



Loan, the Deed to Secure Debt, and the other Loan Documents regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, a borrower or guarantor.

4.      This Guaranty is irrevocable with respect to all Obligations which arise out of or relate to the Loan, Deed to Secure Debt or any of the other Loan Documents. All of the liabilities of the Guarantor under this Guaranty shall remain in full force and effect until all Obligations (including any amendments, modifications, extensions, renewals, restructurings, re-financings, and re-fundings of any thereof) shall have been finally paid in full in cash.

This Guaranty shall in all respects continue in full force and effect or shall be reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Obligations is rescinded or must otherwise be restored or returned for any reason, including without limitation, because of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any other obligor in respect to the Obligations (including without limitation, the Guarantor) or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with similar power with respect to Borrower or any such other obligor or any material part of his or its assets, or otherwise, all as though such payment had not been made. If an event permitting the acceleration of the Obligations shall at any time have occurred and be continuing and such acceleration shall at such time be prevented by reason of the pendency against Borrower of a case or proceeding under any bankruptcy or insolvency law, the Guarantor agrees that, for purposes of this Guaranty and his obligations hereunder, the Obligations shall be deemed to have been accelerated, and the Guarantor shall forthwith pay such Obligations, and the other obligations hereunder, without any further notice or demand.

Without limiting the foregoing, the Guarantor authorizes Lender, without notice or demand, and without affecting the Guarantor's liability hereunder, from time to time to (a) renew, extend, accelerate, compromise, settle, restructure, refinance, refund, or otherwise change the amount and time for payment of any of the Obligations, or otherwise change the terms of the Obligations or any part thereof, including, without limitation, amend, modify, supplement, waive, or consent to a departure from the terms and conditions of the Loan and the other Loan Documents; (b) take and hold security for the payment of this Guaranty or the Obligations or the obligations of other obligors in respect of the Obligations, and enforce any such security; (c) apply such security and direct the order or manner of sale thereof or sell, exchange, release, compromise, settle, waive or surrender any such security; and (d) take, hold, exchange, release, compromise, settle, amend, or waive, or consent to the departure from any of the terms of, any guaranty or other agreement relating to the obligations of any other obligor in respect to the Obligations. Lender shall have no obligation to perfect, secure, protect, or insure any collateral, and the Guarantor's liability hereunder shall not be affected by the non-perfection, invalidity, or unenforceability of any agreement, instrument, or document securing or purporting to secure the Loan or the other Loan Documents.

5.      Guarantor hereby unconditionally and irrevocably: (a) waives and relinquishes any right of subrogation or other right of reimbursement from the Borrower or the Borrower's estate, and any other right to payment from the Borrower or the Borrower's estate, arising out of or on account of any sums paid or agreed to be paid by Guarantor under this Guaranty, whether

3

*[Urgent Care 247, LLC – Guaranty Agreement]*



any such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; (b) agrees that if at any time all or any part of any payment previously applied by Lender to any of the Obligations must be returned by Lender for any reason, whether upon the claim of a preference, fraudulent transfer, or other claim of a debtor-in-possession, trustee in bankruptcy, or other representative of creditors of Borrower, or otherwise, and whether by court order, administrative order, or non-judicial settlement, this Guaranty shall continue in effect or shall be reinstated, as the case may be, and Guarantor shall remain liable for the full amount returned as if such amount had never been received by Lender, notwithstanding any termination of this Guaranty or cancellation of any promissory note or other instrument or agreement evidencing or securing any of the Obligations; (c) agrees that the liability of the Guarantor under this Guaranty shall not be affected or impaired by, and this Guaranty shall remain fully enforceable against Guarantor for the full amount of the Obligations less only payments thereon actually received and retained by Lender irrespective of and without reduction on account of: (i) any defenses which Borrower may have or assert with respect to any of the Obligations, including, but without limitation, filing of a petition in bankruptcy, discharge in bankruptcy, confirmation of a plan of reorganization (whether Lender voted for or against such plan), composition with creditors (whether or not including Lender), failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud or misrepresentation; or (ii) dissolution or insolvency of Borrower.

