# Exhibit "D"

# JONES & WALDEN LLC
### ATTORNEYS AT LAW

699 PIEDMONT AVENUE NE
ATLANTA, GEORGIA 30308
TELEPHONE (404) 564-9300
FACSIMILE (404) 564-9301
WWW.JONESWALDEN.COM

September 17, 2025

*Via Email and Certified Mail, Return*
*Receipt Requested:*

Henry Sewell, Esq.
Law Offices of Henry F Sewell Jr LLC
2964 Peachtree Road NW Suite 555
Atlanta, GA 30305
hsewell@sewellfirm.com

*Via Certified Mail, Return Receipt*
*Requested:*

First Liberty Capital Partners, LLC
P.O. Box 2567
Newnan, GA 30264

Re:     Riverdawg, LLC and First Liberty Capital Partners, LLC

Dear Mr. Sewell,

This law firm represents Riverdawg, LLC, a Georgia limited liability company ("Riverdawg"). I am writing to First Liberty Capital Partners, LLC ("First Liberty" or "Lender"), by and through its Receiver, Greg Hays (the "Receiver"). I understand that you represent Mr. Hays in his capacity as Receiver for First Liberty.

Upon information and belief, First Liberty purportedly made a loan to Riverdawg on September 17, 2024, in the original principal amount of $700,000 (the "Loan"). Pursuant to the Promissory Note dated September 17, 2024 (the "Note"), First Liberty agreed to loan Riverdawg $700,000. The Note states that the maturity date of the Loan is September 18, 2025. The Security Deed executed and delivered in conjunction with the Note states that the maturity date is September 28, 2025. Therefore a conflict exists between the two documents and such conflict is resolved against First Liberty as the drafter of the documents. Therefore, the Maturity Date is actually September 28, 2025 (the "Maturity Date").

Pursuant to the terms of the Note, Riverdawg has the right to extend the Maturity Date of the purported Loan for an additional six (6) months upon notice to First Liberty. Please let this letter serve as notice to First Liberty, by and through its Receiver, of Riverdawg's exercise of its right to extend the Maturity Date under the Note.

Pursuant to the Note, in order to extend the Maturity Date, Riverdawg should pay an "extension fee" of 2.5% of the principal amount of the Loan. The purported principal amount of the Loan is $700,000. Therefore, the extension fee equals $17,500. Riverdawg hereby proffers tender to First Liberty of such amount and agrees to make payment at such time as First Liberty directs the form and manner of payment.

First Liberty Capital Partners, LLC
September 17, 2025
Page 2

Please note that Riverdawg made all payments due under the Loan up through and including the date on which Riverdawg learned of the placement of First Liberty into a receivership. Through Riverdawg's due diligence, Riverdawg learned of Lender's receivership by the public notice issued by Lender on or about June 27, 2025, stating as follows:

> We regret to inform you that as of Friday, June 27, 2025, First Liberty has ceased all business operations. First Liberty will no longer be accepting promissory note investments or bridge loan participations, and it will not be making any new bridge loans. Interest payments on existing promissory notes, bridge loan participation interests, and other investment programs are indefinitely suspended. First Liberty is cooperating with federal authorities as part of an effort to accomplish an orderly wind-up of the business. First Liberty employees are not authorized to make any further communications at this time regarding the ongoing situation, and no one at the company will be available to answer phone calls or respond to email inquiries. First Liberty hopes to provide additional information and updates in the near future regarding the status of the company's efforts to effectuate an orderly wind-up of the business.

Based on Riverdawg's receipt of such public notice from First Liberty, Riverdawg has been put on notice of First Liberty's default of its obligations under the purported Loan. The notice stated that First Liberty payments are suspended. So Riverdawg is currently unable to make payment to Lender. At no point did First Liberty provide notice to Riverdawg of a default of payments under the alleged Loan.

Notwithstanding any of the foregoing, Riverdawg has been made aware that First Liberty really was not actually a lender. Rather, First Liberty was the operator of a ponzi scheme. Therefore, First Liberty has no right to receive interest, fees, and other charges purportedly due under the alleged Loan. The most that Riverdawg may be required to pay to First Liberty is the amount of actual funds that Riverdawg received from First Liberty less payments made by Riverdawg.

As you are likely aware, Riverdawg, by and through Jerry Williams, has requested a payoff of the purported debt allegedly due to First Liberty. Riverdawg reserves all rights regarding its purported obligations to First Liberty. Specifically, Riverdawg reserves all claims it holds against First Liberty for fraud, breach of contract, and fraudulent inducement. The actions of First Liberty have resulted in consequential damages to Riverdawg. Riverdawg therefore reserves all rights with respect to such claims.

As stated above, Riverdawg does not know the manner in which the Receiver is requesting and/or accepting payments that originally would have been due to First Liberty. To the extent that

First Liberty Capital Partners, LLC
September 17, 2025
Page 3

the Receiver provides confirmation regarding such, then Riverdawg may make payment. But as set forth herein, any payment made by Riverdawg should be credited to the amount of any sums due and not to unlawful interest, fees, or charges. Moreover, Riverdawg is still investigating its rights and makes no admissions herein. For example, references to the alleged "loan" do not mean that the events actually constituted a loan. As stated, First Liberty was a fraud.

Sincerely,

Leon S. Jones
Attorney for Riverdawg, LLC