# Exhibit "E"

## PROMISSORY NOTE

$355,000.00                                                                 December 9, 2024

**RIVERDAWG, LLC, a Georgia limited liability company ("Borrower")** whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (hereinafter, together with any subsequent holder hereof, sometimes called **"Lender"** or **"Holder"**), whose address is P. O. Box 2567, Newnan, GA 30264, agree as follows:

A.      Borrower has requested that Lender make a loan in the original principal amount of **Three Hundred Fifty Five Thousand Dollars ($355,000.00)** (the "**Loan**"), and Lender hereby agrees to make the Loan to Borrower upon the terms and conditions contained herein.

B.      The principal amount of the Loan shall be allocated by Lender to an account established for Borrower, and Loan proceeds shall be disbursed from time to time on terms and conditions as established by Lender as to timing, amount and other conditions of disbursements.

**THEREFORE, FOR VALUE RECEIVED**, Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of **Three Hundred Fifty Five Thousand Dollars ($355,000.00)** together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. Said principal and interest shall accrue and be payable as follows:

1.      **Interest**.      Interest shall accrue at the rate of sixteen percent (16%) per annum computed on the basis of a 30 day month and 360 day year. Interest shall be computed on the entire principal amount of the Loan from the date of the Loan, notwithstanding that a portion of the Loan proceeds may be held by Lender for future disbursement to or on behalf of Borrower.

2.      **Payments**.

     a.      <u>Monthly Payments</u>.      Borrower shall make monthly payments of interest only on the outstanding principal balance with the first payment due at closing in the amount of $3,471.16. Thereafter, Borrower shall make monthly payments in the amount of $4,733.33 commencing on January 1, 2025, and continuing thereafter on the 1st day of each successive month until December 9, 2025 (the "**Maturity Date**"), at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges due hereunder shall be due and payable for all purposes in full in a single **BALLOON PAYMENT**. All such payments shall be made at the office of Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.

     b.      <u>Minimum Interest</u>. Borrower may prepay this Note at any time, provided however, that Borrower agrees to pay a minimum of six month's interest, as calculated above, plus outstanding principal and any other unpaid charges hereunder, if prepaid prior to the seventh month, which shall be deposited as an Interest Reserve at closing and deducted from Loan proceeds. During and after the seventh month, prepayment shall require payment of outstanding principal plus accrued interest and any other unpaid charges due hereunder.

    c.    <u>Interest Reserve.</u> A six month evergreen interest reserve in the amount of $28,400.00 (the "**Evergreen Reserve**") and shall be held by Lender as additional security for Borrower's obligations under the Note. The Evergreen Reserve shall not be used by Lender except in case of an Event of Default. Any unused portion of the Reserve Accounts established hereunder shall be applied to the amount due upon repayment of this Note.

    d.    <u>Loan Extension.</u> Borrower shall have the right to extend the Maturity Date of the Loan for six months upon notice to Lender prior to maturity and payment to Lender of an extension fee of 2.5% of the Loan principal amount.

**3.    Late Charge/Post Default Interest**. Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than three (3) days after the due date thereof, to cover the extra expense involved in handling delinquent payments. These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to declare the entire unpaid principal and interest immediately due and payable. Notwithstanding any provision to the contrary herein, from and after the maturity of this Note (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of 24.0% (the "**Default Rate**").

**4.    Loan Documents and Collateral**. Borrower represents, warrants, covenants and agrees that this Note is and shall at all times be secured and supported by documents as required by Lender which include (i) security agreements from Borrower conveying security interest in Unit 32 and Unit 44 of The Overlook at Baxter Condominium (ii) guaranty agreements of Dr. Jerry Williams, and Urgent Care 247, LLC(iii) other agreements, documents and instruments executed by or on behalf of the Borrower in connection herewith (the "Loan Documents").

**5.    Loan Oversight**. Borrower agrees that the principal purpose of the Loan is to purchase and expand an existing Urology Clinic. Borrower shall provide Lender with monthly financials and such information as Lender may request from time to time regarding application of loan proceeds and performance under the Loan documents.

**6.    Cross-Default and Cross-Collateralization.**

(a)    Lender has made or may make other loans to Borrower (as used herein the term "Borrower" shall include any and all entities related to Borrower by common ownership and/or control) evidenced by various Notes, and Deeds to Secure Debt (Deed to Secure Debt as used herein to include Mortgages, Security Agreements and Pledges of stock, member interest in limited liability company or other assets). Any event of default as defined in any Deed to Secure Debt from Borrower to Lender given to secure any loan from Lender to Borrower or any breach of terms, provisions, conditions or covenants contained in the Note or Notes, Deed to Secure Debt or Deeds to Secure Debt, or any other loan documents executed in connection with any other loan or loans from Lender or Borrower shall be an event of default under the terms, provisions, conditions, and covenants of any and all other loans from the Lender to Borrower. Further, an event of default hereunder shall also constitute an event of default under any and all Deeds to Secure Debt, Notes, and any other loan document executed in connection with any other loan from Lender to Borrower.

