# Exhibit "F"

PROMISSORY NOTE

**$3,500,000.00**                                                                December 19, 2024

**No Free, LLC, a Georgia limited liability company ("Borrower")** whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (hereinafter, together with any subsequent holder hereof, sometimes called "Lender" or "Holder"), whose address is P. O. Box 2567, Newnan, GA 30264, agree as follows:

A. Borrower has requested that Lender make a loan in the original principal amount of **Three Million Five Hundred Thousand Dollars ($3,500,000.00)** (the "Loan"), and Lender hereby agrees to make the Loan to Borrower upon the terms and conditions contained herein.

B. The principal amount of the Loan shall be allocated by Lender to an account established for Borrower, and Loan proceeds shall be disbursed from time to time on terms and conditions as established by Lender as to timing, amount and other conditions of disbursements.

**THEREFORE, FOR VALUE RECEIVED,** Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of **Three Million Five Hundred Thousand Dollars ($3,500,000.00)** together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. Said principal and interest shall accrue and be payable as follows:

1. **Interest.** Interest shall accrue at the rate of fifteen percent (15%) per annum computed on the basis of a 30 day month and 360 day year. Interest shall be computed on the entire principal amount of the Loan from the date of the Loan, notwithstanding that a portion of the Loan proceeds may be held by Lender for future disbursement to or on behalf of Borrower.

2. **Payments.**

a.   Monthly Payments. Borrower shall make monthly payments of interest only on the outstanding principal balance with the first payment due at closing in the amount of $18,666.00. Thereafter, Borrower shall make monthly payments in the amount of $46,666.67 commencing on February 1, 2025, and continuing thereafter on the 1st day of each successive month until December 19, 2025 (the "**Maturity Date**"), at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges due hereunder shall be due and payable for all purposes in full in a single **BALLOON PAYMENT**. All such payments shall be made at the office of Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.

b.   Minimum Interest. Borrower may prepay this Note at any time, provided however, that Borrower agrees to pay a minimum of six month's interest, as calculated above, plus outstanding principal and any other unpaid charges hereunder, if prepaid prior to the seventh month, which shall be deposited as an Interest Reserve at closing and deducted from Loan proceeds. During and after the seventh month, prepayment shall require payment of outstanding principal plus accrued interest and any other unpaid charges due hereunder.

c.      Interest Reserve. A six month evergreen interest reserve in the amount of $280,000.00 (the **"Evergreen Reserve"**) and shall be held by Lender as additional security for Borrower's obligations under the Note. The Evergreen Reserve shall not be used by Lender except in case of an Event of Default. Any unused portion of the Reserve Accounts established hereunder shall be applied to the amount due upon repayment of this Note.

d.      Loan Extension. Borrower shall have the right to extend the Maturity Date of the Loan for six months upon notice to Lender prior to maturity and payment to Lender of an extension fee of 2.5% of the Loan principal amount.

3.      **Late Charge/Post Default Interest**. Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than three (3) days after the due date thereof, to cover the extra expense involved in handling delinquent payments. These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to declare the entire unpaid principal and interest immediately due and payable. Notwithstanding any provision to the contrary herein, from and after the maturity of this Note (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of 24.0% (the **"Default Rate"**).

4.      **Loan Documents and Collateral**. Borrower represents, warrants, covenants and agrees that this Note is and shall at all times be secured and supported by documents as required by Lender which include (i) security agreements from Borrower conveying security interests in Arnold's Point, coastal tidal marshland in Bryan County, GA and in Lot 7 Highlands Country Club in NC (ii) guaranty agreements of Dr. Jerry Williams, and Urgent Care 247, LLC(iii) other agreements, documents and instruments executed by or on behalf of the Borrower in connection herewith (the "Loan Documents").

5.      **Loan Oversight**. Borrower agrees that the principal purpose of the Loan is to build a Spec home in Highlands, NC. Borrower shall provide Lender with financials and such information as Lender may request from time to time regarding application of loan proceeds and performance under the Loan documents.

6.      **Cross-Default and Cross-Collateralization**.

(a)      Lender has made or may make other loans to Borrower (as used herein the term "Borrower" shall include any and all entities related to Borrower by common ownership and/or control) evidenced by various Notes, and Deeds to Secure Debt (Deed to Secure Debt as used herein to include Mortgages, Security Agreements and Pledges of stock, member interest in limited liability company or other assets). Any event of default as defined in any Deed to Secure Debt from Borrower to Lender given to secure any loan from Lender to Borrower or any breach of terms, provisions, conditions or covenants contained in the

2

Note or Notes, Deed to Secure Debt or Deeds to Secure Debt, or any other loan documents executed in connection with any other loan or loans from Lender or Borrower shall be an event of default under the terms, provisions, conditions, and covenants of any and all other loans from the Lender to Borrower. Further, an event of default hereunder shall also constitute an event of default under any and all Deeds to Secure Debt, Notes, and any other loan document executed in connection with any other loan from Lender to Borrower.

(b)     Lender has made or may make other loans to Borrower evidenced by various Notes and Deeds to Secure Debt. The real property and any other property described in said other Deeds to Secure Debt is and shall be security for each and every other Note, executed by Borrower in favor of Lender, or any advance made thereunder, or any renewal or extension thereof; further, the real property described herein is and shall be further security for each and every Note executed by the Borrower in favor of the Lender. This paragraph shall apply notwithstanding the fact that the outstanding balance of any one or more of said loans exceeds the original face amount of the Note or Notes evidencing said loans.

(c)     Nothing contained in the within paragraphs, shall in any way impair the rights of the Lender granted in any Deed to Secure Debt. Further, each and every Note and Deed to Secure Debt executed in connection with any loan made from Lender to Borrower is and shall remain a separate obligation of Borrower, and each and every Note and Deed to Secure Debt is and shall be separately enforceable according to its terms until all outstanding indebtedness owing from Borrower to Lender has been paid in full; further, Lender may, at its election, institute separate or collective proceedings with respect to each Note and Deed to Secure Debt simultaneously or in such order and at such times as Lender may elect. The pendency of any proceeding with respect to any Note or Deed to Secure Debt shall not be grounds for abatement of or hindering, delaying or preventing any proceeding in respect to any other Note or Deed to Secure Debt. Default under each Note and Deed to Secure Debt shall constitute a separate cause of action.

7. **Events of Default**. The principal sum evidenced by this Note, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any Loan Document, each of which shall constitute an "Event of Default" hereunder, **provided however**, that Borrower shall have five (5) days following notice of a monetary default in which to cure, and thirty (30) days following notice of a non-monetary in which to cure. Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Note: failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Note hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Note when due or failure of Borrower to perform or observe any promise or agreement contained in this Note; the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including

3

without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; the inability of any Obligor to pay debts as they become due or admit in writing to such effect; the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; the suspension of the operation of any Obligor's present business; the occurrence of any default or event authorizing acceleration as provided under any promissory note or other evidence of debt, loan agreement, security agreement, pledge agreement, assignment, mortgage, deed to secure debt, deed of trust, lease agreement or other agreement or contract between any Obligor and Lender or any third party; any statement, representation or warranty of any Obligor made orally or in writing in any document evidencing, securing or otherwise relating to the indebtedness evidenced by this Note or in any other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; revocation or termination of any guaranty executed in favor of Lender guaranteeing the indebtedness evidenced by this Note; the financial responsibility of any Obligor becomes impaired at any time in the sole opinion of Lender; or, the determination by Lender that it otherwise deems itself to be insecure.

8.      **Remedies.** If this Note is payable on demand, all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall be due and payable in full upon demand by Lender, whether or not any event of default has occurred and whether or not Lender reasonably deems itself to be insecure. If any event of default under this Note should occur, all unpaid amounts of any or all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall, at the option of Lender and without notice or demand, become immediately due and payable and Lender shall have and be entitled to exercise, from time to time, all the rights and remedies available to it as provided elsewhere in this Note, in any other agreement or contract between Borrower and Lender and under applicable law. All of Lender's rights and remedies shall be cumulative, and any failure of Lender to exercise any such right or remedy shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time thereafter.

9.      **Notices.** Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the

same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth in the beginning of this Note or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

10.     **Acceleration**. Time is of the essence in the performance of all obligations under this Note. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Note to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

11.     **Costs of Collection**. Borrower agrees that if, and as often as, this Note is given to an attorney for collection or to defend or enforce any of Lender's arising from or relating to this Note, Borrower will pay to Lender attorney's fees in the amount of 15% of the principal balance due, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

12.     **Maximum Legal Rate** Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Note shall, at any time, be in excess of the maximum rate of interest permissible by law. In the event such payments of interest or other consideration provided for in this Note shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment, without premium. This provision shall control every other obligation of the Borrower and Lender under this Note.

13.     **Miscellaneous.**

(a)     With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation

in which the Lender and Borrower shall be adverse parties. Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to attorney's fees.

(b)     The obligations and liabilities of Borrower under this Note are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower: (1) any assignment or transfer this Note or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Note or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Note or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Holder or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Note or other agreement.

