# Exhibit "B"

Deed Book 67478 Page 128
Filed and Recorded 01/02/2024 01:14:00 PM
2024-0000702
CHÉ ALEXANDER
Clerk of Superior Court
Fulton County, GA
Participant IDs: 1927649461

**Tax Parcel No. 14007800030922**

Upon recording, please return to:

**Spencer Gandy, Esq.**
**Spencer Gandy LLC**
**3865 Wieuca Terrace NE**
**Atlanta, Georgia 30342**

## DEED TO SECURE DEBT,
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**This Deed to Secure Debt is exempt from intangible tax upon filing as the loan secured hereby has a maturity of less than three years as provided in OCGA Sections 48-6-60 et. seq.**

THIS DEED TO SECURE DEBT, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT

(hereinafter referred to as this "Deed") made this __28__ day of **December, 2023**, by and between **NO FREE, LLC, a Georgia limited liability company** ("Grantor"), whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and **First Liberty Capital Partners LLC ("Grantee")**, whose address is P. O. Box 2567, Newnan, GA 30264.

## WITNESSETH:

THAT, WHEREAS, Grantor is justly indebted to Grantee in the sum of **Two Hundred Fifty Thousand Dollars ($250,000.00)** in lawful money of the United States, or, if this instrument is a construction mortgage, so much of said sum as may be advanced and outstanding from time to time, and has agreed to pay the same, with interest thereon, according to the terms of a certain promissory note (hereinafter referred to as the "Note") given by Grantor to Grantee, bearing even date herewith, with final payment being due on **December 28, 2024;**

NOW, THEREFORE, in consideration of the premises and of the sum hereinabove set forth and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee and the successors, successors-in-title and assigns of Grantee the following property (the "Property"), to-wit:

**That real property described in Exhibit "A" attached hereto and by this reference incorporated herein;**

**This Deed is subject to those matters set forth in Exhibit "B" attached hereto and by this reference incorporated herein.**

TOGETHER WITH all and singular, the improvements, fixtures, easements, hereditaments, rights, members and appurtenances thereunto belonging or in anywise appertaining, including, without limitation: the buildings and improvements now or hereafter erected thereon, and the fixtures, attachments, appliances, equipment, machinery, furnishings and other articles affixed or attached to said buildings and improvements or used or intended to be used with or in connection with the use, operation or enjoyment of the Property, including, without

I

limitation, all building materials, electrical, plumbing, heating and air conditioning systems (including window units), all built-in appliances, cabinets and lighting fixtures, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of, any of the foregoing (all of the foregoing is hereinafter collectively referred to as the "Improvements and Personal Property"); and all minerals, shrubs, trees or other emblements now or hereafter on said Property or under or above the same or any part or parcel thereof, and all leasehold estates, usufructuary interests, and rights of Grantor in the Property, and all rights of Grantor as lessor or landlord under any lease or sublease letting or demising all or any portion of the Property or the Improvements and Personal Property, including, without limitation, the interest of Grantor in all rents and security deposits paid or to be paid thereunder; and all right of claim of Grantor with respect to the proceeds of insurance which Grantor now has or may hereafter acquire in the Property and the Improvements and Personal Property and any and all awards made for the taking by eminent domain, by any proceeding or purchase in lieu thereof, of the whole or any part of the Property and the Improvements and Personal Property; and if this is a construction mortgage all right, title and interest of Grantor in and to all construction materials, equipment, supplies and contracts.

TO HAVE AND TO HOLD all of the Property, the Improvements and Personal Property, property rights, leases, contract rights, claims and other items set forth in the preceding paragraph (all of which are collectively referred to as the "Premises") to the use, benefit and behoof of Grantee, forever, in fee simple.

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be herein expressly provided; and the Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

This instrument is a deed passing legal title to the Premises pursuant to the laws of the State of Georgia governing loan or security deeds and security agreements and is not a mortgage, as "mortgage" is defined for the purpose of the real property law of the State of Georgia, but does constitute a "construction mortgage" as defined in Section 11-9-313(1)(c) of the Official Code of Georgia if so indicated hereinabove, and is made and intended to secure (i) the payment of the indebtedness evidenced by the Note and any modifications, extensions, renewals or consolidations thereof and substitutions therefor, either in whole or in part; (ii) any and all additional advances made by Grantee to protect or preserve the Premises or the security interest created hereby on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Premises at the time of such advance); (iii) the performance of all obligations of Grantor under this Deed; (iv) the performance of all obligations of Grantor under any loan agreement (including, without limitation, any construction loan agreement), guaranty and other agreements, documents or instruments evidencing, securing or otherwise relating to the indebtedness evidenced or guarantied by the Note (the Note, this Deed, and any and all other such loan agreements, guarantees, agreements, documents and instruments are hereinafter collectively referred to as the "Loan Documents"); and (v) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due to become due, and all renewals, modifications, consolidations and extensions thereof and substitutions therefor, either in whole or in part. All of the foregoing secured hereby are collectively described herein as the "Secured Indebtedness."

AND GRANTOR FURTHER COVENANTS AND AGREES WITH GRANTEE as follows:

1. Payment of Secured Indebtedness. Grantor shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note, the Loan Documents and this Deed provided.

2. Payment of Other Items. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special and other charges levied on, or assessed, placed or made against the Premises, this Deed or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for mortgage insurance, if this Deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor. Grantor shall pay to Grantee, together with and in addition to the payments of principal and interest payable under the Loan Documents, on the installment-paying dates thereof, until the Secured Indebtedness is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds on hand to pay taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the date on which they become past due. In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall be immediately due and payable to Grantee and bear interest at the rate

2

of 12.50% per annum from date of advancement. Grantee may apply credits held by it for the above charges, on account of any delinquent installments of principal or interest or any other payments maturing or due under this Deed, and the amount of credit existing at any time shall be reduced by the amount so paid or applied. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the provisions hereof, provided that nothing contained in this paragraph shall be deemed to authorize or to constitute Grantee's consent to the transfer of the Premises or any portion thereof or any interest therein, including a security interest. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

3.    Insurance. (a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke, and such other hazards (so-called "All Risk Coverage"), including flood, as Grantee may from time to time require, all in amounts approved by Grantee not to be less than 100% of the full replacement cost. Grantor shall also maintain (1) comprehensive public liability insurance, to include workmen's compensation insurance, covering all liabilities incident to the construction, ownership, possession and operation of the Premises, and naming Grantee as an additional insured thereunder, in an amount acceptable to Grantee; (2) rent insurance against loss of income arising out of any hazard against which the Premises are required to be insured under subparagraph (a) above in an amount not less than one (1) year's gross rental income from the Premises; and (3) such other insurance on the Premises or any replacements or substitutions therefor and in such amounts as may from time to time be reasonably required by Grantee against other insurable casualties which at the time are commonly insured against in the case of properties of similar character and location, due regard being given to the height and type of the improvements, their construction, location, use and occupancy, or any replacements or substitutions therefor including, without limitation, boiler insurance and flood hazard insurance, if applicable. All such insurance shall be written in form and by companies approved by Grantee; and regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insurance against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor.

(b)    Not less than 30 days prior to the expiration date of each policy of insurance required of Grantor hereunder, and of each policy of insurance held as additional collateral to secure the Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

(c)    In the event of a foreclosure of this Deed, the purchaser of the Premises shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to the Premises.

4.    Maintenance and Inspection. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Premises, now or hereafter encumbered by this Deed, which may be affected by a proceeding of the character referred to in Article 7 herein. No part of the Premises now or hereafter conveyed as security by or pursuant to this Deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in or consent to any change in the private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times.

5.    Leases and Assignment of Rents. Grantor shall faithfully perform the covenants of Grantor as lessor under any present and future leases, affecting all or any portion of the Premises, and neither do nor neglect to do, nor permit to be done, anything which may cause the termination of said leases, or any of them, or which may diminish or impair their value, or the rents provided for therein, or the interest of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee thereto, shall not (a) assign the rents, or any part thereof, from the Premises, (b) consent to the cancellation or surrender of any lease of the Premises, or any part thereof, now existing or hereafter to be made, (c) modify any such lease so as to shorten the unexpired term thereof, or so as to decrease the amount of the rent payable thereunder, or (d) collect rents from the Premises for more than one month in advance. Grantor shall procure and deliver to Grantee at the time of executing this Deed, or at any time within thirty (30) days after notice and demand, estoppel letters or certificates from each lessee, tenant or occupant in possession of the Premises, as required by, and in form and substance satisfactory to, Grantee and deliver to Grantee a recorded assignment of all of the lessor's interest in said leases, in form and substance satisfactory to Grantee (in addition to the

3

conveyance hereunder), and proof of due service of copy of said assignment on each lessee, either personally or by prepaid registered mail, return receipt requested.

Grantor hereby absolutely assigns and transfers to Grantee all the rents, issues and profits of the Premises, and hereby gives to and confers upon Grantee the right, power and authority to collect such rents, issues and profits. Grantor irrevocably appoints Grantee its true and lawful attorney-in-fact, at the option of Grantee at any time and from time to time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Grantor or Grantee, for all such rents, issues and profits and apply the same to the Secured Indebtedness.

Notwithstanding anything contained herein to the contrary, this assignment is intended and shall be construed to create, an absolute, present assignment from Grantor to Grantee. The rents, issues and profits of the Premises are hereby assigned absolutely by Grantor to Grantee. It is the further intent of Grantee and Grantor that the rents, issues and profits absolutely assigned are no longer, during the term of this Deed, property of Grantor or property of the estate of Grantor as defined in 11 U.S.C. § 541 and shall not constitute collateral, cash or otherwise, of Grantor.

Although this assignment constitutes a present and current assignment of all rents, issues and profits of the Premises, so long as Grantor is not in default hereunder, Grantee shall not demand that such rents, issues and profits be paid directly to Grantee, and Grantor shall have a revocable license to collect, but no more than one (1) month prior to accrual, all such rents, issues and profits from the Premises; provided that such revocable license shall ipso facto terminate without further action by Grantee and without notice to Grantor upon the occurrence of a Default.

6.       Additional Documentation. Grantor shall execute and deliver and pay the costs of preparation and recording thereof to Grantee and to any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements, assignments, and renewal and subscription notes and guaranties, so as to reaffirm, to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this Deed and extensions or modifications thereof. Grantor, upon request, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this Deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within 6 days in case the request is made personally, or within 10 days after the mailing of such request in case the request is made by mail.

7.       Condemnation. In the event all or any part of the Premises is taken by eminent domain by any public or quasi-public authority or corporation, or in the event all or any portion of the Premises is purchased from Grantor under threat of such taking, then all of the award of payment arising from said taking or purchase shall be paid to Grantee. Grantee shall have the right to retain said award or payment toward payment of the Secured Indebtedness, or to pay over said amount, in whole or in part, to Grantor, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this Deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this Deed shall have been sought or recovered or denied, and of attorneys' fees in the sum of 15% of the aggregate amount due hereunder, and all costs and disbursements incurred by Grantee in connection with the collection of such award of payment.

8.       Financial Statements. Grantor shall deliver to Grantee, at any time within 30 days after notice and demand by Grantee, (i) a statement in such reasonable detail as Grantee may request, certified by the Grantor or an executive officer of a corporate Grantor, of the leases relating to the Premises, and (ii) a statement in such reasonable detail as Grantee may request certified by a certified public accountant or, at the option of Grantee, by Grantor or an executive officer or treasurer of a corporate Grantor, of the income from and expenses of any one or more of the following: (a) the conduct of any business on the Premises, (b) the operation of the Premises, or (c) the leasing of the Premises or any part thereof, for the last 12 month period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases and convenient facilities for the audit and verification of any such statement. Grantor and any Guarantor of the Secured Indebtedness shall deliver to Grantee financial reports and statements in form and substance acceptable to Grantee within 90 days following fiscal year end and within 30 days of request(s) made by Grantee from time to time.

9.       Security Agreement. Grantor hereby grants to Grantee a security interest in the Improvements and Personal Property, including without limitation any and all property of similar type or kind hereafter located on or at the Property, for the purpose of securing the Secured Indebtedness. Grantor warrants, represents and covenants that the Improvements and Personal Property are not used or bought for personal family or household purposes. Notwithstanding anything contained herein to the contrary, all covenants and obligations of Grantor contained herein relating to the Premises shall be deemed to apply to the Improvements and Personal Property. This Deed constitutes a Security Agreement as that term is used in the Uniform Commercial Code of Georgia.

