**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| RIVERDAWG, LLC, NO FREE, LLC, and | : | |
| HOLT KNOB HOLDINGS, LLC, | : | Civil Action File No. |
| Plaintiffs, | : | 1:26-cv-1353 |
| v. | : | |
| S. Gregory Hays, in his capacity as Receiver for | : | |
| First Liberty Capital Partners, LLC, | : | |
| Defendant. | : | |

## REPLY TO RESPONSE TO MOTION TO DISMISS

S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in Case No. 1:25-cv-3826-MLB (the "**Receivership**") in the District Court for the Northern District of Georgia (the "**Court**"), by and through counsel, hereby files this *Reply to Response to Motion to Dismiss* to reply to the *Response to Motion to Dismiss* [Doc. No. 5] (the "**Response**") that was filed by Plaintiffs and respectfully states as follows:

1.      Notwithstanding the often generalized and conclusory allegations in the Amended Complaint that was filed in conjunction with the Response and improper attempt to incorporate matters related to investors that are not applicable to the Plaintiffs in an attempt to manufacture unsubstantiated claims, the Response fails to demonstrate compliance with the *Order Establishing Procedures to Enter Action to*

*Resolve Claims Arising from Loan Obligations Due to the Receivership* [Doc. No. 70] (the "**Procedures Order**").

2.      After filing the Response, the Plaintiffs did file an *Amended Verified Complaint* on April 21, 2026 [Doc No 7] (the "**April 21 Amended Complaint**); however, this Amended Complaint differs from the Amended Complaint attached to the Response to which this Reply is filed. Although the April 21 Verified Complaint does address some of the issues raised in the Motion to Dismiss, it still fails to comply with the Procedures Order and the Receiver does intend to file a renewed Motion to Dismiss to the April 21 Verified Complaint as well as seeking a hearing on this matter from the Court given the Plaintiffs' continuing failure to comply with the Procedures Order. Indeed, it seems clear to the Receiver that the Plaintiffs are intent on seeking to evade their responsibilities under the Procedures Order and to frustrate and delay the Receiver's efforts to recover investor funds from the Plaintiffs.

3.      The Response also fails to: a) identify any legitimate basis to recharacterize the loans to the Plaintiffs; or b) adequately support any claim sounding in breach of contract or fraud under Counts Two, Three, and Four.

4.      To the extent that Plaintiffs ultimately comply with the Procedures Order and the Court determines that any claims of the Plaintiffs survive, such claims

should be incorporated into the pending matter regarding the obligations and guarantees executed by Dr. Williams in Court Civil Action No. 1:26-cv-01349-MLB styled as *S. Gregory Hays, as Receiver v. Jerry K. Williams, Urgent Care 24/7, LLC, No Free LLC and Riverdawg LLC* (the "**Receiver Lawsuit**").

    A. **The Response Fails to Demonstrate the Use of Funds as Required by the Procedures Order.**

5.    Paragraph 5(b)(iv) of the Procedures Order requires "a verified list of all disbursements and uses of funds received by the Borrower from a Receivership Entity by date, amount and payee along with documents evidencing such uses." Rather than identifying any such verified list, Section 2 of the Response argues that such requirement is not applicable since: a) Plaintiffs produced certain other documents that did not include the required verified list of uses;[1] b) paragraph 37 of the original Complaint indicated that the funds were used for general business purposes; and c) Plaintiffs would be providing a more detailed explanation of the uses of funds. Although the Response does not identify the location the purported further explanation, the Receiver believes that the Plaintiffs are referring to paragraph 40 of the Amended Complaint that only provides four general categories

---

[1] Contrary to the allegation in the Response that the funds were not to be used for a particular purpose, Paragraph 5 of each of the promissory notes includes an agreement by the particular borrower as to the purpose of the particular loan.

of uses "as agreed and understood by First Liberty" without explaining what was actually agreed and understood. Under the circumstances, Plaintiffs have failed to identify a verified list of uses of funds as required by paragraph 5(b)(iv) of the Procedures Order.

6.     The April 21 Amended Complaint does attach, as Exhibit G, a purported list of payments made by the Plaintiffs with the funds received from First Liberty; however, this list does not comply with the Procedures Order. The Procedures Order is quite clear at Section 5(b)(iv) that the Plaintiff is not only required to provide a list, but also provide "documents evidencing such uses attached as an Exhibit to the Verified Complaint … or separately provided to the Receiver." No such documents have been provided to the Receiver as of the date on which this Reply is filed.

