**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **RIVERDAWG, LLC, NO FREE, LLC, HOLT KNOB HOLDINGS, LLC, URGENT CARE 24/7, LLC, and JERRY WILLIAMS, individually,** | **Civil Action File No.** **26-cv-01353-MLB** |
| **Plaintiffs,** | |
| **v.** | |
| **S. GREGORY HAYS, IN HIS CAPACITY AS RECEIVER FOR FIRST LIBERTY CAPITAL PARTNERS, LLC,** | |
| **Defendant.** | |

## BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Movants Riverdawg, LLC ("**Riverdawg**"), No Free, LLC ("**No Free**"), and Holt Knob Holdings, LLC,("**Holt Knob**"), Urgent Care 24/7, LLC ("**Urgent Care**"), and Jerry Williams, M.D. ("**Dr. Williams**" and collectively with Riverdawg and No Free, the "**Movants**") file this Brief in support of their *Motion for Temporary Restraining Order and Preliminary Injunction* (the "**Motion**"). Movants filed a *Verified Complaint* (as amended, the "**Complaint**") initiating this case pursuant to the *Order Establishing Procedures* (Doc. No. 70) (the "**Procedures Order**"). Pursuant to

such Complaint, Movants initiated this action against the Receivership Estate[1] in order to *inter alia* determine any amount due by Movants to the Receivership Entities on transactions between Movants and the Receivership Entities (the "**Ancillary Action**").

Movants file the instant Motion to request that the Court enter a temporary restraining order and preliminary injunction: (a) prohibiting the Receiver from foreclosing on First Liberty's security interests under its Security Deeds until such time as the Court makes a determination in this Ancillary Action regarding any amount due, (b) permitting Movants to remit into the Court's registry determined "release amounts" with respect to each Loan transaction, and (c) compelling cancellation of each Security Deed upon tender of any Release Amount (as defined below) on each specific Loan transaction. Movants' amended Complaint is fully incorporated into this brief by this reference.

## Factual Background

I.     The Receivership Action

1.     On July 10, 2025, the Securities and Exchange Commission ("**SEC**") filed a Complaint against First Liberty Capital Partners LLC ("**First Liberty**") and other parties, thereby initiating the original action (Case No. 1:25-cv-03826-MLB) (the "**Receivership Action**").

---

[1] Capitalized terms not otherwise defined herein should have the meaning prescribed to the same in the Complaint.

2.        On July 11, 2025, this Court entered an *Order Appointing Receiver* (Doc. No. 6 in the Receivership Action) (the "**Receivership Order**") appointing S. Gregory Hays as the Receiver (the "**Receiver**") for the estate of First Liberty Building & Loan, LLC, First Liberty Capital Partners LLC, First National Investments LLC, MyHealthAI Capital LLC, The Legacy Advisory Group Inc., and The Liberty Group LLC (the "**Receivership Entities**").

II.    First Liberty's Purported Loans to Movants

3.        Movants entered into transactions with Receivership Entities which were styled as loans.

A.    *The First Loan (First Liberty to No Free)*

4.        On or about December 28, 2023, Plaintiff No Free executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $250,000.00 (as amended or modified, the "**First Note**"), and (ii) a Deed to Secure Debt, Assignment of Rents and Security Agreement recorded at Deed Book 67478, Page 128 in the records of the Clerk of Superior Court of Fulton County, Georgia (as amended or modified, the "**First Security Deed**"),[2] evidencing No Free's intent to borrow funds from First Liberty as lender (the "**First Loan**"). Pursuant to such instruments, No Free granted First Liberty a security interest in certain real property

---

[2] A true and correct copy of the First Security Deed is included in Exhibit "B" attached to the Complaint.

3

located in Fulton County, Georgia, having map parcel no. 14007800030922 (the "**Fulton Property**") to secure the First Loan.

