**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| RIVERDAWG, LLC, NO FREE, LLC, HOLT KNOB HOLDINGS, LLC, URGENT CARE 24/7, LLC, and JERRY WILLIAMS, individually, | : : : | Civil Action File No. |
| Plaintiffs, | : | 1:26-cv-1353 |
| v. | : | |
| S. Gregory Hays, in his capacity as Receiver for First Liberty Capital Partners, LLC, | : : | |
| Defendant. | : | |

**RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT AND BRIEF IN SUPPORT THEREOF**

S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in Case No. 1:25-cv-3826-MLB (the "**Receivership**") in the District Court for the Northern District of Georgia (the "**Court**") that was initiated by Securities and Exchange Commission ("**SEC**"), by and through counsel, hereby files this *Renewed Motion to Dismiss or, in the Alternative, for More Definite Statement and Brief in Support Thereof* (the "**Motion**") to, in light of the filing of the *Amended Verified Complaint* on April 21, 2026 [Doc No 7] (the "**Amended Complaint**), renew[1] its: 1) request that the above-

---

[1] The Receiver previously filed a Motion to Dismiss [Doc. No. 4] (the "**Motion to Dismiss**") the Verified Complaint (the "**Complaint**") that was filed on March 11, 2026. The Motion to Dismiss is incorporated herein to the extent applicable.

captioned Case; or 2) in the alternative, to the extent possible, direct that the Plaintiffs to amend the Amended Complaint to comply with the Procedures Order (as defined below). In support thereof, the Receiver respectfully states as follows:

## INTRODUCTION

1.     It is undisputed that Jerry Williams, who represented to the Receivership Entities that he was worth over $200 million, caused entities that he owned and controlled (collectively, the "**Williams Entities**") to enter into certain loans (the "**Williams Loans**") to receive—and actually did receive substantial investor funds from the Receivership Entities—with knowledge of the terms and conditions of each of the Williams Loans that were each personally guaranteed by Dr. Williams.[2] Further, it now appears that the Plaintiffs may have misused the funds received by them for such items as private plane flights and personal credit card expenses.  Each of the Williams Loans remain outstanding even though each is past its respective maturity date.

---

[2] Incident to the Williams Loans, No Free, LLC ("**No Free**") entered a Promissory Note dated December 28, 2023, related to the first loan that was modified and matured on June 10, 2025 and a Promissory Note (the "**Fourth Note**") dated December 19, 2024, related to the fourth loan (the "**Fourth Loan**") that matured on December 19, 2025, and Riverdawg, LLC ("**Riverdawg**") entered a Promissory Note dated September 17, 2024, related to the second loan that matured on September 18, 2025 and entered a Promissory Note dated December 9, 2024, related to the third loan that matured on December 9, 2025.

2.      Based on the written terms agreed to by Dr. Williams and the Williams Entities, the Receivership Entities raised sufficient funds from investors to fund each of the Williams Loans and the Amended Complaint raises no issue with the funding of the first three loans and only raises an unspecified issue as to the funding of the Fourth Loan. This is not a case involving fictitious interest as such investors were to receive the interest that Dr. Williams and the Williams Entities agreed to pay incident to the Williams Loans. The investors have instead incurred significant losses due to the failure of the Williams Loans to be satisfied by their maturity dates.

3.      While portions of the Amended Complaint attempt create the illusion that the Plaintiffs acted in good faith, the Plaintiffs have: a) been fully aware since the initial report filed by the Receiver on June 21, 2025 [Doc. No. 14], if not earlier, that borrowers were required to continue making payments on their loans; and b) had the loan payoff attached to the Amended Complaint as Exhibit K, Doc. No. 7-11, for more than 6 months without satisfying the obligations of the Plaintiffs. The Amended Complaint makes clear that the Plaintiffs are trying to escape their repayment obligations.

4.      The Amended Complaint fails to cure several of the Plaintiffs' prior failures to comply with the Procedures and the Plaintiffs should be directed to promptly amend same and provide a more definite statement pursuant to Fed. R. Civ.

