**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| RIVERDAWG, LLC, NO FREE, LLC, HOLT KNOB HOLDINGS, LLC, URGENT CARE 24/7, LLC, and JERRY WILLIAMS, individually, | : : : | Civil Action File No. |
| Plaintiffs, | : | 1:26-cv-1353 |
| v. | : | |
| S. Gregory Hays, in his capacity as Receiver for First Liberty Capital Partners, LLC, | : : | |
| Defendant. | : | |

**BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY <u>INJUNCTION</u>**

S. Gregory Hays, not individually, but as Court-Appointed Receiver ("**Receiver**") pursuant to the *Order Appointing Receiver* dated July 11, 2025 [Doc. No. 6] ("**Appointment Order**") that was entered in Case No. 1:25-cv-3826-MLB (the "**Receivership**") in the District Court for the Northern District of Georgia (the "**Court**") that was initiated by Securities and Exchange Commission ("**SEC**"), by and through counsel, hereby files this *Brief in Support of Response in Opposition to Motion for Temporary Restraining Order and Preliminary Injunction* (the "**Objection**") to respond and oppose the *Motion for Temporary Restraining Order and Preliminary Injunction* [Doc. No. 9] (the "**Motion**") that was filed by Jerry Williams ("**Dr. Williams**" and the above-captioned entities that he owns and

controls, collectively, the "**Williams Entities**" and with Dr. Williams, the "**Williams Parties**," "**Plaintiffs**" or "**Movants**").

### INTRODUCTION

1.      While the Receivership involves real victims in the form of investors who paid hard earned savings to the Receivership Entities herein, this particular case does not involve any investors and instead involves parties, the Williams Parties, who received millions in funds advanced by investors based on the terms and conditions of written loans agreed to by the Williams Parties in which the Williams Parties agreed to repay these funds. The Movants have had months to make arrangements to satisfy their obligations and have failed to make payments or demonstrate the ability to satisfy the past-due obligations that are ultimately the responsibility of Dr. Williams, who may not have respected corporate formalities among the Williams Parties. The Receiver objects to the Motion to the extent that the Williams Parties attempt to avoid their contractual obligations.

2.      As a general principal, the Receiver should not be compelled to release security underlying obligations due to the Receivership prior to the satisfaction of the underlying obligations.  The Motion seeks to: a) improperly enjoin the Receiver from exercising the rights of the Receivership with regard to security interests underlying the loans entered by Dr. Williams on behalf of the Williams Entities

(collectively, the "**Williams Loans**"); b) establish a nonsensical procedure involving payment of a Release Amount into the registry of the Court; c) compel the release of certain security deeds pledged incident to the Williams Loans and d) to prohibit the Receiver from enforcing rights and remedies expressly agreed to by the Williams Parties. *See* Motion, p. 10.

**ARGUMENT AND CITATION TO AUTHORITY**

I.      <u>**Movants fail to comply with the Prerequisites for seeking injunctive relief in this case**</u>.

3.      The Movants fail to comply with two absolute requirements for seeking injunctive relief in this case and their Motion must be denied until these conditions are met.

4.      First, as detailed in the Receiver's Renewed Motion to Dismiss (Doc. No. 10), the Movants have yet to comply with this Court's *Order Establishing Procedures to Enter Action to Resolve Claims Arising from Loan Obligations Due to the Receivership* [Doc. No. 70] (the "**Procedures Order**"). Unless and until the Renewed Motion to Dismiss is resolved and the Movants are in full compliance with the Procedures Order, their Motion must be denied.

5.      Obtaining compliance with the Procedures Order is particularly important with respect to this Motion.  As outlined in the Renewed Motion to Dismiss, the Movants herein have yet to fully account for their uses of investor funds loaned to

3

them. Based on the limited information available to the Receiver, as outlined in Pages 6 – 9 of the Renewed Motion to Dismiss, it appears that there was significant misuse of investor funds including on personal expenses of Dr. Williams and his family. Equity demands that Dr. Williams come to this Court with clean hands in order to obtain equitable relief and no relief should be granted to him unless and until complete disclosure of these uses of funds, and the possible effect of these uses of funds on the relief sought herein, is provided.

