**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| RIVERDAWG, LLC, NO FREE, LLC, HOLT KNOB HOLDINGS, LLC, URGENT CARE 24/7, LLC, and JERRY WILLIAMS, individually, | Civil Action File No. |
| | 26-cv-01353-MLB |
| Plaintiffs, | |
| v. | |
| S. GREGORY HAYS, IN HIS CAPACITY AS RECEIVER FOR FIRST LIBERTY CAPITAL PARTNERS, LLC, | |
| Defendant. | |

**PLAINTIFFS' REPLY TO DEFENDANT'S RESPONSE TO MOTION**
**FOR TEMPORARY RESTRAINING ORDER AND**
**<u>PRELIMINARY INJUNCTION</u>**

Plaintiffs Riverdawg, LLC ("**Riverdawg**"), No Free, LLC ("**No Free**"), Holt

Knob Holdings, LLC ("**Holt Knob**"), Urgent Care 24/7, LLC ("**Urgent Care**"), and

Jerry Williams ("**Dr. Williams**" and collectively with Riverdawg, No Free, Holt

Knob, and Urgent Care the "**Plaintiffs**") submit this reply brief ("**Reply**") in support

of Plaintiff's *Motion for Temporary Restraining Order and Preliminary Injunction*

(the "**TRO Motion**"). Plaintiffs reply to Defendant's *Response in Opposition to*

*Motion for Temporary Restraining Order and Preliminary Injunction* (the

"**Response**") as follows:

INTRODUCTION

The Response filed by the Receiver incorrectly promulgates the notion that Plaintiffs are attempting to avoid certain contractual obligations by seeking a temporary restraining order and preliminary injunction. This is not true. Plaintiffs seek injunctive relief, or in the alternative, equitable relief, in order to resolve the dispute between the Plaintiffs and the Receiver in this litigation. To be clear, Plaintiffs seek a determination of: (a) their obligations under the Loan Documents, and (b) as to certain purported asserted cross-collateralization and cross-default provisions. The focus of the current motion before the Court is the invalidity of the asserted cross-collateral provisions. If the Plaintiffs are allowed to refinance each loan separately, and pay the refinance proceeds into the Court's registry, then this case may be resolved quickly.

Instead of filing a responsive pleading with counter claims, the Receiver has elected to file multiple motions to dismiss and opposition to injunctive relief. Plaintiffs desire to make efficient use of this Court's time and resources by addressing the core issue in this dispute: the Receiver's improper assertion of cross-collateralization of the obligations under the Loan Documents[1]. An equitable and expeditious resolution serves the best interests of investors and borrowers alike. To

---

[1] Capitalized terms not otherwise defined herein shall have the meaning attributed to them in the Amended Complaint.

be clear, Plaintiffs are not balking at the Receiver's claim of cross-collateralization just to be difficult. At this juncture, Plaintiffs do not have the ability to refinance all the debt at once. Refinance of each loan separately is more feasible.

The Receiver seeks to delay resolution of this dispute by sheltering behind the Court's *Order Establishing Procedures to Enter Action to Resolve Claims Arising from Loan Obligations Due to the Receivership* [Doc. No. 70] (the "**Procedures Order**"). For the avoidance of doubt, the Plaintiffs do not intend to evade any requirement of the Procedures Order. However, it bears noting that the Procedures Order was the product of discussions conducted <u>during</u> the December hearing. This was necessitated by a last-minute filing by the Receiver[2]. During the hearing, multiple parties participated in discussing the provisions of a proposed order without adequate time to prepare. Likewise, the Receiver's last-minute filing of a proposed procedures order approximately sixteen hours before the hearing required the Court to address the issues on short notice.

As noted in the TRO Motion, this Court has broad equitable powers to grant relief in this Ancillary Action. The Court may exercise its broad powers of equity to grant any relief necessary for the efficient and orderly administration of this

---

[2] The Plaintiffs' original request for relief was filed on October 16, 2025. Due to the government shut-down, the hearing was not conducted until December 15, 2025. Despite the existence of Plaintiffs' request for relief for approximately two months, the Receiver filed his proposed order on Sunday night before the Monday morning status conference.

receivership estate. To the extent necessary, the Court may amend, modify, or otherwise change the Procedures Order at its convenience in order to promote the administration of the receivership estate.

