**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| RIVERDAWG, LLC, NO FREE, LLC, HOLT KNOB HOLDINGS, LLC, URGENT CARE 24/7, LLC, and JERRY WILLIAMS, individually, | : : : | Civil Action File No. |
| Plaintiffs, | : | 1:26-cv-1353 |
| v. | : | |
| S. Gregory Hays, in his capacity as Receiver for First Liberty Capital Partners, LLC, | : : | |
| Defendant. | : | |

**REPLY TO RESPONSE TO RENEWED MOTION TO DISMISS AND
BRIEF IN SUPPORT THEREOF**

The Receiver, through counsel, hereby replies to the *Response to Renewed Motion to Dismiss or, in the Alternative, for More Definite Statement and Brief in Support Thereof* [Doc. No. 15] (the "**Response**") related to the *Amended Verified Complaint* [Doc No 7] (as amended, the "**Complaint**") as follows:

**INTRODUCTION**

1.     In their Response, the Williams Parties continue to defy and attempt to evade the requirements of the Procedures Order and the Rules of Civil Procedure. Indeed, the Receiver's Renewed Motion to Dismiss is premised both on non-compliance with the Procedures Order *and* on the failure of the Complaint to state a plausible claim: a) to recharacterize the loans to the Plaintiffs or otherwise ignore any interest or other fees due; b) sounding in breach of contract or fraud under Counts Two, Three, and Four; or c) for declaratory relief or an injunction.

Significantly, the Williams Parties do not proffer an amended Complaint or additional documents to address or cure the deficiencies in the Amended Complaint.

2.     The Williams Parties make essentially six arguments in opposition to the Receiver's Renewed Motion to Dismiss, to wit: (1) the requirements of Paragraph 5(b)(iv) of the Procedures Order have either been met or should be waived; (2) that a breach of contract claim has been stated; (3) that they should not be obligated to comply with Paragraph 5(b)(vi) of the Procedures Order; (4) that they have pled fraud with particularity; (5) that damages have been adequately alleged and (6) they have satisfied the security requirements for Injunctive Relief. Each of these contentions fail under scrutiny.

## ARGUMENT

A. **The Response Fails to Demonstrate the Use of Funds.**

3.     Paragraph 5(b)(iv) of the Procedures Order specifically requires "a verified list of all disbursements and uses of funds received by the Borrower from a Receivership Entity by date, amount and payee *along with documents evidencing such uses.*" (emphasis supplied). After failing to include *any* accounting of the uses of funds in their initial complaint, the Williams Parties attached only a one page spreadsheet as Exhibit "G" to the Amended Complaint which contains mere summaries of disbursements. However, even this limited list showed misuse and

misappropriation of the funds loaned to the Williams Parties by First Liberty.   By way of example only, Exhibit "G" states that over $500,000 was used on private plane flights and personal credit card bills, but no documents regarding these flights (and who was on these flights) or uses of the credit card is provided.

4.      This is critical information in this case since the Williams Parties allege in Paragraph 40 of their Complaint, with respect to the North Carolina loan, that

> all disbursements of funds to Plaintiffs were used for (i) general business purposes, as agreed and understood by First Liberty, (ii) to fund a legal dispute involving Dr. Williams, as agreed and understood by First Liberty, (iii) to fund construction on the North Carolina Property (further described below), as agreed and understood by First Liberty, and (iv) real estate development and investment as well as operational expenses during the transition period, as agreed and understood by First Liberty.

5.      In fact, however, no evidence is provided that First Liberty ever permitted such uses of the loan proceeds and the Promissory Note executed by Dr. Williams specifically stated that the "primary purpose of the Loan is to build a Spec home" (See Exhibit F to the Amended Complaint, Doc 7-6, Page 3 of 40, Paragraph 5).  This is also consistent with the memo issued by First Liberty to Dr. Williams which stated that the purpose of the loan was, "To construct home."  See **Exhibit "1"** attached hereto.   Finally, it should be undisputed that even First Liberty never consented to funds being used on travel and personal credit cards.

6.    Moreover, the gravamen of the Plaintiff's Amended Complaint, as addressed in more detail below, seems to be that First Liberty breached an alleged agreement to make advances to complete construction.  In fact, it appears that Dr. Williams squandered the money loaned to him by First Liberty on lifestyle expenses.