6.      The Guarantor unconditionally and irrevocably waives any right to require Lender to (a) proceed against Borrower or any other obligor in respect to the Obligations; (b) proceed against or exhaust any security held directly or indirectly on account of the Obligations; (c) pursue any other remedy of Lender whatsoever; (d) give the Guarantor prior or subsequent notice of the disposition of any security; or (e) give the Guarantor notice of any information concerning Borrower's business, operations, or condition (financial or otherwise) known to Lender. The Guarantor unconditionally waives any defense arising by reason of any disability or other legal or equitable defense of Borrower by reason of the cessation from any cause whatsoever of the liability of Borrower other than final payment in full in cash of the Obligations. The Guarantor waives all diligence, presentments, protests, notices of protest, notices of dishonor, notices of non-payment, acceptance and notices of acceptance of this Guaranty.

7.      Any debt of Borrower now or hereafter held by or owed to the Guarantor is hereby absolutely and totally subordinated in right of payment and in all other respects to the Obligations and all other obligations of the Borrower to Lender in any way relating to the Loan or the other Loan Documents, and in the event an event of default under the Loan or the other Loan Documents shall have occurred, and there is a default in the debt of Borrower to the Guarantor, if Lender so requests, such debt shall be collected, enforced and received by the Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations and any such other obligations.

8.      Upon the occurrence of any Event of Default, as defined in the Loan, Deed to Secure Debt or any other Loan Document, in the payment or performance of the Loan or any of the other Loan Documents, the Lender is hereby authorized at any time and from time to time to set-off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Lender to or for the credit or the

4


*[Urgent Care 247, LLC – Guaranty Agreement]*



account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not, the Lender shall have made any demand under this Guaranty and although such obligations may be contingent and unmatured. The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have.

9.     The Guarantor will keep at all times full, true and accurate books and records of account of the financial affairs of the Guarantor sufficient to reflect accurately and correctly the results of all income and expense activities and to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles (or another method approved by Lender). The Guarantor will deliver to the Lender, upon such times as may be requested by the Lender, and in no event more than three (3) months after the end of every calendar year from date hereof, whether or not requested by the Lender, financial statements reflecting the foregoing information, including, but not limited to, balance sheets, profit-and-loss statements and all schedules and exhibits thereto as are customarily required by generally accepted accounting principles or as may be requested by Lender. Unless otherwise consented or agreed to by Lender in writing with respect to any particular year, such statements and information shall be prepared by a certified public accountant approved by the Lender in advance of delivery of such statements and information. The Guarantor further covenants and agrees to furnish to Lender, within 10 days after the date of any request by Lender, such other information and documents (financial or otherwise, including without limitation income tax returns) concerning or relating to the Guarantor or any collateral securing this Guaranty as the Lender may request at any time or from time to time.

10.     As security for the payment and performance of all Guarantor's obligations under this Guaranty, Guarantor hereby transfers and grants to the Lender a first priority security interest in all of Guarantor's presently-owned and hereafter-acquired personal and fixture property, wherever located, including, without limitation, all Accounts, Goods, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Deposit Accounts, Commercial Tort Claims, Letters-of-Credit Rights, General Intangibles including Payment Intangibles, Patents, Software Trademarks, Trade Names, Customer Lists, Supporting Obligations, all proceeds and products of the foregoing, including without limitation, insurance proceeds, lock box contents and proceeds from the accounts of the Makers' account debtors (the "Collateral"). In the event of any breach by Guarantor under this Guaranty or any other obligation of Guarantor to the Lender, the Lender shall have all rights with respect to the aforesaid Collateral as a security party under the applicable UCC laws as hereinafter provided.

11.     The Guarantor assumes full responsibility for keeping fully informed of the financial condition of the Borrower and all other circumstances affecting the Borrower's ability to perform its obligations to the Lender, and agrees that the Lender will have no duty to report to Guarantor any information which the Lender receives about the Borrower's financial condition or any circumstances bearing on Borrower's ability to perform.

12.     No amendment or wavier of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same is signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No failure on the part of Lender to exercise, and no delay in



exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any provided by law or at equity.