(b)    Lender has made or may make other loans to Borrower evidenced by various Notes and Deeds to Secure Debt. The real property and any other property described in said other Deeds to Secure Debt is and shall be security for each and every other Note, executed by Borrower in favor of Lender, or any advance made thereunder, or any renewal or extension thereof; further, the real property described herein is

2

and shall be further security for each and every Note executed by the Borrower in favor of the Lender. This paragraph shall apply notwithstanding the fact that the outstanding balance of any one or more of said loans exceeds the original face amount of the Note or Notes evidencing said loans.

(c) Nothing contained in the within paragraphs, shall in any way impair the rights of the Lender granted in any Deed to Secure Debt. Further, each and every Note and Deed to Secure Debt executed in connection with any loan made from Lender to Borrower is and shall remain a separate obligation of Borrower, and each and every Note and Deed to Secure Debt is and shall be separately enforceable according to its terms until all outstanding indebtedness owing from Borrower to Lender has been paid in full; further, Lender may, at its election, institute separate or collective proceedings with respect to each Note and Deed to Secure Debt simultaneously or in such order and at such times as Lender may elect. The pendency of any proceeding with respect to any Note or Deed to Secure Debt shall not be grounds for abatement of or hindering, delaying or preventing any proceeding in respect to any other Note or Deed to Secure Debt. Default under each Note and Deed to Secure Debt shall constitute a separate cause of action.

7. **Events of Default**. The principal sum evidenced by this Note, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any Loan Document, each of which shall constitute an "Event of Default" hereunder, ***provided however***, that Borrower shall have five (5) days following notice of a monetary default in which to cure, and thirty (3) days following notice of a non-monetary in which to cure. Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Note: failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Note hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Note when due or failure of Borrower to perform or observe any promise or agreement contained in this Note; the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; the inability of any Obligor to pay debts as they become due or admit in writing to such effect; the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; the suspension of the operation of any Obligor's present business; the occurrence of any default or event authorizing acceleration as provided under any promissory note or other evidence of debt, loan agreement, security agreement, pledge agreement, assignment, mortgage, deed to secure debt, deed of trust, lease agreement or other agreement or contract between any Obligor and Lender or any third party; any statement, representation or warranty of any Obligor made orally or in writing in any document

evidencing, securing or otherwise relating to the indebtedness evidenced by this Note or in any other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; revocation or termination of any guaranty executed in favor of Lender guaranteeing the indebtedness evidenced by this Note; the financial responsibility of any Obligor becomes impaired at any time in the sole opinion of Lender; or, the determination by Lender that it otherwise deems itself to be insecure.

**8.    Remedies**. If this Note is payable on demand, all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall be due and payable in full upon demand by Lender, whether or not any event of default has occurred and whether or not Lender reasonably deems itself to be insecure. If any event of default under this Note should occur, all unpaid amounts of any or all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall, at the option of Lender and without notice or demand, become immediately due and payable and Lender shall have and be entitled to exercise, from time to time, all the rights and remedies available to it as provided elsewhere in this Note, in any other agreement or contract between Borrower and Lender and under applicable law. All of Lender's rights and remedies shall be cumulative, and any failure of Lender to exercise any such right or remedy shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time thereafter.

**9.    Notices**. Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth in the beginning of this Note or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

**10.    Acceleration**. Time is of the essence in the performance of all obligations under this Note. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Note to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

**11.    Costs of Collection**.    Borrower agrees that if, and as often as, this Note is given to an attorney for collection or to defend or enforce any of Lender's arising from or relating to this Note, Borrower will pay to Lender attorney's fees in the amount of 15% of the principal balance due, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

**12.    Maximum Legal Rate**    Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Note shall, at any time, be in excess of the maximum rate of interest permissible by law. In the event such payments of interest or other consideration provided for in this Note shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without

further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment, without premium. This provision shall control every other obligation of the Borrower and Lender under this Note.

13. **Miscellaneous.**

(a) With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Lender and Borrower shall be adverse parties. Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to attorney's fees.

(b) The obligations and liabilities of Borrower under this Note are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower: (1) any assignment or transfer this Note or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Note or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Note or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Holder or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Note or other agreement.

(c) The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d) Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Lender under the terms of this Note and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments. Any provision of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

(e) The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

(f) Borrower warrants and agrees that the proceeds of this Note will be used for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

5

(g)  Borrower and Lender intend and believe that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Note shall continue in full force and effect.

14.  **Governing Law**.  This Note shall be governed by and construed in accordance with the laws of the State of Georgia. Borrower acknowledges that the negotiation of the provisions of this Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give Borrower, nor shall any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Note or said Loan Documents to become effective and valid and binding obligations of the Borrower. Borrower acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Borrower acknowledges further that the negotiation, execution, and delivery of this Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Borrower hereby submits itself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with the Loan or any of the Loan Documents. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a waiver by Lender of any of the foregoing.

15.  **Waiver of Jury Trial.** TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS NOTE OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD

BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

    **16.** **Venue**. Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Note or any agreements or transactions contemplated hereby may be brought in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

    **IN WITNESS WHEREOF,** Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

**BORROWER**

**River Dawg, LLC, a Georgia limited liability company**

By: _____(Seal)
Name: Dr. Jerry Williams
Title: Manager

This Note is accepted this 9th day of December, 2024 by Lender in Newnan, Georgia.

**LENDER**

**First Liberty Capital Partners, LLC, a Georgia liability company**

By: _____(Seal)
Name: Brant Frost IV
Title: Manager

7