(c)     The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d)     Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Lender under the terms of this Note and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments. Any provision of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

(e)     The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

(f)     Borrower warrants and agrees that the proceeds of this Note will be used for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

(g)     Borrower and Lender intend and believe that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions. However, if any provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be

6

illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Note shall continue in full force and effect.

14.    **Governing Law**. This Note shall be governed by and construed in accordance with the laws of the State of Georgia. Borrower acknowledges that the negotiation of the provisions of this Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give Borrower, nor shall any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Note or said Loan Documents to become effective and valid and binding obligations of the Borrower. Borrower acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Borrower acknowledges further that the negotiation, execution, and delivery of this Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Borrower hereby submits itself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with the Loan or any of the Loan Documents. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a waiver by Lender of any of the foregoing.

15.    **Waiver of Jury Trial**. **TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS NOTE OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR**

OTHERWISE. BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

     16. **Venue**. Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Note or any agreements or transactions contemplated hereby may be brought in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

     IN WITNESS WHEREOF, Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

                **BORROWER**

                **No Free, LLC, a Georgia limited liability company**

                By:_____

                Name: Dr. Jerry Williams

                Title: Manager

This Note is accepted this 19th day of December, 2024 by Lender in Newnan, Georgia.

*[Notary seal: LISA SANTANGELO, NOTARY PUBLIC, CHATHAM COUNTY, GEORGIA, COMMISSION EXPIRES MARCH 08, 2025]*

**LENDER**

ame: Brant Frost IV
   **First Liberty Capital Partners, LLC, a**
   **Georgia liability company**



Name: Brant Frost I
Title: Manager

9

BK: 1703 PG: 811-825
Filed and Recorded
01-15-2025 03:12 PM
DOC# D2025-000244

*Rebecca G. Crowe*

REBECCA G. CROWE
CLERK OF SUPERIOR COURT
Bryan COUNTY

STATE OF GEORGIA
COUNTY OF GLYNN

Tax Parcel ID:  .067-001

After recording, please return to:

The Ligon Firm, P.C.
102 Marsh Harbour Parkway, Unit 109
Kingsland, GA 31548

File No. 24-0647

## COMMERCIAL DEED TO SECURE DEBT AND SECURITY AGREEMENT

THIS COMMERCIAL DEED TO SECURE DEBT AND SECURITY AGREEMENT ("deed"), made and entered into this 19th day of December, 2024, by and between NoFree, LLC, party of the first part, ("Grantor"), and **First Liberty Building and Loan**, whose mailing address is **14 Greenville Street, Newnan, GA 30263**, party of the second part, ("Grantee") (hereinafter referred to as "Lender");

### WITNESSTH:

That, WHEREAS, NoFree, LLC ("Borrower") is justly indebted to First Liberty Building and Loan in the sum of **Three Million Five Hundred Thousand And No/100 Dollars ($3,500,000.00)**, in lawful money of the United States of America, and has agreed to pay the same, with interest thereon, according to the terms of a certain promissory note (the "Note") given by Borrower to Grantee to evidence said indebtedness, bearing even date herewith, having a final maturity dated of **January 1, 2026**, such Note, as the same may be amended, renewed, replaced, or extended from time to time, being incorporated herein by this reference (as amended, renewed, replaced, or extended, the "Note");

NOW, THEREFORE, in consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by Grantor, and in order to secure the payment of the Note and the Secured Indebtedness as defined herein below, Grantor has granted, bargained, sold, and conveyed, and by these presents does grant, bargain, sell, and convey, unto Grantee the following described property, to-wit:

### SEE EXHIBIT "A" ATTACHED HERETO, MADE A PART HEREOF AND INCORPORATED HEREIN BY THIS REFERENCE;

TOGETHER with all buildings, structures and other improvements now or hereafter located on the property hereinbefore described, or any part and parcel thereof; and

TOGETHER  with all rights, title and interest of Grantor in and to the minerals, flowers, shrubs, crops, trees, timber and other emblements now or hereafter on said property or above the same or any part or parcel thereof; and

TOGETHER with all and singular the tenements, hereditaments, easements and appurtenances thereunto belonging or in any wise appertaining, and the reversion or reversions, remainder and remainders, rents, issues and profits thereof; and also all the estate, right, title, interest, claim and demand whatsoever of Grantor of, in and to the same and of, in and to every part and parcel thereof; and

TOGETHER with all fittings and fixtures, whether actually or constructively attached to said property and including all attached machinery, equipment, apparatus, and all trade, domestic, and ornamental fixtures, appliances, and articles of personal property of every kind and nature whatsoever, now or hereafter located in, upon, or under said property or any part thereof and used or usable in connection with any present or future operation of said property and now owned or hereafter acquired by Grantor (hereinafter collectively called "Equipment") including, but without limiting the generality of the foregoing, all heating, air conditioning, freezing, lighting, laundry, cooking, incinerating, and power equipment; engines; pipes; pumps; tanks; motors; conduits; switchboards; plumbing, lifting, cleaning, fire prevention, fire extinguishing, refrigerating, ventilating, and communications apparatus; boilers, ranges, furnaces, oil burners, or units thereof; appliances; air-cooling and air conditioning apparatus; vacuum cleaning systems; elevators; escalators; shades; awnings; screens; storm doors and windows; stoves; wall beds; refrigerators; dishwashers; attached cabinets; partitions; ducts and compressors; rugs and carpets; mirrors; mantles; draperies; furniture and furnishings; all building materials, supplies, and equipment now or hereafter delivered to said property and intended to be installed therein; all additions to and renewals or replacements of all of reason of the renting or leasing of the property, the improvements thereon, and equipment; together with all additions thereto and replacements thereof (Grantor hereby agreeing with respect to all additions and replacements to execute and deliver from time to time such further instruments as may be requested by Grantee to confirm the conveyance, transfer and assignment of any of the foregoing); and

TOGETHER with any and all rents which are now due or may hereafter become due by reason of the renting, leasing and bailment of property improvements thereon and Equipment; and

TOGETHER with any and all awards or payments, including interest thereon, and the right to receive the same, as a result of (a) the exercise of the right of eminent domain, (b) the alteration of the grade of any street, or (c) any other injury to, taking of, or decrease in the value of, the premises, to the extent of all amounts which may be secured by this deed at the date of receipt of any such award or payment by Grantee and of the reasonable attorney's fees, costs and disbursements incurred by Grantee in connection with the collection of such award or payment.

TO HAVE AND TO HOLD all the aforesaid property, property rights, contract rights, Equipment and claims (all of which are collectively referred to herein as the "Premises") to the use, benefit and behoof of the Grantee, forever, in FEE SIMPLE.

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be expressly provided in Exhibit "B" attached hereto and by this reference made a part hereof; and that Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

By execution hereof by the Grantor and acceptance hereof by the Grantee, the parties hereto hereby affirmatively state that they intend to create and establish a perpetual or indefinite security interest in favor of Grantee in the Premises conveyed hereby pursuant to Official Code of Georgia Annotated ("O.C.G.A.") §44-14-80(a)(1) or §44-14-80(a)(2), as applicable, and agree that title to the Premises conveyed hereby

shall not revert to Grantor until the expiration of the longest period of time permitted under whichever of said subsections as shall be applicable to this conveyance, or if later, the date determined in accordance with O.C.G.A. §44-14-80(b) or §44-14-80(c), as applicable, if any portion or all of the indebtedness secured hereby is extended or renewed.

This instrument is a deed and security agreement passing legal title pursuant to the laws of the State of Georgia governing conveyances of property to secure debt and security agreements and is not a mortgage;

This deed is made and intended to secure the payment of the indebtedness of Borrower to Grantee evidenced by the Note in accordance with the terms thereof, together with any and all other indebtedness or liability of any nature, whether direct or indirect, absolute, contingent or otherwise, now owing or which may hereafter be owing by Borrower to Grantee, however and whenever incurred, whether as principal, maker, endorser, guarantor, indemnitor, surety or otherwise, whether individually and separately or jointly with others (and whether or not such others are parties hereto), and all renewals, extensions or modifications of the Note or other indebtedness, either in whole or in part  ( all of which are collectively referred to herein as the "Secured Indebtedness").

Grantor covenants and agrees as follows:

1.      Payment of Secured Indebtedness. Grantor, if also Borrower, shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note or any other instrument or document pertaining to said Secured Indebtedness provided.