4

10.    Default. Upon the occurrence of any one of the following events (herein called an "Event of Default" or "Default"):

(i)     should Grantor fail to pay the Secured Indebtedness, or any part thereof, when and as the same shall become due and payable;

(ii)    should any representation or warranty of Grantor (Grantor and each person primarily or secondarily liable to Grantee for the Secured Indebtedness hereinafter referred to as an "Obligor") herein contained, or contained in any instrument given by any Obligor to Grantee with respect to the Secured Indebtedness or the Premises, prove untrue, incomplete or misleading in any material aspect;

(iii)   should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises is reduced or diminished in any manner whatsoever;

(iv)    should any federal tax lien, execution, or claim of lien for labor or material be filed of record against any Obligor or the Premises and not be removed by payment or bond within 30 days from date of recording;

(v)     should any claim of priority superior to this Deed by title, lien or otherwise be asserted in any legal or equitable proceeding;

(vi)    should any Obligor become insolvent or should any Obligor make any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of any Obligor or of any of any Obligor's property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of any Obligor, pursuant to the Federal Bankruptcy Act or any similar statute, be filed, or should any proceeding be instituted against or on behalf of any Obligor alleging that any Obligor is insolvent or unable to pay such Obligor's debts as they become due, or should any Obligor be adjudicated a bankrupt or insolvent, or should any Obligor, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire;

(vii)   should any Obligor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this Deed, or in the Note, or in any other Loan Document;

(viii)  should any event occur under any instrument, deed or agreement, given or made by any Obligor to or with Grantee or any third party, which would authorize the acceleration of any debt owed by such Obligor to Grantee or to any such third party;

(ix)    should Grantor sell or transfer the Premises or any portion thereof or any interest therein, including a security interest, without Grantee's prior written consent;

(x)     if any Obligor is a corporation, partnership or other artificial entity, if there is any encumbrance, pledge, conveyance, transfer or assignment of any legal or beneficial interest whatsoever in such Obligor; or

(xi)    if the financial responsibility of any Obligor becomes impaired in the sole opinion of Grantee or if Grantee otherwise deems itself to be insecure;

then and thereupon:

(i)     Grantee may take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and give notice to any lessees or tenants under any existing leases affecting the Premises to make all future payments directly to Grantee or its order and to attorn to Grantee or its order as lessor or landlord, and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all reasonable charges and expenses, on account of the Secured Indebtedness.

(ii)    Grantee may pay any sums in any form or any manner deemed expedient by Grantee to protect the security of this instrument or to cure any Event of Default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of 12.5 % per annum, shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this Deed;

5

(iii)    Grantee may, at its option, declare the entire Secured Indebtedness immediately due, payable and collectible, without notice to Grantor, regardless of maturity, and thereupon, Grantee may sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, in order to pay the Secured Indebtedness, and all expenses of sale and of all proceedings in connection therewith, including 15% of the aggregate amount due as attorneys' fees, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which sheriff's advertisements are published in said county, all other notice being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the Default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns, agent or attorney-in-fact to make such recitals, sale and conveyance, and all of the acts of such attorney-in-fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns (and in the event of a deed in lieu of foreclosure, then as to such conveyance), shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors in interest, in and to said Premises; and in the event of such a foreclosure sale, the proceeds of such sale shall be applied, in whatever order Grantee in its sole discretion may decide, to the outstanding principal amount of the Note, and interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums and other charges, with interest at the rate of 12.5% per annum thereon from date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and 15% of the aggregate amount due, as attorneys' fees, and Grantee will pay over any surplus to Grantor (in the event of deficiency Grantor shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency); and Grantor agrees that possession of the Premises during the existence of the Secured Indebtedness by Grantor, or any person claiming under Grantor, shall be that of tenant under Grantee, or its assigns, and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily disposed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity; and

(iv)    Grantee may exercise any and all of the remedies available to a secured party under the Georgia Uniform Commercial Code.

Grantee, in any action to foreclose this Deed, or upon any Event of Default, may apply for the appointment of a receiver of the rents, profits and other income of the Premises without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under this Deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, the Premises or any part thereof, may be sold in one parcel and as entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless and until the entire Premises are sold or the Secured Indebtedness is paid in full.

11.    Waiver of Homestead; Time of the Essence.  Grantor, for himself and family, hereby waives and renounces all homestead and exemption rights provided for by the Constitution and Laws of the United States or the State of Georgia, in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof: and Grantor agrees that where, by the terms of this Deed, the Note, or any of the Loan Documents, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

12.    Grantee's Right to Sue.  Grantee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this Deed or any of the Loan Documents, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against Grantor, including an action of foreclosure, or any other action, for a Default or Defaults by Grantor existing at the time such earlier action was commenced.

13.    Rights Cumulative.  The rights of Grantee, granted and arising under the clauses and covenants contained in this Deed, the Note, and the other Loan Documents shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others, and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law.  No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note or any of the Loan Documents to the exclusion of any

6



other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

14.     Notice.  Any and all notices, elections or demands permitted or required to be given under this Deed shall be in writing, signed by or on behalf of the party giving such notice, election or demand, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, or upon being deposited with an overnight commercial delivery service requiring proof of delivery, to the other party at the address of such other party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof.  Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt.  Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt.  Any such notice, election, demand, request or response, if given to Grantee, shall be addressed as follows:

First Liberty Capital Partners LLC
P. O. Box 2567
Newnan, GA 30264

and if given to Grantor shall be addressed as follows:

No Free, LLC
1004 Memorial Lane
Suite 200
Savannah, GA 31410

15.     No Waiver.  Any indulgence or departure at any time by the Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by the Grantor.

16.     Definitions.  The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes or guaranties and the grammatical construction of sentences shall conform thereto.  If more than one party shall execute this Deed, the term "Grantor" shall mean all parties signing, and each of them, all of whom shall be jointly and severally liable hereunder, and each agreement, obligation and Secured Indebtedness of Grantor shall be and mean the several as well as joint undertaking of each of them.

17.     Severability.  The parties agree that the provisions of this Deed are severable, and in the event any clause, phrase, sentence or paragraph shall be declared by a court of competent jurisdiction to be invalid or unenforceable, then the parties declare that the remaining clauses, phrases, sentences and paragraphs of this Deed shall remain in full force and effect.

18.     **Waiver of Grantor's Rights.  BY EXECUTING THIS INSTRUMENT   GRANTOR EXPRESSLY ACKNOWLEDGES THAT UPON GRANTOR'S DEFAULT HEREUNDER, GRANTEE IS GIVEN THE RIGHT TO ACCELERATE THE DEBT SECURED HEREBY AND TO SELL THE PROPERTY CONVEYED HEREBY AT PUBLIC AUCTION PURSUANT TO THE POWER OF SALE CONTAINED HEREIN, AND GRANTOR HEREBY EXPRESSLY WAIVES ANY RIGHTS TO NOTICE AND HEARING BEFORE SUCH SALE UNDER POWER BY GRANTEE, OTHER THAN THE REQUIRED ADVERTISEMENT ONCE A WEEK FOR FOUR WEEKS PLUS GRANTOR'S INHERENT LEGAL RIGHT TO SEEK A COURT INJUNCTION. GRANTOR MAKES THIS WAIVER KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY, AFTER HAVING BEEN GIVEN FULL EXPLANATION OF GRANTEE'S RIGHTS HEREUNDER PLUS THE OPPORTUNITY TO CONSULT AN ATTORNEY OF GRANTOR'S OWN CHOOSING BEFORE EXECUTING THIS INSTRUMENT AND INITIALLING THIS PARAGRAPH.**

19.     Prior Deeds.  If a default by Grantor should occur under any one or more of the documents evidencing or securing a debt that is secured by the deeds to secure debt listed below (the "Prior Deeds"), if any, such default shall constitute a Default hereunder, whereupon Grantee, at Grantee's option and without notice or demand to Grantor, may proceed immediately to exercise any and all rights and remedies provided hereunder, or may make any payments or perform any acts necessary to correct any such default, or may pay all or part of the debt secured by any one or more of the Prior Deeds.  Any payment so made or costs so incurred in connection with Grantee's action pursuant to this

7



paragraph shall be treated as though made or incurred pursuant to the provisions of Paragraph 2 hereof, shall bear interest as set forth in Paragraph 2 hereof, and shall be secured hereby. Grantor hereby assigns to Grantee all surplus funds which, upon foreclosure of a Prior Deed, may come into the hands of the person performing such foreclosure, and Grantor hereby directs that such surplus funds be paid over to Grantee to be applied upon payment of the debt secured hereby. Grantor will pay or cause to be paid as and when due all payments on the debts and other obligations secured by the Prior Deeds. Grantor represents and warrants to Grantee that as of the date of this Deed, Grantor is not in default under any of the Prior Deeds and no event exists which, with the giving of notice or passage of time, or both, would constitute a default under any of the Prior Deeds.

PRIOR DEEDS: "NOT APPLICABLE"

20.     Indemnity. Grantor shall protect, indemnify and save harmless Grantee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including attorneys' fees and expenses) imposed upon or incurred by Grantee by reason of (a) any claim for brokerage fees or other such commissions relating to the Premises or the Secured Indebtedness, or (b) the condition of the Premises, or (c) any default by Grantor under this Deed, the Note, or any other Loan Documents, or (d) failure to pay recording, mortgage, intangibles or similar taxes, fees or charges relating to the indebtedness evidenced by the Note or any one or more of the Loan Documents, or (e) the Loan Documents or any claim or demand whatsoever which may be asserted by reason of any alleged action, obligation or undertaking to be performed or discharged by Grantee pursuant to this Deed or any other document evidencing, securing, or in any way relating to the Secured Indebtedness or pursuant to any matter contemplated in the Loan Documents. In the event Grantee incurs any liability, loss or damage by reason of the foregoing, or in the defense of any claim or demand arising out of or in connection with the foregoing, the amounts of such liability, loss or damage shall be added to the Secured Indebtedness, shall bear interest at the interest rate specified in the Note from the date incurred until paid and shall be payable on demand.

IN WITNESS WHEREOF, this Deed has been duly executed and sealed by Grantor the day and year first above written.

Signed, sealed and delivered, this 29 day of December, 2023, in the presence of:

Unofficial Witness

Notary Public

(NOTARY SEAL)

My Commission Expires: 1/27/2025

**GRANTOR:**

**NO FREE, LLC, a Georgia limited liability company**

By: _____ (SEAL)
Jerry K. Williams, Jr., M.D.
its Managing Member

8

## EXHIBIT "A"

### (Legal Description of 285 Centennial Park Drive, Commercial Unit No. 2)

All that tract or parcel of land lying and being in Land Lot 78 of the 14th District of Fulton County, Georgia, being more particularly described as follows:

That certain Condominium Number CU-2, and rights appurtenant thereto as described in that certain Declaration of Condominium for MUSEUM TOWER AT CENTENNIAL HILL CONDOMINIUM, dated June 7, 2002, recorded November 7, 2002, in Deed Book 33475, Page 596, *et. seq.* records of Fulton County, Georgia, and as depicted by that certain plat recorded in Condominium Plat Book 15, Pages 110-111, aforesaid records; and in accordance with those floor plans found in Condominium Floor Plan Book 23, Pages 74-101, as amended, together with said Unit's appurtenant percentage of undivided interest in the common elements of MUSEUM TOWER AT CENTENNIAL HILL CONDOMINIUM, as provided by said Declaration, which Declaration, plat, plans and allied instruments and amendments executed thereto, are incorporated herein by reference as a part of the description of the property described hereby.

H:/SALE\285 Centennial Olympic Park/SELLER CLOSING DOCS 4/10/2017 doc

## Exhibit B

1. Taxes for 2024 and subsequent years, a lien not yet due and payable.

2. All matters as shown on Plat at Condo Plat Book 15, Pages 110-111.

3. All matters as shown on Plat at Floor Plan Book 23, Pages 74-101.

4. Decorative Driveway Agreement at Deed Book 32524, page 534.

5. Covenants at Deed Book 30124, page 638, as amended in Deed Book 32876, 257; Deed Book 33829, page 526.

6. Covenants at Deed Book 33475, page 596, as amended at Deed Book 33825, page 200; Deed Book 34131, page 567; Deed Book 34251, page 39; Deed Book 34795, page 261; Deed Book 37135, page 268, Deed Book 37135, page 272; Deed Book 45179, page 253.