7.     The need for such documents is clear in this case since even a cursory review of Exhibit G to the April 21 Complaint demonstrates that Dr. Williams utilized investor funds received from First Liberty for unrelated purposes, including the purchase of a van and what appears to be the use of a private plane. Moreover, there are several payments made to credit card companies (AMEX and Apple) but no information as to what charges were being paid. Finally, there appear to be transfers to several bank accounts identified in the list, but because the bank

statements are not attached, it is impossible to discern how those funds were actually used.

### B. The Complaint Fails to Allege a Breach of Contract Claim.

8.      "Under Georgia law, '[t]he essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom . . ..' Moreover, a plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." *Anderson v. Deutsche Bank Nat. Tr. Co.*, No. 1:11-CV-4091-TWT-ECS, 2012 WL 3756512, at *5 (N.D. Ga. Aug. 6, 2012) (citation omitted). Here, Count Four of the Amended Complaint not only fails to satisfy paragraph 5(b)(v) of the Procedures Order, but also fails to allege a purported willful breach of contract by failing to identify an obligation to perform any specific act under a valid agreement, a specific material provision of any agreement that was actually violated by First Liberty, or any specific damages arising therefrom.

9.      Instead of identifying a specific material obligation of First Liberty, exactly how a specific contractual provision was breached, and how the Plaintiffs were damaged by such a breach, Section 3 of the Response references paragraph 123-129 of the Complaint that allege in a conclusory manner an unexplained obligation of First Liberty that was purportedly breached and unexplained fraudulent

representations. Such allegations do not even attempt to detail any specific damages arising therefrom other than vague references to general types of damages.

10.    While paragraph 128 alleges an unexplained general failure to fund the Fourth Loan, the Amended Complaint fails to identify any specific obligation of any written agreement executed by the Plaintiffs that was violated by First Liberty. In fact, the only particular contractual provision referenced in such paragraphs is a recital paragraph of a Promissory Note that acknowledges that the loan shall be allocated by First Liberty to an account and "disbursed from time to time on terms and conditions as established by Lender as to timing, amount, and other conditions of disbursements." *See* Exhibit F to Amended Complaint, p. 1. Notwithstanding that such provision is merely a recital of a note to recognize the obligation of the borrower, such provision does not include any specific obligation by First Liberty to disburse any particular funds by any particular date and it is undisputed that disbursements were subject to the terms and conditions established by First Liberty. In short, the Response fails to demonstrate the existence of any breach of contract claim.

11.    Since the Response fails to demonstrate a plausible claim that: a) First Liberty had any specific obligation to perform any particular act under a valid

contract; b) First Liberty materially failed to perform; and c) any of the Plaintiffs incurred any specific damages as a result, Count Four should be dismissed.

### C. **Plaintiffs Fail to Provide a Statement of Defenses.**

12.     Although Section 4 the Response acknowledges that paragraph 5(b)(vi) of the Procedures Order requires a detailed statement of defenses that includes documents related to such defenses, the Response provides that Plaintiffs will provide such information later. The Procedures Order; however, does not grant the Plaintiffs such discretion. Plaintiffs are fully aware that: a) this matter is grounded in the loans that Plaintiffs received from First Liberty; and b) the Receiver issued a default notice last year and has demanded that such loans be repaid. Even if the Receiver had not already initiated the Receiver Action, the Plaintiffs are obligated to provide a detailed statement of defenses as to why such obligations have not been paid in order to comply with the Procedures Order. In the event that the loans to the Plaintiffs were characterized as something other than loans as requested by the Plaintiffs, Plaintiffs are aware that the transfers would constitute clear fraudulent transfers. Under the circumstances, the Plaintiffs are required to assert any defenses under paragraph 5(b)(vi) of the Procedures Order to the known claims of the Receiver in order to enter the Receivership.

### D. **The Complaint Fails to Plead Fraud with Sufficient Particularity.**

13.    "'Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (providing the requirement of particularity as to the circumstances constituting fraud means pleading factual details that include "'the who, what, when where, and how'"). Section 5 of the Response fails to satisfy such standard or demonstrate compliance with paragraph 5(b)(vii) of the Procedures Order.

14.    Instead of alleging sufficient facts to explain the who, what, when where, and how related to matters specifically between First Liberty and the Plaintiffs, the Amended Complaint improperly relies on, in addition to conclusory allegations, the a Ponzi scheme as to investors in an attempt to invoke the Ponzi presumption. These defects are not cured in the April 21 Amended Complaint. Such strategy is inherently flawed for at least five reasons.