5.    On or about June 11, 2024, No Free executed and delivered to First Liberty (i) a Modification to Promissory Note, and (ii) a Modification to Deed to Secure Debt, Assignment of Rents and Security Agreement (collectively, the "**First Loan Modification**") whereby No Free intended to modify the First Loan and First Security Deed to increase the principal amount to $500,000.00.[3]

B.    *The Second Loan (First Liberty to Riverdawg)*

6.    On or about September 17, 2024, Plaintiff Riverdawg executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $700,000.00 (as amended or modified, the "**Second Note**"), and (ii) a Deed to Secure Debt, Assignment of Rents and Security Agreement recorded at Deed Book 734, Page 460 in the records of the Clerk of Superior Court of Towns County, Georgia (as amended or modified, the "**Second Security Deed**"), evidencing Riverdawg's intent to borrow funds from First Liberty as lender (the "**Second Loan**"). Pursuant to such instruments, Riverdawg granted First Liberty a security interest in certain real property located in Towns County, Georgia, having map parcel nos. 0064 010,

---

[3] A true and correct copy of the First Loan Modification is included in Exhibit "B" attached to the Complaint. Upon information and belief, the First Loan Modification to the First Security Deed was not recorded following execution and delivery to First Liberty.

4

0064 011, and 0064 012 (collectively, the "**Towns Properties**") to secure the Second Loan.[4]

### C.     The Third Loan (First Liberty to Riverdawg)

7.      On or about December 9, 2024, Plaintiff Riverdawg executed and delivered to First Liberty a Promissory Note in the original principal amount of $355,000.00 (as amended or modified, the "**Third Note**") evidencing Riverdawg's intent to borrow funds from First Liberty as lender (the "**Third Loan**").[5]

### D.     The Fourth Loan (First Liberty to No Free)

8.      On or about December 19, 2024, Plaintiff No Free executed and delivered to First Liberty: (i) a Promissory Note in the original principal amount of $3,500,000.00 (as amended or modified, the "**Fourth Note**")[6] evidencing No Free's intent to borrow funds from First Liberty as lender (the "**Fourth Loan**"). The First Note, Second Note, Third Note, and Fourth Note are collectively referred to herein as the "**Notes**". The First Loan, Second Loan, Third Loan, and Fourth Loan are collectively referred to herein as the "**Loans**". The First Security Deed, the First Loan Modification, the Second Security Deed, the Bryan Security Deed (as defined

---

[4] True and correct copies of the Second Note and the Second Security Deed are included in Exhibit "C" attached to the Complaint.

[5] A true and correct copy of the Third Note is included in Exhibit "E" attached to the Complaint.

[6] A true and correct copy of the Fourth Note is included in Exhibit "F" attached to the Complaint.

below), and the North Carolina Deed of Trust (as defined below) are collectively referred to herein as the "**Security Deeds**".

        i.      The Bryan County, Georgia Security Deed

9.      On or about December 19, 2024, Plaintiff No Free executed and delivered to First Liberty Building and Loan that certain Commercial Deed to Secure Debt and Security Agreement recorded on January 15, 2025, at Deed Book 1703, Page 811 in the records of the Clerk of Superior Court of Bryan County, Georgia (as amended or modified, the "**Bryan Security Deed**").[7] Pursuant to such instrument, No Free granted First Liberty Building and Loan a security interest in certain real property located in Bryan County, Georgia, having map parcel no. 067 001 (the "**Bryan Property**") to secure the Fourth Loan. The Bryan Security Deed secures No Free's indebtedness to First Liberty Building and Loan in the sum of $3,500,000.00.

        ii.     The North Carolina Deed of Trust

10.     On or about the time of the Fourth Loan, on or about December 19, 2024, Plaintiff Holt Knob executed and delivered to First Liberty a document titled "North Carolina Deed of Trust" (the "**Deed of Trust**") regarding certain originally unidentified property in Macon County, North Carolina. Such Deed of Trust

---

[7] A true and correct copy of the Bryan Security Deed is included in Exhibit "F" attached to the Complaint.

purports to grant certain rights to First Liberty as beneficiary via and through The Neumann Law Office, PLLC Attorneys at Law (the "**Trustee**") as Trustee[8].

11.     After the execution and delivery of the Deed of Trust by Holt Knob to First Liberty, a Deed of Trust was recorded on January 29, 2025, at Book CRP N-43, Page 2363 in the records of the Register of Deeds of Macon County, North Carolina (the "**Recorded Deed of Trust**").[9] A legal description is attached to the Recorded Deed of Trust as Exhibit "A". However, such legal description was not referenced or mentioned in, attached to, incorporated by, or otherwise included at all in the Deed of Trust which was signed by Holt Knob.