3

P. 12(e) that satisfies all the requirements of the Procedures Order or barred from pursuing claims against the Receivership Estate.

5.      To the extent that Plaintiffs ultimately comply with the Procedures Order and the Court determines that any claims of the Plaintiffs survive, such claims should be incorporated into the pending matter regarding the obligations and guarantees executed by Dr. Williams in Court Civil Action No. 1:26-cv-01349-MLB styled as *S. Gregory Hays, as Receiver v. Jerry K. Williams, Urgent Care 24/7, LLC, No Free LLC and Riverdawg LLC* (the "**Receiver Lawsuit**").

### BACKGROUD

6.      The Receiver previously filed the Original Motion to Dismiss under the terms of the Procedures Order.  The Receiver incorporates the Background set forth therein and will not re-state it herein.  Further, the Court should note that since the proposed amended complaint included with the response to the Original Motion to Dismiss differs from the Amended Complaint as filed on April 14, 2026, this Motion is filed to address the Amended Complaint as filed.

7.      Under the circumstances, the Plaintiffs are not authorized to enter the Receivership to assert any claims or counterclaims and the Amended Complaint should be dismissed and, although the Receiver submits that the Amended

4

Complaint is fatally flawed, Plaintiffs should be directed to timely comply with the Procedures Order.

## ARGUMENT

8.  Notwithstanding: a) that Borrowers must fully comply the Procedures set forth in the Procedures Order as a condition to qualify for the limited modification of the Stay and Injunction to enter the Receivership to assert a claim; and b) the often generalized and conclusory allegations in the Amended Complaint and improper attempt to incorporate matters related to investors that are not applicable to the Plaintiffs in an attempt to manufacture unsubstantiated claims, the Plaintiffs have failed to comply with the Procedures Order. The Amended Complaint also fails to: a) identify any legitimate basis to recharacterize the loans to the Plaintiffs; b) adequately support any claim sounding in breach of contract or fraud under Counts Two, Three, and Four; or c) adequately support any claim for declaratory relief or an injunction.

A.  **The Amended Complaint Still Fails to Evidence the Use of Funds as Required by the Procedures Order.**

9.  Paragraph 5(b)(iv) of the Procedures Order requires "a verified list of all disbursements and uses of funds received by the Borrower from a Receivership Entity by date, amount and payee along with documents evidencing such uses."  As

counsel stated to the Court at the hearing which led to the entry of the Procedures Order, investors and regulators have expressed concern to the Receiver regarding the uses of funds by borrowers and have demanded complete transparency as to the uses of investor funds by these borrowers. To the Receiver, the investors and regulators, this is a critical requirement of permitting any borrower to pursue a claim against the Receivership Estate.

10.    The Original Complaint filed by the Plaintiffs ignored this requirement entirely. Although the Amended Complaint now includes, as Exhibit G, a purported list of payments made by the Plaintiffs with the funds received from the Receivership Entities, this list does not comply with the Procedures Order. Since this document is buried among a number of exhibits attached to the Plaintiffs' Complaint, a copy is attached hereto as Exhibit "A" so that the Court can easily review it. Section 5(b)(iv) of the Procedures Order is quite clear the Plaintiffs are not only required to provide a list, but also provide "documents evidencing such uses attached as an Exhibit to the Verified Complaint . . . or separately provided to the Receiver." No such documents have been provided to the Receiver either as attachments or as a separate production as of the date this Motion is filed.