6. Second, the Motion itself is not verified and does not include any supporting affidavits or evidence. The only verified document on which the Movants apparently rely is the Amended Complaint which, as set forth in pages 9 – 21 of the Renewed Motion to Dismiss fails to state any claim with particularity and contains only general allegations against First Liberty.

7. Indeed, instead of citing to any actual facts or evidence, the Movants expend considerable effort in engaging attacks on the Receiver relating to an alleged delay in the providing of a payoff request by the Receiver. What the Movants ignore in making this complaint is that they have now had this payoff calculation for eight months, have not materially disputed any aspect of this calculation and, most importantly, have not made a single payment on account of their debt to the Receiver.

## II. **Movants fail to satisfy standard for TRO and preliminary injunction**.

8. "Both temporary restraining orders and preliminary injunctions are extraordinary remedies that are 'not to be granted unless the movant clearly establishes the 'burden of persuasion' as to each of the four prerequisites.'" *Schmitt v. Reimer*, No. CV 110-102, 2010 WL 3585187, at *1 (S.D. Ga. Sept. 14, 2010) (citation omitted). Such relief is only proper if the moving party establishes "'(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest.'" Here, Movants fail to establish any of the required elements.

9. First, the Motion fails to demonstrate a substantial likelihood of success on the merits. Other than a generic statement that Movants do not agree with the calculation of the amount due and a minor issue regarding interest, *see* Motion, p. 9, the Motion does not deny that the Movants have received millions of dollars of investor funds from First Liberty pursuant to the Williams Loans. Instead, the Motion argues that the Cross-Default and Cross-Collateralization Provisions (as defined below) can be disregarded and/or that the Deed of Trust (as defined in the Motion) are invalid. For the reasons set forth in more detail below, Movants fail to demonstrate that Movants will be able to avoid liability under the Williams Loans

or that there is any likelihood that they can prevail on their arguments regarding cross-collateralization and the Deed of Trust.

10. Second, Movants fail to identify any irreparable injury will be suffered if the relief is not granted. As an initial matter, "in the absence of allegations showing the date of a scheduled foreclosure sale, it does not appear that the alleged potential threat of foreclosure is an emergency or that there will be irreparable injury through a foreclosure sale in the absence of the issuance of a temporary restraining order, so as to justify the issuance of a temporary restraining order." *Rosser v. Nationstar Mortg., LLC*, No. 1:15-CV-00370-SCJ, 2015 WL 12697724, at *1 (N.D. Ga. Feb. 6, 2015). Here, there is no foreclosure currently scheduled and the security at issue was properly pledged incident to the Williams Loans. To the extent there is a technical issue with documentation of any security, the Motion fails to explain why Movants should not remedy any issue, via reformation or otherwise, in order to honor their obligations.

11. Third, the threatened injury does not outweigh the significant harm the relief would inflict on the Receivership and the many investors who provided funds incident to the Williams Loans. Rather than actually address this element specifically, page 13 of the Motion references unidentified false representations and

omission and attempts to mischaracterize the Movants as purported victims who received millions and are be being asked to honor their obligations as agreed.

12. Moreover, the relief requested is overbroad and without limitation as to time and duration and would be extremely harmful to the Receivership. In the Motion, the Movants seek to establish "release prices" for the four loans made to the Williams Parties with each loan essentially siloed rather than in accordance with the written agreements entered by Dr. Williams. No evidence is provided as to whether the Williams Parties actually have the funds necessary to post the proposed release prices and no time frame is provided in which the Williams Parties must post the proposed release prices. There is no evidence that the Movants can actually perform in the posting of the release payments to be made.

13. Presumably, if granted, the Receiver would be permanently enjoined from exercising the foreclosure rights and remedies of the Receivership while the Movants would be granted unlimited time to post the proposed release prices. The potential harm to the Receivership is significant and the overbroad relief requested by the Movants unwarranted.

14. Fourth, the entry of the relief would not serve the public interest. This is not a private matter as alleged in the Motion as the public has an interest in contractual remedies being enforced and the many investors who provided funds incident to the

Williams Loans have a specific interest in ensuring that the Williams Loans are satisfied. Indeed, the matter at hand is the administration of a Receivership established at the request of the SEC that has the been subject of public hearings and extensive press coverage.