ARGUMENT AND CITATION OF AUTHORITY

**I. The Receiver's Misuse of the Procedures Order Impedes a Resolution of this Dispute.**

The purpose of the Procedures Order, as discussed during the December hearing, was to establish procedures to resolve claims against the Receivership Entities in order to promote the efficient and orderly administration of this receivership estate for the benefit of investors and borrowers. The Receiver now uses the Procedures Order as a dilatory tactic to hinder the resolution of this dispute instead of addressing the core issues. Nevertheless, the Plaintiffs display compliance with the Procedures Order.

**A. Plaintiffs Have Complied with the Procedures Order.**

The Receiver's Response asserts that Plaintiffs failed to comply with two "absolute" requirements for seeking injunctive relief in this case. *See* Response at ¶ 3. The first alleged failure is that Plaintiffs have yet to comply with the Procedures Order. The second alleged failure asserted by the Receiver is that the TRO Motion is not verified. This requirement is fabricated by the Receiver. No such requirement exists in the Procedures Order or the Federal Rules of Civil Procedure ("**FRCP**").

### 1. Plaintiffs' Amended Verified Complaint Complies with the Procedures Order.

The Receiver hinders the progress of this action by asserting that the injunctive relief cannot be granted until the Renewed Motion to Dismiss is resolved. *See* Response at ¶ 4. Similarly in that motion, the Receiver shelters behind the Procedures Order. Plaintiffs show that it would be most appropriate for the Court to resolve the parties' grievances even in the absence of the determination of the immediate TRO Motion. However, since the Receiver inserts those issues in his Response, the Plaintiffs shall briefly reiterate what is discussed in Plaintiffs' Response to Renewed Motion to Dismiss.

First, the Amended Verified Complaint pleads fraud with sufficient particularity. The Amended Complaint states that Frost lied about his ability to make loans and obtain take-out financing.[3] Plaintiffs alleged that Frost and the Receivership Entities made false statements to Plaintiffs to induce Plaintiffs into the purported loan transactions. *See* Amended Verified Complaint at ¶ 93-95 and ¶ 114 (hereinafter simply the "**Complaint**"). Specifically, Plaintiffs alleged that First Liberty did not have the intent to fully fund the Purported Loans and provide means for take-out financing.

---

[3] On May 12, 2026, Frost pleaded guilty to a federal wire charge tied to the First Liberty Ponzi Scheme.

Second, Plaintiffs show compliance with the Procedures Order's requirements for pleading breach of contract. The Receiver attempts to use Procedures Order ¶ 9(b)(v) to avoid litigating the amount allegedly due under the Loans. However, paragraphs 127 and 128 of the Complaint state the breach. To echo the Complaint, the Receivership Entities breached the contract by failing to perform their obligation to fully fund the Fourth Loan. The Receiver asserts that no specific provision in the Fourth Loan required that the loans be funded. Although the Receiver is correct in that a simple clear provision requiring the loans be funded may not be found, this is a further testament to the fraudulent scheme operated by Frost and the Receivership Entities.

The Eleventh Circuit Court of Appeals has addressed the issue of a breach without a specific provision before. *Softball Country Club v. Decatur Fed. Sav. & Loan Ass'n*, 121 F.3d 649 (11th Cir. 1997). In *Softball County Club*, a lender and borrower entered into an oral contract where the lender agreed to loan $300,000 to the borrower for the construction of a country club. In exchange, the borrower agreed to pay an existing debt and assign billboard revenue to lender. The borrower performed its obligations but the lender did not. Lender failed to fund the loan. Although there was no express written provision to fund the loan to the borrower, the Court determined it was the intention of the parties was for the lender to fund the loan. The Court upheld an award of damages for breach of contract. Similarly, here,

the purpose of the Fourth Loan was for the funding of the loan. Despite the nonexistence of an express provision requiring the funding of the loan, the entire purpose of the agreement was for No Free to obtain loan funding.