7.    The Response further attempts to avoid full disclosure by mischaracterizing the requirement that documentation be provided as tracing or a forensic accounting.   The problem here, however, is that Williams Parties have not produced **any** documents evidencing the uses of funds and now make no further attempt to comply with this provision.   Plaintiffs have also failed to provide full disclosure in violation of Paragraph 5 of the Fourth Note that requires the borrower to provide "financials and such information as Lender may request from time to time regarding application of loan proceeds and performance under the Loan documents." (See Exhibit F to the Amended Complaint, (Doc 7-6, Page 3 of 40, Paragraph 5)

8.    As a final desperate attempt to avoid their obligations to the Court under the Procedures Order, the Williams Parties allege that they did not fully comprehend the requirement of the Procedures Order which supposedly came as a surprise to them. Contrary to the representation in Paragraph 8 of the Response, the Procedures Order that was entered on January 27, 2026, was not a surprise to anyone in the Receivership and actually originated from the numerous pleadings, *see* Receivership

4

Doc. Nos. 29, 30, 34, 36, 47, 55, and 56, filed by the Williams Parties in which the Williams Parties sought to enter the Receivership on an expedited basis leading up to the properly noticed hearing on December 15, 2026. Plaintiffs were represented by counsel at such hearing where such counsel went through the proposed procedures for entering the Receivership. Such counsel, along with other counsel who appeared at the hearing, had further opportunity to comment on a proposed order that was circulated on December 16, 2025, pursuant to the communication attached as **Exhibit 2** hereto. On December 18, 2025, pursuant to the communication attached as **Exhibit 3** hereto, counsel for the Plaintiffs indicated that he did not have further comments or objections and, in fact, counsel for the Receiver made several changes to the Order at the request of counsel for the Williams Parties.  Finally, the Williams Parties never appealed or sought any review of the Procedures Order.

9.      The only "surprise" here is that the Williams Parties did not timely disclose their misuse of investor funds to their counsel who was clearly unaware that his clients used investor funds for private airplane travel at the time he reviewed and commented upon the Procedures Order.

10.      Disclosure is not merely procedural, but is substantively relevant as the limited information already disclosed undermines Plaintiffs' damages and fraud

claims. Plaintiffs should not be permitted to pursue any claims without complying with these critical disclosure requirements.

**B. The Response Fails to Demonstrate a Breach of Contract Claim.**

11.     The vague and conclusory references in the Response to an undisclosed breach of an unsubstantiated obligation or specific damages flowing therefrom fail to state a plausible claim.  It is undisputed that "a plaintiff asserting a breach of contract claim must allege a particular contractual provision that the defendants violated to survive a motion to dismiss." *Anderson v. Deutsche Bank Nat. Tr. Co.*, No. 1:11-CV-4091-TWT-ECS, 2012 WL 3756512, at *5 (N.D. Ga. Aug. 6, 2012) (citation omitted). Rather than identifying a particular contractual provision that was violated, Paragraph 10 of the Response indicates that paragraphs 127 and 128 of the Complaint state the breach. Such paragraphs; however, merely provide conclusory allegations that the Williams Parties hold claims under a contract and purportedly performed obligations prior to an unidentified breach and anticipatory breach of contract. Such paragraphs—and the Complaint—simply fail to identify a particular contractual provision that was violated by First Liberty or even reference a specific obligation of First Liberty that is grounded in any written contract.

12.     Rather than identifying any specific obligation to fund, Paragraph 11 of the Response provides a vague allegation that some unidentified portion of the

Fourth Loan was not funded based on an unidentified obligation. The specific amount that was purportedly not funded is not identified in the Complaint and the Receiver does no admit that the Fourth Loan was not fully funded. Although the Receiver has previously noted that Exhibit J, Doc. No. 7-10, p.6, to the Complaint provides that $2,268,462.93 was available to the borrower after the closing and that the borrower received draws in the total amount of $2,211,449.40, neither the Complaint nor the Response identify any contractual term requiring the difference of approximately $57,000 to be paid and Exhibit J appears to be incorrect. Indeed, the actual closing statement for the loan, a copy of which is attached as **Exhibit 4** hereto, indicates that only $2,147,834 was to be available to the borrower after closing. Not only do the Plaintiffs fail to: a) demonstrate a specific funding obligation of First Liberty; or b) state a plausible claim that allocated funds were not available, but it appears that the Plaintiffs actually received more than the allocated amount.