13.    Any provision of this Guaranty which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise affect the remaining provisions of this Guaranty.

14.    The Lender may, without notice to or consent from the Guarantor, assign or otherwise transfer, or grant a participation in, the Loan or the other Loan Documents, the Obligations, or any interest therein, or the collateral, in whole or in part, without affecting in any manner whatsoever the Guarantor's liability hereunder. Any assignee or other transferee, or participant in, any of the Loan or the other Loan Documents or the Obligations shall thereupon become vested with all rights in respect thereof granted to Lender herein to the same extent as if such assignee or transferee was the original guaranteed party hereto, and all Obligations shall be and remain Obligations for purposes of this Guaranty. This Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, personal representatives, successors and assigns and inure to the benefit of Lender and its respective heirs, executors, personal representatives, successors, assigns and other transferees; provided, however, that the Guarantor shall not assign or transfer any of Guarantor's rights or obligations hereunder without the express written consent of Lender.

15.    Guarantor agrees that this Guaranty, the Loan, and the other Loan Documents, and the rights and obligations of the parties hereunder and thereunder shall be governed by and be construed in accordance with the laws of the State of Georgia, unless otherwise provided therein or except where required to be governed by the laws of another jurisdiction to be enforceable. Guarantor acknowledges that the negotiation of the provisions of this Guaranty, the Loan and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give, nor shall Guarantor, Borrower or any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Guaranty or said Loan Documents to become effective and valid and binding obligations of the Borrower, the Guarantor or any other obligor. Guarantor acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Guarantor acknowledges further that the negotiation, execution, and delivery of this Guaranty, the Loan and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with this Guaranty, the Loan or any of the Loan Documents, agrees that venue for any such action shall be in the state or federal courts in Georgia, and waives any and all rights under the laws of the United States or any state to object to jurisdiction or venue within the state or federal courts in Georgia. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's

6

*[Urgent Care 247, LLC – Guaranty Agreement]*



properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a wavier by Lender of any of the foregoing.

16.  Guarantor hereby waives all rights of exemption under the constitution and laws of the United States and all states therein, including, but not limited to, the State of Georgia. Guarantor agrees to pay all cost of collection, including a reasonable attorney's fee, if the services of an attorney are utilized whether or not suit is filed. In that connection, Guarantor agrees that if, and as often as, this Guaranty Agreement is given to an attorney for collection or to defend or enforce any of Lender's rights hereunder, Guarantor will pay to Lender its reasonable attorney's fees, which shall be defined as 15% of the Obligations, together with all court costs and other expenses paid or incurred by Lender. Provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

17.  The undersigned hereby waives the right to require the holder of the obligations guaranteed to take any action against the principal as provided for in O.C.G.A. § 10-7-24. At the option of the Bank, this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the Borrower.

18.  TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN OR THE LOAN DOCUMENTS OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR BORROWER AND GUARANTOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS GUARANTY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS GUARANTY OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF GUARANTOR IRREVOCABLY TO WAIVE GUARANTOR'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN GUARANTOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.



**IN WITNESS WHEREOF**, the Guarantor has executed this Guaranty effective as of the date first written above.

IN THE PRESENCE OF:                    URGENT CARE 247, LLC

_____
Witness No. 1

                                        By: Dr. Jerry Williams
_____                 Its:  Manager
Witness No. 2


STATE OF  Georgia          )
                           )            ACKNOWLEDGEMENT
COUNTY OF  Towns           )


I, as Notary Public for the State of Georgia , hereby certify Dr. Jerry Williams, in his capacity as Manager of Urgent Care 247, LLC, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this 18 day of September, 2024.

_____
Notary Public for State of  Georgia
My Commission Expires:  7-20-2026

8
*[Urgent Care 247, LLC – Guaranty Agreement]*

## GUARANTY AGREEMENT

**THIS GUARANTY AGREEMENT** (hereinafter referred to for convenience as the "Guaranty") is entered as of the 17th day of September, 2024, by **Dr. Jerry Williams** (hereinafter referred to for convenience as the "Guarantor"), in favor of **FIRST LIBERTY CAPITAL PARTNERS, LLC**, a Georgia limited liability company (the "Lender").