2.      Taxes and Insurance Premiums. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special, and other charges levied on, or assessed, placed or made against the Premises, this instrument or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby; (b) premiums on the policies of fire and other hazard insurance covering the Premises, as required in Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for title insurance, if this deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor. Grantor shall promptly deliver to Grantee receipts showing payment in full of all of the above items.  Upon notification from Grantee, Grantor shall pay to Grantee (together with and in addition to the payments of the principal and interest payable under the terms of the Note secured hereby if Grantor also is Borrower), on the installment-paying dates of the Note, until said Note is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds to pay said taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the date on which they become past due.  In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided.  In the event Grantee has required Grantor to pay to Grantee amounts estimated to be necessary to pay said taxes, assessments, insurance premiums and the like as provided hereinabove, then Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unused credit therefor as and when they become severally due and payable.  An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges.  Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges.  The excess amount advanced shall become a debt due by Grantor to Grantee, shall bear interest at the rate of interest specified in the Note from date of advancement, and shall be immediately due and payable to Grantee upon demand by Grantee.  Grantee may apply credits held by it for the above charges, or any part thereof, on account of any delinquent

installments of principal or interest or any other payments maturing or due under this instrument, and the amount of credit existing at any time shall be reduced by the amount thereof paid or applied as herein provided. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the provisions hereof. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

3.    Insurance Requirements; Damage and Destruction.

    (a)    Grantor shall keep the Premises insured for the benefit of the Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke and such other hazards as Grantee may from time to time require, all in amounts approved by Grantee not exceeding one hundred percent (100%) of the full insurable value; all insurance herein provided for shall be in form and companies approved by Grantee; and, regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insure against any loss or damage to the Premises, with loss payable to Grantee, without contribution to Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor.

    (b)    Not less than ten (10) days prior to the expiration date of each policy of insurance required of Grantor pursuant to this Article 3, and of each policy of insurance held as additional collateral to secure Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

    (c)    In the event of a foreclosure of this deed, the purchaser of the Premises shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to all property conveyed and to be conveyed by this deed, pursuant to the provisions of this Article 3.

4.    Maintenance of Premises. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all restrictive covenants, statutes, ordinances and requirements of any governmental authority relating to the Premises and the use thereof or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Premises, now or hereafter encumbered by this deed, which may be affected by any proceeding of the character referred to in Article 6 herein. No part of the Premises, including, but not limited to, any building, structure, parking lot, driveway, landscape scheme, timber or other ground improvement, equipment or other property, now or hereafter conveyed as security by or pursuant to this deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times and access thereto shall be permitted for that purpose.

5.    Further Assurances. Grantor shall execute and deliver (and pay the costs of preparation and recording thereof) to Grantee and to any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing

statements, assignments and renewal and substitution notes, so as to reaffirm, to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this deed and extensions or modifications thereof. Grantor, if also Borrower, upon request, made either personally or by mail, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within six (6) days in case the request is made personally, or within ten (10) days after the mailing of such request in the case the request is made by mail.

6.      Condemnation. Notwithstanding any taking of any property, herein conveyed and agreed to be conveyed, by eminent domain, alteration of the grade of any street or other injury to, or decrease in value of, the Premises by any public or quasi-public authority or corporation, Borrower shall continue to pay principal and interest on the Secured Indebtedness, and any reduction in the Secured Indebtedness resulting from the application by Grantee of any award or payment for such taking, alterations, injury or decrease in value of the Premises, as hereinafter set forth, shall be deemed to take effect only on the date of such receipt; and said award or payment may, in the sole discretion of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the purpose of altering, restoring or rebuilding any part of the Premises which may have been altered, damaged or destroyed as a result of any such taking, alteration of grade, or other injury to the Premises, or for any other purpose or object satisfactory to the Grantee, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor.  If, prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this deed shall have been sought or recovered or denied, and of the reasonable counsel fees, costs and disbursements incurred by Grantee in connection with the collection of such award or payment.

7.      Information Regarding the Premises. Grantor shall deliver to Grantee, at any time within thirty (30) days after notice and demand by Grantee but not more frequently than once per month, (a) a statement in such reasonable detail as Grantee may request, certified by the Grantor or an executive officer of a corporate Grantor, of the leases relating to the Premises, and (b) a statement in such reasonable detail as Grantee may request, certified by a certified public accountant or, at the option of Grantee, by the Grantor or an executive officer or treasurer of a corporate Grantor, of the income from and expenses of any one or more of the following:  (i) the conduct of any business on the Premises, (ii) the operation of the Premises, or (iii) the leasing of the Premises or any part thereof, for the last twelve (12) months calendar period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases and convenient facilities for the audit and verification of any such statement.

8.      Events of Default. Each of the following events shall constitute an "Event of Default" under this deed:

        (a)      should Grantor fail to pay the Secured Indebtedness or any part thereof, when and as the same shall become due and payable;

        (b)      should any warranty or representation of Grantor herein contained, or contained in any instrument, transfer, certificate, statement, conveyance, assignment or loan agreement given with respect to the Secured Indebtedness, prove untrue or misleading in any material aspect;

        (c)      should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises be diminished except as provided for in Article 6 herein;

(d)     should any federal tax lien or claim of lien for labor or material be filed of record against Grantor or the Premises and not be removed by payment or bond within thirty (30) days from the date of recording;

(e)     should a third party successfully assert the priority of a lien, security interest, or security deed over that of this deed;

(f)     should Borrower or Grantor make any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of Borrower or Grantor or of any of Grantor's property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of Borrower or Grantor, pursuant to the Federal Bankruptcy Act or any similar statute, be filed, or should Grantor be adjudicated as bankrupt or insolvent, or should Borrower or Grantor in any proceeding admit its insolvency or inability to pay its debts as they fall due, or should Grantor, if a corporation, be liquidated or dissolved or its articles of incorporation expire or be revoked, or, if a partnership or business association, be dissolved partitioned, or, if a trust, be terminated or expire;

(g)     should Borrower or Grantor fail to keep, observe, perform, carry out and execute in every particular their respective covenants, agreements, obligations and conditions set out in this deed, the Note, or in any other document or instrument securing or given with respect to the Secured Indebtedness, or should a default or event of default occur under the Note or any such other document or instrument;

(h)     should any event occur under any instrument, deed or agreement, given or made by Grantor to or with any third party, which would authorize the acceleration of any debt to any such third party the acceleration of which would materially affect Grantor's ability to pay when due any amounts owed to Grantee;

(i)     should there occur any change in the legal or equitable ownership of a controlling interest in Grantor, or any change in the management of Grantor, if in Grantee's sole judgment such change materially and adversely affects the ability of Grantor to perform Grantor's obligations under this deed; or

(k)     should Grantee, in good faith, deem itself insecure regarding the payment of any of the Secured Indebtedness.

9.     **Remedies.** Upon occurrence of an Event of Default, Grantee shall be entitled to exercise any one or more of the following remedies:

(a)     enter upon and take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises, and let the Premises, either in its own name, or in the name of the Grantor, and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all necessary charges and expenses, on account of the Secured Indebtedness, and Grantor will transfer and assign to Grantee, in form satisfactory to Grantee, Grantor's lessor interest in any lease now or hereafter affecting the whole or any part of the Premises;

(b)     pay any sums in any form or manner deemed expedient by Grantee to protect the security of this instrument or to cure any Event of Default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of interest specified in the Note, shall be a debt from Grantor to Grantee which shall be secured hereby and which shall be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the

principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this instrument;

       (c)    declare the entire Secured Indebtedness immediately due, payable and collectible, subject to any notice provisions as provided herein, regardless of maturity, and, in that event, the entire Secured Indebtedness shall become immediately due, payable and collectible;

       (d)    sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four (4) consecutive weeks (without regard to the actual number of days) in a newspaper in which sheriff's advertisements are published in said county, all other notice being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes an appoints Grantee or its assigns agent and attorney in fact to make such recitals, sale and conveyance, and all of the acts of such attorney in fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns, (and in the event of a deed in lieu of foreclosure, then as to such conveyance) shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, and all other exemptions of Grantor, or its successors in interest, in and to said Premises; and Grantee, or its assigns, shall collect the proceeds of such sale, reserving therefrom all unpaid Secured Indebtedness with interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums and other charges, with interest at the rate interest specified in the Note thereon from the date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and reasonable attorney's fees actually incurred, and pay over any surplus to Grantor (in the event of deficiency Borrower shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency); and in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily dispossessed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity; or

       (e)    With respect to the Equipment and any other personal property and fixtures in which a security interest is herein granted, to exercise any or all of the rights accruing to a secured party under the Uniform Commercial Code of the State of Georgia (O.C.G.A. §11-9-101 et seq.) and any other applicable law. Grantor shall, if Grantee requests, assemble all tangible items of such personal property and make them available to Grantee at a place or places to be designated by the Grantee, which shall be reasonably convenient to the Grantor. Any notice required by law to be given by Grantee of any sale or other disposition of the Equipment may be personally delivered to the Grantor or deposited in the United States mail with postage prepaid duly addressed to the Grantor at its address last known to Grantee at least ten (10) business days prior to such proposed sale or other disposition, and such shall constitute reasonable and legally sufficient notice to the Grantor of any such action. Grantee, in any action to foreclose this deed, or upon the occurrence of any Event of Default, shall be at the Superior Court of **Bryan County, Georgia**, to apply for the appointment of a receiver of the rents and profits or of the Premises, or both, without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due Grantee, or the solvency of any person or corporation liable for the payment of such amounts. In case of any sale under this deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, at the election of Grantee, the Premises or any part thereof may be sold in one parcel and as

an entirety, or in such parcels, manner, or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Premises are sold or the Secured Indebtedness is paid in full.