7. Permitted title exceptions at Deed Book 57379, page 399.

4



# MODIFICATION TO PROMISSORY NOTE

**$500,000.00, as Modified**                                    **June 11, 2024**

**NO FREE, LLC**, a Georgia limited liability company ("**Borrower**") whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410, and **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (hereinafter, together with any subsequent holder hereof, sometimes called "**Lender**" or "**Holder**"), whose address is P. O. Box 2567, Newnan, GA 30264, agree as follows:

A.      Borrower has requested that Lender modify a loan in the original principal amount of **Two Hundred Fifty Thousand Dollars ($250,000.00)** (the "**Loan**"), by increasing the principal amount to **Five Hundred Thousand Dollars ($500,000.00)** and Lender hereby agrees to so modify the Loan to Borrower upon the terms and conditions contained herein.

B.      The principal amount of the Loan shall be allocated by Lender to an account established for Borrower, and Loan proceeds shall be disbursed from time to time on terms and conditions as established by Lender as to timing, amount and other conditions of disbursements.

**THEREFORE, FOR VALUE RECEIVED,** Borrower hereby promises to pay to the order of Lender or Holder, the principal sum of **Five Hundred Thousand Dollars ($500,000.00)** together with interest from the date hereof until paid in full, on the unpaid principal balance from time to time outstanding at the rate hereinafter set out, payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. Said principal and interest shall accrue and be payable as follows:

1.      **Interest**.      Interest shall accrue at the rate of eighteen percent (18%) per annum computed on the basis of a 30 day month and 360 day year. Interest shall be computed on the entire principal amount of the Loan from the date of the Loan, notwithstanding that a portion of the Loan proceeds may be held by Lender for future disbursement to or on behalf of Borrower.

2.      **Payments**.

a.      <u>Monthly Payments</u>.      Borrower shall make monthly payments of interest only on the outstanding principal balance with the first payment due at closing in the amount of **$2,750.00** for the short month of June, 2024. Thereafter, Borrower shall make monthly payments in the amount of **$7,500.00** commencing on **July 1, 2024**, and continuing thereafter on the 1st day of each successive month until **June 10, 2025** (the "**Maturity Date**"), at which time the entire principal balance, plus any unpaid accrued interest and other unpaid charges due hereunder shall be due and payable for all purposes in full in a single **BALLOON PAYMENT**. All such payments shall be made at the office of Lender by federal wire transfer or electronic funds transfer, or such other place and to such other person as the Lender or any subsequent holder hereof may from time to time designate in writing.

b.      <u>Minimum Interest</u>. Borrower may prepay this Note at any time, provided however, that Borrower agrees to pay a minimum of six month's interest, as calculated above, plus outstanding principal and any other unpaid charges hereunder, if prepaid prior to the seventh month.

c.      <u>Interest Reserve.</u> A six month evergreen interest reserve in the amount of **$45,000.00** (the "**Evergreen Reserve**") and shall be held by Lender as additional security for

Borrower's obligations under the Note. The Evergreen Reserve shall not be used for the benefit of Borrower except in case of an Event of Default. Any unused portion of the Reserve Accounts established hereunder shall be applied to the amount due upon repayment of this Note.

3. **Late Charge/Post Default Interest**. Borrower further agrees to pay a "late charge" of five percent (5%) of any amount due hereunder (but not in excess of the maximum amount allowed by any applicable law, rule or regulation) if paid more than ten (10) days after the due date thereof.. These provisions shall not be deemed to excuse a late payment or be deemed a waiver of any other rights Lender may have including the right to declare the entire unpaid principal and interest immediately due and payable. Notwithstanding any provision to the contrary herein, from and after the maturity of this Note (whether by acceleration or otherwise) or an Event of Default, interest on principal (but not on unpaid interest) shall be computed at the rate of 24.0% (the "**Default Rate**"). If a monthly interest payment if received late, then Borrower agrees to allow Lender to collect all future payments via ACH from the operating bank account of Borrower's choice.

4. **Loan Documents and Collateral**. Borrower represents, warrants, covenants and agrees that this Note is and shall at all times be secured and supported by documents as required by Lender which may include (i) deed to secure debt or mortgage (ii) guaranty agreements of Jerry K. Williams, Jr., M.D. and and (iii) other agreements, documents and instruments executed by or on behalf of the Borrower in connection herewith (the "Loan Documents").

5. **Loan Oversight**. Borrower agrees that the principal purpose of the Loan is to finance legal fees for litigation with the State of Georgia and for general business purposes at the discretion of Borrower. Borrower shall provide Lender with quarterly financials and such information as Lender may request from time to time regarding application of loan proceeds and performance under the Loan documents.

6. **Cross-Default and Cross-Collateralization.**

(a) Lender has made or may make other loans to Borrower (as used herein the term "Borrower" shall include any and all entities related to Borrower by common ownership and/or control) evidenced by various Notes, and Deeds to Secure Debt (Deed to Secure Debt as used herein to include Mortgages, Security Agreements, Pledges and other documents securing the Loan). Any event of default as defined in any Deed to Secure Debt from Borrower to Lender given to secure any loan from Lender to Borrower or any breach of terms, provisions, conditions or covenants contained in the Note or Notes, Deed to Secure Debt or Deeds to Secure Debt, or any other loan documents executed in connection with any other loan or loans from Lender or Borrower shall be an event of default under the terms, provisions, conditions, and covenants of any and all other loans from the Lender to Borrower. Further, an event of default hereunder shall also constitute an event of default under any and all Deeds to Secure Debt, Notes, and any other loan document executed in connection with any other loan from Lender to Borrower.

(b) Lender has made or may make other loans to Borrower evidenced by various Notes and Deeds to Secure Debt. The real property and any other property described in said other Deeds to Secure Debt is and shall be security for each and every other Note, executed by Borrower in favor of Lender, or any advance made thereunder, or any renewal or extension thereof; further, the real property described herein is and shall be further security for each and every Note executed by the Borrower in favor of the Lender. This paragraph shall apply notwithstanding the fact that the outstanding balance of any one or more of said loans exceeds the original face amount of the Note or Notes evidencing said loans.

2

(c)     Nothing contained in the within paragraphs, shall in any way impair the rights of the Lender granted in any Deed to Secure Debt.  Further, each and every Note and Deed to Secure Debt executed in connection with any loan made from Lender to Borrower is and shall remain a separate obligation of Borrower, and each and every Note and Deed to Secure Debt is and shall be separately enforceable according to its terms until all outstanding indebtedness owing from Borrower to Lender has been paid in full; further, Lender may, at its election, institute separate or collective proceedings with respect to each Note and Deed to Secure Debt simultaneously or in such order and at such times as Lender may elect.  The pendency of any proceeding with respect to any Note or Deed to Secure Debt shall not be grounds for abatement of or hindering, delaying or preventing any proceeding in respect to any other Note or Deed to Secure Debt.  Default under each Note and Deed to Secure Debt shall constitute a separate cause of action.

7.      **Events of Default**.  The principal sum evidenced by this Note, together with all accrued but unpaid interest thereon and all other agreed charges owing by Borrower hereunder, shall become immediately due and payable at the option of Lender upon the occurrence of any "Event of Default", as used and defined in any Loan Document, each of which shall constitute an "Event of Default" hereunder, *provided however*, that Borrower shall have five (5) days following notice of a monetary default in which to cure, and thirty (30) days following notice of a non-monetary in which to cure.  Not in limitation of the foregoing but in addition thereto, the following shall constitute events of default under this Note:  failure of Borrower (Borrower and each other person primarily or secondarily liable to Lender for the indebtedness evidenced by this Note hereinafter collectively referred to as "Obligors") to make any payment of principal or interest or any other amount under this Note when due or failure of Borrower to perform or observe any promise or agreement contained in this Note; the death of (if an individual), death of a general partner (if a partnership), or dissolution of (if a partnership or corporation), insolvency of, general assignment for the benefit of creditors by, any Obligor; the commencement of a voluntary proceeding under any law relating to bankruptcy, insolvency, reorganization, arrangement, composition or readjustment of debt, dissolution, liquidation or debtor relief law or statute of any jurisdiction, whether now or hereafter in effect, including without limitation the filing of a petition under any chapter of the federal bankruptcy code by or against, or acquiescence in writing to same by, or failure to timely and diligently controvert any such involuntary proceeding by, any Obligor; the filing of a proceeding for the appointment of a receiver, custodian, trustee, liquidator or similar official for Obligor or Obligor's property or consenting to the appointment of same; the failure of an involuntary petition for relief under the Federal Bankruptcy Code, as amended, to be dismissed within thirty (30) days after the commencement thereof or in which an order for relief is entered; the making by any Obligor of a conveyance fraudulent as to creditors under any state or federal law; entry of any judgment against, or issuance of a levy or writ of execution, attachment or garnishment against any of the property of, any Obligor; the inability of any Obligor to pay debts as they become due or admit in writing to such effect; the transfer by any Obligor of all or substantially all of his, her or its assets outside the ordinary course of business, or the waste, loss or dissipation of a substantial part of such person's assets; if any Obligor is a partnership, the withdrawal or removal of any general partner of such partnership; if any Obligor is a corporation, the transfer, directly or indirectly (including through any voting trust, irrevocable proxy, or the like), of the ownership or power to vote more than thirty percent (30%) of the voting stock of such corporation; the suspension of the operation of any Obligor's present business; the occurrence of any default or event authorizing acceleration as provided under any promissory note or other evidence of debt, loan agreement, security agreement, pledge agreement, assignment, mortgage, deed to secure debt, deed of trust, lease agreement or other agreement or contract between any Obligor and Lender or any third party; any statement, representation or warranty of any Obligor made orally or in writing in any document evidencing, securing or otherwise relating to the indebtedness evidenced by this Note or in any other writing or statement at any time furnished or made by any Obligor to Lender is false or misleading in a material respect as of the date furnished or made; revocation or termination of any guaranty executed in favor of Lender guaranteeing the indebtedness evidenced by this Note; the financial responsibility of any

3

Obligor becomes impaired at any time in the sole opinion of Lender; or, the determination by Lender that it otherwise deems itself to be insecure.

8. **Remedies.** If this Note is payable on demand, all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall be due and payable in full upon demand by Lender, whether or not any event of default has occurred and whether or not Lender reasonably deems itself to be insecure. If any event of default under this Note should occur, all unpaid amounts of any or all of the principal amount outstanding hereunder and all accrued but unpaid interest thereon shall, at the option of Lender and without notice or demand, become immediately due and payable and Lender shall have and be entitled to exercise, from time to time, all the rights and remedies available to it as provided elsewhere in this Note, in any other agreement or contract between Borrower and Lender and under applicable law. All of Lender's rights and remedies shall be cumulative, and any failure of Lender to exercise any such right or remedy shall not be construed as a waiver of the right to exercise the same or any other right or remedy at any time and from time to time thereafter.

9. **Notices**. Any and all notices, elections, demands, requests and responses thereto permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or three (3) days after being deposited in the United States mail, postage prepaid, certified with return receipt requested, if mailed to the addresses set forth in the beginning of this Note or at such other address within the continental United States for either party as such party may designate by notice to the other given in accordance with the provisions of this paragraph; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of a changed address of which no notice has been received shall also constitute receipt.

10. **Acceleration**. Time is of the essence in the performance of all obligations under this Note. Upon the occurrence of an Event of Default and at any time thereafter, Lender, at its option and as often as it may desire, may declare all liabilities, obligations and indebtedness due Lender, including without limitation this Note to be immediately due and payable without demand, notice or presentment, and may exercise any other remedy available to Lender hereunder, at law or in equity.