15.    First, the authority cited in the Section Five of the Response, *United States v. Orton*, 73 F.3d 331 (11th Cir. 1996), *Wiand v. Lee*, 753 F.3d 1194 (11th Cir. 2014) and *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296 (11th Cir. 2020), does not support the relief sought by the Plaintiffs in the Amended Complaint to allow the recipients of substantial transfers to avoid the payment of contractually agreed obligations. Instead, such authority addresses circumstances involving alleged fraud by using a Ponzi or pyramid scheme to obtain money from investors and transferring a portion of such funds to other investors to further the scheme.

16.    Second, the Plaintiffs were not investors in any of the Receivership Entities and are unable to substantiate claims based primarily on fraudulent conduct that may have been perpetrated against investors. Plaintiffs received significant transfers of funds that originated from investors and should not be allowed to use harm incurred by investors as a twisted excuse to avoid repaying the obligations that the Plaintiffs promised would be paid. Paragraph 5(b)(vii) of the Procedures Order recognizes the distinction between pleading fraud generally rather than specifically as to the Plaintiffs in providing that "shall not be allowed or sufficient to simply reference or rely upon fraud generally or the general circumstances or general fraud underlying or asserted in the Complaint filed by the SEC that led to the appointment of the Receiver."

9

17.   Third, a finding of the existence of a Ponzi scheme rather than just circumstances involving Ponzi-like transfers is not inevitable as "entities used to perpetrate the scheme usually conduct little to no legitimate business operations." *Wiand v. Lee*, 753 F.3d 1194, 1201 (11th Cir. 2014). Rather than raising funds for fictitious investments, the reports filed by the Receiver in the Receivership indicate that First Liberty conducted substantial business operations that resulted in First Liberty funding more than 60 loans. The Plaintiffs were part such business activity in receiving four loans incident to which the Plaintiffs entered promissory notes that promised that the obligations would be paid. While the Plaintiffs seek to avoid the obligations arising from such loans, it notable that the Amended Complaint does not allege any issue with the funding that the Plaintiffs actually received incident to the first three loans and only allege an unexplained failure as to the funding of the fourth loan. "In cases short of the classic Ponzi scheme case, the 'Ponzi presumption' is no substitute for proof." *S.E.C. v. Mgmt. Sols., Inc.*, No. 2:11-CV-1165-BSJ, 2013 WL 4501088, at *21 (D. Utah Aug. 22, 2013).

18.   Fourth, the "application of the Ponzi scheme presumption is permissible only when there has been an actual finding of the existence of a Ponzi scheme." *Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, No. 1:13-CV-195 (WLS), 2016 WL 9243594, at *2 (M.D. Ga. Oct. 4, 2016). Here, there has been

no finding that First Liberty operated as a Ponzi scheme. Without a finding of the existence of a Ponzi scheme, the Plaintiffs are unable to rely on any Ponzi scheme and the Plaintiffs must first present sufficient facts to support their fraud claims through alleged "badges of fraud" and satisfy the Court that all prerequisites are met.

19.    Fifth, the Ponzi presumption does not actually advance the relief sought by the Plaintiffs as it provides that transfers that are made in furtherance of a Ponzi scheme are presumed to have been made with the intent to defraud creditors. *See Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, No. 1:13-CV-195 (WLS), 2016 WL 9243594, at *2 (M.D. Ga. Oct. 4, 2016) (noting that "for the Ponzi scheme presumption to apply, the alleged fraudulent transfers must be related to and in furtherance of the Ponzi scheme"). While the Response attempts to enlarge the Ponzi presumption to characterize all transactions involving the operator of a Ponzi scheme as intentionally fraudulent, the Response provide no basis for such position that would in effectively allow recipients of fraudulent transfers to void attempts to recover such transfers by asserting counter fraud claims based on the same conduct. Here, the Ponzi presumption does not relieve the Plaintiffs from the burden of demonstrating fraudulent intent in the actual transactions involving the Plaintiffs.

20.    Notwithstanding the foregoing, the Response and the Amended Complaint fail to allege: a) precisely what statements were made in what documents

11

or oral representations or what omissions were made; b) the time and place of each such statement and the person responsible for making same; c) the content of such statements and the manner in which they misled the Plaintiffs; and d) what the First Liberty obtained as a consequence of the fraud. The Response and the Amended Complaint also fail to allege sufficient facts to demonstrate: a) any specific fraud in entering the loans rather than fraud generally; and b) that First Liberty had actual intent to not fund the loans at the time that each of the loans were entered. Notably, Plaintiffs are unable to demonstrate such intent as to the first three loans as the Plaintiffs do not allege any issue with the funding of such loans.