Both the actual Deed of Trust and Recorded Deed of Trust state that Holt Knob, as Grantor, is indebted to First Liberty in the principal sum of $3,500,000 pursuant to a promissory note of even date therewith. However, no such promissory note (by which Holt Knob is indebted to First Liberty) exists. Therefore, the Recorded Deed of Trust is unenforceable with respect to any indebtedness purportedly owed to First Liberty. Pursuant to the terms of the Recorded Deed of Trust itself, the Recorded Deed of Trust is "null and void" because no debt is secured thereby.

---

[8] A true and correct copy of the Deed of Trust which Holt Knob executed at closing is attached to the Complaint as Exhibit "H".

[9] A true and correct copy of the Recorded Deed of Trust is attached to the Complaint as Exhibit "I".

III.    Movants' Payments to the Receivership Entities

12.    No Free and Riverdawg timely made all payments due per the terms of the Notes and First Loan Modification until the First Liberty shutdown and Receivership.

13.    In July 2025, following the entry of the Receivership Order, Movants requested the Receiver to provide payoff information for each of the Loans. The Receiver responded to Movants' requests and repeatedly promised to provide such payoff information over a subsequent period of approximately six weeks.

14.    Movants specifically requested a payoff amount needed in order to obtain a release of the Deed of Trust (the "**Lot Release**") executed by Holt Knob and recorded in North Carolina.  The Receiver promised and agreed to provide a Lot Release. Movants, together with an attorney for Movants, conveyed to the Receiver the urgency of the need for the Lot Release. This urgency is based on the fact that construction had been ongoing in North Carolina. Holt Knob had been in need of refinancing to obtain funds to continue construction of a residential unit on the North Carolina parcel. Movants advised the Receiver that the Lot Release was required in order to obtain a construction loan. Despite this knowledge, and despite the Receiver's assurances that it would do so, the Receiver has failed and refused to provide a Lot Release for the North Carolina Deed of Trust.

15.     Movants received correspondence from the Receiver on or about September 10, 2025, via letter from Receiver's counsel (the "**Receiver Draft Notice of Intent**"). A true and correct copy of the Receiver Draft Notice of Intent is attached hereto as **Exhibit "A"**. The Receiver provided a "loan payoff" as of September 10, 2025. However, the Receiver Draft Notice of Intent stated that all of the Loans were subject to "cross-collateralization" and "cross default provisions." In other words, the Receiver attempted to condition the Lot Release of the North Carolina Deed of Trust based on payment of all the other Loans.

16.     The Receiver's Draft Notice of Intent states that the following amounts are due with respect to each of the Loans as of September 10, 2025:

| Loan # | Payoff | Per Diem |
|--------|--------|----------|
| 1. | $487,291.61 | $333.33 |
| 2. | $667,066.28 | $319.46 |
| 3. | $369,990.42 | $175.41 |
| 4. | $2,796,582.72 | $1,502.98 |

Movants do not agree with the Receiver's calculation of the amounts due. For example, in the Receiver's Draft Notice of Intent, the Receiver provides a proposed credit for the non-existent "reserve accounts." But the Receiver still charges interest accruals on such amounts. Even though Movants contest the Receiver's calculations, Movants agree to tender into the Court Registry the Release Amounts. The Release

Amount for purposes of the Motion and this Brief (hereinafter the "**Release Amount**") should consist of the (a) Payoff Amount for each loan, plus (b) the per diem amount. The per diem amount should be calculated from September 10, 2025, on each Respective Loan through the date of a closing on any refinance or sale of the property under any Security Deed. Movants will also remit estimated reasonable attorney's fees and costs of litigation that the Receiver may incur (as determined by the Court) as part of the Release Amount. The Release Amount should be held until a determination of the claims of the parties is made.