11.    Among the many claims asserted by Dr. Williams is a claim that First Liberty did not meet its obligations to fund certain loans leaving him unable, in

particular, to complete construction of a spec house in North Carolina.   In fact, Dr. Williams takes a broad view of the permissible uses of funds loaned to him, stating at Paragraph 4 of the Amended Complaint:

> Specifically, all disbursements of funds to Plaintiffs were used for (i) general business purposes, as agreed and understood by First Liberty, (ii) to fund a legal dispute involving Dr. Williams, as agreed and understood by First Liberty, (iii) to fund construction on the North Carolina Property (further described below), as agreed and understood by First Liberty, and (iv) real estate development and investment as well as operational expenses during the transition period, as agreed and understood by First Liberty.[3]

12.    It should be noted that this claim is also inconsistent with the Fourth Loan documentation provided by Dr. Williams in which: a) the approval letter for the Fourth loan indicates that it was requested to construct a home in Highlands, NC; and b) Fourth Note contains an acknowledgement by the borrower[4] the purpose of the Fourth Loan was to build a home.

13.    Based on just the limited information in Exhibit G, it appears that Dr. Williams did not use the funds from Loan 4 to construct a house but instead used significant portions of investor funds to fund his personal lifestyle and not for any legitimate or authorized use.   For example, with respect to Loan 4, Dr. Williams

---

[3] The Receiver disputes Dr. Williams' contentions to the permissible uses of funds by him and does not believe that the evidence will support this contention; however, for purposes of the instant Motion, they must be treated as true.

[4] Paragraph 5 of each of the promissory notes includes an agreement by the particular borrower as to the purpose of the particular loan.

apparently paid an entity named "Plan Sense" $465,000. The Receiver conducted an internet search for this entity and discovered that it is a private plane company which touts itself as a "World Class Fractional Aircraft Ownership" entity. Without back up documents, the Receiver cannot confirm what this payment was for, but it certainly appears that Dr. Williams used a substantial amount of investor funds on private air travel.

14. Further, over $100,000 was paid to AMEX, Discover Card and Apple Credit Cards with two of the Apple Credit Card charges containing the initials LW who the Receiver believes is Dr. Williams' spouse. The Receiver has no information as to the nature of the credit charges paid with investor funds. In addition, Dr. Williams used $159,000 to purchase a van. It seems unlikely that such a use would be authorized unless First Liberty also received a lien on that vehicle. Finally, there appear to be transfers to and from several bank accounts identified in the list, but because the bank statements are not attached, it is impossible to discern how those funds were actually used and whether they were commingled with other businesses.

15. The language of paragraph 5(b)(iv) of the Procedures Order is clear. It is now apparent that Dr. Williams is willfully seeking to evade this requirement, likely to hide his misuse of investor funds. Moreover, this issue goes directly to Dr.

Williams alleged claims and credibility.   If Dr. Williams used significant sums of money for private jets and credit cards, he should not now be heard to complain that he has been unable to finish construction on a building in North Carolina. This Court should not permit Dr. Williams to pursue any claims until he is in complete compliance with paragraph 5(b)(iv) and documents each and every expense or payment he made with investor funds.

**B. The Amended Complaint Still Fails to Allege a Breach of Contract Claim.**

16.     To the extent that the Complaint alleges that any Receivership Entity breached any agreements with any of the Plaintiffs, such as Count Four of the Complaint, the Amended Complaint still does not include a detailed statement of each and every breach of any obligations related to any loans of such borrower, including the identification of any specific provision of any loan document that was allegedly breached and documents evidencing such defenses in violation of paragraph 5(b)(v) of the Procedures Order. Indeed, Count Four of the Amended Complaint alleges a purported willful breach of contract without identifying the specific provision of any agreement that was actually violated by First Liberty or even referencing a specific obligation of First Liberty that is grounded in any written contract. The purpose of paragraph 5(b)(v) of the Procedures Order is to avoid claims such as Count Four that assert vague and unsubstantiated breach of contract claims.

9

The vague and conclusory references in the Complaint to a purported breach of an unsubstantiated obligation are wholly insufficient. The failure of the Plaintiffs to comply with paragraph 5(b)(v) of the Procedures Order is fatal to at least Count Four of the Complaint.