15.     The public has an interest in ensuring that recipients of substantial funds originating from a fraudulent scheme do not use the harm incurred by investors as a twisted excuse to avoid repaying the obligations that such parties promised would be paid back.  The public also has an interest in having facts about the actual uses of investor funds by the Williams Parties.  As noted on page 14 of the Motion, the "public has an interest in contractual remedies being enforced." This applies to not only to rights of the Receivership related to security pledged by the Williams Parties, but also to the Receivership recovering the interest and all other amounts that the Williams Parties promised would be paid.

16.     In balancing the equities, the Movants are not entitled to the relief sought in the Motion and, as such, the Motion should be denied.

III.     **The Motion fails to demonstrate that the Cross-Collateralization and Cross-Default Provisions are unenforceable.**

17.     A critical part of the relief sought in the Motion is based on the claim that the Movants have a substantial likelihood of establishing that the Williams Loans are not properly cross-collateralized.  Based on that claim, the Movants assert that they

should be able to post separate release payments for each of the loans and the Receiver should be effectively barred from enforcing any right to enforce the Cross-Default and Cross-Collateralization Provisions contained in the Loan Documents.

18.     As a preliminary matter, and contrary to the claims asserted in the Motion, the Williams Loans agreed to and signed by Dr. Williams contain clear and unambiguous cross-default and cross-collateralization provisions (the "**Cross-Default and Cross-Collateralization Provisions**"). For example, Paragraph 6(a) of the promissory note underlying Fourth Loan provides the following cross-default provision:

> Lender has made or may make other loans to Borrower (as used herein the term "Borrower" shall include any and all entities related to Borrower by common ownership and/or control) evidenced by various Notes, and Deeds to Secure Debt (Deed to Secure Debt as used herein to include Mortgages, Security Agreements and Pledges of stock, member interest in limited liability company or other assets). Any event of default as defined in any Deed to Secure Debt from Borrower to Lender given to secure any loan from Lender to Borrower or any breach of terms, provisions, conditions or covenants contained in the Note or Notes, Deed to Secure Debt or Deeds to Secure Debt, or any other loan documents executed in connection with any other loan or loans from Lender or Borrower shall be an event of default under the terms, provisions, conditions, and covenants of any and all other loans from the Lender to Borrower. Further, an event of default hereunder shall also constitute an event of default under any and all Deeds to Secure Debt, Notes, and any other loan document executed in connection with any other loan from Lender to Borrower.

19.    Paragraph 6(b) of the promissory note underlying Fourth Loan further provides the following standard cross-collateralization provision:

> Lender has made or may make other loans to Borrower evidenced by various Notes and Deeds to Secure Debt. The real property and any other property described in said other Deeds to Secure Debt is and shall be security for each and every other Note, executed by Borrower in favor of Lender, or any advance made thereunder, or any renewal or extension thereof; further, the real property described herein is and shall be further security for each and every Note executed by the Borrower in favor of the Lender. This paragraph shall apply notwithstanding the fact that the outstanding balance of any one or more of said loans exceeds the original face amount of the Note or Notes evidencing said loans.

20.    Although the language used in the Cross-Default and Cross-Collateralization Provisions differs slightly between certain loans, the overall intent and purpose of the Cross-Default and Cross-Collateralization Provisions remains the same as such provisions unambiguously provide that, pursuant to the cross default provision, a default by the Borrower (either No Free or Riverdawg) or any entity related to the Borrower (either No Free or Riverdawg) by common ownership and/or control is a default of all obligations due by such parties and, pursuant to the cross-collateral provision, collateral under one loan shall serve as collateral for the other loans. Indeed, it is clear from the Cross-Default and Cross-Collateralization Provisions that the parties intended the Williams Loans to be treated and administered together.

21.    Section III of the Motion unconvincingly argues that the Cross-Default and Cross-Collateralization Provisions should be disregarded even though the Cross-Default and Cross-Collateralization Provisions are important security for the obligations due to the Receivership. The Receiver has made clear to Dr. Williams that the Williams Loans should not be reduced or released until all of the Williams Loans are paid in full or additional protections are granted to the Receiver.