The note corresponding to the Fourth Loan does not contain a merger clause limiting the agreement to the express terms. "In Georgia, to preclude formation of an oral contract as a matter of law, a party must expressly require a writing." *Apac-Southeast, Inc. v. Coastal Caisson Corp.*, 514 F. Supp. 2d 1373, 1381 (N.D. Ga. 2007). Therefore, First Liberty's failure to fund the Fourth Loan constitutes a breach of contract. Additionally, in further compliance with the Procedures Order, Plaintiffs have stated the damages relating to this breach. *See* Amended Verified Complaint at ¶ 130. Plaintiffs have pled actionable claims and thereby demonstrated compliance with the Procedures Order.

### 2. The TRO Motion Need Not Be Verified.

The Receiver asserts, without citing to any authority, that the TRO Motion should be denied because it is not verified. However, this supposed verification requirement is not supported by the FRCP or the Procedures Order. The Procedures Order provides that "relief shall be sought through either a Verified Complaint or Verified Counterclaim." *See* Procedures Order at ¶ 5(a). Plaintiffs have complied by filing their Verified Complaint. The Procedures Order also provides as follows:

> [t]o the extent that a Borrower seeks injunctive relief against the Receiver including to suspend or enjoin any collection activities of the

Receiver, such relief shall be sought in accordance with F.R.C.P. 65 or other applicable law….

*See* Procedures Order at ¶ 5(b)(xi). Neither the Procedures Order nor the FRCP include a requirement that injunctive relief be sought through a verified motion. The Receiver's argument constitutes yet another tactic to avoid addressing the core issues here.

**B.     Plaintiffs Have Met the Standard for TRO and Preliminary Injunction.**

To satisfy the standard for obtaining preliminary injunctive relief, a movant "must demonstrate that: (1) [Movants have] a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to [Movants] outweighs whatever damages the proposed injunction may cause [Receiver]; and (4) if issued, the injunction would not be adverse to the public interest." *Diamond Crystal Brands, Inc. v. Wallace*, 531 F. Supp. 2d 1366, 1370 (N.D. Ga. 2008) (Camp, J.) (citations omitted).

First, the Plaintiffs have demonstrated a substantial likelihood of success on the merits. To be clear, Plaintiffs do not attempt to avoid all liability under the Loan Documents. Rather, Plaintiffs demonstrate that they are likely to succeed on the merits of their cross-collateralization argument. Specifically, the cross-collateralization and cross-default provisions of the Loans are unenforceable. The

cross-collateralization issue and the invalidity of the Deed of Trust are discussed in more detail below.

Second, Plaintiffs have shown they will suffer irreparable injury if the injunction is not issued. Construction is underway on the North Carolina Parcel owned by Holt Knob. A recent photo depicting the state of the property is attached hereto as **Exhibit "A"**. The Receiver has impeded Plaintiffs' ability to refinance the Loans, causing irreparable injury to Plaintiffs. The Receiver's position has actually subverted the Receiver's ability to recover on the Loans. As discussed in more detail below, the Deed of Trust places a cloud on the title of the North Carolina Parcel during ongoing construction, and the Receiver's misplaced asserted of a right to cross-collateralization impedes the Plaintiff's ability to refinance in order to satisfy any obligations under the Loans. The Plaintiffs have made clear to the Receiver that the Plaintiffs intend to pay the Release Amount into the Court's registry in order to satisfy any obligations under the Loans. However, the Receiver would rather seek to accrue ongoing interest, causing irreparable harm to Plaintiffs.

Third, Plaintiffs have established that the threatened injury to the Plaintiffs greatly outweighs any such threat to the Receiver. Again, Plaintiffs have stated they intend to pay the Release Amount into the Court's registry in order to satisfy any obligations under the Loans. The Receiver would suffer no injury should the amount sought be placed in the care of the Court while a determination as to the amount

owed is made. Further, the Receiver is not entitled to the North Carolina Parcel because the Deed of Trust is null, void, and unenforceable.

Fourth, the Plaintiffs have shown the injunction, if granted, would not be adverse to the public interest. Plaintiffs seek to pay the Release Amounts into the Court Registry while a determination is made as to the amount actually owed. The public's interest would be better served by having any such amount liquidated in the care of the Court, rather than tied up in any real property, both in-state and out-of-state.