13.    In addition to failing to demonstrate a plausible claim that allocated funds were not available by a particular date, Plaintiffs also fail to identify any request for an additional advance of any amount available or overcome the fact that available funds would be "disbursed from time to time on terms and conditions as established by Lender as to timing, amount, and other conditions of disbursements."

7

*See* Exhibit F to Amended Complaint, p. 1. In short, the Williams Parties fail to adequately allege that any further disbursement was due and required.

14.    In addition to failing to identify an obligation that was breached, the Response and Complaint fail to identify any damages arising therefrom. Although Paragraph 12 of the Response indicates that the damages claim is stated in Paragraph 130 of the Complaint, Paragraph 130 refers to unidentified breaches and does not reference any actual damages. Paragraph 12 of the Response adds information that is not included in the Complaint by alleging that interest and charges under the loans are damages; however, the Response fails to cite any authority indicating that interest and charges due under the loans could be avoided or constitute damages.

15.    Count Four of the Complaint should be dismissed because it fails to: a) satisfy the Procedures Order; and b) state a plausible claim for breach of contract in that it fails to identify a specific obligation to perform any particular act under a valid agreement, a specific material provision of any agreement that was actually violated by First Liberty, or any specific damages arising therefrom.

C. **The Response Fail to Identify a Statement of Defenses.**

16.    The Procedures Order requires a detailed statement of defenses that includes documents related to such defenses. Paragraph 13 of the Response seeks

to—without any basis—ignore this critical requirement to enter the Receivership. Plaintiffs should not be allowed to pursue claims without satisfying this requirement.

### D. **The Response Fails to State a Plausible Fraud Claim.**

17.    Paragraphs 14-19 of the Response fail to demonstrate compliance with Procedures Order or a plausible fraud claim.

18.    To state a plausible claim for fraud, a plaintiff "must show five elements: 'a false representation by a defendant, scienter, intention to induce plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff.'" *Est. of Smith v. CitiMortgage, Inc.*, No. 113CV02809RLVJFK, 2014 WL 12859296, at *4 (N.D. Ga. Jan. 28, 2014). The Complaint fails to allege sufficient facts to demonstrate scienter, intention to induce Plaintiffs, justifiable reliance by Plaintiffs, or damage to Plaintiffs.

19.    With respect to purported misrepresentations, the Response fails to demonstrate that the Complaint contains sufficient facts regarding: a) precisely what statements—on which Plaintiffs relied—were to Plaintiffs made in what documents or oral representations by person, date, or content; b) the time and place of each such statement and the person responsible for making same; c) the content of such statements and the manner in which they misled the Plaintiffs; and d) what First Liberty obtained as a consequence of the fraud. In short, the Complaint fails to

9

explain the who, what, when where, and how related to matters specifically between First Liberty and Plaintiffs. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (requirement of particularity as to the circumstances constituting fraud means pleading what the defendants obtained as a consequence of the fraud, precisely what statements were made in what documents or oral representations and factual details that include "'the who, what, when where, and how'"). The Response does not even attempt to identify sufficient facts to support their fraud claims through alleged "badges of fraud."

20.    Instead of alleging sufficient facts to demonstrate any specific fraud as to Plaintiffs or demonstrating compliance with paragraph 5(b)(vii) of the Procedures Order or F.R.C.P. 9, the Response primarily refers to generalized allegations in the Complaint that are conclusory,[1] rely on unidentified purported false representations, rely on information that is not false, and/or unable to serve as the basis of a fraud claim. Paragraph 16 of the Response asserts that the Complaint alleges that "Frost lied about his ability to make loans and obtain take-out financing." The Complaint, however, does not support such conclusion.

---

[1] "'[C]onclusory allegations that certain statements were fraudulent' are not sufficient to state a claim for relief." *Est. of Smith v. CitiMortgage, Inc.*, No. 113CV02809RLVJFK, 2014 WL 12859296, at *4 (N.D. Ga. Jan. 28, 2014) (citation omitted).