### A. RECITALS

**WHEREAS, RIVERDAWG, LLC, a** Georgia limited liability company (the "Borrower'), has obtained a loan from Lender in the amount of **Seven Hundred Thousand and 00/100 Dollars ($700,000.00)**;

**WHEREAS**, in connection with the making and closing of the Loan, and in order to evidence and secure the Loan, the Borrower will execute a Promissory Note (hereinafter referred to for convenience as the "Loan"), a Deed to Secure Debt, a Corporate Guaranty, and various other documents evidencing, securing, or otherwise relating to the Loan (for convenience, the Loan and any other documents are referred to for convenience as the "Loan Documents"); and

**WHEREAS**, Lender is willing to make the Loan only if the Guarantor executes and delivers this Guaranty.

**NOW, THEREFORE,** in consideration of the premises and to induce Lender to extend the credit referred to above, the Guarantor hereby agrees as follows:

### B. REPRESENTATIONS AND WARRANTIES

The Guarantor hereby represents and warrants that:

1. The execution, delivery and performance of this Guaranty, and the agreements, documents, and instruments to be given by the Guarantor as security for the Loan and any other documents or instruments executed and delivered by the Guarantor pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "Guarantor Documents"), are within the Guarantor's powers, have been duly authorized, do not violate any law, rule, or regulation, and will not conflict with, result in a breach of, or constitute a default under, any contractual obligations of the Guarantor;

2. There is no judgment, decree, or order of any court or other governmental authority binding on the Guarantor which would be contravened by the execution, delivery, performance or enforcement of the Guarantor Documents; and

3. Each of the Guarantor Documents is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its respective terms.

4. That the Guarantor understands that Lender would not make the Loan to Borrower without Guarantor entering into this Guaranty, and there is substantial consideration flowing to

Guarantor if the Loan is made equivalent to the potential burden to Guarantor of the obligations assumed hereunder.

The Guarantor agrees that for so long as this Guaranty remains in effect, each of the above representations and warranties and each other representation or warranty of the Guarantor contained herein or in the other Guarantor Documents shall be deemed to be continuing.

## C. GUARANTY

1.     The Guarantor hereby unconditionally, absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such indebtedness, liabilities, obligations and covenants being hereinafter called, collectively, the "Obligations"), arising out of or relating to the Loan, Deed to Secure Debt or any of the other Loan Documents, including any and all renewals, re-financings, extensions, amendments, modifications, and consolidations thereof, and any and all costs, attorneys' fees and expenses which may be suffered by Lender by reason of Borrower's default under the Loan and Loan Documents. The word "Obligations" is used in its most comprehensive sense and includes all principal, interest, and other amounts payable under the Loan or any of the other Loan Documents and all obligations for fees, indemnities, costs, and expenses under the Loan, the Deed to Secure Debt, or any of the other Loan Documents.

3.     Guarantor acknowledges and agrees that the indebtedness as of the Effective Date which this Guaranty unconditionally guarantees is in the principal amount of SEVEN HUNDRED THOUSAND AND 00/100 DOLLARS ($700,000.00), which is subject to change in accordance with the terms and conditions of the Loan Documents.

2.     The Guarantor's obligations hereunder are those of a primary obligor, and not merely as a surety or guarantor of collection, and are independent of the Obligations. If there is more than one Guarantor herein, each Guarantor's obligations hereunder are joint and several. In addition, Guarantor agrees that the Guarantor's obligations hereunder are joint and several with the obligations of any and all other obligors (which for purposes of this Guaranty includes, without limitation, other guarantors pursuant to separate agreements or instruments) in respect of the Obligations. A separate action or actions may be brought against the Guarantor (or any one Guarantor herein) whether an action is brought against Borrower, another Guarantor herein, or any other obligor in respect of the Obligations or whether Borrower, another Guarantor herein, or any other obligor in respect of the Obligations be joined in any such action or actions; and the Guarantor waives the benefit of any statute of limitations affecting his or her liability hereunder or the enforcement hereof.