10.    <u>Waiver of Homestead Exemption Rights.</u> If an individual, Grantor, for Grantor and Grantor's family, hereby waives and renounces all homestead exemption rights provided for by the Constitution and Laws of the United States or the State of **GEORGIA**, in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof.

11.    <u>Time of the Essence.</u> Grantor agrees that where, by the terms of the conveyance made herein, or the Note or any of the other Secured Indebtedness secured hereby, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

12.    <u>Waiver.</u> The interest of Grantee hereunder and the Secured Indebtedness secured hereby arise from a "commercial transaction" within the meaning of O.C.G.A. 44-14-260. Accordingly, Grantor hereby expressly waives any and all rights which Grantor may have to notice prior to Grantee's seizure of any personal property which constitutes part of the Premises, whether such seizure is by writ of possession or otherwise. In addition, Grantor specifically waives any and all rights of Grantor under O.C.G.A. § 10-7-24, including any right to require Grantee to proceed against Borrower.

13.    <u>Exercise of Remedies No Bar to Subsequent Exercise.</u> Grantee shall have the right from time to time to sue for any sums, whether interest, principal, or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this deed, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against Borrower or Grantor, including an action of foreclosure, or any other action, for a default or defaults by Borrower or Grantor existing at the time such earlier action was commenced.

14.    <u>Remedies Cumulative.</u> The rights of Grantee, granted and arising under the clauses and covenants contained in this deed and the Note, shall be separate, distinct, and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others; all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law. No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

15.    <u>Notices.</u> Except as otherwise provided in Article 9(e) hereof, every provision for notice and demand or request shall be deemed fulfilled by written notice and demand or request personally served on one or more of the persons who shall at the time hold the record title to the Premises, or on their heirs or successors, or mailed by first class mail, postage prepaid (a) addressed to such person or persons, or their heirs or successors, at his, their, or its address last known to Grantee or (b) addressed to the street address of the Premises hereby conveyed, said notice so mailed being deemed given on the third day after the notice is mailed, or if earlier, on the date received by the addressee.

16.    <u>No Waiver of Future Compliance.</u> Any indulgence or departure at any time by Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by Borrower or Grantor.

17.    <u>Miscellaneous.</u> The words "Grantor" and "Grantee" whenever used herein shall include all heirs, executors, administrators, legal representatives, successors, and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either

gender and both singular and plural, and the word "Note" shall also include one or more notes and the grammatical construction of sentences shall conform thereto. If more than one party shall execute this deed, the term "Grantor" shall mean all parties signing, and each of them, and each agreement and obligation of Grantor shall be and mean the several as well as joint undertaking of each of them.

18.    Information Regarding Security Interest. For the purposes of complying with the Uniform Commercial Code, the parties agree that the respective addresses of Grantor, as Debtor, and Grantee, as Secured Party, are as follows:

        Debtor:               NoFree, LLC
                                394 Penrose Drive
                                Savannah, GA 31410

        Secured Party:         First Liberty Building and Loan
                                14 Greenville Street
                                Newnan, GA 30263

19.    Special Waivers. GRANTOR EXPRESSLY: (a) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN IN THIS DEED TO SECURE DEBT TO GRANTEE TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY BORROWER OR GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THIS DEED TO SECURE DEBT; (b) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES OF AMERICA, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY GRANTEE OF ANY RIGHT OR REMEDY PROVIDED TO GRANTEE, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THIS DEED TO SECURE DEBT; (c) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED TO SECURE DEBT, AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF THIS DEED TO SECURE DEBT AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR, AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING SAID DEED TO SECURE DEBT; (d) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY, AND WILLINGLY BY GRANTOR; AND (e) AGREES THAT GRANTOR'S RIGHT TO NOTICE SHALL BE LIMITED TO THOSE RIGHTS TO NOTICE PROVIDED BY THIS DEED TO SECURE DEBT AND NO OTHER.

20.    Environmental Matters.

      (a) For the purposes of this Article, "Hazardous Substance" shall mean any substance which is a hazardous substance as defined in CERCLA, or any other substance or material defined, designated, classified or considered as hazardous or toxic waste, hazardous or toxic material, or a hazardous, toxic, radioactive or dangerous substance under any Environmental Requirement;

      "Environmental Activity" shall mean any actual, proposed or threatened use, storage, holding, existence, release, emission, discharge, generation, processing, abatement, removal, disposition, handling or transportation of any Hazardous Substance from, to, upon, in, under or above the Premises or

otherwise relating to the Premises or the use of the Premises or any other activity or occurrence that causes or would cause any such event to exist;

"Environmental Requirements" shall mean all Superfund or Super Lien laws relating to any Hazardous Substance or Environmental Activity, and all other present and future federal, state and local laws, statutes, authorizations, judgments, decrees, concessions, grants, franchises, agreements, ordinances, codes, rules, regulations, orders and other governmental restrictions and requirements regulating, relating to or imposing liability or a standard of conduct concerning the environment or any Hazardous Substances or Environmental Activity including, without limitation, the following, as the same may be amended from time to time, and all regulations promulgated thereunder or in connection therewith: Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended by the Superfund Amendments and Reauthorization Act of 1986, 42 U.S.C. §9601 et seq. ("CERCLA"); Resource Conservation and Recovery Act of 1976, 42 U.S.C. 6901 et seq., as amended by the hazardous and Solid Waste Amendments of 1984, 42 U.S.C. §6901 et seq. ("RCRA"); Clean Air Act, 42 U.S.C. §7401-7626; Water Pollution Control Act (commonly referred to as the Clean Water Act), 33 U.S.C. §125 1 et seq.; Federal Insecticide, Fungicide, and Rodenticide Act, as amended by the Federal Environmental Pesticide Control Act of 1972 and by the Federal Pesticide Act of 1978, 7 U.S.C. §136 et seq.; Toxic Substances Control Act, 15 U.S.C. §2601 et seq.; Safe Drinking Water Act, 42 U.S.C. §300(f) et seq., and Georgia Underground Storage Tank Act, O.C.G.A. §12-3-1 et seq;

(b) Grantor certifies, represents and warrants to Grantee that: (i) Grantor and the Premises are in compliance in all material respects with all applicable Environmental Requirements; (ii) no investigations, inquiries, orders, hearings, actions or other proceedings by or before any governmental agency are pending or, to the best knowledge of the Grantor, threatened in connection with any Environmental Activity or alleged Environmental Activity; (iii) Grantor has no knowledge of the presence of any Hazardous Substances upon the Premises; (iv) Grantor has no knowledge of any facts or circumstances existing upon, in, under or above the Premises or relating to the Premises which may violate any applicable Environmental Requirement; (v) the use of the Premises for its intended purpose will not result in any Environmental Activity in violation of any applicable Environmental Requirements; (vi) Grantor has not engaged in any Environmental Activity and, to the best knowledge of the Grantor, no Environmental Activity has otherwise occurred, and no notice, order, directive, complaint or other communication, written or oral, has been made or issued by any governmental agency or other person or entity alleging the occurrence of any Environmental Activity in violation of any Environmental Requirements; (vii) Grantor has obtained and will at all times continue to obtain and maintain all licenses, permits or other governmental or regulatory approvals or consents, if any, necessary to comply with all Environmental Requirements relating to the Premises, and Grantor is and shall continue at all times to be in compliance with said licenses, permits, approvals or consents; and (viii) Grantor shall at all times, at its sole expense, comply in all material respects with all applicable Environmental Requirements relating to the Premises and the use thereof and will not engage in or otherwise permit the occurrence of any Environmental Activity in violation of any applicable Environmental Requirement;

(c) Grantor hereby grants to Grantee an easement over the real property constituting a part of the Premises for the purpose of inspecting said property for compliance with Environmental Requirements, said easement to include the right of Grantee to perform any inspections, tests, soil samples and/or other investigations of said property to determine the environmental conditions thereof at any time or times as shall be determined by Grantee (such inspections or other investigations to be coordinated with Grantor and performed at such times so as not to interfere unreasonably with any business operations of the Grantor thereon). Said easement shall continue in existence so long as any amount of the Secured Indebtedness shall remain outstanding. Nothing contained herein shall be deemed to impose any obligation whatsoever upon Grantee to perform any such inspections or other investigations of said property;

(d) Grantor shall indemnify and hold Grantee harmless from and against any and all claims,

demands, damages, judgments, liabilities, injuries, litigation and other proceedings and costs and expenses (including reasonable attorneys' fees and disbursements) which accrue against or are incurred by Grantee and arise directly or indirectly from or out of or in any way connected with (i) the failure of any representation or warranty contained in this Article 20 to be true and correct in all respects; (ii) the presence of any Hazardous Substance upon the Premises; or (iii) the occurrence of any Environmental Activity or any failure of Grantor or any other person or entity to comply with all applicable Environment Requirements relating to the Premises.