11. **Costs of Collection**. Borrower agrees that if, and as often as, this Note is given to an attorney for collection or to defend or enforce any of Lender's rights arising from or relating to this Note, Borrower will pay to Lender attorney's fees in the amount of 15% of the principal balance due, together with all court costs and other expenses paid or incurred by Lender; provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

12. **Maximum Legal Rate** Borrower and Lender agree that no payment of interest or other consideration made or agreed to be made by Borrower to Lender pursuant to this Note shall, at any time, be in excess of the maximum rate of interest permissible by law. In the event such payments of interest or other consideration provided for in this Note shall result in an effective rate of interest which, for any period of time, is in excess of the limit of the usury or any other law applicable to the loan evidenced hereby, all sums in excess of those lawfully collectible as interest for the period in question shall, without further agreement or notice between or by any party hereto, be applied to principal immediately upon receipt of such monies by Lender hereof with the same force and effect as though the payer had specifically designated such and Lender had agreed to accept such extra payments as a principal payment,

4

without premium. This provision shall control every other obligation of the Borrower and Lender under this Note.

13. **Miscellaneous.**

(a) With respect to any and all obligations, to the extent permitted by applicable laws Borrower waives the following: (1) all rights or exemption of property from levy or sale under execution or other process for the collection of debts under the constitution or laws of the United States or any state thereof; (2) demand, presentment, protest, notice of dishonor, suit against any party and all other requirements necessary to charge or hold Borrower on any obligation; (3) all statutory provisions and requirements for the benefit of the Borrower now or hereafter in force (to the extent that same may be waived); (4) the right to interpose any set-off or counterclaim of any nature or description in any litigation in which the Lender and Borrower shall be adverse parties. Borrower agrees to pay all filing fees and taxes and all costs of collecting or securing or attempting to collect or secure any obligations, including but not limited to attorney's fees.

(b) The obligations and liabilities of Borrower under this Note are continuing, absolute, and unconditional, and shall remain in full force and effect until all amounts due hereunder have been paid in full and all obligations of Borrower have been discharged without regard to and without being released, discharged, impaired, modified or in any way affected by, the occurrence from time to time of any event, circumstance or condition, including without limitation any one or more of the following, whether or not with notice to or consent of Borrower: (1) any assignment or transfer this Note or of any interest hereunder; (2) any consent, extension, indulgence or other action or inaction (including without limitation any lack of diligence or failure to mitigate damages) under, or in respect of, this Note or other agreement, or any exercise or non-exercise of any right, remedy, power or privilege under, or in respect of, this Note or agreement; or (5) the failure, omission, delay or lack of diligence on the part of the Holder or any assignee or successor thereto, to enforce, assert or exercise any right, power, privilege or remedy conferred upon the Lender by this Note or other agreement.

(c) The Lender, may, but shall not be required to, apply to the payment of the debt evidenced hereby, on or after the maturity of said debt, whether by acceleration or otherwise, any money or credit held by the Lender on deposit, in trust or otherwise, for the account of the Borrower or any of them.

(d) Lender shall not by any act, delay, omission or otherwise be deemed to have waived any of its rights or remedies, and no waiver of any kind shall be valid, unless in writing and signed by the Holder. All rights and remedies of the Lender under the terms of this Note and under any statutes or rules of law shall be cumulative and may be exercised successively or concurrently. Borrower agrees that the Lender shall be entitled to all the rights of a holder in due course of negotiable instruments. Any provision of this Note which may be unenforceable or invalid under any law shall be ineffective to the extent of such unenforceability or invalidity without affecting the enforceability or validity of any other provision hereof.

(e) The liabilities and obligations of each person or entity who or which is a Borrower are joint and several.

(f) Borrower warrants and agrees that the proceeds of this Note will be used for business purposes (other than agricultural purposes) only, and not for personal, family or household purposes.

(g) Borrower and Lender intend and believe that each provision in this Note comports with all applicable local, state and federal laws and judicial decisions. However, if any

provision or provisions, or if any portion of any provision or provisions, in this Note is found by a court of law to be in violation of any applicable local, state or federal ordinance, statute, law, administrative or judicial decision, or public policy, and if such court should declare such portion, provision or provisions of this Note to be illegal, invalid, unlawful, void or unenforceable as written, then it is the intent of Borrower and Lender that such portion, provision or provisions shall be given force to the fullest possible extent that they are legal, valid and enforceable, that the remainder of this Note shall be construed as if such illegal, invalid, unlawful, void or unenforceable portion, provision or provisions were not contained therein, and that the rights, obligations and interest of Borrower and Lender hereof under the remainder of this Note shall continue in full force and effect.

14. <u>Governing Law</u>. This Note shall be governed by and construed in accordance with the laws of the State of Georgia. Borrower acknowledges that the negotiation of the provisions of this Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give Borrower, nor shall any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Note or said Loan Documents to become effective and valid and binding obligations of the Borrower. Borrower acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Borrower acknowledges further that the negotiation, execution, and delivery of this Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Borrower hereby submits itself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with the Loan or any of the Loan Documents. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a waiver by Lender of any of the foregoing.

15. <u>Waiver of Jury Trial</u>. TO THE EXTENT PERMITTED BY APPLICABLE LAW, BORROWER HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY PERTAINING OR RELATING TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION WITH THIS NOTE OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF THE PARTIES HERETO WITH RESPECT TO THIS NOTE OR ANY OTHER INSTRUMENT, DOCUMENT OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH OR IN CONNECTION WITH THE TRANSACTIONS RELATED THERETO OR CONTEMPLATED THEREBY OR THE EXERCISE OF EITHER PARTY'S RIGHTS AND REMEDIES THEREUNDER, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. BORROWER AGREES THAT LENDER MAY FILE A COPY OF THIS PARAGRAPH WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY AND BARGAINED AGREEMENT OF BORROWER TO IRREVOCABLY WAIVE BORROWER'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN BORROWER AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

16. **Venue.** Borrower hereby irrevocably agrees that any legal action or proceeding arising out of or relating to this Note or any agreements or transactions contemplated hereby may be brought in the courts of the State of Georgia or of the United States of America for the Northern District of Georgia and hereby expressly submits to the personal jurisdiction and venue of such courts for the purposes thereof and expressly waives any claim of improper venue and any claim that such courts are an inconvenient forum. Borrower hereby irrevocably consents to the service of process of any of the aforementioned courts in any such suit, action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the address of Borrower last provided to Holder in connection with the Loan, such service to become effective ten (10) days after such mailing.

**IN WITNESS WHEREOF,** Borrower has caused this Note to be executed, sealed, and delivered as of the date first set forth above.

**BORROWER**

**NO FREE, LLC, a Georgia limited liability company**

By: _____ (Seal)
Jerry K. Williams, Jr., M.D.
Managing Member

7

<u>GUARANTY AGREEMENT</u>

**THIS GUARANTY AGREEMENT** (hereinafter referred to for convenience as the "Guaranty") is entered as of the ___11___ day of June, 2024, by **JERRY K. WILLIAMS, JR., M.D.** (hereinafter referred to for convenience as the "Guarantor"), in favor of **FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company** (the "Lender").

**WHEREAS,** Lender has agreed to modify a loan in the amount of **Two Hundred Fifty Thousand Dollars ($250,000.00) to NO FREE, LLC,** a Georgia limited liability company, by increasing the amount to **Five Hundred Thousand Dollars ($500,000.00);**

**WHEREAS,** in connection with the making and closing of the Loan, and in order to evidence and secure the Loan, the Borrower will execute a Modification to Promissory Note (hereinafter referred to for convenience as the "Note"), and various other documents evidencing, securing, or otherwise relating to the Loan (for convenience, the Note, and any other documents are referred to for convenience as the "Loan Documents"); and

**WHEREAS,** Lender is willing to make the Loan only if the Guarantor executes and delivers this Guaranty reflecting increase in the Loan amount;

**NOW, THEREFORE,** in consideration of the premises and to induce Lender to extend the credit referred to above, the Guarantor hereby agrees as follows:

## B. REPRESENTATIONS AND WARRANTIES

The Guarantor hereby represents and warrants that:

1.    The execution, delivery and performance of this Guaranty, and the agreements, documents, and instruments to be given by the Guarantor as security for the Loan and any other documents or instruments executed and delivered by the Guarantor pursuant hereto or thereto, or in connection herewith or therewith (collectively, the "Guarantor Documents"), are within the Guarantor's powers, have been duly authorized, do not violate any law, rule, or regulation, and will not conflict with, result in a breach of, or constitute a default under, any contractual obligations of the Guarantor;

2.    There is no judgment, decree, or order of any court or other governmental authority binding on the Guarantor which would be contravened by the execution, delivery, performance or enforcement of the Guarantor Documents; and

3.    Each of the Guarantor Documents is a legal, valid, and binding obligation of the Guarantor, enforceable against the Guarantor in accordance with its respective terms.

4.    That he understands that Lender would not modify the Loan to Borrower without Guarantor entering into this Guaranty, and there is substantial consideration flowing to Guarantor if the Loan is made equivalent to the potential burden to Guarantor of the obligations assumed hereunder.

The Guarantor agrees that for so long as this Guaranty remains in effect, each of the above representations and warranties and each other representation or warranty of the Guarantor contained herein or in the other Guarantor Documents shall be deemed to be continuing.

## C. GUARANTY

1.　The Guarantor hereby unconditionally, absolutely, and irrevocably guarantees full payment and performance of, and promises to pay to Lender, or to order, without demand, in lawful money of the United States, when due (whether at stated maturity, by acceleration or otherwise), any and all indebtedness, liabilities, obligations and covenants of Borrower to Lender (whether any such indebtedness, liability, obligation or covenant now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such indebtedness, liabilities, obligations and covenants being hereinafter called, collectively, the "Obligations"), arising out of or relating to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement, or any of the other Loan Documents and any and all renewals, re-financings, extensions, amendments, modifications, and consolidations thereof. The word "Obligations" is used in its most comprehensive sense and includes all principal, interest, and other amounts payable under the Note, the Security Agreement, or any of the other Loan Documents and all obligations for fees, indemnities, costs, and expenses under the Note, the Mortgage, or any of the other Loan Documents.

2.　The Guarantor's obligations hereunder are those of a primary obligor, and not merely as a surety or guarantor of collection, and are independent of the Obligations. If there is more than one Guarantor herein, each Guarantor's obligations hereunder are joint and several. In addition, Guarantor agrees that the Guarantor's obligations hereunder are joint and several with the obligations of any and all other obligors (which for purposes of this Agreement includes, without limitation, other guarantors pursuant to separate agreements or instruments) in respect of the Obligations. A separate action or actions may be brought against the Guarantor (or any one Guarantor herein) whether an action is brought against Borrower, another Guarantor herein, or any other obligor in respect of the Obligations or whether Borrower, another Guarantor herein, or any other obligor in respect of the Obligations be joined in any such action or actions; and the Guarantor waives the benefit of any statute of limitations affecting his or her liability hereunder or the enforcement hereof.

3.　The obligations of the Guarantor under this Guaranty are continuing, absolute, and unconditional, and the Guarantor guarantees that the Obligations will be paid in full when due (whether at stated maturity, by acceleration or otherwise) in accordance with the terms of the Note, the Mortgage, and the other Loan Documents regardless of any law, regulation, or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Lender with respect thereto or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, a borrower or guarantor.

4.　This Guaranty is irrevocable with respect to all Obligations which arise out of or relate to the Loan, the Note, the Security Agreement, the Pledge and Security Agreement or any of the other Loan Documents. All of the liabilities of the Guarantor under this Guaranty shall remain in full force and effect until all Obligations (including any amendments, modifications,

extensions, renewals, restructurings, re-financings, and re-fundings of any thereof) shall have been finally paid in full in cash.

This Guaranty shall in all respects continue in full force and effect or shall be reinstated, as the case may be, if at any time payment, in whole or in part, of any of the Obligations is rescinded or must otherwise be restored or returned for any reason, including without limitation, because of the insolvency, bankruptcy, dissolution, liquidation, or reorganization of Borrower or any other obligor in respect to the Obligations (including without limitation, the Guarantor) or upon or as a result of the appointment of a custodian, receiver, trustee or other officer with similar power with respect to Borrower or any such other obligor or any material part of his or its assets, or otherwise, all as though such payment had not been made. If an event permitting the acceleration of the Obligations shall at any time have occurred and be continuing and such acceleration shall at such time be prevented by reason of the pendency against Borrower of a case or proceeding under any bankruptcy or insolvency law, the Guarantor agrees that, for purposes of this Guaranty and his obligations hereunder, the Obligations shall be deemed to have been accelerated, and the Guarantor shall forthwith pay such Obligations, and the other obligations hereunder, without any further notice or demand.