21.   Instead, the Response refers to general unidentified purported false representations in paragraphs 91 and 92 of the Complaint and otherwise alleges generally false representations, lies and omissions without providing specific details as to such purported false representations, lies and omissions. The Response further alleges that the Amended Complaint further elucidates that the statements by "(a) were made by Brant Frost to Jerry Williams, (b) over the telephone, (c) made at the time immediately preceding and at the closing of each of the 'loans.'" The Amended Complaint does not actually contain such information or include any reference to any telephone communications.

22.    The Amended Complaint contains a new paragraph 93 that purportedly details representations, but instead merely provide a general allegation that "the source of funds was legitimate and that the Loans would be fully funded, in an attempt to induce Plaintiffs into the Loans." *See* Amended Complaint ¶ 93. Even if such statement was actually detailed appropriately, such statement would not constitute a misrepresentation as the source of funding was legitimate as it came from investors and First Liberty had sufficient proceeds to fund the loans. In a vain attempt to base a fraud allegation in a document, Paragraph 93 also references a purported misstatement in certain loan documents. The statement at issue; however, is that "Borrower agrees that the principal purpose of the Loan is to purchase and expand an existing Urology Clinic." Such statement is not by First Liberty and is in fact an acknowledgement by the borrower as to the purpose of the loan. First Liberty is not responsible for the inability of the borrower to understand its business. The Response does highlight that such statement is a misrepresentation by Dr. Williams on behalf of borrower as Dr. Williams apparently did not actually use the proceeds to purchase and expand a Urology Clinic.

23.    The Response further provides that "Brant Frost continually misrepresented that First Liberty had the financial ability to fund the entirety of the loans." Response, p. 11. While no such representations are detailed in the Amended

13

Complaint, the conclusory statement is inaccurate as: a) First Liberty raised sufficient funds for each of the loans; b) there no dispute as to the funding of the first three loans to the Plaintiffs; and c) First Liberty was funding other loans at the same time as the loans to the Plaintiffs.

24.     In short, Plaintiffs fail to: a) allege a viable claim that First Liberty did not have intent—when the loans were entered—to fund the loans to support any kind of fraud as to the Plaintiffs; b) allege a specific misrepresentation upon entering the loans or specific damages flowing therefrom; or c) identify each and every fraudulent statement or act on which Plaintiffs relied together with supporting documents or otherwise support a fraud claim.

25.     Under the circumstances, the Amended Complaint fails to plead fraud with particularity and violates the express prohibition in Paragraph 5(b)(vii) of the Procedures Order by relying on general circumstances or general fraud underlying the claims asserted by the SEC rather than conduct specific to the Plaintiffs. Such insufficiency infects Count Two for Fraud, Count Three for Fraud in the Inducement, and Count Four for Willful Breach of Contract and such claims should be dismissed.

E. **The Plaintiffs Fails to Adequately Detail Damages.**

26.     Although Section 6 the Response acknowledges that paragraph 5(b)(viii) of the Procedures Order requires a detailed and specific itemization and

calculation of damages, the Response fails to identify any such itemization and calculation. Instead, the Response: a) references paragraphs 142 and 143 of the original Complaint that allege a right to setoff and recoupment; and b) indicates that the Amended Complaint provides further information without identifying a specific location. The Receiver was unable to identify a detailed and specific itemization and calculation of damages in the Amended Complaint. Plaintiffs have failed to satisfy paragraph 5(b)(viii) of the Procedures Order.

27.     WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court: 1) grant the Motion; 2) dismiss the Amended Complaint; 3) in the alternative, to the extent possible, direct that the Plaintiffs to comply with the Procedures Order; 4) tax all costs of the Receiver in responding in this matter against the Plaintiffs; and 5) grant the Receiver such other and further relief as this Court deems just and proper.

Respectfully submitted this 28th day of April, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com; Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*

15

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE AND
## CERTIFICATE OF SERVICE

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

Counsel further certifies certify that I have electronically filed the foregoing *Motion to Dismiss* with the Clerk of Court via the CM/ECF system, and further certify that a true and correct copy of the same has been served by email as follows:

JONES & WALDEN LLC
c/o Leon S. Jones, Esq.
699 Piedmont Avenue NE
Atlanta, Georgia 30308        Sent electronically to LJones@joneswalden.com

This 28th day of April, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com
Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*