## Argument and Citation of Authority

I.   <u>Standard for TRO and Preliminary Injunction</u>

Movants seek to: (a) enjoin the Receiver from foreclosing on First Liberty's security interests under the Loans until such time as the Court rules on Movants' claims against the Receivership Estate in the Ancillary Action, (b) permit Movants to remit to the Court's registry the determined Release Amounts with respect to each Loan transaction, and (c) compel cancellation of each Security Deed upon tender to the Court Registry of the Release Amount on each specific Loan transaction. Movants propose to remit the Release Amounts to the registry of this Court as a security for such injunctive relief. This Release Amount is comprised of the principal and interest amounts claimed by the Receiver under each of the Loans (plus an attorney's fees reserve).

10

The standard to grant a temporary restraining order is the same as that for a preliminary injunction. *United States v. Georgia*, 892 F. Supp. 2d 1367, 1371 (N.D. Ga. July 5, 2012).

To obtain a temporary restraining order or preliminary injunction under Fed. R. Civ. P. 65, Movants "must demonstrate that: (1) [Movants have] a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to [Movants] outweighs whatever damages the proposed injunction may cause [Receiver]; and (4) if issued, the injunction would not be adverse to the public interest." *Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366, 1370 (N.D. Ga. 2008) (Camp, J.) (citations omitted). *See also Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000); *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.,* 51 F.3d 982, 985 (11th Cir. 1995); *Metro-Goldwyn-Mayer, Inc. v. Showcase Atlanta Coop. Prods.*, 479 F. Supp. 351, 355 (N.D. Ga. 1979). Movants are entitled to a temporary restraining order, as well as a preliminary injunction, under Fed. R. Civ. P. 65.

II.    Movants Meet the Standard.

First, Movants are likely to succeed on the merits. Movants propose to tender the Release Amounts on each Loan and obtain cancellation of the corresponding Security Deed. In other words, Movants seek to close on refinancings and escrow the Release Amounts. The Release Amounts are the amounts claimed due by the

Receiver. The Receiver's potential objection would be based upon the Receiver's assertion of an alleged right to cross-collateralize all of the properties on all of the Loans. As discussed below, the cross-collateral provisions are unenforceable.

Additionally, as discussed below, the North Carolina Deed of Trust is unenforceable because there is no debt secured by the Deed. Therefore, pursuant to the terms of the North Carolina Deed of Trust itself, the Deed of Trust is unenforceable. Further, the Deed of Trust is void because the Deed as signed did not grant First Liberty a lien on any real property because the Deed of Trust failed to identify any property. In North Carolina, when a Deed of Trust fails to identify land in its description, the deed is void. *Carrow v. Davis*, 248 N.C. 740 (1958); *In re Hudson*, 182 N.C. App. 499 (2007); *Overton v. Boyce*, 289 N.C. 291, 294 (1976). As to the Security Deeds other than the North Carolina Deed of Trust, Movants shall tender the Release Amount. Therefore, Movants have a substantial likelihood of success on the merits.

Secondly, Movants will suffer irreparable injury if the injunction is not issued. Construction has commenced on the North Carolina Parcel owned by Holt Knob. With respect to the Loans and Security Deeds, Movants are prepared to borrow money and refinance each of the respective Loans. However, the Receiver has blocked Movants' ability to refinance the Loans because the Receiver asserts that all of the Loans are cross-collateralized. As will be addressed below, the Receiver's

12

position is legally unenforceable. And irrespective of such a flawed legal approach, the Receiver's position causes irreparable injury to both Movants and the Receiver because it prevents the refinancing of the Loans. The Receiver's position actually inhibits the Receiver's ability to recover on the Loans. An immediate resolution is needed because: (a) the Recorded Deed of Trust places a cloud on the title of the North Carolina Parcel in the midst of construction on the property, (b) because the Movants shall pay the Release Amount into the Court's registry in order to provide payment of any debt due the Receiver, and (c) without such provisions, the Receiver will seek to accrue ongoing interest. For such reasons, Movants will suffer irreparable harm if the injunction is not issued.

Thirdly, the threatened injury to the Movants greatly outweighs any such threat to the Receiver. Based upon the false representations and omissions by First Liberty and the other Receivership Entities, First Liberty fraudulently induced Movants to enter into the Loan transactions with First Liberty. Movants are the innocent victims of the Ponzi scheme operated by the Receivership Entities. Moreover, the Movants shall pay the Release Amount into the Court's registry in order to secure payment of any debt due the Receiver. Therefore, no injury would befall the Receivership Estate if the Receiver was compelled to cancel the Security Deeds. Any burden placed on the Receiver by being compelled to cancel such instruments is miniscule. Further, the Receivership Estate is not entitled to the North Carolina parcel currently

13

encumbered by the Recorded Deed of Trust because such instrument is null, void and unenforceable.