17. "Under Georgia law, '[t]he essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom . . ..' Moreover, a plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." *Anderson v. Deutsche Bank Nat. Tr. Co.*, No. 1:11-CV-4091-TWT-ECS, 2012 WL 3756512, at \*5 (N.D. Ga. Aug. 6, 2012) (citation omitted). Here, Count Four of the Amended Complaint not only fails to satisfy paragraph 5(b)(v) of the Procedures Order, but also fails to allege a purported willful breach of contract by failing to identify an obligation to perform any specific act under a valid agreement, a specific material provision of any agreement that was actually violated by First Liberty, or any specific damages arising therefrom.

18. Instead of identifying a specific material obligation of First Liberty, exactly how a specific contractual provision was breached, and how the Plaintiffs were damaged by such a breach, Paragraphs 129-133 of the Amended Complaint allege in a conclusory manner an unexplained obligation of First Liberty that was

10

purportedly breached and unexplained fraudulent representations. Such allegations do not even attempt to detail any specific damages arising therefrom other than vague references to general types of damages.

19.     While paragraphs 129 and 131 alleges an unexplained general failure to fund the Fourth Loan, the Amended Complaint fails to identify any specific obligation of any written agreement executed by the Plaintiffs that was violated by First Liberty or to identify the amount not funded. In fact, the only particular contractual provision referenced in such paragraphs is a recital paragraph of a Promissory Note that acknowledges that the loan shall be allocated by First Liberty to an account and "disbursed from time to time on terms and conditions as established by Lender as to timing, amount, and other conditions of disbursements." *See* Exhibit F to Amended Complaint, p. 1. Notwithstanding that such provision is merely a recital of a note to recognize the obligation of the borrower, such provision does not include any specific obligation by First Liberty to disburse any particular funds by any particular date and it is undisputed that disbursements were subject to the terms and conditions established by First Liberty. Even if such provision could constitute a funding obligation, the Amended Complaint fails to allege specifically how it was violated. Indeed, Exhibit J, Doc. No. 7-10, p.6, to the Amended Complaint provides that $2,268,462.93 was available to the borrower after the

11

closing and that the borrower received draws in the total amount of $2,211,449.40. A copy of this page is attached as Exhibit "B" to this Motion. Assuming this is a correct summary of the Plaintiffs' allegations, the Plaintiffs received all but approximately $100,000 promised to them, far less than the amount spent on private air travel. The Amended Complaint also fails to allege any specific damages arising from any purported breach. In short, the Amended Complaint fails to demonstrate the existence of any breach of contract claim.

20. Since the Amended Complaint continues to fail to demonstrate a plausible claim that: a) First Liberty had any specific obligation to perform any particular act under a valid contract; b) First Liberty materially failed to perform; and c) any of the Plaintiffs incurred any specific damages as a result, Count Four should be dismissed with prejudice.

C. **Plaintiffs Still Fail to Provide a Statement of Defenses.**

21. Although Paragraph 5(b)(vi) of the Procedures Order requires a detailed statement of defenses that includes documents related to such defenses, the Plaintiffs have failed to provide such information. Plaintiffs are fully aware that: a) this matter is grounded in the loans that Plaintiffs received from First Liberty; and b) the Receiver issued a default notice last year and has demanded that such loans be repaid. Even if the Receiver had not already initiated the Receiver Action, the

Plaintiffs are obligated to provide a detailed statement of defenses as to why such obligations have not been paid in order to comply with the Procedures Order. In the event that the loans to the Plaintiffs were characterized as something other than loans as requested by the Plaintiffs, Plaintiffs are aware that the transfers would constitute clear fraudulent transfers.  Significantly, no new documents have been produced to the Receiver in connection with the Amended Complaint.  Under the circumstances, the Plaintiffs are required to assert any defenses under paragraph 5(b)(vi) of the Procedures Order to the known claims of the Receiver in order to enter the Receivership.   Until the Plaintiffs comply with this requirement, they should be barred from pursuing their claims by this Court.