22.    The Receiver submits that the Cross Default and Cross Collateralization Provisions are standard cross-default and cross-collateralization clauses that: a) are unambiguous in each and every contract; b) tied together multiple loans entered into for the ultimate benefit of one individual, Dr. Williams; and c) provided First Liberty rights to recover in the event of default. Under the circumstances, there can be no question that the parties intended that: a) a default under one loan is a default under the others; and c) collateral under any specific loan is collateral for all other obligations. While Movants argue that they have limited flexibility to refinance at this juncture, the Receivership should not endure additional risk in the event that Dr. Williams is overleveraged. Dr. Williams was fully aware of such risk upon entering the Williams Loans and was also aware of the maturity dates of such loans that are now all past their respective maturity dates. The maturity dates and Cross Default and Cross Collateralization Provisions were clearly disclosed across all of the loans

11

and agreed upon by Dr. Williams by and through No Free and Riverdawg. Moreover, the cross collateralization covers loans made to related entities and each ultimately for the benefit of Dr. Williams.

23. While the Motion attempts to improperly manufacture confusion as to affiliates, it should be noted that Dr. Williams is an individual who owns or controls a limited number of entities and is not a huge enterprise that owns or controls a significant number of entities. Under the circumstances, the determination of affiliates is not a difficult task and it is undisputed that the Movants are each owned and/or controlled by Dr. Williams.

24. Notably, the Motion fails to set forth any basis to avoid the cross-default portion of the Cross Default and Cross Collateralization Provisions. Even without consideration of language referring to "any and all entities related to Borrower by common ownership and/or control," all of the loans are now past their respective maturity dates. The non-payment related defaults are now in addition to the non-monetary defaults arising from the failure of Dr. Williams, Riverdawg or No Free to provide financial documentation as required under the loan agreements. There is no legitimate dispute that the Williams Loans and the related guarantees are in default.

25. With regard to the cross-collateralization portion of the Cross Default and Cross Collateralization Provisions, the Motion summarily concludes on page 14 that

cross-collateralization is a form of guaranty rendering such terms unenforceable. The authority cited by Movants on pages 15-16 does not support this contention and cites only to cases involving guarantees of debt by third parties: *Fontaine v. Gordon Contractors Bldg. Supply, Inc.*, 255 Ga. App. 839 (2002) (holding that failure to identify principal debtor in credit application form precluded recovery on guaranty as a promise to answer for the debt or default of another); *Roden Elec. Supply, Inc. v. Faulkner*, 240 Ga. App. 556 (1999) (holding that guaranty to answer for debt of another that omitted name of principal debtor was unenforceable); *Legacy Communities Grp., Inc. v. Branch Banking & Tr. Co.*, 316 Ga. App. 496 (2012) (holding that guaranties to answer for another's debt were unenforceable). Underlying each of the foregoing guaranty cases is the principle that, to be enforceable, the Statute of Frauds requires a signed writing of a promise to answer for the debt or default of another. *See* OCGA § 13–5–30(a)(2).

26. A cross-collateralization provision; however, is not a promise to answer for a debt or default of another (a guarantee) and is instead a provision allowing the use of property as security for multiple loans. The attempt by the Motion to conflate property being subject to multiple loans with each of the Movants being responsible for the obligations of the others is inappropriate as the cross-collateralization provision does not attempt to make any additional party responsible for the debt of

a third party and only addresses collateral being used as security across multiple loans.

27.     While the Motion fails to cite caselaw requiring a cross-collateralization provision to name the principal obligor, the attempt of the Movants to avoid the cross-collateralization provisions based on a purported failure to name the principal obligor also fails since each note underlying the Williams Loans identifies the principal obligor for the obligation underlying the respective note and pledges security subject to such note to secure other obligations of the Borrower.

28.     If granted, the Motion would effectively strip the Receivership of security prior to the full payment of underlying obligations and prohibit the Receiver from enforcing the cross-collateral provisions of the documents underlying the Williams Loans. Not only would such relief subject the Receivership to unnecessary risk, but it could also enable Dr. Williams to obtain the release of one or two pieces of collateral, sell that collateral for more than the release price and obtain a profit for himself at the expense of the Receivership.