The Receiver's attempt to cross-collateralize properties continues to draw out this case and prevent an efficient result for the victims of the Ponzi Scheme. Plaintiffs have demonstrated that they have met the standards for injunctive relief.

## II. The Cross-Collateralization and Cross-Default Provisions are Unenforceable.

The Receiver's position is that "a default by the Borrower … or any entity related to the Borrower … by common ownership and/or control is a default of all obligations due by such parties and, pursuant to the cross-collateral provision, collateral under one loan shall serve as collateral for the other loans." *See* Response at ¶ 20. Otherwise stated, the Receiver asserts that Riverdawg's property serves as collateral for the No Free debt and vice-versa.

"A guaranty is a collateral promise to answer for the debt or obligation of another." *Fed. Deposit Ins. Corp. v. Univ. Anclote, Inc.*, 764 F.2d 804, 806 (11th Cir.

10

1985). To enforce a promise to answer for the debt or default of another, the Statute of Frauds requires a signed writing. O.C.G.A. § 13-5-30(a)(2).

The Receiver has asserted that a default by one borrower or any entity related to such borrower constitutes a default of all obligations due by other borrower parties. *See* Response at ¶ 20. This is no different than requiring a borrower to pay for the default of another borrower, which requires a signed writing under the Statute of Frauds. The Receiver argues over semantics.

Georgia law defines a contract of suretyship or guaranty as "one whereby a person obligates himself to pay the debt of another in consideration of a benefit flowing to the surety or in consideration of credit or indulgence or other benefit given to his principal, the principal in either instance remaining bound therefor. Sureties, including those formerly called guarantors, are jointly and severally liable with their principal unless the contract provides otherwise. There shall be no distinction between contracts of suretyship and guaranty." O.C.G.A. § 10-7-1. This definition elevates the function of the agreement over the formality of the title. The statute focuses on whether the provision creates an obligation to answer for the debt of another, triggered by the principal's default, rather than whether the provision is called a "guaranty." It follows that when a cross-collateralization or cross-default clause operates to make one obligor answer for another's obligation, it should be

11

analyzed as a guaranty because it contractually ties performance on one debt to the enforcement of another. O.C.G.A. § 10-7-1.

Here, First Liberty's cross-collateralization provisions do not name the obligors. "The guarantor's liability may not be extended by implication or interpretation." *Legacy Cmtys. Grp., Inc. v. Branch Banking & Tr. Co.*, 316 Ga. App. 496, 729 S.E.2d 612 (2012). Where the name of the principal debtor is omitted from a document, it is unenforceable as a matter of law "even where the intent of the parties is manifestly obvious" because it fails to satisfy the statute of frauds. *Fontaine v. Gordon Contractors Bldg. Supply*, 255 Ga. App. 839, 567 S.E.2d 324 (2002). Riverdawg's loan documents do not reference No Free. No Free's documents do not reference Riverdawg. Under Georgia law, courts are "not authorized to determine the identity of the principal debtor by inference as this would entail consideration of impermissible parol evidence." *Roden Elec. Supply v. Faulkner*, 240 Ga. App. 556, 524 S.E.2d 247 (1999). The result is that No Free has no enforceable obligation as to Riverdawg, and Riverdawg has no obligation as to No Free.

## III. The Deed of Trust is Invalid.

### A. The Recorded Deed of Trust is Void Because a Note does not Exist and There is No Legal Description.

The Recorded Deed of Trust supposedly secures indebtedness in the amount of $3,500,000.00 pursuant to a promissory note. No such note exists. The Receiver does not contend that any note exists. Rather, merely the Receiver asserts that the

Deed of Trust acknowledges an obligation in such amount. *See* Response at ¶ 30. However, pursuant to the terms of the Deed itself, only debt under a note is secured. And no such note exists.

Further, the Deed of Trust is unenforceable because it did not include a legal description of any property to be conveyed. *See* TRO Motion brief in support at p. 17 (The Deed fails to provide a description of any property). The Statute of Frauds "requires that all contracts to sell or convey any lands … shall be void unless said contract … be put in writing" and that "the writing must contain a description of the land." *In re Hudson*, 182 N.C. App. 499, 503 (2007).