21.    In an attempt to identify specific representations, Paragraph 15 of the Response alleges that Paragraphs 92, 93, and 112 contain fraudulent statements. While Paragraph 112 is disregarded as it does not reference any statements, Paragraphs 92 and 93 only contain general conclusory statements as to a general fraudulent scheme to enrich Mr. Frost and unidentified purported false representations without providing the requisite details to support such conclusions or how such conduct specifically related to the Plaintiffs. Paragraph 93 generally references the ability to fund the loans; however, it does not provide any details regarding a specific representation. Even if such information could be considered, the Complaint—in an effort to manufacture a false statement—improperly concludes without any basis that First Liberty did not have the ability to fund loans. Such conclusion is clearly inaccurate as First Liberty was funding loans to various parties and actually funded the loans to the Williams Parties. Under the circumstances, Plaintiffs fail to actually identify any false statements upon which the Plaintiffs relied or sufficiently allege that First Liberty had actual intent to not fund the loans at the time that each of the loans were entered.

22.    The discussion in Paragraph 17 of the Response regarding Paragraph 93-95 and 114 of the Complaint does not remedy the failure of the Complaint to allege a plausible fraud or fraud-in-the inducement claim.   Paragraph 17(a) of the

11

Response addresses certain unidentified representations in an effort to manufacture an issue regarding the status and ability of First Liberty to make loans. Even if such statement was actually detailed appropriately for purposes of argument, such conclusory statement is not false and would not constitute a misrepresentation as: a) the Receivership Entities were fully capable of funding the Williams Loans; b) First Liberty allocated all funds that were to be made available under the Williams Loans. Plaintiffs fail to allege sufficient facts to demonstrate that the Fourth Loan was not fully funded and the Receiver disputes the unsubstantiated conclusion in paragraph 17(a).

23.    Paragraph 17(b) of the Response cites an unsubstantiated representation in Paragraph 95 of the Complaint that alleges that the Receivership Entities generally "represented that the source of funds was legitimate and that the loans would be fully funded, in an attempt to induce Plaintiffs into the Loans." Even if such statement was actually detailed appropriately for purposes of argument, such information is not false and would not constitute a misrepresentation as the source of funding was legitimate as the funds came from legitimate investors and First Liberty had sufficient proceeds to fund the Williams loans.

24.    Paragraph 17(c) of the Response references the unidentified representations included in Paragraph 114 of the Complaint regarding take-out

12

financing. Plaintiffs' claim of fraud based upon unidentified representations regarding refinancing present no actionable cause of action for at least four reasons. First, such representations are not detailed appropriately and do not reference any specific refinancing more than a year in the future and, as such, are disputed and should be given no weight. Second, a "fraud claim cannot, as a matter of law, be founded on a promise that fails to satisfy the statute of frauds." *Breckenridge Creste Apartments, Ltd. v. Citicorp Mortg., Inc.*, 826 F. Supp. 460, 466 (N.D. Ga. 1993) (finding that oral promise relating to commitment to lend money failed to satisfy statute of frauds as such promises "are only enforceable if the essential terms are reduced to a writing"). Although take-out financing may have been an option for repayment of the obligations, repayment was not conditioned upon refinancing and the Williams Parties fail to identify any writing related to such refinancing or even any specific promise that First Liberty would be able to secure take-out financing. Third, the "general rule is that fraud cannot be predicated upon statements which are promissory in their nature as to future acts." *Hornsby v. First Nat. Bank of Atlanta*, 154 Ga. App. 155, 157, 267 S.E.2d 780, 782 (1980). Even if First Liberty promised to do something related to take out financing, "'a promise, even a false promise, to perform an act in the future is not a false pretense or false representation, and does not constitute the basis for an action for fraud.'" *Est. of Smith v. CitiMortgage, Inc.*,

13

No. 113CV02809RLVJFK, 2014 WL 12859296, at *5 (N.D. Ga. Jan. 28, 2014) (citation omitted). Fourth, Plaintiffs fails to cite any authority indicating that this allegation could serve as the basis of any claim.

25. In short, Plaintiffs fail to: a) allege a viable claim that First Liberty did not have intent—when the loans were entered—to fund the loans to support any kind of fraud as to the Plaintiffs; b) allege a specific misrepresentation upon entering the loans or specific damages flowing therefrom; or c) identify each and every fraudulent statement or act on which Plaintiffs relied together with supporting documents or otherwise support a fraud or fraud-in-the-inducement claim.