3.     The obligations of the Guarantor under this Guaranty are continuing, absolute, and unconditional, and the Guarantor guarantees that the Obligations will be paid in full when due (whether at stated maturity, by acceleration or otherwise) in accordance with the terms of the

2



*[Dr. Jerry Williams – Guaranty Agreement]*



Loan, the Deed to Secure Debt, and the other Loan Documents regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, a borrower or guarantor.

4.      This Guaranty is irrevocable with respect to all Obligations which arise out of or relate to the Loan, Deed to Secure Debt or any of the other Loan Documents.  All of the liabilities of the Guarantor under this Guaranty shall remain in full force and effect until all Obligations (including any amendments, modifications, extensions, renewals, restructurings, re-financings, and re-fundings of any thereof) shall have been finally paid in full in cash.

This Guaranty shall in all respects continue in full force and effect or shall be reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Obligations is rescinded or must otherwise be restored or returned for any reason, including without limitation, because of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any other obligor in respect to the Obligations (including without limitation, the Guarantor) or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with similar power with respect to Borrower or any such other obligor or any material part of his or its assets, or otherwise all as though such payment had not been made.  If an event permitting the acceleration of the Obligations shall at any time have occurred and be continuing and such acceleration shall at such time be prevented by reason of the pendency against Borrower of a case or proceeding under any bankruptcy or insolvency law, the Guarantor agrees that, for purposes of this Guaranty and his obligations hereunder, the Obligations shall be deemed to have been accelerated, and the Guarantor shall forthwith pay such Obligations, and the other obligations hereunder, without any further notice or demand.

Without limiting the foregoing, the Guarantor authorizes Lender, without notice or demand, and without affecting the Guarantor's liability hereunder, from time to time to (a) renew, extend, accelerate, compromise, settle, restructure, refinance, refund, or otherwise change the amount and time for payment of any of the Obligations, or otherwise change the terms of the Obligations or any part thereof, including, without limitation, amend, modify, supplement, waive, or consent to a departure from the terms and conditions of the Loan and the other Loan Documents; (b) take and hold security for the payment of this Guaranty or the Obligations or the obligations of other obligors in respect of the Obligations, and enforce any such security; (c) apply such security and direct the order or manner of sale thereof or sell, exchange, release, compromise, settle, waive or surrender any such security; and (d) take, hold, exchange, release, compromise, settle, amend, or waive, or consent to the departure from any of the terms of, any guaranty or other agreement relating to the obligations of any other obligor in respect to the Obligations.  Lender shall have no obligation to perfect, secure, protect, or insure any collateral, and the Guarantor's liability hereunder shall not be affected by the non-perfection, invalidity, or unenforceability of any agreement, instrument, or document securing or purporting to secure the Loan or the other Loan Documents.

5.      Guarantor hereby unconditionally and irrevocably: (a) waives and relinquishes any right of subrogation or other right of reimbursement from the Borrower or the Borrower's estate, and any other right to payment from the Borrower or the Borrower's estate, arising out of or on account of any sums paid or agreed to be paid by Guarantor under this Guaranty, whether

3

*[Dr. Jerry Williams – Guaranty Agreement]*



any such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; (b) agrees that if at any time all or any part of any payment previously applied by Lender to any of the Obligations must be returned by Lender for any reason, whether upon the claim of a preference, fraudulent transfer, or other claim of a debtor-in-possession, trustee in bankruptcy, or other representative of creditors of Borrower, or otherwise, and whether by court order, administrative order, or non-judicial settlement, this Guaranty shall continue in effect or shall be reinstated, as the case may be, and Guarantor shall remain liable for the full amount returned as if such amount had never been received by Lender, notwithstanding any termination of this Guaranty or cancellation of any promissory note or other instrument or agreement evidencing or securing any of the Obligations; (c) agrees that the liability of the Guarantor under this Guaranty shall not be affected or impaired by, and this Guaranty shall remain fully enforceable against Guarantor for the full amount of the Obligations less only payments thereon actually received and retained by Lender irrespective of and without reduction on account of: (i) any defenses which Borrower may have or assert with respect to any of the Obligations, including, but without limitation, filing of a petition in bankruptcy, discharge in bankruptcy, confirmation of a plan of reorganization (whether Lender voted for or against such plan), composition with creditors (whether or not including Lender), failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud or misrepresentation; or (ii) dissolution or insolvency of Borrower.