21.     Subrogation. Grantor and Grantee agree that Grantee shall be subrogated to the claims and liens of all parties whose claims and liens against the Premises are discharged or paid with the proceeds of the Note secured hereby.

22.     Binding Effect. This deed shall be binding upon and inure to the benefit of Grantorand Grantee and their respective heirs, personal representatives, successors and assigns.

23.     Applicable Law. This deed shall be governed and construed in accordance with the laws of the State of Georgia.

IN WITNESS WHEREOF, this deed has been duly executed and sealed by Grantor the day and year first above written.

Signed, sealed and delivered in the presence of:

WITNESS

NOTARY PUBLIC
COMMISSION EXPIRES:  3/8/25

GRANTOR(S):

NoFree, LLC

BY:_____(SEAL)
    Jerry Williams
    Manager



STATE OF GEORGIA
COUNTY OF GLYNN

### WAIVER OF BORROWER'S RIGHTS

**GRANTOR:** NoFree, LLC
**LENDER:**   First Liberty Building and Loan
**DATE OF SECURITY DEED:** December 19, 2024

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NON JUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER PROVISIONS OF THIS DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES OR BY REASON OF ANY OTHER APPLICABLE LAW, TO NOTICE AND TO JUDICIAL HEARING PRIOR TO EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED BY THIS DEED, AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR HAVE BEEN PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:                    GRANTOR:

WITNESS                                         NoFree, LLC

NOTARY PUBLIC                                   BY:_____(SEAL)
COMMISSION EXPIRES: 3/8/25                          Jerry Williams
                                                   Manager



## CLOSING ATTORNEY'S AFFIDAVIT

**GRANTOR:** NoFree, LLC
**LENDER:**     First Liberty Building and Loan
**DATE OF SECURITY DEED:** December 19, 2024

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower(s) constitutional rights to notice and judicial hearing prior to any such non-judicial foreclosure.

Sworn to and subscribed before me this
**19th day of December, 2024.**

Notary Public
My Commission Expires

NICHOLE D. MANNING
NOTARY PUBLIC
GLYNN COUNTY
STATE OF GEORGIA
My Comm. Expires Sept. 07, 2027
[NOTARY SEAL]

William T. Ligon, Jr.
Closing Attorney

## Exhibit "A"

All those two certain parcels or tracts of land situate, lying, and being in Bryan County, Georgia, and being known as Arnold's Point and Arnold's Point Cut-Out described as Parcels 3(a) and 3(b) in deed from International Paper Company dated October 13, 1965, recorded in the records of the Clerk of Superior Court of Bryan County, Georgia, in **Deed Book 3-0, Page 182,** to which deed and to the plat therein referenced, which is recorded in the Bryan County Records in **Plat Book C, Folio 361,** reference is hereby made and incorporated for a more particular description.

TOGETHER WITH that certain easement for access to aforesaid Arnold's Point Cut-Out granted by instrument dated April 9, 1973, from Mill Hill Landing, Inc. to the Citizens and Southern National Bank, as Trustee, etc., recorded in Bryan County Records in **Deed Book 4-A, Page 457.**

There is excepted and excluded from the above described land that portion thereof described in a deed from John R. Bartlett, Jr., Algie L. Outlaw, Jr., and Burch Williams to W. E. Smith dated November 4, 1976, and recorded in **Deed Book 4-K, Page 379,** Bryan County, Georgia Deed Records; provided, however, there is conveyed herewith that certain 20-foot wide easement for access to the southern portion of the above described tract herein conveyed, which 20-foot easement extends from the southern boundary conveyed to W. E. Smith to the northern boundary of said property. Said 20-foot easement granted herein is also shown as a 24-foot road easement on that plat of survey made by L. D. Bacon, Georgia Registered Surveyor, by survey dated November 1, 1976, and recorded in **Plat Book G-2, Page 147,** Bryan County, Georgia Deed Records, which plat by this reference thereto is incorporated herein for a more particular and accurate description of the easement herein conveyed.

There is further excepted and excluded from the above described land that portion thereof described in a warranty deed from **NoFree, LLC,** mistakenly identified as **No Free LLC,** to **Glass View Properties, LLC** dated April 13, 2017, and recorded April 21, 2017 in **Deed Book 1262, Page 657,** Bryan County, Georgia Deed Records and described in a quit claim deed from **NoFree, LLC,** mistakenly identified as **No Free LLC,** to **Glass View Properties, LLC** dated April 13, 2017, and recorded April 21, 2017 in **Deed Book 1262, Page 660,** Bryan County, Georgia Deed Records;

The above-described tract is a portion of the same property described in a deed from the Citizens and Southern National Bank, as Trustee, etc., to John R. Bartlett, Jr., et. al., as Trustees, etc., dated December 30, 1975, and recorded in **Deed Book 4-I, Page 56,** Bryan County, Georgia Deed Records, LESS AND EXCEPT, only that portion of the above-described property conveyed by the above referred to deed to W. E. Smith.

This is *a portion of* the same property conveyed to DOMINY HOLDINGS, INC. from SOUTHEAST TIMBERLANDS, INC. and KINGS FERRY PLANTATION, LLC in Limited Warranty Deed dated January 14, 2004, recorded in **Deed Book 389, Page 116,** Superior Court Clerk's Office, Bryan County, Georgia deed records as corrected by Scrivener's Affidavit recorded in Deed Book 1265, Page 689 - 691 said records.

 The property is also described as all of that certain tract or parcel of land situate, lying and being designated as the Northern portion of Arnold's Point, formerly Cherry Hill Trust No. 1 in the 20th G.M.D., Bryan County, Georgia, containing 970 acres, more or less, as shown on that certain plat of survey prepared for NoFree, LLC and Glassview Properties, prepared by Coleman Company, Inc., Don Edward Taylor, G.R.L.S. Number 3417, dated June 12, 2018, filed of record on April 1, 2020, in Plat Book 2020, Page 16, in the Office of the Clerk of Superior Court, Bryan County, Georgia.

**Parcel # 067 001**

24 - 0647

I CERTIFY THAT THIS IS A
TRUE AND CORRECT COPY
OF THE ORIGINAL DOCUMENT.

*Lorie Wright*

## NORTH CAROLINA DEED OF TRUST

SATISFACTION: The debt secured by the within Deed of Trust together
with the note(s) secured thereby has been satisfied in full.
This the _____ day of _____ 20 _____.
Signed: _____

_____

Parcel Identifier No. Verified by _____ County on the __ day of _____, 20 _____.
By: _____

Mail/Box to: Micah Hedgepeth 460 Dillard Rd., Highlands, NC 28741

This instrument was prepared by: Neumann Law Office, PLLC

Brief description for the Index: Lot 14 Bittersweet Hills, Highlands, NC 28741

THIS DEED of TRUST made this December 19, 2024 by and between:

Page 1 of 6

Association Form No. 6 Revised 7/2013.                North Carolina Bar          NC Bar Form No. 6
Printed by Agreement with NC Bar Association          North Carolina Association of    Inc. – Standard Form 6

| GRANTOR | TRUSTEE | BENEFICIARY |
|---|---|---|
| Holt Knob Holdings, LLC, a North Carolina limited liability company 1004 Memorial Lane, Suite 200 Savannah, GA 31410 Limited Liability Company | The Neumann Law Office, PLLC Attorneys at Law 460 Dillard Rd Highlands, NC 28741 | First Liberty Capital Partners, LLC, a Georgia limited liability company P.O. Box 2567 Newnan, GA 30264 |

Enter in appropriate block for each party: name address, and, if appropriate, character of entity; e.g. corporation or partnership

The designation Grantor, Trustee, and Beneficiary as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, That whereas the Grantor is indebted to the Beneficiary in the principal sum of Three Million Five Hundred Thousand Dollars ($3,500,000.00), as evidenced by a Promissory Note of even date herewith, the terms of which are incorporated herein by reference. The final due date for payments of said Promissory Note, if not sooner paid, is December 19, 2025.

NOW, THEREFORE, as security for said indebtedness, advancements and other sums expended by Beneficiary pursuant to this Deed of Trust and costs of collection (including attorneys fees as provided in the Promissory Note) and other valuable consideration, the receipt of which is hereby acknowledged; the Grantor has bargained, sold, given and conveyed and does by these presents bargain, sell, give, grant and convey to said Trustee, his heirs, or successors, and assigns, all of that certain lot, parcel(s) of land situated or condominium unit in the City of Highlands, Highlands City, Macon County, North Carolina, (the "Premises") and more particularly described as follows:

TO HAVE AND TO HOLD said Premises with all privileges and appurtenances thereunto belonging, to said Trustee, his heirs, successors, and assigns forever, upon the trusts, terms and conditions, and for the uses hereinafter set forth.

If the Grantor shall pay the Note secured herein in accordance with its terms, together with interest thereon, and any renewals or extensions thereof in whole or in part, all other sums secured hereby and shall comply with all of the covenants, terms and conditions of this Deed of Trust, then this conveyance shall be null and void and may be canceled of record at the request and the expense of the Grantor.