Without limiting the foregoing, the Guarantor authorizes Lender, without notice or demand, and without affecting the Guarantor's liability hereunder, from time to time to (a) renew, extend, accelerate, compromise, settle, restructure, refinance, refund, or otherwise change the amount and time for payment of any of the Obligations, or otherwise change the terms of the Obligations or any part thereof, including, without limitation, amend, modify, supplement, waive, or consent to a departure from the terms and conditions of the Note and the other Loan Documents; (b) take and hold security for the payment of this Guaranty or the Obligations or the obligations of other obligors in respect of the Obligations, and enforce any such security; (c) apply such security and direct the order or manner of sale thereof or sell, exchange, release, compromise, settle, waive or surrender any such security; and (d) take, hold, exchange, release, compromise, settle, amend, or waive, or consent to the departure from any of the terms of, any guaranty or other agreement relating to the obligations of any other obligor in respect to the Obligations. Lender shall have no obligation to perfect, secure, protect, or insure any collateral, and the Guarantor's liability hereunder shall not be affected by the non-perfection, invalidity, or unenforceability of any agreement, instrument, or document securing or purporting to secure the Note or the other Loan Documents.

5. Guarantor hereby unconditionally and irrevocably: (a) waives and relinquishes any right of subrogation or other right of reimbursement from the Borrower or the Borrower's estate, and any other right to payment from the Borrower or the Borrower's estate, arising out of or on account of any sums paid or agreed to be paid by Guarantor under this Guaranty, whether any such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured; (b) agrees that if at any time all or any part of any payment previously applied by Lender to any of the Obligations must be returned by Lender for any reason, whether upon the claim of a preference, fraudulent transfer, or other claim of a debtor-in-possession, trustee in bankruptcy, or other representative of creditors of Borrower, or otherwise, and whether by court order, administrative order, or non-judicial settlement, this Guaranty shall continue in effect or shall be reinstated, as the case may be, and Guarantor shall remain liable for the full amount returned as if such amount had never been received by Lender,

notwithstanding any termination of this Guaranty or cancellation of any promissory note or other instrument or agreement evidencing or securing any of the Obligations; (c) agrees that the liability of the Guarantor under this Guaranty shall not be affected or impaired by, and this Guaranty shall remain fully enforceable against Guarantor for the full amount of the Obligations less only payments thereon actually received and retained by Lender irrespective of and without reduction on account of: (i) any defenses which Borrower may have or assert with respect to any of the Obligations, including, but without limitation, filing of a petition in bankruptcy, discharge in bankruptcy, confirmation of a plan of reorganization (whether Lender voted for or against such plan), composition with creditors (whether or not including Lender), failure of consideration, breach of warranty, statute of frauds, statute of limitations, accord and satisfaction, waiver, estoppel, release, usury, or fraud or misrepresentation; or (ii) dissolution or insolvency of Borrower.

6. The Guarantor unconditionally and irrevocably waives any right to require Lender to (a) proceed against Borrower or any other obligor in respect to the Obligations; (b) proceed against or exhaust any security held directly or indirectly on account of the Obligations; (c) pursue any other remedy of Lender whatsoever; (d) give the Guarantor prior or subsequent notice of the disposition of any security; or (e) give the Guarantor notice of any information concerning Borrower's business, operations, or condition (financial or otherwise) known to Lender. The Guarantor unconditionally waives any defense arising by reason of any disability or other legal or equitable defense of Borrower by reason of the cessation from any cause whatsoever of the liability of Borrower other than final payment in full in cash of the Obligations. The Guarantor waives all diligence, presentments, protests, notices of protest, notices of dishonor, notices of non-payment, acceptance and notices of acceptance of this Guaranty.

7. Any debt of Borrower now or hereafter held by or owed to the Guarantor is hereby absolutely and totally subordinated in right of payment and in all other respects to the Obligations and all other obligations of the Borrower to Lender in any way relating to the Note or the other Loan Documents, and in the event an event of default under the Note or the other Loan Documents shall have occurred, and there is a default in the debt of Borrower to the Guarantor, if Lender so requests, such debt shall be collected, enforced and received by the Guarantor as trustee for Lender and shall be paid over to Lender on account of the Obligations and any such other obligations.

8. Upon the occurrence of any Event of Default, as defined in the Note, Security Agreement or any other Loan Document, in the payment or performance of the Note or any of the other Loan Documents, the Lender is hereby authorized at any time and from time to time to set-off and apply all deposits (general or special, time or demand, provisional or final) at any time held and other obligations at any time owing by the Lender to or for the credit or the account of the Guarantor against any and all of the obligations of the Guarantor now or hereafter existing under this Guaranty, irrespective of whether or not, the Lender shall have made any demand under this Guaranty and although such obligations may be contingent and unmatured. The rights of the Lender under this Section are in addition to other rights and remedies (including, without limitation, other rights of set-off) which the Lender may have.

9. The Guarantor will keep at all times full, true and accurate books and records of account of the financial affairs of the Guarantor sufficient to reflect accurately and correctly the

results of all income and expense activities and to permit the preparation of financial statements therefrom in accordance with generally accepted accounting principles (or another method approved by Lender). The Guarantor will deliver to the Lender, upon such times as may be requested by the Lender, and in no event more than three (3) months after the end of every calendar year from date hereof, whether or not requested by the Lender, financial statements reflecting the foregoing information, including, but not limited to, balance sheets, profit-and-loss statements and all schedules and exhibits thereto as are customarily required by generally accepted accounting principles or as may be requested by Lender. Unless otherwise consented or agreed to by Lender in writing with respect to any particular year, such statements and information shall be prepared by a certified public accountant approved by the Lender in advance of delivery of such statements and information. The Guarantor further covenants and agrees to furnish to Lender, within 10 days after the date of any request by Lender, such other information and documents (financial or otherwise, including without limitation income tax returns) concerning or relating to the Guarantor or any collateral securing this Guaranty as the Lender may request at any time or from time to time.

10. The Guarantor assumes full responsibility for keeping fully informed of the financial condition of the Borrower and all other circumstances affecting the Borrower's ability to perform its obligations to the Lender, and agrees that the Lender will have no duty to report to Guarantor any information which the Lender receives about the Borrower's financial condition or any circumstances bearing on Borrower's ability to perform.

11. No amendment or wavier of any provision of this Guaranty, nor consent to any departure by the Guarantor therefrom, shall in any event be effective unless the same is signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose given. No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any provided by law or at equity.

12. Any provision of this Guaranty which may be prohibited by law or otherwise held invalid shall be ineffective only to the extent of such prohibition or invalidity and shall not invalidate or otherwise affect the remaining provisions of this Guaranty.

13. The Lender may, without notice to or consent from the Guarantor, assign or otherwise transfer, or grant a participation in, the Note or the other Loan Documents, the Obligations, or any interest therein, or the collateral, in whole or in part, without affecting in any manner whatsoever the Guarantor's liability hereunder. Any assignee or other transferee, or participant in, any of the Note or the other Loan Documents or the Obligations shall thereupon become vested with all rights in respect thereof granted to Lender herein to the same extent as if such assignee or transferee was the original guaranteed party hereto, and all Obligations shall be and remain Obligations for purposes of this Guaranty. This Guaranty shall be binding upon the Guarantor and Guarantor's heirs, executors, personal representatives, successors and assigns and inure to the benefit of Lender and its respective heirs, executors, personal representatives, successors, assigns and other transferees; provided, however, that the Guarantor shall not assign

or transfer any of Guarantor's rights or obligations hereunder without the express written consent of Lender.

14. Guarantor agrees that this Guaranty, the Note, and the other Loan Documents, and the rights and obligations of the parties hereunder and thereunder shall be governed by and be construed in accordance with the laws of the State of Georgia, unless otherwise provided therein or except where required to be governed by the laws of another jurisdiction to be enforceable. Guarantor acknowledges that the negotiation of the provisions of this Guaranty, the Note and the other Loan Documents took place in the State of Georgia, that all such documents are being executed in the State of Georgia, or if executed elsewhere, will become effective only upon Lender's receipt and acceptance thereof in said State; provided, however, that Lender shall have no obligation to give, nor shall Guarantor, Borrower or any other person or entity be entitled to receive, any notice of such receipt and acceptance in order for this Guaranty or said Loan Documents to become effective and valid and binding obligations of the Borrower, the Guarantor or any other obligor. Guarantor acknowledges further that all of such documents were or will be executed and delivered to Lender to induce Lender to make the Loan. Guarantor acknowledges further that the negotiation, execution, and delivery of this Guaranty, the Note and the other Loan Documents constitutes the transaction of business within the State of Georgia and that any cause of action arising hereunder or under any of said Loan Documents will be a cause of action arising from such transaction of business. Guarantor hereby submits himself to jurisdiction in the State of Georgia for any action or cause of action arising out of or in connection with this Guaranty, the Loan or any of the Loan Documents, agrees that venue for any such action shall be in the state or federal courts in Georgia, and waives any and all rights under the laws of the United States or any state to object to jurisdiction or venue within the state or federal courts in Georgia. Notwithstanding the foregoing, nothing contained in this section shall prevent Lender from bringing any action or exercising any rights against Borrower, the Guarantor or any other obligor, any security for the Loan, or any of Borrower's or Guarantor's properties in any other county, state or jurisdiction. Initiating such action or proceeding or taking any such action in any other state shall in no event constitute a wavier by Lender of any of the foregoing.

15. Guarantor hereby waives all rights of exemption under the constitution and laws of the United States and all states therein, including, but not limited to, the State of Georgia. Guarantor agrees to pay all cost of collection, including a reasonable attorney's fee, if the services of an attorney are utilized whether or not suit is filed. In that connection, Guarantor agrees that if, and as often as, this Guaranty Agreement is given to an attorney for collection or to defend or enforce any of Lender's rights hereunder, Guarantor will pay to Lender its reasonable attorney's fees, which shall be defined as 15% of the Obligations, together with all court costs and other expenses paid or incurred by Lender. Provided, however, that the amount of such attorney's fees shall not exceed the maximum amount allowed by any applicable law, rule or regulation.

16. The undersigned hereby waives the right to require the holder of the obligations guaranteed to take any action against the principal as provided for in O.C.G.A. § 10-7-24. At the option of the Bank, this may be treated as a guaranty or as a suretyship, with the right to proceed against the guarantor without first proceeding against the Borrower.

17.	TO THE EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR HEREBY WAIVES ANY RIGHT TO TRIAL BY JURY ON ANY CLAIM, COUNTERCLAIM, SETOFF, DEMAND, ACTION OR CAUSE OF ACTION (A) ARISING OUT OF OR IN ANY WAY RELATED TO THIS GUARANTY, THE LOAN OR THE LOAN DOCUMENTS OR (B) IN ANY WAY CONNECTED WITH OR PERTAINING OR RELATED TO OR INCIDENTAL TO ANY DEALINGS OF LENDER AND/OR BORROWER AND GUARANTOR WITH RESPECT TO THE LOAN DOCUMENTS OR IN CONNECTION WITH THIS GUARANTY OR THE EXERCISE OF ANY PARTY'S RIGHTS AND REMEDIES UNDER THIS GUARANTY OR OTHERWISE, OR THE CONDUCT OR THE RELATIONSHIP OF THE PARTIES HERETO, IN ALL OF THE FOREGOING CASES WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. GUARANTOR AGREES THAT LENDER MAY FILE A COPY OF THIS GUARANTY WITH ANY COURT AS WRITTEN EVIDENCE OF THE KNOWING, VOLUNTARY, AND BARGAINED-FOR AGREEMENT OF GUARANTOR IRREVOCABLY TO WAIVE GUARANTOR'S RIGHT TO TRIAL BY JURY, AND THAT ANY DISPUTE OR CONTROVERSY WHATSOEVER BETWEEN GUARANTOR AND LENDER SHALL INSTEAD BE TRIED IN A COURT OF COMPETENT JURISDICTION BY A JUDGE SITTING WITHOUT A JURY.