Fourthly, there is no harm to the public since Movants and First Liberty entered into private transactions. The public has an interest in contractual remedies being enforced. Movants seek to pay the Release Amounts into the Court Registry until such time as the Movants' actual liability is determined. Further, the public interest will be served by the determination of the scope of First Liberty's fraudulent operation of a Ponzi scheme including with respect to the purported Loans to Movants. The public interest will also be served because Movants will pay the Release Amounts into the Court's registry for the benefit of the Receivership Estate.

In balancing the equities, Movants have met their burden to obtain a temporary restraining order and preliminary injunction. All the requisite elements for issuance of a temporary restraining order and a preliminary injunction are satisfied in this case. The relief is therefore authorized by Fed. R. Civ. P. 65.

III.   The Security Deeds Are Unenforceable Under the Asserted Cross-Collateralization and Cross-Default of First Liberty's Loans.

The Receiver Draft Notice of Intent stated that all of the Purported Loans were subject to "cross-collateralization" and "cross default provisions." Cross-collateralization is a form of guaranty. Here, the Receiver attempts to hold RiverDawg liable for the debts of No Free and vice versa. Any such obligation would constitute a promise to pay the debt of another. Any promise to pay the debt of

another must be in writing under the Georgia Statute of Frauds. O.C.G.A. §13-5-30(a)(2) (statute of frauds requires a promise to answer for the debt of another to be in writing.); *Legacy Cmtys. Grp., Inc. v. Branch Banking & Tr. Co.*, 316 Ga. App. 496, 729 S.E.2d 612 (2012) (guaranties were not effective under O.C.G.A. § 13-5-30(2) because the guaranties did not identify a principal debtor by name, and parol evidence was not admissible to supply the name of the principal debtor).

The cross-collateralization provisions in the First Liberty loan documents do not name the principal obligors as required by Georgia law. Rather, the First Liberty documents use differing and ambiguous language to characterize entities as alleged guarantors. The cross-collateralization provision in the Second Loan states "Lender or its affiliates has made or may make other loans to Borrower or its affiliates (as used herein the term '*affiliates'* shall include any and all entities related to Lender and Borrower by common ownership and/or control)...." However, the cross-collateralization provision in the Fourth Loan states "Lender has made or may make other loans to Borrower (as used herein the term 'Borrower' shall include any and all entities related to Borrower by common ownership and/or control)...."

This language presents confusion as to which parties constitute "affiliates." The ambiguous language differs in each cross-collateralization provision. Regardless, the provisions are unenforceable. "The guarantor's liability may not be extended by implication or interpretation." *Legacy Cmtys. Grp., Inc. v. Branch Banking & Tr.*

*Co.*, 316 Ga. App. 496, 729 S.E.2d 612 (2012). Where the name of the principal debtor is omitted from a document, it is unenforceable as a matter of law "even where the intent of the parties is manifestly obvious" because it fails to satisfy the statute of frauds. *Fontaine v. Gordon Contractors Bldg. Supply*, 255 Ga. App. 839, 567 S.E.2d 324 (2002). In Georgia, courts are "not authorized to determine the identity of the principal debtor by inference as this would entail consideration of impermissible parol evidence." *Roden Elec. Supply v. Faulkner*, 240 Ga. App. 556, 524 S.E.2d 247 (1999).

In *Legacy Cmtys,* the Georgia Court of Appeals considered a document which referenced other loans by the lender to "entities owned or controlled (directly or indirectly)" by the obligor. This language is essentially the same as the language in the First Liberty documents. The *Legacy Cmtys* court held that one can infer that Legacy Investment was one of the unnamed borrower entities so described, however, only by considering extrinsic evidence…" Id. "Such parol evidence is not admissible to supply the name of the principal debtor." Id. The First Liberty documents do not name RiverDawg in any of the No Free loan documents. The RiverDawg loan documents do not name No Free. Therefore, No Free and RiverDawg are not liable for the debts of the other. The Receiver's cross-collateral effort fails and has forestalled payment of the loans.