D. **The Amended Complaint  Still Fails to Plead Fraud with Sufficient Particularity.**

22.    A review of the Amended Complaint demonstrates a continuing failure to comply with paragraph 5(b)(vii) of the Procedures Order or, indeed, F.R.C.P. 9. Paragraph 5(b)(vii) of the Procedures Order specifically provides that it "shall not be allowed or sufficient to simply reference or rely upon fraud generally or the general circumstances or general fraud underlying or asserted in the Complaint filed by the SEC that led to the appointment of the Receiver." The Amended Complaint does not cure the failure of the Original Complaint to meet this requirement and, again, the Plaintiffs rely solely on general circumstances or general fraud underlying

13

the claims asserted by the SEC rather than conduct specific to the Plaintiffs. The Plaintiffs fail to identify any specific representations by person, date or content made by any representative of the Receivership Entities to the Plaintiffs on which the Plaintiffs relied.

23.    Further, "'Rule 9(b) is satisfied if the complaint sets forth '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.'" *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (providing the requirement of particularity as to the circumstances constituting fraud means pleading factual details that include "'the who, what, when where, and how'"). The Amended Complaint fails to satisfy such standard or demonstrate compliance with paragraph 5(b)(vii) of the Procedures Order.

24.    Instead of alleging sufficient facts to explain the who, what, when where, and how related to matters specifically between First Liberty and the Plaintiffs, the Amended Complaint improperly relies on, in addition to conclusory

allegations, the existence of a Ponzi scheme as to investors in an attempt to invoke the Ponzi presumption. Such strategy is inherently flawed for at least four reasons.

25.     First, the authority cited in Paragraph 90 of the Amended Complaint, *United States v. Orton*, 73 F.3d 331 (11th Cir. 1996), *Wiand v. Lee*, 753 F.3d 1194 (11th Cir. 2014) and *Isaiah v. JPMorgan Chase Bank, N.A.*, 960 F.3d 1296 (11th Cir. 2020), does not support the relief sought by the Plaintiffs in the Amended Complaint to allow the recipients of substantial transfers to avoid the payment of contractually agreed obligations. Instead, such authority addresses circumstances involving alleged fraud by using a Ponzi or pyramid scheme to obtain money from investors and transferring a portion of such funds to other investors to further the scheme. Such authority does not provide the recipients of funds from a purported scheme a basis to avoid the repayment of such funds.

26.     Second, the Plaintiffs were not investors in any of the Receivership Entities and are unable to substantiate claims based primarily on fraudulent conduct that may have been perpetrated against investors. Plaintiffs received significant transfers of funds that originated from investors and should not be allowed to use harm incurred by investors as a twisted excuse to avoid repaying the obligations that the Plaintiffs promised would be paid. Paragraph 5(b)(vii) of the Procedures Order recognizes the distinction between pleading fraud generally rather than specifically

as to the Plaintiffs in providing that "shall not be allowed or sufficient to simply reference or rely upon fraud generally or the general circumstances or general fraud underlying or asserted in the Complaint filed by the SEC that led to the appointment of the Receiver."

27.     Third, a finding of the existence of a Ponzi scheme rather than just circumstances involving Ponzi-like transfers is not inevitable as "entities used to perpetrate the scheme usually conduct little to no legitimate business operations." *Wiand v. Lee*, 753 F.3d 1194, 1201 (11th Cir. 2014). Rather than raising funds for fictitious investments, the reports filed by the Receiver in the Receivership indicate that First Liberty conducted substantial business operations that resulted in First Liberty funding more than 60 loans. The Plaintiffs were part such business activity in receiving four loans incident to which the Plaintiffs entered promissory notes that promised that the obligations would be paid. While the Plaintiffs seek to avoid the obligations arising from such loans, it notable that the Amended Complaint does not allege any issue with the funding that the Plaintiffs actually received incident to the first three loans and only allege an unexplained failure as to the funding of the Fourth Loan.