29.     The Motion fails to demonstrate a substantial likelihood of success on the merits to disregard the Cross Default and Cross Collateralization Provisions.

IV.     **<u>The Motion fails to demonstrate that the Deed of Trust is Invalid.</u>**

30. Movants also contend that there is a substantial likelihood that they will prevail on their claim that the Deed of Trust is invalid. This argument also fails.

31. In particular, the Movants argue, without citation to any authority, that the Deed of Trust that was executed by Dr. Williams on behalf of Holt Knob Holding, LLC ("**Holt Knob**") is unenforceable with respect to any specific indebtedness. *See* [Doc. 9-1] at 17. Such argument fails for at least three reasons. First, the Deed of Trust expressly acknowledges an obligation in the amount of $3.5 million. It is undisputed that Dr. Williams entered the Deed of Trust on behalf of Holt Knob to secure such obligation. Second, it is further undisputed that Holt Knob received benefit from the Fourth Note in the principal amount of $3.5 million. Third, Dr. Williams knowingly entered the Deed of Trust on behalf of Holt Knob to secure valid obligations and it would be inequitable to allow the release of such security without the satisfaction of the obligation for which the security was pledged. To the extent that Movants have identified an error in the documents, the issue should be addressed via reformation to allow Movants to honor their obligations.

32. Plaintiffs also argue that the Deed of Trust is invalid because there was no legal description referenced or mentioned in, attached to, incorporated by, or otherwise included at all in the Deed of Trust executed by Dr. Williams on behalf of Holt Knob. *See* [Doc. 9-1] at 7. Plaintiffs argue that, because of this claimed error,

the Deed of Trust is void. *Id.* at 12. The Court should not grant Plaintiffs injunctive relief based on the Deed of Trust's alleged lack of legal description for multiple reasons.

**A.    Plaintiffs have failed to carry their burden in presenting sufficient facts to support that the Deed of Trust executed by Dr. Williams for Holt Knob that was ultimately recorded did not have the Exhibit A "legal description" attached.**

33.    First, Plaintiffs cite no evidence, affidavit or otherwise, to support that the Deed of Trust that was recorded did not contain a legal description at the time Dr. Williams executed the Deed of Trust on behalf of Holt Knob.

34.    Plaintiffs cite to "Exhibit H" to the Verified Complaint as the Deed of Trust executed by Dr. Williams, and "Exhibit I" to the Complaint as the Deed of Trust recorded. *See* [Doc. 9-1 at n. 8 and 9). Plaintiffs appear to make the argument that an unknown party added Exhibit A to the Deed of Trust in between the time it was executed by Dr. Williams (Exhibit H) and recorded by the Neumann Law Office (Exhibit I). A brief comparison of the two documents undermines Plaintiffs' own argument—Exhibit H is not the Deed of Trust that was recorded. Dr. Williams' signature is in a different location and the notary information and date executed is different from the recorded Deed of Trust. *Compare* Exhibit H at 5-6 with Exhibit I at 5-6.

16

35. Moreover, Plaintiffs filings omit critical facts. Dr. Williams had to execute the Deed of Trust **twice**. Dr. Williams electronically executed the Deed of Trust on December 19, 2024, which was sent to the Neumann Law Office on January 2, 2025 by Dr. Williams' and First Liberty's lawyer William Ligon, with a note to "[p]lease add the legal description to this and record it at your earliest convenience." [Ligon Production – 00137; Attached Hereto As Exhibit "A"][1]. Mr. Ligon's firm then overnighted the legal description to the Neumann Law Office. *See* [Ligon Production – 00279; Attached hereto as Exhibit "B"]. The Macon County, North Carolina recording office rejected the first Deed of Trust because it did not have Dr. Williams' wet signature. *See* [Ligon Production – 00238; Attached hereto as Exhibit "C"].

36. Upon information and belief, and based on the information available, Dr. Williams then went to the Neumann Law Office on or about January 20 or 21, 2025, to sign the Deed of Trust again so it could be recorded. *See* [Ligon Production – 00064–66; Attached hereto as Exhibit "D"]. That Deed of Trust was notarized on January 24, 2025, and recorded on January 29, 2025. *See* [Ligon Production – 00138; Attached hereto as Exhibit "E"]. Upon information and belief, the Neumann Law

---

[1] William Ligon, one of the lawyers who closed the North Carolina transaction has turned over his closing file to the Receiver.