The Receiver argues that the legal description was included as Exhibit A to the Deed of Trust. However, even in that case, tacking on an exhibit to the Deed of Trust without any reference in the deed to the exhibit or a legal description does not cure its invalidity. The Receiver cites *MTGLQ Investors* for the notion that a deed of trust must contain a legal description of the land sufficient to identify it or refer to something extrinsic by which the land may be identified with certainty. *MTGLQ Inv'rs, L.P. v. Curnin*, 263 N.C. App. 193, 823 S.E.2d 409 (2018). *See* Response at ¶ 39. However, the Deed of Trust does not refer to anything extrinsic to identify the land. The Deed of Trust merely states that Holt Knob grants the Trustee rights in land "more particularly described as follows: _____."

The *MTGLQ Investors* case referenced by the Receiver goes on to state "if a deed's language, 'including the references to extrinsic things, describes with certainty the property intended to be conveyed, parol evidence is admissible to fit the description in the deed to the land.'" *Id*. citing *Overton v. Boyce*, 289 N.C. 291 (1976). The only reference to property in the Deed is a parcel number: "Lot 14 Bittersweet Hills, Highlands, NC 28741." Under North Carolina law, a parcel number without incorporation of corresponding tax maps by reference is insufficient to meet the statutory requirement for a metes and bounds description. *See Blackwell v. City of Reidsville*, 129 N.C. App. 759, 502 S.E.2d 371 (1998).

In *Blackwell*, the court noted that the descriptions referred to "lots" identified by parcel numbers, but there was no incorporation of tax maps to clarify what the parcel numbers represented or how the lots could be located. The court emphasized that such descriptions were inadequate because they failed to provide a means to ascertain the boundaries of the property with certainty. *Id*. In the Deed of Trust at hand, there is no reference to extrinsic exhibits or descriptions, and the parcel number alone is insufficient. The Receiver's argument fails here.

**B.     The Receiver has Unnecessarily Prolonged this Dispute by Failing to Assert Counterclaims.**

The Receiver's Response notes that even if the Deed of Trust is invalid, "the Receiver can assert a counterclaim for reformation." *See* Response at P. 20. But

instead, the Receiver has yet to file any responsive pleading or assert any counterclaims.

CONCLUSION

For the foregoing reasons, Plaintiffs should be granted injunctive relief pursuant to the Procedures Order. In the alternative, the Court may use its broad powers of equity to modify the Procedures Order and/or grant the relief requested.

The Plaintiffs are eager to obtain refinancing on each of the respective loans. Plaintiffs are not currently able to obtain refinancing of the loans collectively (at the same time). Plaintiffs have the ability to refinance the amount claimed by the Receiver on each of the loan documents separately. If the Court rejects the Receiver's effort to cross-collateralize all of the loans, then the parties can advance resolution of this business dispute.

Plaintiffs seek to resolve the core issues of this case instead of disputing the Receiver's procedural tactics. Likewise, the First Liberty effort to secure the North Carolina Property was defective. Plaintiffs do not seek some undeserved gain. Plaintiffs merely seek the ability to finance the loans to satisfy the Receiver's claims.

Respectfully submitted this 2nd day of June, 2026.

**JONES & WALDEN LLC**
*/s/ Leon S. Jones*
Leon S. Jones, Georgia Bar No. 003980
699 Piedmont Avenue NE, Atlanta, GA 30308
(404) 564-9300 | LJones@joneswalden.com
*Attorney for Plaintiffs*

15

# EXHIBIT "A"

## Holt Knob Construction



## CERTIFICATE OF SERVICE, FONT AND MARGINS

I certify that on the date below, I electronically filed the foregoing **Reply to Defendant's Response to Motion for Temporary Restraining Order and Preliminary Injunction** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

- **Henry Francis Sewell, Jr**
  hsewell@sewellfirm.com

I further certify that I prepared this document in 14 point Times New Roman font and complied with the margin and type requirements of this Court.

Respectfully submitted this 2nd day of June, 2026.

**JONES & WALDEN LLC**

*/s/ Leon S. Jones*
Leon S. Jones
Georgia Bar No. 003980
699 Piedmont Avenue NE
Atlanta, GA 30308
(404) 564-9300
LJones@joneswalden.com
*Attorney for Plaintiffs*