26. The Amended Complaint fails to plead a plausible fraud claim. Such insufficiency infects Count Two for Fraud, Count Three for Fraud in the Inducement, and Count Four for Willful Breach of Contract and these claims should be dismissed.

E. **The Response Fail to Demonstrate Damages.**

27. Rather than providing a detailed and specific itemization and calculation of damages to comply with Paragraph 5(b)(viii) of the Procedures Order, Paragraph 20 of the Response generally refers to unidentified interest, fees, and charges due under the loan documents without indicating where such information is located in the Complaint. Not only do Plaintiffs fail to provide any basis for interest, fees, and charges due under the loan documents to constitute damages, they do not

14

provide an itemization and calculation of damages or provide any basis for interest, fees, and charges to be avoided in the first instance.

F. **The Response Fails to Provide Sufficient Security.**

28.     Paragraph 21 of the Response provides that the Receiver can look to the pledged properties as security to prevent foreclosure at the same time that Plaintiffs seeks to avoid security interests prior to the full payment of the obligations due to the Receivership. The proposed security is grossly deficient and fails to comply with the Procedures Order or the basis for equitable relief.

WHEREFORE, the Receiver respectfully requests that the Court deny the Response, grant the Motion and grant the Receiver such other and further relief as this Court deems just and proper.

Respectfully submitted this 2nd day of June, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com; Phone: (404) 926-0053
2964 Peachtree Road NW, Suite 555
Atlanta, GA 30305
*Counsel for Receiver*

15

## CERTIFICATE OF COUNSEL REGARDING FONT SIZE AND CERTIFICATE OF SERVICE

Counsel certifies that the foregoing has been prepared using Times New Roman font size 14 in accordance with Local Rules 5.1(C) and 7.1(D), and the attachments are consistent with Local Rule 5.1(B).

Counsel further certifies certify that I have electronically filed the foregoing *REPLY TO RESPONSE TO RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR MORE DEFINITE STATEMENT AND BRIEF IN SUPPORT THEREOF* with the Clerk of Court via the CM/ECF system, and further certify that a true and correct copy of the same has been served by email as follows:

JONES & WALDEN LLC
c/o Leon S. Jones, Esq.
699 Piedmont Avenue NE
Atlanta, Georgia 30308          Sent electronically to LJones@joneswalden.com

This 2nd day of June, 2026.

LAW OFFICES OF HENRY F. SEWELL, JR., LLC

*/s/ Henry F. Sewell, Jr.*
Henry F. Sewell, Jr., Esq.
Georgia Bar No. 636265
hsewell@sewellfirm.com
Phone: (404) 926-0053
Buckhead Centre
2964 Peachtree Road NW, Suite 55
Atlanta, GA 30305
*Counsel for Receiver*

2

EXHIBIT 1

2



December 19, 2024

To:    Jerry K. Williams Jr. MD

From:  Brant Frost, IV / President
       First Liberty Building & Loan

Re:    Preliminary Approval/ Bridge loan

Dear Dr. Williams,

We are pleased to advise you that the loan request to finance the construction of a home in Highlands, NC has received preliminary loan approval. The terms are as follows:

| | |
|---|---|
| Amount | $3,500,000 |
| Purpose | To construct home |
| Rate | 15% |
| Collateral | 1st lien on 1000 acres known as Arnolds Point Bryan County, GA<br>1st lien on lot in Highlands Country Club Highlands, NC |
| Term | 12 months interest monthly |
| Payments | $46,667 /mo. 12 months |
| Interest Reserve | 6-month evergreen interest reserve |
| Debt Service Reserve | 12-month debt service reserve |
| Fees | 5% Loan fee to First Liberty |
| Borrower | Entity TBD |
| Guarantors | Jerry K. Williams Jr. MD, 100% personally, along with the corporate guarantees or any related guarantees as may be required by the lender. |

11 Greenville Street | Newnan, Georgia 38263 | (770) 253-4389

page 2
Jerry K. Williams Jr MD

| | |
|---|---|
| Prepayment | 6-month interest earned |
| Stipulations | Subject to 1st Lien 1000 acres Warnell Dr, Bryan County, GA PB C / PG 361 Arnolds Point Parcels 3A and 3B |
| | Subject to 1st lien on lot to be purchased in Highlands Country Club Highlands, NC |
| | Subject to 6-month interest reserve |
| | Subject to 12-month debt service reserve |
| | Subject to First Liberty handling a permanent loan exit option. |
| | Subject to standard title & loan closing criteria |

The borrower will not pay any interest on the est $1.5M in undrawn funds.