6.     The Guarantor unconditionally and irrevocably waives any right to require Lender to (a) proceed against Borrower or any other obligor in respect to the Obligations; (b) proceed against or exhaust any security held directly or indirectly on account of the Obligations; (c) pursue any other remedy of Lender whatsoever; (d) give the Guarantor prior or subsequent notice of the disposition of any security; or (e) give the Guarantor notice of any information concerning Borrower's business, operations, or condition (financial or otherwise) known to Lender. The Guarantor unconditionally waives any defense arising by reason of any disability or other legal or equitable defense of Borrower by reason of the cessation from any cause whatsoever of the liability of Borrower other than final payment in full in cash of the Obligations. The Guarantor waives all diligence, presentments, protests, notices of protest, notices of dishonor, notices of non-payment, acceptance and notices of acceptance of this Guaranty.

7.     Any debt of Borrower now or hereafter held by or owed to the Guarantor is hereby absolutely and totally subordinated in right of payment and in all other respects to the Obligations and all other obligations of the Borrower to Lender in any way relating to the Loan or the other Loan Documents, and in the event an event of default under the Loan or the other Loan Documents shall have occurred, and there is a default in the debt of Borrower to the Guarantor, if Lender so requests, such debt shall be collected, enforced and received by the Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations and any such other obligations.

8.     Upon the occurrence of any Event of Default, as defined in the Loan, Deed to Secure Debt or any other Loan Document, in the payment or performance of the Loan or any of the other Loan Documents, the Lender is hereby authorized at any time and from time to time to set-off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Lender to or for the credit or the

4


*[Dr. Jerry Williams – Guaranty Agreement]*



account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not, the Lender shall have made any demand under this Guaranty and although such obligations may be contingent and unmatured. The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have.

9.    The Guarantor will keep at all times full, true and accurate books and records of account of the financial affairs of the Guarantor sufficient to reflect accurately and correctly the results of all income and expense activities and to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles (or another method approved by Lender). The Guarantor will deliver to the Lender, upon such times as may be requested by the Lender, and in no event more than three (3) months after the end of every calendar year from date hereof, whether or not requested by the Lender, financial statements reflecting the foregoing information, including, but not limited to, balance sheets, profit-and-loss statements and all schedules and exhibits thereto as are customarily required by generally accepted accounting principles or as may be requested by Lender. Unless otherwise consented or agreed to by Lender in writing with respect to any particular year, such statements and information shall be prepared by a certified public accountant approved by the Lender in advance of delivery of such statements and information. The Guarantor further covenants and agrees to furnish to Lender, within 10 days after the date of any request by Lender, such other information and documents (financial or otherwise, including without limitation income tax returns) concerning or relating to the Guarantor or any collateral securing this Guaranty as the Lender may request at any time or from time to time.

10.    As security for the payment and performance of all Guarantor's obligations under this Guaranty, Guarantor hereby transfers and grants to the Lender a first priority security interest in all of Guarantor's presently-owned and hereafter-acquired personal and fixture property, wherever located, including, without limitation, all Accounts, Goods, Chattel Paper, Inventory, Equipment, Instruments, Investment Property, Documents, Deposit Accounts, Commercial Tort Claims, Letters-of-Credit Rights, General Intangibles including Payment Intangibles, Patents, Software Trademarks, Trade Names, Customer Lists, Supporting Obligations, all proceeds and products of the foregoing, including without limitation, insurance proceeds, lock box contents and proceeds from the accounts of the Makers' account debtors (the "Collateral"). In the event of any breach by Guarantor under this Guaranty or any other obligation of Guarantor to the Lender, the Lender shall have all rights with respect to the aforesaid Collateral as a security party under the applicable UCC laws as hereinafter provided.

11.    The Guarantor assumes full responsibility for keeping fully informed of the financial condition of the Borrower and all other circumstances affecting the Borrower's ability to perform its obligations to the Lender, and agrees that the Lender will have no duty to report to Guarantor any information which the Lender receives about the Borrower's financial condition or any circumstances bearing on Borrower's ability to perform.