If, however, there shall be any default (a) in the payment of any sums due under the Note, this Deed of Trust or any other instrument securing the Note and such default is not cured within ten (10) days from the due date, or (b) if there shall be default in any of the other covenants, terms or conditions of the Note secured hereby, or any failure or neglect to comply with the covenants, terms or conditions

Page 2 of 6

contained in this Deed of Trust or any other instrument securing the Note and such default is not cured within fifteen (15) days after written notice, then and in any of such events, without further notice, it shall be lawful for and the duty of the Trustee, upon request of the Beneficiary, to sell the land herein conveyed at public auction for cash, after having first giving such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as may then be required by law and giving such notice and advertising the time and place of such sale in such manner as may then be provided by law, and upon such and any resales and upon compliance with the law then relating to foreclosure proceedings under power of sale to convey title to the purchaser in as full and ample manner as the Trustee is empowered. The Trustee shall be authorized to retain an attorney to represent him in such proceedings.

The proceeds of the Sale shall after the Trustee retains his commission, together with reasonable attorney's fees incurred by the Trustee in such proceedings, be applied to the costs of sale, including, but not limited to, costs of collection, taxes, assessments, costs of recording, service fees and incidental expenditures, the amount due on the Note hereby secured and advancements and other sums expended by the Beneficiary according to the provisions hereof and otherwise as required by the then existing law relating to foreclosures. The Trustee's commission shall be five percent (5%) of the gross proceeds of the sale or the minimum sum of $0.00 whichever is greater, for a completed foreclosure. In the event foreclosure is commenced, but not completed, the Grantor shall pay all expenses incurred by Trustee, including reasonable attorneys fees, and a partial commission computed on five per cent (5%) of the outstanding indebtedness or the above stated minimum sum, whichever is greater, in accordance with the following schedule, to-wit: one fourth (1/4) thereof before the Trustee issues a notice of hearing on the right to foreclosure; one half (1/2) thereof after issuance of said notice, three-fourths (3/4) thereof after such hearing; and the greater of the full commission or minimum sum after the initial sale.

And the said Grantor does hereby covenant and agree with the Trustee as follows:

1.    INSURANCE. Grantor shall keep all improvements on said land, now or hereafter erected, constantly insured for the benefit of the Beneficiary against loss by fire, windstorm and such other casualties and contingencies, in such manner and in such companies and for such amounts, not less than that amount necessary to pay the sum secured by this Deed of Trust, and as may be satisfactory to the Beneficiary. Grantor shall purchase such insurance, pay all premiums therefor, and shall deliver to Beneficiary such policies along with evidence of premium payments as long as the Note secured hereby remains unpaid. If Grantor fails to purchase such insurance, pay premiums therefor or deliver said policies along with evidence of payment of premiums thereon, then Beneficiary, at his option , may purchase such insurance. Such amounts paid by Beneficiary shall be added to the principal of the Note secured by this Deed of Trust, and shall be due and payable upon demand of Beneficiary. All proceeds from any insurance so maintained shall at the option of Beneficiary be applied to the debt secured hereby and if payable in installments, applied in the inverse order of maturity of such installments or to the repair or reconstruction of any improvements located upon the Property.

2.    TAXES, ASSESSMENTS, CHARGES. Grantor shall pay all taxes, assessments and charges as may be lawfully levied against said Premises within thirty (30) days after the same shall become due. In the event that Grantor fails to so pay all taxes, assessments and charges as herein required, then Beneficiary, at his option, may pay the same and the amounts so paid shall be added to the principal of the Note secured by this Deed of Trust, and shall be due and payable upon demand of Beneficiary.

3.    ASSIGNMENTS OF RENTS AND PROFITS. Grantor assigns to Beneficiary, in the event of default, all rents and profits from the land and any improvements thereon, and authorizes Beneficiary to enter upon and take possession of such land and improvements, to rent same, at any reasonable rate of rent determined by Beneficiary, and after deducting from any such rents the cost of reletting and collection, to apply the remainder to the debt secured hereby.

4.    PARTIAL RELEASE. Grantor shall not be entitled to the partial release of any of the above described property unless a specific provision providing therefor is included in this Deed of Trust. In the event a partial release provision is included in this Deed of Trust, Grantor must strictly comply with the terms thereof, Notwithstanding anything herein contained, Grantor shall not be entitled to any release of property unless Grantor is not in default and is in full compliance with all of the terms and provisions of the Note, this Deed of Trust, and any other instrument that may be securing said Note.

5.    WASTE. The Grantor covenants that he will keep the Premises herein conveyed in as good order, repair and condition as they are now, reasonable wear and tear excepted, and will comply with all governmental requirements respecting the Premises or their use, and that he will not commit or permit any waste.

6.    CONDEMNATION. In the event that any or all of the Premises shall be condemned and taken under the power of eminent domain, Grantor shall give immediate written notice to Beneficiary and Beneficiary shall have the right to receive and collect all damages awarded by reason of such taking, and the right to such damages hereby is assigned to Beneficiary who shall have the discretion to apply the amount so received, or any part thereof, to the indebtedness due hereunder and if payable in installments, applied in the inverse order of maturity of such installments, or to any alteration, repair or restoration of the Premises by Grantor.

Page 3 of 6

7.    WARRANTIES. Grantor covenants with Trustee and Beneficiary that he is seized of the Premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that he will warrant and defend the title against the lawful claims of all persons whomsoever, except for the exceptions hereinafter stated. Title to the property hereinabove described is subject to the following exceptions:

8.    SUBSTITUTION OF TRUSTEE. Grantor and Trustee covenant and agree to, and with Beneficiary that in case the said Trustee, or any successor trustee, shall die, become incapable of acting, renounce his trust, or for any reason the holder of the Note desires to replace said Trustee, then the holder may appoint, in writing, a trustee to take the place of the Trustee, and upon the probate and registration of the same, the Trustee thus appointed shall succeed to all rights, powers and duties of the Trustee.

☒    THE FOLLOWING PARAGRAPH, 9. SALE OF PREMISES, SHALL NOT APPLY UNLESS THE BLOCK TO THE LEFT MARGIN OF THIS SENTENCE IS MARKED AND/OR INITIALED.

9.    SALE OF PREMISES. Grantor agrees that if the Premises or any part thereof or interest therein is sold, assigned, transferred, conveyed or otherwise alienated by Grantor, whether voluntarily or involuntarily or by operation of law [other than: (i) the creation of a lien or other encumbrance subordinate to this Deed of Trust which does not relate to a transfer of rights of occupancy in the Premises; (ii) the creation of a purchase money security interest for household appliances; (iii) a transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety; (iv) the grant of a leasehold interest of three (3) years or less not containing an option to purchase; (v) a transfer to a relative resulting from the death of a Grantor; (vi) a transfer where the spouse or children of the Grantor become the owner of the Premises; (vii) a transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Grantor becomes an owner of the Premises; (viii) a transfer into an inter vivos trust in which the Grantor is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the Premises], without the prior written consent of Beneficiary, Beneficiary, at its own option, may declare the Note secured hereby and all other obligations hereunder to be forthwith due and payable. Any change in the legal or equitable title of the Premises or in the beneficial ownership of the Premises, including the sale, conveyance or disposition of a majority interest in the Grantor if a corporation or partnership, whether or not of record and whether or not for consideration, shall be deemed to be the transfer of an interest in the Premises.

10.    ADVANCEMENTS. If Grantor shall fail to perform any of the covenants or obligations contained herein or in any other instrument given as additional security for the Note secured hereby, the Beneficiary may, but without obligation, make advances to perform such covenants or obligations, and all such sums so advanced shall be added to the principal sum, shall bear interest at the rate provided in the Note secured hereby for sums due after default and shall be due from Grantor on demand of the Beneficiary. No advancement or anything contained in this paragraph shall constitute a waiver by Beneficiary or prevent such failure to perform from constituting an event of default.

11.    INDEMNITY. If any suit or proceeding be brought against the Trustee or Beneficiary or if any suit or proceeding be brought which may affect the value or title of the Premises, Grantor shall defend, indemnify and hold harmless and on demand reimburse Trustee or Beneficiary from any loss, cost, damage or expense and any sums expended by Trustee or Beneficiary shall bear interest as provided in the Note secured hereby for sums due after default and shall be due and payable on demand.

Page 4 of 6

12.    WAIVERS. Grantor waives all rights to require marshaling of assets by the Trustee or Beneficiary. No delay or omission of the Trustee or Beneficiary in the exercise of any right, power or remedy arising under the Note or this Deed of Trust shall be deemed a waiver of any default or acquiescence therein or shall impair or waive the exercise of such right, power or remedy by Trustee or Beneficiary at any other time.

13.    CIVIL ACTION. In the event that the Trustee is named as a party to any civil action as Trustee in this Deed of Trust, the Trustee shall be entitled to employ an attorney at law, including himself if he is a licensed attorney, to represent him in said action and the reasonable attorney's fee of the Trustee in such action shall be paid by the Beneficiary and added to the principal of the Note secured by this Deed of Trust and bear interest at the rate provided in the Note for sums due after default.