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty effective as of the date first written above.

_____ (Seal)
Jerry K. Williams, Jr., M.D.

Signed, sealed and delivered in my presence by **Jerry K. Williams, Jr., M.D.** known to me or who produced satisfactory official identification, this 11th day of June, 2024.

_____
Notary Public

(Notary Seal)

## EXHIBIT "A"

### (Legal Description of 285 Centennial Park Drive, Commercial Unit No. 2)

All that tract or parcel of land lying and being in Land Lot 78 of the 14th District of Fulton County, Georgia, being more particularly described as follows:

That certain Condominium Number CU-2, and rights appurtenant thereto as described in that certain Declaration of Condominium for MUSEUM TOWER AT CENTENNIAL HILL CONDOMINIUM, dated June 7, 2002, recorded November 7, 2002, in Deed Book 33475, Page 596, *et. seq.* records of Fulton County, Georgia, and as depicted by that certain plat recorded in Condominium Plat Book 15, Pages 110-111, aforesaid records; and in accordance with those floor plans found in Condominium Floor Plan Book 23, Pages 74-101, as amended, together with said Unit's appurtenant percentage of undivided interest in the common elements of MUSEUM TOWER AT CENTENNIAL HILL CONDOMINIUM, as provided by said Declaration, which Declaration, plat, plans and allied instruments and amendments executed thereto, are incorporated herein by reference as a part of the description of the property described hereby.



Exhibit B

1. Taxes for 2024 and subsequent years, a lien not yet due and payable.

2. All matters as shown on Plat at Condo Plat Book 15, Pages 110-111.

3. All matters as shown on Plat at Floor Plan Book 23, Pages 74-101.

4. Decorative Driveway Agreement at Deed Book 32524, page 534.

5. Covenants at Deed Book 30124, page 638, as amended in Deed Book 32876, 257; Deed Book 33829, page 526.

6. Covenants at Deed Book 33475, page 596, as amended at Deed Book 33825, page 200; Deed Book 34131, page 567; Deed Book 34251, page 39; Deed Book 34795, page 261; Deed Book 37135, page 268, Deed Book 37135, page 272; Deed Book 45179, page 253.

7. Permitted title exceptions at Deed Book 57379, page 399.

Tax Parcel No. 14007800030922

Upon recording, please return to:

**Spencer Gandy, Esq.**
**Spencer Gandy LLC**
**3865 Wieuca Terrace NE**
**Atlanta, Georgia 30342**

Cross Reference:

Deed Book 67478, Page 128

## MODIFICATION TO DEED TO SECURE DEBT,
## ASSIGNMENT OF RENTS AND SECURITY AGREEMENT

**This Deed to Secure Debt is exempt from intangible tax upon filing as the loan secured hereby has a maturity of less than three years as provided in OCGA Sections 48-6-60 et. seq.**

THIS MODIFICATION TO DEED TO SECURE DEBT, ASSIGNMENT OF RENTS, AND SECURITY AGREEMENT (hereinafter referred to as this "Deed") made this ___11___ day of **June, 2024,** by and between **NO FREE, LLC, a Georgia limited liability company** ("Grantor"), whose address is 1004 Memorial Lane, Suite 200, Savannah, GA 31410 and **First Liberty Capital Partners LLC ("Grantee"),** whose address is P. O. Box 2567, Newnan, GA 30264.

## W I T N E S S E T H:

THAT, WHEREAS, on December 28, 2023, Grantor executed a Deed to Secure Debt, Assignment of Rents and Security Agreement (the "Deed") to secure a Promissory Note from Grantee in the amount of **Two Hundred Fifty Thousand Dollars ($250,000.00),** said Deed recorded in Deed Book 67478, page 128, Fulton County, Georgia records; and

THAT, WHEREAS, said Promissory Note has been modified by increasing the principal amount to **Five Hundred Thousand Dollars ($500,000.00);**

THAT, WHEREAS, Grantor is now justly indebted to Grantee in the sum of **Five Hundred Thousand Dollars ($500,000.00)** in lawful money of the United States, and has agreed to pay the same, with interest thereon, according to the terms of a certain modification to promissory note (hereinafter referred to as the "Note") given by Grantor to Grantee, bearing even date herewith, with final payment being due on **June 10, 2025;**

1

NOW, THEREFORE, in consideration of the premises and of the sum hereinabove set forth and in order to secure the indebtedness and other obligations of Grantor hereinafter set forth, Grantor has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto Grantee and the successors, successors-in-title and assigns of Grantee the following property (the "Property"), to-wit:

**That real property described in Exhibit "A" attached hereto and by this reference incorporated herein;**

**This Deed is subject to those matters set forth in Exhibit "B" attached hereto and by this reference incorporated herein.**

TOGETHER WITH all and singular, the improvements, fixtures, easements, hereditaments, rights, members and appurtenances thereunto belonging or in anywise appertaining, including, without limitation: the buildings and improvements now or hereafter erected thereon, and the fixtures, attachments, appliances, equipment, machinery, furnishings and other articles affixed or attached to said buildings and improvements or used or intended to be used with or in connection with the use, operation or enjoyment of the Property, including, without limitation, all building materials, electrical, plumbing, heating and air conditioning systems (including window units), all built-in appliances, cabinets and lighting fixtures, including all extensions, additions, improvements, betterments, after-acquired property, renewals, replacements and substitutions, or proceeds from a permitted sale of, any of the foregoing (all of the foregoing is hereinafter collectively referred to as the "Improvements and Personal Property"); and all minerals, shrubs, trees or other emblements now or hereafter on said Property or under or above the same or any part or parcel thereof, and all leasehold estates, usufructuary interests, and rights of Grantor in the Property, and all rights of Grantor as lessor or landlord under any lease or sublease letting or demising all or any portion of the Property or the Improvements and Personal Property, including, without limitation, the interest of Grantor in all rents and security deposits paid or to be paid thereunder; and all right of claim of Grantor with respect to the proceeds of insurance which Grantor now has or may hereafter acquire in the Property and the Improvements and Personal Property and any and all awards made for the taking by eminent domain, by any proceeding or purchase in lieu thereof, of the whole or any part of the Property and the Improvements and Personal Property; and if this is a construction mortgage all right, title and interest of Grantor in and to all construction materials, equipment, supplies and contracts.

TO HAVE AND TO HOLD all of the Property, the Improvements and Personal Property, property rights, leases, contract rights, claims and other items set forth in the preceding paragraph (all of which are collectively referred to as the "Premises") to the use, benefit and behoof of Grantee, forever, in fee simple.

Grantor warrants that Grantor has good title to the Premises, and is lawfully seized and possessed of the Premises and every part thereof, and has the right to convey same; that the Premises are unencumbered except as may be herein expressly provided; and the Grantor will forever warrant and defend the title to the Premises unto Grantee against the claims of all persons whomsoever.

This instrument is a deed passing legal title to the Premises pursuant to the laws of the State of Georgia governing loan or security deeds and security agreements and is not a mortgage, as "mortgage" is defined for the purpose of the real property law of the State of Georgia, but does constitute a "construction mortgage" as defined in Section 11-9-313(1)(c) of the Official Code of Georgia if so indicated hereinabove, and is made and intended to secure (i) the payment of the indebtedness evidenced by the Note and any modifications, extensions, renewals or consolidations thereof and substitutions therefor, either in whole or in part; (ii) any and all additional advances made by Grantee to protect or preserve the Premises or the security interest created hereby on the Premises, or for taxes, assessments or insurance premiums as hereinafter provided or for performance of any of Grantor's obligations hereunder or for any other purpose provided herein (whether or not the original Grantor remains the owner of the Premises at the time of such advance); (iii) the performance of all obligations of Grantor under this Deed; (iv) the performance of all obligations of Grantor under any loan agreement (including, without limitation, any construction loan agreement), guaranty and other agreements, documents or instruments evidencing, securing or otherwise relating to the indebtedness evidenced or guarantied by the Note (the Note, this Deed, and any and all other such loan agreements, guarantees, agreements, documents and instruments are hereinafter collectively referred to as the "Loan Documents"); and (v) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Grantee, now existing or hereafter coming into existence, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due to become due, and all renewals, modifications, consolidations and extensions thereof and substitutions therefor, either in whole or in part. All of the foregoing secured hereby are collectively described herein as the "Secured Indebtedness."

AND GRANTOR FURTHER COVENANTS AND AGREES WITH GRANTEE as follows:

1. Payment of Secured Indebtedness. Grantor shall pay to Grantee the Secured Indebtedness with interest thereon as in the Note, the Loan Documents and this Deed provided.

2. Payment of Other Items. Grantor shall pay, when due and payable, (a) all taxes, assessments, general or special and other charges levied on, or assessed, placed or made against the Premises, this Deed or the Secured Indebtedness or any interest of the Grantee in the Premises or the obligations secured hereby; (b) premiums on policies of fire and other hazard insurance covering the Premises, as required in

Article 3 herein; (c) premiums on all collaterally pledged life insurance policies, if any; (d) premiums for mortgage insurance, if this Deed and the Note are so insured; and (e) ground rents or other lease rentals, if any, payable by Grantor. Grantor shall pay to Grantee, together with and in addition to the payments of principal and interest payable under the Loan Documents, on the installment-paying dates thereof, until the Secured Indebtedness is fully paid or until notification from Grantee to the contrary, an amount reasonably sufficient (as estimated by Grantee) to provide Grantee with funds on hand to pay taxes, assessments, insurance premiums, rents and other charges next due so that Grantee will have sufficient funds on hand to pay same thirty (30) days before the date on which they become past due. In no event shall Grantee be liable for any interest on any amount paid to it as herein required, and the money so received may be held and commingled with its own funds, pending payment or application thereof as herein provided. Grantor shall furnish to Grantee, at least thirty (30) days before the date on which the same will become past due, an official statement of the amount of said taxes, assessments, insurance premiums and rents next due, and Grantee shall pay said charges to the amount of the then unused credit therefor as and when they become severally due and payable. An official receipt therefor shall be conclusive evidence of such payment and of the validity of such charges. Grantee may, at its option, pay any of these charges when payable, either before or after they become past due, without notice, or make advances therefor in excess of the then amount of credit for said charges. The excess amount advanced shall be immediately due and payable to Grantee and bear interest at the rate of 12.50% per annum from date of advancement. Grantee may apply credits held by it for the above charges, on account of any delinquent installments of principal or interest or any other payments maturing or due under this Deed, and the amount of credit existing at any time shall be reduced by the amount so paid or applied. The amount of the existing credit hereunder at the time of any transfer of the Premises shall, without assignment thereof, inure to the benefit of the successor-owner of the Premises and shall be applied under and subject to all of the provisions hereof, provided that nothing contained in this paragraph shall be deemed to authorize or to constitute Grantee's consent to the transfer of the Premises or any portion thereof or any interest therein, including a security interest. Upon payment in full of the Secured Indebtedness, the amount of any unused credit shall be paid over to the person entitled to receive it.

3. Insurance. (a) Grantor shall keep the Premises insured for the benefit of Grantee against loss or damage by fire, lightning, windstorm, hail, explosion, riot, riot attending a strike, civil commotion, aircraft, vehicles and smoke, and such other hazards (so-called "All Risk Coverage"), including flood, as Grantee may from time to time require, all in amounts approved by Grantee not to be less than 100% of the full replacement cost. Grantor shall also maintain (1) comprehensive public liability insurance, to include workmen's compensation insurance, covering all liabilities incident to the construction, ownership, possession and operation of the Premises, and naming Grantee as an additional insured thereunder, in an amount acceptable to Grantee; (2) rent insurance against loss of income arising out of any hazard against which the Premises are required to be insured under subparagraph (a) above in an amount not less than one (1) year's gross rental income from the Premises; and (3) such other insurance on the Premises or any replacements or substitutions therefor and in such amounts as may from time to time be reasonably required by Grantee against other insurable casualties which at the time are commonly insured against in the case of properties of similar character and location, due regard being given to the height and type of the improvements, their construction, location, use and occupancy, or any replacements or substitutions therefor including, without limitation, boiler insurance and flood hazard insurance, if applicable. All such insurance shall be written in form and by companies approved by Grantee; and regardless of the types or amounts of insurance required and approved by Grantee, Grantor shall assign and deliver to Grantee, as collateral and further security for the payment of the Secured Indebtedness, all policies of insurance which insurance against any loss or damage to the Premises, with loss payable to Grantee, without contribution by Grantee, pursuant to the New York Standard or other mortgagee clause satisfactory to Grantee. If Grantee, by reason of such insurance, receives any money for loss or damage, such amount may, at the option of Grantee, be retained and applied by Grantee toward payment of the Secured Indebtedness, or be paid over, wholly or in part, to Grantor for the repair or replacement of the Premises or any part thereof, or for any other purpose or object satisfactory to Grantee, but Grantee shall not be obligated to see to the proper application of any amount paid over to Grantor.