16

IV.    The Receiver's Assertion of a Lien Pursuant to the North Carolina Deed of Trust is Invalid.

A. The Recorded Deed of Trust is Void Because the Note Which the Deed Purports to Secure Does Not Exist.

The Recorded North Carolina Deed of Trust purportedly is given to secure indebtedness in the amount of $3,500,000.00 pursuant to an unidentified promissory note. However, there is no such note by which Holt Knob is indebted to First Liberty. Therefore, the Recorded Deed of Trust is unenforceable with respect to any indebtedness purportedly owed to First Liberty. Therefore, pursuant to the terms of the Recorded Deed of Trust itself, the deed is unenforceable because no debt is secured thereby.

B. The Recorded Deed of Trust is Void Because the Deed Which Holt Knob Executed Did Not Include a Legal Description of or Otherwise Reference Any Property to be Conveyed.

The North Carolina Deed of Trust is also void or otherwise unenforceable because the Deed of Trust, as signed, did not grant First Liberty a lien on any real property. In fact, the Recorded Deed of Trust states that Holt Knob, as grantor, grants the Trustee rights in land "more particularly described as follows: _____." Accordingly, the Recorded Deed of Trust is clear on its face that there is conveyance of no real property to the Trustee pursuant to the Recorded Deed of Trust. The Statute of Frauds "requires that all contracts to sell or convey any lands … shall be

17

void unless said contract … be put in writing" and that "the writing must contain a description of the land." *In re Hudson*, 182 N.C. App. 499, 503 (2007).

In North Carolina, when a Deed of Trust fails to identify land in its description, the deed is void. *Carrow v. Davis*, 248 N.C. 740 (1958); *In re Hudson*, 182 N.C. App. 499 (2007); *Overton v. Boyce*, 289 N.C. 291, 294 (1976). "A deed is void for vagueness of description unless it identifies with certainty the land sought to be conveyed." *Carrow v. Davis*, 248 N.C. 740, 742 (1958). The Supreme Court of North Carolina established that a deed "is void unless it contains a description of the land sufficient to identify it." *Overton v. Boyce*, 289 N.C. 291, 293 (1976).

Further, North Carolina interprets contracts within the four corners of the agreement. "Parol evidence may not be introduced to remove a patent ambiguity since to do so would … create a description by adding to the words of the instrument." *Overton v. Boyce*, 289 N.C. 291, 294 (1976). "Parol evidence is not admissible… to enlarge the scope of the description in the deed." *Id*. citing *State v. Brooks*, 279 N.C. 45 (1971). The North Carolina Supreme Court has said that "[i]t is also a rule of construction that an ambiguity in a written contract is to be inclined against the party who prepared the writing." *Jones v. Palace Realty Co.,* 226 N.C. 303 (1946), citing *Wilkie v. Ins. Co.*, 146 N.C. 513 (1908). First Liberty prepared the Deed. The Deed of Trust signed at closing identified no property. Therefore, Holt Knob granted the Trustee (and First Liberty as beneficiary) rights as to no property.

Upon information and belief, at the time of recording, some person (yet to be identified) added an Exhibit A to the back of the Deed of Trust signed by Holt Knob. This exhibit is referred to nowhere in the text of the Deed of Trust or the Recorded Deed of Trust. Therefore, the exhibit cannot become grafted into the instrument. In other words, the instrument does not state that a legal description is attached hereto. The instrument does not state that a legal description is "incorporated herein". The legal description on the exhibit is therefore not part of the deed under any circumstances.

Further, and as stated above, the legal description page was not present at the time the Deed of Trust was signed. So it cannot be added later. The Statute of Frauds "requires that all contracts to sell or convey any lands … shall be void unless said contract … be put in writing" and that "the writing must contain a description of the land." *In re Hudson*, 182 N.C. App. 499, 503 (2007).