28.     Fourth, there has been no official court decision finding that First Liberty operated as a Ponzi scheme. Without an official court finding of the

16

existence of a Ponzi scheme, the Plaintiffs are unable to rely on any Ponzi scheme for purposes of their Amended Complaint and the Plaintiffs must first present sufficient facts to support their fraud claims through alleged "badges of fraud" and satisfy the Court that all prerequisites are met.[5]

29.    the Ponzi presumption does not actually advance the relief sought by the Plaintiffs as it provides that transfers that are made in furtherance of a Ponzi scheme are presumed to have been made with the intent to defraud creditors. *See Post-Confirmation Comm. for Small Loans, Inc. v. Martin*, No. 1:13-CV-195 (WLS), 2016 WL 9243594, at *2 (M.D. Ga. Oct. 4, 2016) (noting that "for the Ponzi scheme presumption to apply, the alleged fraudulent transfers must be related to and in furtherance of the Ponzi scheme"). While the Amended Complaint attempts to enlarge the Ponzi presumption to characterize all transactions involving the operator of a Ponzi scheme as intentionally fraudulent, the Amended Complaint provides no basis for such position that would in effectively allow recipients of fraudulent transfers to void attempts to recover such transfers by asserting counter fraud claims based on the same conduct. Here, the Ponzi presumption does not relieve the

---

[5] The Receiver may seek to have such a determination made in this case in the future but as of now, there has been no such finding and the Plaintiffs must cannot rely upon a finding which has not yet been made.

Plaintiffs from the burden of demonstrating fraudulent intent in the actual transactions involving the Plaintiffs rather than generally as to other parties.

30.    Notwithstanding the foregoing, the Amended Complaint fails to allege: a) precisely what statements were made in what documents or oral representations or what omissions were made; b) the time and place of each such statement and the person responsible for making same; c) the content of such statements and the manner in which they misled the Plaintiffs; and d) what the First Liberty obtained as a consequence of the fraud. The Amended Complaint also fails to allege sufficient facts to demonstrate: a) any specific fraud in entering the loans rather than fraud generally; and b) that First Liberty had actual intent to not fund the loans at the time that each of the loans were entered. Notably, Plaintiffs are unable to demonstrate such intent as to the first three loans as the Plaintiffs do not allege any issue with the funding of such loans and only alleges an unidentified issue the Fourth Loan.

31.    Instead, the Amended Complaint refers to general unidentified purported false representations and otherwise alleges generally false representations, lies and omissions without providing specific details as to such purported false representations, lies and omissions.

32.    Paragraphs 93-95 and 114 of the Amended Complaint are discussed more specifically below.

a. Paragraph 94 of the Amended Complaint generally alleges that the Receivership Entities "made representations to Plaintiffs regarding the status and ability of First Liberty to make loans to Plaintiffs and underlying purported transactions." Even if such statement was actually detailed appropriately, such conclusory statement would not constitute a misrepresentation as: a) the Receivership Entities raised sufficient funds for each of the Williams Loans and were fully capable of funding the Williams Loans; b) there no dispute as to the funding of the first three loans to the Plaintiffs and the Amended Complaint only raises an unspecified issue as to the Fourth Loan; and c) the Receivership Entities were funding other loans at the same time as the loans to the Plaintiffs.

b. Paragraph 94 of the Amended Complaint references representations generally made to investors regarding bridge loans and is not applicable to any fraud claim as to the Plaintiffs.

c. Paragraph 95 of the Amended Complaint generally alleges that the Receivership Entities "represented that the source of funds was legitimate and that the Loans would be fully funded, in an

attempt to induce Plaintiffs into the Loans." Even if such statement was actually detailed appropriately, such statement would not constitute a misrepresentation as the source of funding was legitimate as the funds came from legitimate investors and First Liberty had sufficient proceeds to fund the Williams loans. In a vain attempt to base a fraud allegation in a document, Paragraph 95 also references a purported misstatement in certain loan documents. The statement at issue; however, is that "Borrower agrees that the principal purpose of the Loan is to purchase and expand an existing Urology Clinic." Such statement is not by First Liberty and is in fact an acknowledgement by the borrower as to the purpose of the loan. First Liberty is not responsible for the inability of the borrower to understand its business. It is actually a misrepresentation by Dr. Williams on behalf of borrower as Dr. Williams apparently did not actually use the proceeds to purchase and expand a Urology Clinic.