Office had possession of the legal description from William Ligon's office. *See generally* [Ligon Production – 00064–66, 00137, 00279].

37.     Plaintiffs fail to carry their burden of showing that the Deed of Trust that was recorded did not have Exhibit A attached at the time Dr. Williams executed it on behalf of Holt Knob.

> **B.     Even if the North Carolina Deed of Trust did not have Exhibit A attached to it at the time Dr. Williams executed the Deed of Trust, the Deed is still valid.**

38.     Even had Plaintiffs provided sufficient support that the version of the Deed of Trust executed by Dr. Williams that was recorded lacked the "Exhibit A" at the time of execution, Plaintiffs are unlikely to succeed on the merits in their efforts to void the Deed as requested in the Amended Complaint and, thus, are not entitled to injunctive relief stopping the Receiver from exercising its rights under the Deed of Trust or any other injunctive relief seeking to avoid Holt Knob's obligations under the Deed of Trust.

39.     Under North Carolina law, the Deed of Trust "must contain expressly or by necessary implication all the essential features of an agreement to sell, one of which is a description of land, certain in itself or **capable of being rendered certain by reference to an extrinsic source designated therein**." *Kidd v. Early*, 222 S.E.2d 392, 400 (N.C. 1976)(emphasis added). "In order to be valid, a deed or deed of trust

must contain a legal description of the land 'sufficient to identify it' or refer '**to something extrinsic by which the land may be identified with certainty**.'" *MTGLQ Investors, L.P. v. Curnin*, 823 S.E.2d 409, 411 (N.C. App. 2018) (quoting *Overton v. Boyce*, 221 S.E.2d 347, 349 (N.C. 1976) (emphasis added).

40.     Moreover, "[i]t is presumed that the grantor in a deed of conveyance intended to convey something, and the deed will be upheld unless the description is so vague or contradictory that it cannot be ascertained what thing in particular in meant." *In re Thompson*, 799 S.E.2d 658, 662 (N.C. App. 2017) (quoting *Kidd*, 222 S.E.2d at 400). North Carolina's appellate courts have "generally affirmed" the validity of a deed of trust "when it is possible to ascertain the identity of the subject property." *In re Thompson*, 799 S.E.2d at 662 (citing *Carson v. Ray*, 52 N.C. 609, 609 (1860) (upholding deed as valid when the grantor transferred "[m]y house and lot in the town of Jefferson, in Ashe County, North Carolina" because there was no evidence that the grantor owned any other house in Jefferson)); *see Chicago Title Ins. Co. v. Wetherington*, 490 S.E.2d 593, 597 (N.C. App. 1997) ("The courts seek to sustain a deed if possible on the assumption that the parties intended to convey and receive land or they would never have been involved in the first place.").

41.     The recorded Deed of Trust contains a brief description of the Property in the Deed referencing "Lot 14 Bittersweet Hills, Highlands, NC, 28721." *See* Exhibit I

at 2. This description is sufficient to uphold the Deed of Trust under North Carolina law—it contains reference to an extrinsic source that identifies the specific property. In order to find property records for Lot 14 in the Bittersweet Hills subdivision, a user need only (1) go to the Macon County Property Search Website, (2) insert "Bittersweet Hills" subdivision in the search, and (3) select the parcel for Lot 14. *See Macon County Land Record Search*, MACON COUNTY, https://gis.maconnc.org/Maps/default.htm (last visited Feb. 19, 2026). If the reader takes those steps, they will obtain access to the property lines, plat reference, address, and an abundance of other property information that identifies the property with certainty. *Id.*

**C.     Even if the Deed of Trust is invalid, which it is not, the Receiver has defenses and counterclaims against Plaintiffs to allow enforcement of the Deed.**

42.     Even if the Deed of Trust is invalid, Plaintiffs still will not succeed on the merits in their efforts to void the Deed because the Receiver can assert a counterclaim for reformation of the Exhibit A "legal description" into the Deed of Trust when procedurally proper.[2]

---

[2] The Receiver filed a Motion to Dismiss the Amended Complaint, which has not yet been resolved. The Receiver has not yet had to answer or otherwise respond to the Amended Complaint.