We will begin the packaging process upon receiving the signed acceptance of this term sheet along with the Good Faith Deposit of 1% of the loan request, or $35,000. *Disregard*

The GFD will be credited to the loan fee for First Liberty Building & loan and is refundable if we are not able to deliver a full approval, minus any actual 3rd party expenses.

The GFD is non-refundable if you withdraw the request, use another lender, make material misrepresentations, or if for any other reason on your end it does not close.

While we cannot make any guarantees, we are targeting the closing 12/19/2024.

Thank you for giving us the opportunity to serve you. We look forward to a smooth and successful loan transaction.

Best regards,

Brant Frost, IV / President

page 3

14 Greenville Street | Newnan, Georgia 30263 | (770) 253-1300

EXHIBIT 2

3

**From:** Henry Sewell <hsewell@sewellfirm.com>
**Date:** Tuesday, December 16, 2025 at 2:58 PM
**To:** Leon Jones <ljones@joneswalden.com>, Robert Warren <rwarren@joneswalden.com>, Shelfer, Jennifer L. <jennifer.shelfer@agg.com>, Lou McBryan <lmcbryan@mcbryanlaw.com>, Nelson, Alexandra <alexandra.nelson@thompsonhine.com>, Garrett Nail <gnail@pgnlaw.com>, Loomis, Madison G. <loomism@sec.gov>, Tim Guilmette <tim@guilmettehenderson.com>
**Cc:** Greg Hays <ghays@haysconsulting.net>
**Subject:** First Liberty Procedures Order

Please find attached a proposed Order on the Litigation Procedures.

I have also attached a red line showing the changes from the original procedures.

We are still reviewing this internally so we reserve the right to make additional changes.

I would like to submit this to the Court tomorrow if possible so please let me know if you have any comments as soon as possible.

Thanks

Henry


Henry F. Sewell, Jr.
Law Offices of Henry F. Sewell, Jr., LLC
Suite 555
2964 Peachtree Road NW
Atlanta, Georgia 30305
Direct:  404-926-0053
Cell:     404-822-1785
hsewell@sewellfirm.com

---

**2 attachments**

 **First Sewell Draft of Procedures Order.docx**
38K

**Redline of Procedures Changes.docx**
21K

EXHIBIT 3

**From:** Leon Jones <ljones@joneswalden.com>
**Date:** Thursday, December 18, 2025 at 7:41 AM
**To:** Henry Sewell <hsewell@sewellfirm.com>, Robert Warren <rwarren@joneswalden.com>, Shelfer, Jennifer L. <jennifer.shelfer@agg.com>, Lou McBryan <lmcbryan@mcbryanlaw.com>, Nelson, Alexandra <alexandra.nelson@thompsonhine.com>, Garrett Nail <gnail@pgnlaw.com>, Loomis, Madison G. <loomism@sec.gov>, Tim Guilmette <tim@guilmettehenderson.com>
**Cc:** Greg Hays <ghays@haysconsulting.net>
**Subject:** RE: First Liberty Procedures Order

Henry:  I have reviewed the revisions to the order which you circulated last night.  I have no further comments or objections to the form of the order, as updated.

Thank you.  --Leon

Leon S. Jones
Jones & Walden LLC
699 Piedmont Avenue, NE | Atlanta, GA 30308
(404) 564-9300 Phone | (404) 564-9301 Fax
ljones@joneswalden.com | www.joneswalden.com

NOTICE: THE INFORMATION CONTAINED IN THIS ELECTRONIC COMMUNICATION AND ANY DOCUMENTS ATTACHED HERETO MAY CONTAIN CONFIDENTIAL INFORMATION WHICH IS LEGALLY PRIVILEGED AND IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL TO WHOM THE TRANSMISSION IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE PERSON RESPONSIBLE FOR CONVEYING THE INFORMATION TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION OR USE OF ANY INFORMATION CONTAINED IN THIS TRANSMISSION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY THE SENDER BY TELEPHONE OR REPLY BY E-MAIL AND DESTROY THIS TRANSMISSION. THANK YOU.