12.    No amendment or wavier of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same is signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No failure on the part of Lender to exercise, and no delay in



exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any provided by law or at equity.

13.    Any provision of this Guaranty which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise affect the remaining provisions of this Guaranty.

14.    The Lender may, without notice to or consent from the Guarantor, assign or otherwise transfer, or grant a participation in, the Loan or the other Loan Documents, the Obligations, or any interest therein, or the collateral, in whole or in part, without affecting in any manner whatsoever the Guarantor's liability hereunder. Any assignee or other transferee, or participant in, any of the Loan or the other Loan Documents or the Obligations shall thereupon become vested with all rights in respect thereof granted to Lender herein to the same extent as if such assignee or transferee was the original guaranteed party hereto, and all Obligations shall be and remain Obligations for purposes of this Guaranty. This Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, personal representatives, successors and assigns and inure to the benefit of Lender and its respective heirs, executors, personal representatives, successors, assigns and other transferees; provided, however, that the Guarantor shall not assign or transfer any of Guarantor's rights or obligations hereunder without the express written consent of Lender.

15.    Guarantor agrees that this Guaranty, the Loan, and the other Loan Documents, and the rights and obligations of the parties hereunder and thereunder shall be governed by and be construed in accordance with the laws of the State of Georgia, unless otherwise provided therein or except where required to be governed by the laws of another jurisdiction to be enforceable. Guarantor acknowledges that the negotiation of the provisions of this Guaranty, the Loan and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give, nor shall Guarantor, Borrower or any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Guaranty or said Loan Documents to become effective and valid and binding obligations of the Borrower, the Guarantor or any other obligor. Guarantor acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Guarantor acknowledges further that the negotiation, execution, and delivery of this Guaranty, the Loan and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with this Guaranty, the Loan or any of the Loan Documents, agrees that venue for any such action shall be in the state or federal courts in Georgia, and waives any and all rights under the laws of the United States or any state to object to jurisdiction or venue within the state or federal courts in Georgia. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's

6


*[Dr. Jerry Williams – Guaranty Agreement]*



properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a wavier by Lender of any of the foregoing.

16.     Guarantor hereby waives all rights of exemption under the constitution and laws of the United States and all states therein, including, but not limited to, the State of Georgia. Guarantor agrees to pay all cost of collection, including a reasonable attorney's fee, if the services of an attorney are utilized whether or not suit is filed. In that connection, Guarantor agrees that if, and as often as, this Guaranty Agreement is given to an attorney for collection or to defend or enforce any of Lender's rights hereunder, Guarantor will pay to Lender its reasonable attorney's fees, which shall be defined as 15% of the Obligations, together with all court costs and other expenses paid or incurred by Lender. Provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

17.     The undersigned hereby waives the right to require the holder of the obligations guaranteed to take any action against the principal as provided for in O.C.G.A. § 10-7-24. At the option of the Bank, this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the Borrower.

18.     TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN OR THE LOAN DOCUMENTS OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR BORROWER AND GUARANTOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS GUARANTY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS GUARANTY OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF GUARANTOR IRREVOCABLY TO WAIVE GUARANTOR'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN GUARANTOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.



**IN WITNESS WHEREOF**, the Guarantor has executed this Guaranty effective as of the date first written above.

IN THE PRESENCE OF:                          **DR. JERRY WILLIAMS**

_____

Witness No. 1

_____          By: Dr. Jerry Williams, Individually

Witness No. 2

STATE OF _Georgia_        )
                          )          ACKNOWLEDGEMENT
COUNTY OF _TOWNS_         )

I, as Notary Public for the State of _Georgia_, hereby certify Dr. Jerry Williams, in his individual capacity, personally appeared before me this day and acknowledged the due execution of the foregoing instrument.

Witness my hand and official seal this 17 day of September, 2024.

_____
Notary Public for State of _Georgia_
My Commission Expires: 7·30·2026

8
*[Dr. Jerry Williams – Guaranty Agreement]*