14.    PRIOR LIENS. Default under the terms of any instrument secured by a lien to which this Deed of Trust is subordinate shall constitute default hereunder.

15.    OTHER TERMS.

_____

_____

IN WITNESS WHEREOF, the Grantor has duly executed the foregoing as of the day and year first above written.

Holt Knob Holdings, LLC, a North Carolina limited liability
company (SEAL).
          (Entity Name)

By: Jerry Williams_____            (SEAL)
          Title: Member/Manager_____

By:_____            (SEAL)
          Title:_____

By:_____            (SEAL)
          Title:_____

State of North Carolina - County of_____

I, the undersigned Notary Public of the County and State aforesaid, certify that _____
_____ personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed. Witness my hand and Notarial stamp or seal this _____ day of _____, 20_____.

My Commission Expires:_____        _____
                                                Notary Public

State of North Carolina - County of  Chatham

I, the undersigned Notary Public of the County and State aforesaid, certify that Jerry Williams _____
personally came before me this day and acknowledged that _____ he is the Member/Manager_____ of Holt Knob Holdings, LLC, a North Carolina limited liability company _____, a North Carolina or corporation/limited liability company/general partnership/limited partnership (strike through the inapplicable), and that by authority duly given and as the act of such _____ entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this  204  day of December, 20 24.
My Commission Expires: 3/8/25        _____
                                     Notary Public

Association Form No. 6 Revised 7/2013
Printed by Agreement with NC Bar Association

Carolina Bar Association NC Bar        No. 6
North Carolina Association of Realtos@, Inc. – Standard Form 6

State of ~~North Carolina~~ Georgia - County of Chatham

I, the undersigned Notary Public of the County and State aforesaid, certify that _____

Witness my hand and Notarial stamp or seal, this ____ day of December, 20 24

My Commission Expires: 3/8/24

Lisa Dartage
Notary Public

The foregoing Certificate(s) of _____

is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

_____ Register of Deeds for _____ County

By: _____ Deputy/Assistant - Register of Deeds

Page 6 of 6

BK: CRP N-43
PG: 2363 - 2369
RECORDED:
01/29/2025
12:21:51 PM
DEPUTY
BY: GLORIA CABE

2025000505
MACON COUNTY, NC
TODD RABY
REGISTER OF DEEDS

NC FEE $64.00

# NORTH CAROLINA DEED OF TRUST

SATISFACTION: The debt secured by the within Deed of Trust together
with the note(s) secured thereby has been satisfied in full.

This the _____ day of _____ 20 _____.

Signed: _____

_____

Parcel Identifier No. Verified by _____ County on the ___ day of _____, 20 _____.

By: _____

Mail/Box to: Micah Hedgepeth 460 Dillard Rd., Highlands, NC 28741

This instrument was prepared by: Neumann Law Office, PLLC

Brief description for the Index: Lot 14 Bittersweet Hills, Highlands, NC 28741

THIS DEED of TRUST made this December 19, 2024 by and between:

Submitted electronically by "The Neumann Law Office, PLLC"
in compliance with North Carolina statutes governing recordable documents
and the terms of the submitter agreement with the Macon County Register of Deeds.

Association Form No. 6 Revised 7/2013
Printed by Agreement with NC Bar Association

North Carolina Bar
North Carolina Association of

NC Bar Fom No. 6
Inc. - Standard Form 6

Book N-43 Page 2364

| GRANTOR | TRUSTEE | BENEFICIARY |
|---|---|---|
| Holt Knob Holdings, LLC, a North Carolina limited liability company 1004 Memorial Lane, Suite 200 Savannah, GA 31410 Limited Liability Company | The Neumann Law Office, PLLC Attorneys at Law 460 Dillard Rd Highlands, NC 28741 | First Liberty Capital Partners, LLC, a Georgia limited liability company P.O. Box 2567 Newnan, GA 30264 |

Enter in appropriate block for each party: name address, and, if appropriate, character of entity, e.g. corporation or partnership

The designation Grantor, Trustee, and Beneficiary as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, That whereas the Grantor is indebted to the Beneficiary in the principal sum of Three Million Five Hundred Thousand Dollars ($3,500,000.00) as evidenced by a Promissory Note of even date herewith, the terms of which are incorporated herein by reference. The final due date for payrnents of said Promissory Note, if not sooner paid, is December 19, 2025.

NOW, THEREFORE, as security for said indebtedness, advancements and other sums expended by Beneficiary pursuant to this Deed of Trust and costs of collection (including attorneys fees as provided in the Promissory Note) and other valuable consideration, the receipt of which is hereby acknowledged, the Grantor has bargained, sold, given and conveyed and does by these presents bargain, sell, give, grant and convey to said Trustee, his heirs, or successors, and assigns, all of that certain lot, parcel(s) of land situated or condominium unit in the City of Highlands, Highlands City, Macon County, North Carolina, (the "Premises") and more particularly described as follows:

TO HAVE AND TO HOLD said Premises with all privileges and appurtenances thereunto belonging, to said Trustee, his heirs, successors, and assigns forever, upon the trusts, terms and conditions, and for the uses hereinafter set forth.

If the Grantor shall pay the Note secured hereby in accordance with its terms, together with interest thereon, and any renewals or extensions thereof in whole or in part, all other sums secured hereby and shall comply with all of the covenants, terms and conditions of this Deed of Trust, then this conveyance shall be null and void and may be canceled of record at the request and the expense of the Grantor.

If, however, there shall be any default (a) in the payment of any sums due under the Note, this Deed of Trust or any other instrument securing the Note and such default is not cured within ten (10) days from the due date, or (b) if there shall be default in any of the other covenants, terms or conditions of the Note secured hereby, or any failure or neglect to comply with the covenants, terms or conditions

Page 2 of 6

contained in this Deed of Trust or any other instrument securing the Note and such default is not cured within fifteen (15) days after vvritten notice, then and in any of such events, without further notice, it shall be lawful for and the duty of the Trustee, upon request of the Beneficiary, to sell the land herein conveyed at public auction for cash, after having first giving such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as may then be required by law and giving such notice and advertising the time and place of such sale in such manner as may then be provided by law, and upon such and any resales and upon compliance with the law then relating to foreclosure proceedings under power of sale to convey title to the purchaser in as full and ample manner as the Trustee is empowered. The Trustee shall be authorized to retain an attorney to represent him in such proceedings.

The proceeds of the Sale shall after the Trustee retains his commission, together with reasonable attorneys fees incurred by the Trustee in such proceedings, be applied to the costs of sale, including, but not limited to, costs of collection, taxes, assessments, costs of recording, service fees and incidental expenditures, the amount due on the Note hereby secured and advancements and other sums expended by the Beneficiary according to the provisions hereof and otherwise as required by then existing law relating to foreclosures. The Trustee's commission shall be five percent (5%) of the gross proceeds of the sale or the minimum sum of <u>$0.00</u> whichever is greater, for a completed foreclosure. In the event foreclosure is commenced, but not completed, the Grantor shall pay all expenses incurred by Trustee, including reasonable attorneys fees, and a partial commission computed on five per cent (5%) of the outstanding indebtedness or the above stated minimum sum, whichever is greater, in accordance with the following schedule, to-wit: one fourth (1/4) thereof before the Trustee issues a notice of hearing on the right to foreclosure; one half (1/2) thereof after issuance of said notice, three-fourths (3/4) thereof after such hearing; and the greater of the full commission or minimum sum after the initial sale.

And the said Grantor does hereby covenant and agree with the Trustee as follows:

1.      INSURANCE. Grantor shall keep all improvements on said land, now or hereafter erected, constantly insured for the benefit of the Beneficiary against loss by fire, windstorm and such other casualties and contingencies, in such manner and in such companies and for such amounts, not less than that amount necessary to pay the sum secured by this Deed of Trust, and as may be satisfactory to the Beneficiary. Grantor shall purchase such insurance, pay all premiums therefor, and shall deliver to Beneficiary such policies along with evidence of premium payments as long as the Note secured hereby remains unpaid. If Grantor fails to purchase such insurance, pay premiums therefor or deliver said policies along with evidence of payment of premiums thereon, then Beneficiary, at his option , may purchase such insurance. Such amounts paid by Beneficiary shall be added to the principal of the Note secured by this Deed of Trust, and shall be due and payable upon demand of Beneficiary. All proceeds from any insurance so maintained shall at the option of Beneficiary be applied to the debt secured hereby and if payable in installments, applied in the inverse order of maturity of such installments or to the repair or reconstruction of any improvements located upon the Property.

2.      TAXES, ASSESSMENTS, CHARGES. Grantor shall pay all taxes, assessments and charges as may be lawfully levied against said Premises within thirty (30) days after the same shall become due. In the event that Grantor fails to so pay all taxes, assessments and charges as herein required, then Beneficiary, at his option, may pay the same and the amounts so paid shall be added to the principal of the Note secured by this Deed of Trust, and shall be due and payable upon demand of Beneficiary.