(b) Not less than 30 days prior to the expiration date of each policy of insurance required of Grantor hereunder, and of each policy of insurance held as additional collateral to secure the Secured Indebtedness, Grantor shall deliver to Grantee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Grantee.

(c) In the event of a foreclosure of this Deed, the purchaser of the Premises shall succeed to all the rights of Grantor, including any right to unearned premiums, in and to all policies of insurance assigned and delivered to Grantee, with respect to the Premises.

4. Maintenance and Inspection. Grantor shall maintain the Premises in good condition and repair, shall not commit or suffer any waste to the Premises, and shall comply with, or cause to be complied with, all statutes, ordinances and requirements of any governmental authority relating to the Premises or any part thereof. Grantor shall promptly repair, restore, replace or rebuild any part of the Premises, now or hereafter encumbered by this Deed, which may be affected by a proceeding of the character referred to in Article 7 herein. No part of the Premises now or hereafter conveyed as security by or pursuant to this Deed, shall be removed, demolished or materially altered without the prior written consent of Grantee. Grantor shall complete, within a reasonable time, and pay for any building, structure or other improvement at any time in the process of construction on the property herein conveyed. Grantor shall not initiate, join in or consent to any change in the private restrictive covenant, zoning ordinance or other public or private restrictions limiting or defining the uses which may be made of the Premises

3

or any part thereof. Grantee and any persons authorized by Grantee shall have the right to enter and inspect the Premises at all reasonable times.

5.     Leases and Assignment of Rents. Grantor shall faithfully perform the covenants of Grantor as lessor under any present and future leases, affecting all or any portion of the Premises, and neither do nor neglect to do, nor permit to be done, anything which may cause the termination of said leases, or any of them, or which may diminish or impair their value, or the rents provided for therein, or the interest of Grantor or Grantee therein or thereunder. Grantor, without first obtaining the written consent of Grantee thereto, shall not (a) assign the rents, or any part thereof, from the Premises, (b) consent to the cancellation or surrender of any lease of the Premises, or any part thereof, now existing or hereafter to be made, (c) modify any such lease so as to shorten the unexpired term thereof, or so as to decrease the amount of the rent payable thereunder, or (d) collect rents from the Premises for more than one month in advance. Grantor shall procure and deliver to Grantee at the time of executing this Deed, or at any time within thirty (30) days after notice and demand, estoppel letters or certificates from each lessee, tenant or occupant in possession of the Premises, as required by, and in form and substance satisfactory to, Grantee and deliver to Grantee a recorded assignment of all of the lessor's interest in said leases, in form and substance satisfactory to Grantee (in addition to the conveyance hereunder), and proof of due service of copy of said assignment on each lessee, either personally or by prepaid registered mail, return receipt requested.

Grantor hereby absolutely assigns and transfers to Grantee all the rents, issues and profits of the Premises, and hereby gives to and confers upon Grantee the right, power and authority to collect such rents, issues and profits. Grantor irrevocably appoints Grantee its true and lawful attorney-in-fact, at the option of Grantee at any time and from time to time, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Grantor or Grantee, for all such rents, issues and profits and apply the same to the Secured Indebtedness.

Notwithstanding anything contained herein to the contrary, this assignment is intended and shall be construed to create, an absolute, present assignment from Grantor to Grantee. The rents, issues and profits of the Premises are hereby assigned absolutely by Grantor to Grantee. It is the further intent of Grantee and Grantor that the rents, issues and profits absolutely assigned are no longer, during the term of this Deed, property of Grantor or property of the estate of Grantor as defined in 11 U.S.C. § 541 and shall not constitute collateral, cash or otherwise, of Grantor.

Although this assignment constitutes a present and current assignment of all rents, issues and profits of the Premises, so long as Grantor is not in default hereunder, Grantee shall not demand that such rents, issues and profits be paid directly to Grantee, and Grantor shall have a revocable license to collect, but no more than one (1) month prior to accrual, all such rents, issues and profits from the Premises; provided that such revocable license shall *ipso facto* terminate without further action by Grantee and without notice to Grantor upon the occurrence of a Default.

6.     Additional Documentation. Grantor shall execute and deliver and pay the costs of preparation and recording thereof to Grantee and to any subsequent holder from time to time, upon demand, any further instrument or instruments, including, but not limited to, security deeds, security agreements, financing statements, assignments, and renewal and subscription notes and guaranties, so as to reaffirm, to correct and to perfect the evidence of the obligation hereby secured and the legal security title of Grantee to all or any part of the Premises intended to be hereby conveyed, whether now conveyed, later substituted for, or acquired subsequent to the date of this Deed and extensions or modifications thereof. Grantor, upon request, shall certify by a writing, duly acknowledged, to Grantee or to any proposed assignee of this Deed, the amount of principal and interest then owing on the Secured Indebtedness and whether or not any offsets or defenses exist against the Secured Indebtedness, within 6 days in case the request is made personally, or within 10 days after the mailing of such request in case the request is made by mail.

7.     Condemnation. In the event all or any part of the Premises is taken by eminent domain by any public or quasi-public authority or corporation, or in the event all or any portion of the Premises is purchased from Grantor under threat of such taking, then all of the award of payment arising from said taking or purchase shall be paid to Grantee. Grantee shall have the right to retain said award or payment toward payment of the Secured Indebtedness, or to pay over said amount, in whole or in part, to Grantor, but Grantee shall not be obligated to see to the application of any amount paid over to Grantor. If prior to the receipt by Grantee of such award or payment, the Premises shall have been sold on foreclosure of this Deed, Grantee shall have the right to receive said award or payment to the extent of any deficiency found to be due upon such sale, with legal interest thereon, whether or not a deficiency judgment on this Deed shall have been sought or recovered or denied, and of attorneys' fees in the sum of 15% of the aggregate amount due hereunder, and all costs and disbursements incurred by Grantee in connection with the collection of such award of payment.

8.     Financial Statements. Grantor shall deliver to Grantee, at any time within 30 days after notice and demand by Grantee, (i) a statement in such reasonable detail as Grantee may request, certified by the Grantor or an executive officer of a corporate Grantor, of the leases relating to the Premises, and (ii) a statement in such reasonable detail as Grantee may request certified by a certified public accountant or, at the option of Grantee, by Grantor or an executive officer or treasurer of a corporate Grantor, of the income from and expenses of any one or more of the

following: (a) the conduct of any business on the Premises, (b) the operation of the Premises, or (c) the leasing of the Premises or any part thereof, for the last 12 month period prior to the giving of such notice, and, on demand, Grantor shall furnish to Grantee executed counterparts of any such leases and convenient facilities for the audit and verification of any such statement. Grantor and any Guarantor of the Secured Indebtedness shall deliver to Grantee financial reports and statements in form and substance acceptable to Grantee within 90 days following fiscal year end and within 30 days of request(s) made by Grantee from time to time.

9. Security Agreement. Grantor hereby grants to Grantee a security interest in the Improvements and Personal Property, including without limitation any and all property of similar type or kind hereafter located on or at the Property, for the purpose of securing the Secured Indebtedness. Grantor warrants, represents and covenants that the Improvements and Personal Property are not used or bought for personal family or household purposes. Notwithstanding anything contained herein to the contrary, all covenants and obligations of Grantor contained herein relating to the Premises shall be deemed to apply to the Improvements and Personal Property. This Deed constitutes a Security Agreement as that term is used in the Uniform Commercial Code of Georgia.

10. Default. Upon the occurrence of any one of the following events (herein called an "Event of Default" or "Default"):

(i) should Grantor fail to pay the Secured Indebtedness, or any part thereof, when and as the same shall become due and payable;

(ii) should any representation or warranty of Grantor (Grantor and each person primarily or secondarily liable to Grantee for the Secured Indebtedness hereinafter referred to as an "Obligor") herein contained, or contained in any instrument given by any Obligor to Grantee with respect to the Secured Indebtedness or the Premises, prove untrue, incomplete or misleading in any material aspect;

(iii) should the Premises be subject to actual or threatened waste, or any part thereof be removed, demolished or materially altered so that the value of the Premises is reduced or diminished in any manner whatsoever;

(iv) should any federal tax lien, execution, or claim of lien for labor or material be filed of record against any Obligor or the Premises and not be removed by payment or bond within 30 days from date of recording;

(v) should any claim of priority superior to this Deed by title, lien or otherwise be asserted in any legal or equitable proceeding;

(vi) should any Obligor become insolvent or should any Obligor make any assignment for the benefit of creditors, or should a receiver, liquidator or trustee of any Obligor or of any of any Obligor's property be appointed, or should any petition for the bankruptcy, reorganization or arrangement of any Obligor, pursuant to the Federal Bankruptcy Act or any similar statute, be filed, or should any proceeding be instituted against or on behalf of any Obligor alleging that any Obligor is insolvent or unable to pay such Obligor's debts as they become due, or should any Obligor be adjudicated a bankrupt or insolvent, or should any Obligor, if a corporation, be liquidated or dissolved or its charter expire or be revoked, or, if a partnership or business association, be dissolved or partitioned, or, if a trust, be terminated or expire;

(vii) should any Obligor fail to keep, observe, perform, carry out and execute in every particular the covenants, agreements, obligations and conditions set out in this Deed, or in the Note, or in any other Loan Document;

(viii) should any event occur under any instrument, deed or agreement, given or made by any Obligor to or with Grantee or any third party, which would authorize the acceleration of any debt owed by such Obligor to Grantee or to any such third party;

(ix) should Grantor sell or transfer the Premises or any portion thereof or any interest therein, including a security interest, without Grantee's prior written consent;

(x) if any Obligor is a corporation, partnership or other artificial entity, if there is any encumbrance, pledge, conveyance, transfer or assignment of any legal or beneficial interest whatsoever in such Obligor; or

(xi) if the financial responsibility of any Obligor becomes impaired in the sole opinion of Grantee or if Grantee otherwise deems itself to be insecure;

then and thereupon:

(i) Grantee may take possession of the Premises without the appointment of a receiver, or an application therefor, employ a managing agent of the Premises and let the same, either in its own name, or in the name of Grantor, and give notice to any lessees or

5

tenants under any existing leases affecting the Premises to make all future payments directly to Grantee or its order and to attorn to Grantee or its order as lessor or landlord, and receive the rents, incomes, issues and profits of the Premises and apply the same, after payment of all reasonable charges and expenses, on account of the Secured Indebtedness.