Where a legal description is added later at the time of recording, this act does not cure the ambiguity. In *In re Hudson*, the petitioner argued that since the executed deed of trust contained no description of real property, it did not meet the provisions of the Statute of Frauds and was void. In that case, the deed did not include a description of the real property at the time of execution, but such description was added to the deed later without respondents' knowledge. The *Hudson* Court held as follows:

19

> [R]espondents intended to convey some real property as security for
> their loan, and… the deed as recorded includes the missing legal
> descriptions of the property. However, petitioner provides no legal
> authority for its assertion that a deed lacking legal descriptions of the
> real property to be conveyed can be cured unilaterally by recording said
> deed with novel legal descriptions unseen by the other party.

*Id*. at 504. In this case, someone slap-dashed an exhibit to the Deed of Trust after Holt Knob executed the Deed of Trust. This does not "cure" the problem. The Receiver holds a deed which is unenforceable. In short, the Recorded Deed of Trust does not grant an interest in any property. Therefore, the Recorded Deed of Trust is null and void and should be cancelled.

## V. This Court Should Grant the Relief Requested Even Without a Temporary Restraining Order.

This Court has extensive equitable powers to grant relief in this Ancillary Action. "The district court has broad powers and wide discretion to determine relief in an equity receivership." *Bendall v. Lancer Mgmt. Group, LLC*, 523 Fed. Appx. 554, 557 (11th Cir. 2013) (quoting *S.E.C. v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992)). "This discretion derives from the inherent powers of an equity court to fashion relief." *Id*.

This Court may exercise its broad powers of equity to grant the relief requested herein even without a temporary restraining order. "Rule 56 of the Federal Rules of Civil Procedure gives the district court summary jurisdiction over all the receivership proceedings and allows the district court to disregard the Federal

20

Rules." *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992). Federal receiverships serve as a creature of the district court which serves as "a means to reach some legitimate end sought through the exercise of the power of the court of equity." *In re Wiand*, No. 8:10-CV-71-T-17MAP, 2011 U.S. Dist. LEXIS 113212, at *21 (M.D. Fla. Sept. 29, 2011) (citation and quotation marks omitted).

Plaintiffs seek a TRO and preliminary injunctive relief to the extent the Procedures Order requires compliance with Rule 65. However, to the extent that the relief requested is not consistent with Rule 65, Movants request that the Court grant the requested relief by exercising its broad powers of equity. Without limitation, the Court should modify the Procedures Order to any extent necessary.

The requested relief actually inures to the benefit of the Receiver. Placing the Release Amounts into the Court Registry ensures that funds are available to satisfy any valid claims of the Receiver. In short, the instant motion advances the goals of the Receivership.

**Conclusion**

A temporary restraining order and preliminary injunctive relief are appropriate to: (a) prohibit the Receiver from foreclosing on First Liberty's security interests under the Purported Loans until such time as the Court makes a determination regarding the same in the Ancillary Relief Action, (b) authorize Movants to remit the Release Amounts with respect to each separate Loan into the

21

registry of the Court, and (c) compel the Receiver to cancel each Security Deed upon payment of the Release Amount on each specific loan. The requested relief is necessary to protect against any further improper collection actions by the Receivership Estate. Movants will remit the Release Amounts to the Court's registry for the purpose of to paying the Receivership Entities the appropriate amount owed. For the reasons set forth in this Brief, injunctive relief is appropriate and warranted in this case.

Respectfully submitted this 5th day of May, 2026.

**JONES & WALDEN LLC**

*/s/ Leon S. Jones*
Leon S. Jones
Georgia Bar No. 003980
699 Piedmont Avenue NE
Atlanta, Georgia 30308
(404) 564-9300
LJones@joneswalden.com
Attorney for Movants

## CERTIFICATE OF SERVICE, FONT AND MARGINS

I certify that on the date below, I electronically filed the foregoing **Brief in Support of Motion for Temporary Restraining Order and Preliminary Injunction** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

- **Henry Francis Sewell , Jr**
  hsewell@sewellfirm.com

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Respectfully submitted this 5th day of May, 2026.

**JONES & WALDEN LLC**

*/s/ Leon S. Jones*
Leon S. Jones
Georgia Bar No. 003980
699 Piedmont Avenue NE
Atlanta, GA 30308
(404) 564-9300
LJones@joneswalden.com
*Attorney for Movants*