d. Paragraph 114 of the Amended Complaint generally alleges that the Receivership Entities represented, in relevant part, that the

Williams Loans constitutes bridge loans and that "the Receivership Entities would be repaid by First Liberty's placement of Plaintiffs in take-out financing via Small Business Administration ("**SBA**") or other commercial loans, which Frost and First Liberty B&L represented they would broker (yet Frost and the Receivership Entities knew that they had no such refinancing options or ability)." Even if such statement was actually detailed appropriately, it is not a written promise to do anything and does not constitute a guaranty that First Liberty would be able to secure take-out financing or serve as the basis of any claim.

33.   In short, Plaintiffs fail to: a) allege a viable claim that First Liberty did not have intent—when the loans were entered—to fund the loans to support any kind of fraud as to the Plaintiffs; b) allege a specific misrepresentation upon entering the loans or specific damages flowing therefrom; or c) identify each and every fraudulent statement or act on which Plaintiffs relied together with supporting documents or otherwise support a fraud or fraud-in-the-inducement claim.

34.   Under the circumstances, the Amended Complaint fails to plead fraud with particularity and violates the express prohibition in Paragraph 5(b)(vii) of the

Procedures Order by relying on general circumstances or general fraud underlying the claims asserted by the SEC rather than conduct specific to the Plaintiffs. Such insufficiency infects Count Two for Fraud, Count Three for Fraud in the Inducement, and Count Four for Willful Breach of Contract and such claims should be dismissed with prejudice.

### E. **The Plaintiffs Still Fail to Adequately Detail Damages.**

35.    Although Paragraph 5(b)(viii) of the Procedures Order requires a detailed and specific itemization and calculation of damages, the Plaintiffs have failed to provide any such specific itemization and calculation. Under the circumstances, Plaintiffs have failed to satisfy paragraph 5(b)(viii) of the Procedures Order.

### F. **The Plaintiffs Still Fail to Provide Sufficient Security to Preclude Injunctive Relief.**

36.    The Amended Complaint asserts that as security to prevent the foreclosure on Plaintiffs' properties that the Receiver essentially rely on the pledged properties.  No new security is proffered and no evidence is provided as to how this would protect the Receivership Estate.   The proposed security is grossly deficient and fails to comply with the Procedures Order.

37.    The foregoing represent a continuing failure to comply the Procedures set forth in the Procedures Order. The Plaintiffs were and are fully aware that

compliance with the Procedures is a condition to qualify for the limited modification of the Stay and Injunction to enter the Receivership to assert a claim or counterclaim. The Amended Complaint filed by the Plaintiffs herein fails to comply with the Procedures not only in blatant disregard of required procedures, but also substantively with certain counts failing to allege viable claims. Under the circumstances, the Receiver submits that the Amended Complaint should dismissed.

38.    To the extent that the Court declines to dismiss the Amended Complaint, in the alternative, the Receiver submits that, to the extent possible, the Plaintiffs should be directed to amend the Amended Complaint to comply with the Procedures Order.

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court: 1) grant this Motion; 2) dismiss the Amended Complaint; 3) in the alternative, to the extent possible, direct that the Plaintiffs to amend the Amended Complaint to comply with the Procedures Order; 4) tax all costs of the Receiver in responding to the Amended Complaint against the Plaintiffs; and 5) grant the

Receiver such other and further relief as this Court deems just and proper.

Respectfully submitted this 5th day of May, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com; Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*

24

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE AND CERTIFICATE OF SERVICE

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

Counsel further certifies certify that I have electronically filed the foregoing *Motion to Dismiss* with the Clerk of Court via the CM/ECF system, and further certify that a true and correct copy of the same has been served by email as follows:

JONES & WALDEN LLC
c/o Leon S. Jones, Esq.
699 Piedmont Avenue NE
Atlanta, Georgia 30308        Sent electronically to LJones@joneswalden.com

This 5th day of May, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com
Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*