43.     Reformation is available for deeds of trust. *See Nationstar Mortgage, LLC v. Dean*, 820 S.E.2d 854, 859 (N.C. App. 2018); *Noel Williams Masonry v. Vision Contractors of Charlotte*, 406 S.E.2d 605, 608 (N.C. App. 1991). North Carolina law is well-settled—courts have equitable jurisdiction to reform a deed of trust if a material matter has been omitted by mistake or inadvertence or fails to express the terms as agreed to by the parties. *See CitiFinancial Mortg. Co. v. Gray*, 652 S.E.2d 321, 324–25 (N.C. App. 2007) (quoting *Crawford v. Willoughby*, 134 S.E. 494, 496 (N.C. 1926).

44.     Here, Plaintiffs do not dispute that the Deed of Trust was intended to pledge the property described in Exhibit A as collateral to secure a $3,500,000 loan. The Deed of Trust was prepared by William Ligon, on behalf of Dr. Williams, Holt Knob, and First Liberty, and Mr. Ligon's communications to the Neumann Law Office as to the added in Exhibit A. The index description references the same property as more fully described in Exhibit A. The Receiver anticipates additional evidence will show that the parties fully intended the Deed of Trust to secure the property described in Exhibit A and, thus, the Court will exercise is equitable jurisdiction to reform the Deed of Trust to add Exhibit A. *See e.g., Dean*, 820 S.E.2d at 382 (Court of Appeals affirming reformation of a deed of trust to add in a legal

description because it was undisputed that it was the parties' intent for the deed of trust to encumber the property at issue).

45.     Accordingly, the Court should deny Plaintiffs' request for injunctive relief requesting the Court stop the Receiver from exercising its rights under the Deed of Trust or any other injunctive relief seeking to avoid Hold Knob's obligations under the Deed of Trust. Plaintiffs have not met their evidentiary burden nor have Plaintiffs shown a substantial likelihood of success on the merits of the claim.

V.     **<u>The Motion fails to demonstrate a basis to grant the requested relief.</u>**

46.     In a vain attempt to support the requested relief, Section V of the Motion improperly attempts to rely on the proposition set forth in *Bendall v. Lancer Mgmt. Grp., LLC*, 523 F. App'x 554, 557 (11th Cir. 2013) (citation omitted) that the "'district court has broad powers and wide discretion to determine relief in an equity receivership.'" Such strategy fails for at least three reasons. First, *Lancer* makes clear that a primary purpose of receivership "proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors." *Id.* Here, the relief requested in the Motion would not promote the efficient and orderly administration of the Receivership for the benefit of creditors and instead would favor the interests of parties who owe millions to the Receivership and unnecessarily complicate this collection matter. Second, *Lancer* does not authorize the Receivership to the stripped

of security related to valid obligations due to the Receivership prior to the satisfaction of such obligations. Third, the equitable relief sought by Movants violates a fundamental principle in equity relief that the movant must have acted fairly and honestly. Here, the Movants are seeking to: a) avoid the payment of valid obligations due to the Receivership; and b) remove security underlying such obligations prior to the payment of such obligations. Such conduct alone is inequitable and should disqualify Movants from obtaining equitable relief.

WHEREFORE, for the foregoing reasons, the Receiver respectfully requests that the Court: 1) sustain this Objection; 2) deny the Motion with prejudice; 3) tax all costs of the Receiver in responding to the Motion against the Movants; and 5) grant the Receiver such other and further relief as this Court deems just and proper.

Respectfully submitted this 19th day of May, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com; Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE AND CERTIFICATE OF SERVICE

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

Counsel further certifies certify that I have electronically filed the foregoing *Brief in Support of Response* with the Clerk of Court via the CM/ECF system, and further certify that a true and correct copy of the same has been served by email as follows:

JONES & WALDEN LLC
c/o Leon S. Jones, Esq.
699 Piedmont Avenue NE
Atlanta, Georgia 30308          Sent electronically to LJones@joneswalden.com

This 19th day of May, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com
Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*