**From:** Henry Sewell <hsewell@sewellfirm.com>
**Sent:** Wednesday, December 17, 2025 8:28 PM
**To:** Leon Jones <ljones@joneswalden.com>; Robert Warren <rwarren@joneswalden.com>; Shelfer, Jennifer L. <jennifer.shelfer@agg.com>; Lou McBryan <lmcbryan@mcbryanlaw.com>; Nelson, Alexandra <alexandra.nelson@thompsonhine.com>; Garrett Nail <gnail@pgnlaw.com>; Loomis, Madison G. <loomism@sec.gov>; Tim Guilmette <tim@guilmettehenderson.com>
**Cc:** Greg Hays <ghays@haysconsulting.net>
**Subject:** Re: First Liberty Procedures Order

After talking to Leon, I made a few minor tweaks to the procedures.  A red line is attached.

Leon suggested some changes to former (h) and, after reviewing that paragraph further, I decided to simply delete it.

I will submit the attached Order at noon tomorrow unless I receive any further comments before that time.

Thank you.

Henry


Henry F. Sewell, Jr.
Law Offices of Henry F. Sewell, Jr., LLC
Suite 555
2964 Peachtree Road NW
Atlanta, Georgia 30305
Direct:  404-926-0053
Cell:     404-822-1785
hsewell@sewellfirm.com

---

**From:** Henry Sewell <hsewell@sewellfirm.com>
**Date:** Tuesday, December 16, 2025 at 2:58 PM
**To:** Leon Jones <ljones@joneswalden.com>, Robert Warren <rwarren@joneswalden.com>, Shelfer, Jennifer L. <jennifer.shelfer@agg.com>, Lou McBryan <lmcbryan@mcbryanlaw.com>, Nelson, Alexandra <alexandra.nelson@thompsonhine.com>, Garrett Nail <gnail@pgnlaw.com>, Loomis, Madison G. <loomism@sec.gov>, Tim Guilmette <tim@guilmettehenderson.com>
**Cc:** Greg Hays <ghays@haysconsulting.net>
**Subject:** First Liberty Procedures Order

Please find attached a proposed Order on the Litigation Procedures.

I have also attached a red line showing the changes from the original procedures.

We are still reviewing this internally so we reserve the right to make additional changes.

I would like to submit this to the Court tomorrow if possible so please let me know if you have any comments as soon as possible.

Thanks

Henry


Henry F. Sewell, Jr.
Law Offices of Henry F. Sewell, Jr., LLC
Suite 555
2964 Peachtree Road NW
Atlanta, Georgia 30305
Direct:  404-926-0053
Cell:     404-822-1785
hsewell@sewellfirm.com

EXHIBIT 4

FIRST LIBERTY CAPITAL PARTNERS, LLC
PO Box 2567
Newnan, GA 30264

## LOAN CLOSING STATEMENT

DATE OF TRANSACTION:  December 19, 2024

BORROWER: No Free, LLC, a Georgia limited liability company

LENDER:      FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company

---

### SCHEDULE OF LOAN ADVANCES

| TOTAL LOAN AMOUNT | $3,500,000.00 |
|---|---|

### DISBURSEMENTS

| | |
|---|---|
| Loan Fee to First Liberty Capital Partners, LLC | $175,000.00 |
| Six Month Interest Reserve to First Liberty Capital Partners, LLC | $280,000.00 |
| Construction Interest Reserve | $560,000.00 |
| Partial Month's Interest (December) | $18,666.00 |
| Legal Fees | $25,000.00 |
| Title Insurance, closing costs | $25,000.00 |
| Document Fees | $3,500.00 |
| Contingency | $265,000.00 |
| **DISBURSEMENTS** | **$1,352,166.00** |
| **BALANCE AVAILABLE BORROWER** | **$2,147,834.00** |

SIGNATURE PAGE FOLLOWS:

"BORROWER"

RIVERDAWG, LLC, a Georgia limited liability company

By:_____(Seal)
    Dr. Jerry Willaims

"LENDER"

FIRST LIBERTY CAPITAL PARTNERS, LLC, a Georgia limited liability company

By:_____(Seal)
    Brant Frost IV, Manager