3.      ASSIGNMENTS OF RENTS AND PROFITS. Grantor assigns to Beneficiary, in the event of default, all rents and profits from the land and any improvements thereon, and authorizes Beneficiary to enter upon and take possession of such land and improvements, to rent same, at any reasonable rate of rent determined by Beneficiary, and after deducting from any such rents the cost of reletting and collection, to apply the remainder to the debt secured hereby.

4.      PARTIAL RELEASE. Grantor shall not be entitled to the partial release of any of the above described property unless a specific provision providing therefor is included in this Deed of Trust. In the event a partial release provision is included in this Deed of Trust, Grantor must strictly comply with the terms thereof, Notwithstanding anything herein contained, Grantor shall not be entitled to any release of property unless Grantor is not in default and is in full compliance with all of the terms and provisions of the Note, this Deed of Trust, and any other instrument that may be securing said Note.

5.      WASTE. The Grantor covenants that he will keep the Premises herein conveyed in as good order, repair and condition as they are now, reasonable wear and tear excepted, and will comply with all governmental requirements respecting the Premises or their use, and that he will not commit or permit any waste.

6.      CONDEMNATION. In the event that any or all of the Premises shall be condemned and taken under the power of eminent domain, Grantor shall give immediate written notice to Beneficiary and Beneficiary shall have the right to receive and collect all damages awarded by reason of such taking, and the right to such damages hereby is assigned to Beneficiary who shall have the discretion to apply the amount so received, or any part thereof, to the indebtedness due hereunder and if payable in installments, applied in the inverse order of maturity of such installments, or to any alteration, repair or restoration of the Premises by Grantor.

Page 3 of 6

7.    WARRANTIES. Grantor covenants with Trustee and Beneficiary that he is seized of the Premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that he will warrant and defend the title against the lawful claims of all persons whomsoever, except for the exceptions hereinafter stated. Title to the property hereinabove described is subject to the following exceptions:

8.    SUBSTITUTION OF TRUSTEE. Grantor and Trustee covenant and agree to and with Beneficiary that in case the said Trustee, or any successor trustee, shall die, become incapable of acting, renounce his trust, or for any reason the holder of the Note desires to replace said Trustee, then the holder may appoint, in writing, a trustee to take the place of the Trustee; and upon the probate and registration of the same, the Trustee thus appointed shall succeed to all rights, powers and duties of the Trustee.

☒    THE FOLLOWING PARAGRAPH, 9. SALE OF PREMISES, SHALL NOT APPLY UNLESS THE BLOCK TO THE LEFT MARGIN OF THIS SENTENCE IS MARKED AND/OR INITIALED.

9.    SALE OF PREMISES. Grantor agrees that if the Premises or any part thereof or interest therein is sold, assigned, transferred, conveyed or otherwise alienated by Grantor, whether voluntarily or involuntarily or by operation of law [other than: (i) the creation of a lien or other encumbrance subordinate to this Deed of Trust which does not relate to a transfer of rights of occupancy in the Premises; (ii) the creation of a purchase money security interest for household appliances; (iii) a transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety; (iv) the grant of a leasehold interest of three (3) years or less not containing an option to purchase; (v) a transfer to a relative resulting from the death of a Grantor; (vi) a transfer where the spouse or children of the Grantor become the owner of the Premises; (vii) a transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Grantor becomes an owner of the Premises; (viii) a transfer into an inter vivos trust in which the Grantor is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the Premises], without the prior written consent of Beneficiary, Beneficiary, at its own option, may declare the Note secured hereby and all other obligations hereunder to be forthwith due and payable. Any change in the legal or equitable title of the Premises or in the beneficial ownership of the Premises, including the sale, conveyance or disposition of a majority interest in the Grantor if a corporation or partnership, whether or not of record and whether or not for consideration, shall be deemed to be the transfer of an interest in the Premises.

10.    ADVANCEMENTS. If Grantor shall fail to perform any of the covenants or obligations contained herein or in any other instrument given as additional security for the Note secured hereby, the Beneficiary may, but without obligation, make advances to perform such covenants or obligations, and all such sums so advanced shall be added to the principal sum, shall bear interest at the rate provided in the Note secured hereby for sums due after default and shall be due from Grantor on demand of the Beneficiary. No advancement or anything contained in this paragraph shall constitute a waiver by Beneficiary or prevent such failure to perform from constituting an event of default.

11.    INDEMNITY. If any suit or proceeding be brought against the Trustee or Beneficiary or if any suit or proceeding be brought which may affect the value or title of the Premises, Grantor shall defend, indemnify and hold harmless and on demand reimburse Trustee or Beneficiary from any loss, cost, damage or expense and any sums expended by Trustee or Beneficiary shall bear interest as provided in the Note secured hereby for sums due after default and shall be due and payable on demand.

Association Form No. 6 Revised 7/2013
Printed by Agreement with NC Bar Association

North Carolina Bar Association NC Bar Fotm No. 6
North Carolina Association of Realtos@, Inc. – Standard Form 6

12.    WAIVERS. Grantor waives all rights to require marshaling of assets by the Trustee or Beneficiary. No delay or omission of the Trustee or Beneficiary in the exercise of any right, power or remedy arising under the Note or this Deed of Trust shall be deemed a waiver of any default or acquiescence therein or shall impair or waive the exercise of such right, power or remedy by Trustee or Beneficiary at any other time.

13.    CIVIL ACTION. In the event that the Trustee is named as a party to any civil action as Trustee in this Deed of Trust, the Trustee shall be entitled to employ an attorney at law, including himself if he is a licensed attorney, to represent him in said action and the reasonable attorney's fee of the Trustee in such action shall be paid by the Beneficiary and added to the principal of the Note secured by this Deed of Trust and bear interest at the rate provided in the Note for sums due after default.

14.    PRIOR LIENS. Default under the terms of any instrument secured by a lien to which this Deed of Trust is subordinate shall constitute default hereunder.

15.    OTHER TERMS.

_____

IN WITNESS WHEREOF, the Grantor has duly executed the foregoing as of the day and year first above written.

Holt Knob Holdings, LLC, a North Carolina limited liability
company (SEAL)
                (Entity Name)

By: Jerry Williams_____
        Title: Member/Manager_____                                    (SEAL)

By: _____
        Title: _____                                        (SEAL)

By: _____
        Title: _____                                        (SEAL)

_____

State of North Carolina - County of_____
I, the undersigned Notary Public of the County and State aforesaid, certify that _____
_____ personally    appeared    before    me    this    day    and acknowledged the due execution of the foregoing instrument for the purposes therein expressed. Witness my hand and Notarial stamp or seal this _____ day of _____ , 20 _____.

My Commission Expires:_____            _____
                                                                                    Notary Public

State of ~~North Carolina~~ Georgia - County of_Towns_
        I, the undersigned Notary Public of the County and State aforesaid, certify that Jerry Williams _____
personally came before me this day and acknowledged that_____he is the Member/Manager_____of
Holt Knob Holdings, LLC, a North Carolina limited liability company_____, ~~a North Carolina or corporation/limited liability company/general partnership/limited partnership (strike through the inapplicable)~~, and that by authority duly given and as the act of such _____ entity, he signed the foregoing instrument in its name on its behalf as its act and deed. Witness my hand and Notarial stamp or seal, this _24_ day of_Jan._, 20_25_.

My Commission Expires:_09/05/2027_            _Madelyn Marie Unman_
                                                                                    Notary Public

State of North Carolina - County of_____
I, the undersigned Notary Public of the County and State aforesaid, certify that_____

_____

Witness my hand and Notarial stamp or seal, this _____day of_____, 20 _____.

My Commission Expires:_____

_____
                          Notary Public

The foregoing Certificate(s) of _____
is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

_____ Register of Deeds for _____ County
By:_____ Deputy/Assistant - Register of Deeds

_____

Association Form No. 6    Revised 7/2013
Printed by Agreement with NC Bar Association

North Carolina Bar Association NC Bar        No. 6
North Carolina Association of Realtos@, Inc. - Standard Form 6

Book N-43 Page 2369

## Exhibit A

Being Lot 14, Bittersweet Hills, containing 0.78 acres, as shown on the survey map prepared by Ben West, N.C. Professional Land Surveyor, dated October 24, 2020, drawing number 5260, and recorded on Plat Card #12937, Macon County Registry, to which reference is hereby made for a full and complete description.

Being all the same lands and premises, together with all easements, rights of way, and appurtenances thereunto appertaining, as are described in that certain Deed recorded in Book Z-31, Pages 162 - 163, Macon County Registry, to which reference is specifically made.

For further source of title see that certain Deed recorded in Book Y-42, Pages 1044 – 1047, Macon County Registry, to which reference is specifically made.

Subject to the public road right of way of Holt Circle, as shown on the above-referenced plats.

Subject to the Deed of Easement recorded in Book Z-42, Pages 2219 – 2221, Macon County Registry, to which reference is specifically made.