(ii)     Grantee may pay any sums in any form or any manner deemed expedient by Grantee to protect the security of this instrument or to cure any Event of Default other than payment of interest or principal on Secured Indebtedness; make any payment hereby authorized to be made according to any bill, statement or estimate furnished or procured from the appropriate public officer or the party claiming payment without inquiry into the accuracy or validity thereof, and the receipt of any such public officer or party in the hands of Grantee shall be conclusive evidence of the validity and amount of items so paid, in which event the amounts so paid, with interest thereon from the date of such payment at the rate of 12.5 % per annum, shall be added to and become a part of the Secured Indebtedness and be immediately due and payable to Grantee; and Grantee shall be subrogated to any encumbrance, lien, claim or demand, and to all the rights and securities for the payment thereof, paid or discharged with the principal sum secured hereby or by Grantee under the provisions hereof, and any such subrogation rights shall be additional and cumulative security to this Deed;

(iii)     Grantee may, at its option, declare the entire Secured Indebtedness immediately due, payable and collectible, without notice to Grantor, regardless of maturity, and thereupon, Grantee may sell and dispose of the Premises at public auction, at the usual place for conducting sales at the courthouse in the county where the Premises or any part thereof may be, to the highest bidder for cash, in order to pay the Secured Indebtedness, and all expenses of sale and of all proceedings in connection therewith, including 15% of the aggregate amount due as attorneys' fees, first advertising the time, terms and place of such sale by publishing a notice thereof once a week for four consecutive weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which sheriff's advertisements are published in said county, all other notice being hereby waived by Grantor; and Grantee may thereupon execute and deliver to the purchaser at said sale a sufficient conveyance of the Premises in fee simple, which conveyance may contain recitals as to the happening of the Default upon which the execution of the power of sale, herein granted, depends, and said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with; and Grantee, its agents, representatives, successors or assigns, may bid and purchase at such sale; and Grantor hereby constitutes and appoints Grantee or its assigns, agent or attorney-in-fact to make such recitals, sale and conveyance, and all of the acts of such attorney-in-fact are hereby ratified, and Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee, or its assigns (and in the event of a deed in lieu of foreclosure, then as to such conveyance), shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors in interest, in and to said Premises; and in the event of such a foreclosure sale, the proceeds of such sale shall be applied, in whatever order Grantee in its sole discretion may decide, to the outstanding principal amount of the Note, and interest then due thereon, and all amounts advanced by Grantee for taxes, assessments, fire insurance premiums and other charges, with interest at the rate of 12.5% per annum thereon from date of payment, together with all costs and charges for advertising, and commissions for selling the Premises, and 15% of the aggregate amount due, as attorneys' fees, and Grantee will pay over any surplus to Grantor (in the event of deficiency Grantor shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency); and Grantor agrees that possession of the Premises during the existence of the Secured Indebtedness by Grantor, or any person claiming under Grantor, shall be that of tenant under Grantee, or its assigns, and, in case of a sale, as herein provided, Grantor or any person in possession under Grantor shall then become and be tenants holding over, and shall forthwith deliver possession to the purchaser at such sale, or be summarily disposed in accordance with the provisions of law applicable to tenants holding over; the power and agency hereby granted are coupled with an interest and are irrevocable by death or otherwise, and are in addition to any and all other remedies which Grantee may have at law or in equity; and

(iv)     Grantee may exercise any and all of the remedies available to a secured party under the Georgia Uniform Commercial Code.

Grantee, in any action to foreclose this Deed, or upon any Event of Default, may apply for the appointment of a receiver of the rents, profits and other income of the Premises without notice, and shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Premises as security for the amounts due the Grantee, or the solvency of any person or corporation liable for the payment of such amounts.

In case of any sale under this Deed by virtue of the exercise of the power herein granted, or pursuant to any order in any judicial proceedings or otherwise, the Premises or any part thereof, may be sold in one parcel and as entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless and until the entire Premises are sold or the Secured Indebtedness is paid in full.

11.     Waiver of Homestead; Time of the Essence.  Grantor, for himself and family, hereby waives and renounces all homestead and exemption rights provided for by the Constitution and Laws of the United States or the State of Georgia, in and to the Premises as against the collection of the Secured Indebtedness, or any part thereof: and Grantor agrees that where, by the terms of this Deed, the Note, or any of the

Loan Documents, a day is named or a time fixed for the payment of any sum of money or the performance of any agreement, the time stated enters into the consideration and is of the essence of the whole contract.

12.   Grantee's Right to Sue. Grantee shall have the right from time to time to sue for any sums, whether interest, principal or any installment of either or both, taxes, penalties, or any other sums required to be paid under the terms of this Deed or any of the Loan Documents, as the same become due, without regard to whether or not all of the Secured Indebtedness shall be due on demand, and without prejudice to the right of Grantee thereafter to enforce any appropriate remedy against Grantor, including an action of foreclosure, or any other action, for a Default or Defaults by Grantor existing at the time such earlier action was commenced.

13.   Rights Cumulative. The rights of Grantee, granted and arising under the clauses and covenants contained in this Deed, the Note, and the other Loan Documents shall be separate, distinct and cumulative of other powers and rights herein granted and all other rights which Grantee may have in law or equity, and none of them shall be in exclusion of the others, and all of them are cumulative to the remedies for collection of indebtedness, enforcement of rights under security deeds, and preservation of security as provided at law. No act of Grantee shall be construed as an election to proceed under any one provision herein or under the Note or any of the Loan Documents to the exclusion of any other provision, or an election of remedies to the bar of any other remedy allowed at law or in equity, anything herein or otherwise to the contrary notwithstanding.

14.   Notice. Any and all notices, elections or demands permitted or required to be given under this Deed shall be in writing, signed by or on behalf of the party giving such notice, election or demand, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited in the United States mail, postage prepaid, certified with return receipt requested, or upon being deposited with an overnight commercial delivery service requiring proof of delivery, to the other party at the address of such other party set forth below or at such other address within the continental United States as such other party may designate by notice specifically designated as a notice of change of address and given in accordance herewith; provided, however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof; and provided further that no notice of change of address shall be effective until the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party at said address shall constitute receipt. Rejection or other refusal to accept or inability to deliver because of changed address of which no notice has been received shall also constitute receipt. Any such notice, election, demand, request or response, if given to Grantee, shall be addressed as follows:

> First Liberty Capital Partners LLC
> P. O. Box 2567
> Newnan, GA 30264

and if given to Grantor shall be addressed as follows:

> No Free, LLC
> 1004 Memorial Lane
> Suite 200
> Savannah, GA 31410

15.   No Waiver. Any indulgence or departure at any time by the Grantee from any of the provisions hereof, or of any obligation hereby secured, shall not modify the same or relate to the future or waive future compliance therewith by the Grantor.

16.   Definitions. The words "Grantor" and "Grantee" whenever used herein shall include all individuals, corporations (and if a corporation, its officers, employees, agents or attorneys) and any and all other persons or entities, and the respective heirs, executors, administrators, legal representatives, successors and assigns of the parties hereto, and all those holding under either of them, and the pronouns used herein shall include, when appropriate, either gender and both singular and plural, and the word "Note" shall also include one or more notes or guaranties and the grammatical construction of sentences shall conform thereto. If more than one party shall execute this Deed, the term "Grantor" shall mean all parties signing, and each of them, all of whom shall be jointly and severally liable hereunder, and each agreement, obligation and Secured Indebtedness of Grantor shall be and mean the several as well as joint undertaking of each of them.

17.   Severability. The parties agree that the provisions of this Deed are severable, and in the event any clause, phrase, sentence or paragraph shall be declared by a court of competent jurisdiction to be invalid or unenforceable, then the parties declare that the remaining clauses, phrases, sentences and paragraphs of this Deed shall remain in full force and effect.

18. **Waiver of Grantor's Rights.** BY EXECUTING THIS INSTRUMENT GRANTOR EXPRESSLY ACKNOWLEDGES THAT UPON GRANTOR'S DEFAULT HEREUNDER, GRANTEE IS GIVEN THE RIGHT TO ACCELERATE THE DEBT SECURED HEREBY AND TO SELL THE PROPERTY CONVEYED HEREBY AT PUBLIC AUCTION PURSUANT TO THE POWER OF SALE CONTAINED HEREIN, AND GRANTOR HEREBY EXPRESSLY WAIVES ANY RIGHTS TO NOTICE AND HEARING BEFORE SUCH SALE UNDER POWER BY GRANTEE, OTHER THAN THE REQUIRED ADVERTISEMENT ONCE A WEEK FOR FOUR WEEKS PLUS GRANTOR'S INHERENT LEGAL RIGHT TO SEEK A COURT INJUNCTION. GRANTOR MAKES THIS WAIVER KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY, AFTER HAVING BEEN GIVEN FULL EXPLANATION OF GRANTEE'S RIGHTS HEREUNDER PLUS THE OPPORTUNITY TO CONSULT AN ATTORNEY OF GRANTOR'S OWN CHOOSING BEFORE EXECUTING THIS INSTRUMENT AND INITIALLING THIS PARAGRAPH.

19. Prior Deeds. "NOT APPLICABLE"

20. Indemnity. Grantor shall protect, indemnify and save harmless Grantee from and against all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses (including attorneys' fees and expenses) imposed upon or incurred by Grantee by reason of (a) any claim for brokerage fees or other such commissions relating to the Premises or the Secured Indebtedness, or (b) the condition of the Premises, or (c) any default by Grantor under this Deed, the Note, or any other Loan Documents, or (d) failure to pay recording, mortgage, intangibles or similar taxes, fees or charges relating to the indebtedness evidenced by the Note or any one or more of the Loan Documents, or (e) the Loan Documents or any claim or demand whatsoever which may be asserted by reason of any alleged action, obligation or undertaking to be performed or discharged by Grantee pursuant to this Deed or any other document evidencing, securing, or in any way relating to the Secured Indebtedness or pursuant to any matter contemplated in the Loan Documents. In the event Grantee incurs any liability, loss or damage by reason of the foregoing, or in the defense of any claim or demand arising out of or in connection with the foregoing, the amounts of such liability, loss or damage shall be added to the Secured Indebtedness, shall bear interest at the interest rate specified in the Note from the date incurred until paid and shall be payable on demand.

IN WITNESS WHEREOF, this Deed has been duly executed and sealed by Grantor the day and year first above written.

Signed, sealed and delivered, this
11th day of June, 2024, in
the presence of:

_____
Unofficial Witness

_____
Notary Public

(NOTARY SEAL)

My Commission Expires:
7-20-2026

**GRANTOR:**

**NO FREE, LLC, a Georgia limited liability company**

By: _____(SEAL)
Jerry K. Williams, Jr., M.D.
its Managing Member

8

# BORROWER'S AFFIDAVIT

PERSONALLY appeared before the undersigned Notary Public, **Jerry K. Williams, Jr., M.D.,** (hereinafter designated "Deponent"), a duly authorized Managing Member of **NO FREE, LLC,** a Georgia limited liability company (hereinafter designated as "Company") who being first duly sworn, deposes and says on oath as follows:

1.

Deponent makes this Affidavit for the purpose of inducing **First Liberty Capital Partners LLC,** a Georgia limited liability company, to modify a loan in the amount of $250,000.00 to Company by increasing the loan amount to $500,000.00, said loan to be secured by a modification to a security deed executed simultaneously herewith conveying the real property described in Exhibit "A" ("Property").

2.

Deponent knows the facts contained herein of Deponent's own personal knowledge and is duly authorized and qualified to make this Affidavit.

3.

Company is the owner of the marketable fee simple title to the Property free and clear of all debts, liens and encumbrances, save and excepting only those specifically set forth in Exhibit "B".

4.

Deponent states that there have been no improvements or new construction on the Property nor any contracts entered into within ninety five (95) days prior hereto for labor, materials or services with respect to improvements or new construction which would be the basis of a lien against the Property under Georgia law, including architect's fees, any such improvements and new construction having been paid for in full at the agreed price, including payment for any appliances or fixtures that are located upon the Property.

5.

Deponent further states that there are no outstanding or unpaid notes, security instruments or financing statements covering any appliances, fixtures or personal property located upon or affixed to the Property.

6.

Deponent further states that there are no outstanding or unpaid judgments, executions, pending suits, bankruptcy or other insolvency proceedings against Company anywhere in the United States, nor any tax assessments or liens of any kind other than current year ad valorem taxes against the Property.

## 7.

Deponent further states that the lines and corners of the Property are clearly marked and there are no disputes concerning the location of the lines and corners of same. All improvements on the Property are located within the boundaries of said property and are not in violation of applicable zoning regulations, covenants or restrictions.

## 8.

Company is not surety on any bond that through default of the principal therein a lien would be created on the Property.

## 9.

Deponent further states that there are presently no persons or entities which have a possessory right or claim to the Property or are in actual possession other than Company.

## 10.

Deponent acknowledges being informed that this Affidavit is made with the understanding that it will be relied upon by lenders dealing with Company, by the attorney certifying title to the Property, and by title insurance companies insuring title to the Property.

Sworn to and subscribed before me
this 11th day of June, 2024:

_____
Notary Public

**Jerry K. Williams, Jr., M.D.**
**as Managing Member**

(NOTARY SEAL)

PAMELA KENDALL FLOYD
NOTARY PUBLIC
EXP 7-20-2026
TOWNS COUNTY, GA

2